1               IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA

2

3  SUSMAN GODFREY LLP,

                               Civil Action No.
4        Plaintiff,            1:25-cv-1107

5      vs.                     Washington, DC
                                 April 15, 2025
6  EXECUTIVE OFFICE OF THE
  PRESIDENT, et al.,

7                               2:04 p.m.

8          Defendants.
  _____/

9

10            TRANSCRIPT OF MOTION HEARING
         BEFORE THE HONORABLE LOREN L. ALIKHAN
           UNITED STATES DISTRICT JUDGE

11

12  APPEARANCES:
  For the Plaintiff:      DONALD VERRILLI, JR.
13                       GINGER ANDERS
                      JEREMY KREISBERG
14                      Munger, Tolles & Olson LLP
                      1155 F Street, NW, 7th Floor
15                      Washington, DC 20004

16                      BRAD BRIAN
                      Munger, Tolles & Olson LLP
17                      350 South Grand Ave, 50th Floor
                      Los Angeles, CA 90071
18

19  For the Defendants:     RICHARD LAWSON
                      DOJ-USAO
20                      950 Pennsylvania Ave, NW
                      Washington, DC 20530
21

22

23  Court Reporter:         JEFF HOOK
                      Official Court Reporter
24                      U.S. District & Bankruptcy Courts
                      333 Constitution Avenue, NW
25                      Washington, DC 20001

1                    P R O C E E D I N G S

2         **DEPUTY CLERK:**  Your Honor, we're now on the record

3    for Susman Godfrey LLP vs. Executive Office of the

4    President, et al., civil action 25-cv-1107.

5         Counsel, please come forward and note your

6    appearance for the record, beginning with the plaintiff.

7         **MR. VERRILLI:**  Good morning, Your Honor.  I'm Don

8    Verrilli from Munger, Tolles & Olson for Susman Godfrey.

9    Permit me first to introduce two of the leaders of the

10   Susman Godfrey firm who are here, and they are sitting just

11   behind me:  Kalpana Srinivasan and Vineet Bhatia.  Thank

12   you.  And if I can introduce my colleagues.

13        **THE COURT:**  Sure, please do.

14        **MR. VERRILLI:**  So I want to introduce Brad Brian,

15   who is the chairman of Munger, Tolles & Olson, and our

16   partner Ginger Anders, and our senior counsel Jeremy

17   Kreisberg.  Thank you.

18        **THE COURT:**  Good afternoon, and welcome to you

19   all.

20        You're a bit outmanned here.

21        **MR. LAWSON:**  Good afternoon, Your Honor.  Richard

22   Lawson, Deputy Associate Attorney General for the Department

23   of Justice.

24        **THE COURT:**  All right, thank you very much.  I

25   appreciate everybody appearing on such short notice.  Susman

1    Godfrey filed this suit yesterday and sought a temporary

2    restraining order yesterday afternoon.  We have opened the

3    public line for this hearing, and I will just note for

4    anybody listening that any broadcasting or recording is

5    strictly forbidden and will result in contempt sanctions.

6        So because this is Susman's motion, I will hear

7    first from counsel for the plaintiffs.

8        **MR. VERRILLI:**  Thank you, and may it please the

9    Court.  We are here this afternoon seeking a TRO against --

10   to block the key provisions of an executive order that is

11   one of the most brazenly unconstitutional exercises of

12   executive power in the history of this nation.  And that is,

13   unfortunately, just the latest in a string of brazenly

14   unconstitutional attacks on law firms in retaliation for the

15   work they have done representing their clients.  We're

16   specifically seeking a TRO against Sections 1, 3 and 5 of

17   the order.

18       Now, the first thing we need to show is likelihood

19   of success on the merits, and with the Court's permission, I

20   will turn to that first.

21       **THE COURT:**  Before we get into that, you had

22   mentioned -- and I know this relates to your due process

23   argument, that you had no -- or your client had no prior

24   knowledge of this.  I know that the administration has been

25   negotiating with some other firms.

1          And so there was no outreach, this is the first

2     you heard of this was when it dropped?

3          **MR. VERRILLI:**  None whatsoever, total bolt from

4     the blue.  No notice, no outreach, no indication whatsoever.

5          **THE COURT:**  All right, thank you.

6          **MR. VERRILLI:**  With respect to likelihood of

7     success on the merits, the Susman order is unconstitutional

8     for all of the reasons that the three courts that have

9     reviewed comparable orders -- the Jenner order, the

10    WilmerHale order, the Perkins Coie order -- and found them

11    likely unconstitutional, and for additional reasons as well.

12    It violates the First Amendment by retaliating against

13    Susman for its advocacy on behalf of clients, by

14    perpetrating odious viewpoint discrimination against that

15    advocacy, by trying to cut off our right to petition the

16    courts, and by seeking to disrupt Susman's right to

17    associate with clients in ways that are sadly similar to the

18    ones that the states of the old segregationist south used to

19    disrupt the relationships between civil rights lawyers and

20    their clients.

21          And there's no need to infer retaliatory intent in

22    this case, it is right there in unapologetic black and white

23    on the face of the executive order.  This order also denies

24    due process by tarring Susman's reputation, disrupting its

25    client relationships and impairing its lawyers' ability to

1    practice their profession without, as Your Honor's question

2    made clear, any notice or any opportunity to be heard

3    whatsoever.  And it does so on the basis of impermissibly

4    vague and totally unsubstantiated smears.

5         It denies Susman equal protection of the laws by

6    singling the firm out without even a plausible rational

7    basis for doing so.  It denies Susman's clients their rights

8    to be represented by the lawyers of their choice, and it

9    runs roughshod over the separation of powers.  It's every

10    bit as bad as the Steel Seizure case.  The President has

11    ordered actions and imposed punishments without any

12    statutory authority or any constitutional authority.  In

13    fact, it's worse than the Steel Seizure case because it's

14    also a direct assault on the authority of Article III courts

15    and the independence of the judiciary.  And, if that weren't

16    enough, it also bears all the hallmarks of an

17    unconstitutional bill of attainder.  We don't think, based

18    on that, and based on that read together with the rulings in

19    the other three cases, that there's any serious question

20    that we have a likelihood of success on the merits.

21         But before I turn to irreparable harm, let me

22    pause there if Your Honor has any questions with respect to

23    the merits.

24         **THE COURT:**  So just a housekeeping matter.  I

25    think there was a Sixth Amendment argument in some of the

1    other cases.  There's not one here because you're purely a

2    civil firm?

3         **MR. VERRILLI:**  Well, based on the fact that the

4    work of the firm is, with very few exceptions,

5    overwhelmingly civil in nature, that's correct.

6         **THE COURT:**  And if we could turn to the order.  I

7    was hoping we could go through it and you could help me get

8    some clarity, or not, as it goes to your vagueness argument.

9    So my understanding is that the allegation that Susman

10   spearheads efforts to weaponize the American legal system

11   and degrade the quality of American elections is in

12   reference to your client's representation of Dominion

13   Voting; is that how you read this?

14        **MR. VERRILLI:**  We assume that that's one of the

15   bases, along with the firm's reputation of the Secretary of

16   State of Arizona in the 2020 election aftermath and the

17   Governor of Wisconsin in the 2020 election aftermath.  Those

18   are the election-related representations of the firm that

19   we're aware of.  You know, maybe there's something else that

20   the government has in mind with respect to this vague

21   language, but those are the ones we think must be at issue.

22        **THE COURT:**  And then I think you confessed some

23   confusion as to what the next sentence was, but that:  "The

24   firm funds groups that engage in dangerous efforts to

25   undermine the effectiveness of the United States military

1    through the injection of political and radical ideology."

2            Do you have a sense as to what that might be

3    about?

4            **MR. VERRILLI:**  We are completely mystified by

5    that.  Perhaps the government can clear it up today, but we

6    are completely mystified.  You know, it's particularly

7    unfortunate, we think -- and as the Srinivasan declaration

8    identifies, this firm has reservists, it has numerous

9    veterans, it has a long and proud tradition of recognizing

10   the importance of military service.  And so we're completely

11   mystified as to what that's about.

12           **THE COURT:**  And then efforts to discriminate on

13   the basis of race, you know, you pointed to a fellowship

14   that your client has that I think they go on to speak of in

15   the next paragraph.  But are you aware of any other hooks on

16   which the government is hanging that hat?

17           **MR. VERRILLI:**  We are not; we are not.

18           **THE COURT:**  And at this stage, since we're looking

19   at a temporary restraining order, I think you would agree

20   with me that I don't need to address every potential

21   argument in terms of your likelihood of success on the

22   merits.

23           Which do you think are your strongest, if you had

24   to pick a favorite child or two?

25           **MR. VERRILLI:**  Well, I never like having to pick a

1    favorite child, but I would say that the Court can look to

2    the three decisions that have already been rendered on

3    virtually identical executive orders, and those courts

4    relied on the First Amendment retaliation argument.  That

5    seems to us to be rock solid.  And with respect to that

6    argument, of course, if there is retaliation for the

7    exercise of protected speech -- and we know from Velazquez

8    that advocacy in court is protected speech, that's just a

9    flat out violation.  You don't go through the compelling

10   interests, narrowly tailored means analysis, it's just a

11   flat out violation.  You have the unanimous decision of the

12   Supreme Court in Vullo from last term saying exactly that.

13   That seems to us to be just an ironclad, obvious First

14   Amendment violation.

15         The viewpoint discrimination, which the other

16   courts have also relied on, seems to us to be equally strong

17   in that it says it right on the face of the order that these

18   punishments are being imposed because of the positions that

19   the firm took.  And, of course, it's standard First

20   Amendment law that viewpoint discrimination is the most

21   consequential, the most serious violation of the First

22   Amendment.  Viewpoint discrimination, you have it here, they

23   admit it in the executive order.  Those two seem just

24   totally rock solid.

25         We think the other ones are also very, very

1    strong.  And we do think the due process argument, you know,

2    as Your Honor's question kind of reflected -- and, I mean,

3    out of the blue, we got an order imposing these punishments

4    and disabilities on us with no notice and no opportunity to

5    be heard and in this incredibly vague way so that we don't

6    even know in some instances what they're talking about.

7    That also seems completely rock solid.

8            THE COURT:  Have there been any efforts from you

9    or your client to reach out to the administration to try and

10   clarify what the catalyst was for this and to clarify some

11   of the statements that are being made?

12           MR. VERRILLI:  No, not to my knowledge.  I'm quite

13   certain there haven't been, Your Honor.  And this, of

14   course, has all happened very fast.  You know, this order

15   just issued a few days ago, again, out of the blue.  So

16   we've been focused on defending ourselves, defending -- our

17   firm's been focused on defending Susman, and Susman's been

18   focused on defending itself.

19           THE COURT:  Do you want to move on to harm?

20           MR. VERRILLI:  Yeah, I'd be happy to, Your Honor.

21   Again, as with the merits, we don't think there's any

22   serious question here that Susman is suffering and will

23   continue to suffer irreparable harm.  Our papers have

24   detailed the harms.  There's the harm -- irreparable harm as

25   a matter of law based on the chilling of our free

1    expression, a First Amendment harm.  There's irreparable

2    harm to Susman's reputation by these unfounded smears

3    hanging out there in an executive order by the President of

4    the United States.  That kind of reputational harm is well

5    established irreparable harm.  And there's economic harm as

6    well, and that's detailed in the Srinivasan declaration at

7    pages 30 to 35 in numerous respects.  So if we just apply

8    standard law, we easily establish irreparable harm.

9             But I think it's important to take a step back

10   here and just think about what's actually going on.  The

11   point of this order is to harm Susman Godfrey.  The harms

12   aren't incidental, they are the point.  The Executive is

13   wielding an axe here, and we don't know exactly when that

14   axe is going to fall, but they're ready to bring it down.

15   And when they bring it down, Susman isn't going to be able

16   to represent its clients.  It's not going to be able to meet

17   with government officials.  It's not going to be able to --

18   which they need to do to pursue their qui tam actions --

19   which, by the way, net ironically hundreds of millions of

20   dollars for the government.  They're not going to be able to

21   pursue their antitrust representations where they need to

22   meet with government officials.  They're not going to be

23   able to pursue their environmental representations where

24   they need to meet with government officials.  They're not

25   going to be -- they're not going to be able to pursue their

1    intellectual property cases where they've got to be in front

2    of the PTAB.  And as I said, they may not even be able to

3    enter federal courthouses under this order.

4        **THE COURT:**  I think under your reading of the

5    order, they couldn't even go to jury duty.

6        **MR. VERRILLI:**  Yeah, jury duty.  Frankly, they

7    couldn't even go to the Post Office to mail a letter.  So we

8    think that there really is no doubt that this is irreparable

9    harm.  And they may say, well, it's not ripe yet because you

10   don't have guidance, but that's just a question of when this

11   axe is going to fall.

12       And in that regard, Your Honor, I do think it's

13   quite valuable to look at the memoranda that the Department

14   of Justice circulated in the other cases.  The Jenner one is

15   particularly illuminating, I think, in this regard.  It went

16   to the heads of all executive departments and agencies.  And

17   the court required that this notification go out to instruct

18   the agencies that the temporary restraining order was in

19   place.  But, you know, what it says is:  "A local district

20   judge has mandated that the Attorney General and OMB

21   director personally send the below notification about Jenner

22   & Block LLP, a law firm committed to the weaponization of

23   justice, discrimination on the basis of race, radical gender

24   ideology and other anti-American pursuits."

25       **THE COURT:**  That was in their notice informing the

1    individuals of the court's TRO?

2        **MR. VERRILLI:**  Yes, yes, to the agency heads of

3    the court's TRO.  Anti-American pursuits.

4        **THE COURT:**  In, I believe, the Jenner and the

5    Perkins Coie cases, there were indications that meetings

6    with government officials had been canceled.  I think -- as

7    far as I can tell, you didn't allege anything like that in

8    your papers.

9        Do you have reason to believe that that has

10   happened since you filed or --

11       **MR. VERRILLI:**  It hasn't happened yet, Your Honor.

12   But as the declarations do explain, the representations that

13   Susman undertakes requires meetings on a weekly basis with

14   government officials on all kinds of cases, appearances in

15   court on a weekly basis on all kinds of cases.  And so it

16   seems to me it's not an answer to the irreparable harm -- or

17   even putting aside the constitutional harm and the

18   reputational harm, which may be indisputably out there, and

19   the harm that could come from the investigation into

20   government contractors who are represented by -- who Susman

21   represents.  You know, this only goes to the Section Five

22   disabilities being imposed.

23       But of course -- it's just common sense, of course

24   clients thinking about hiring Susman Godfrey, thinking about

25   staying with Susman Godfrey are going to be asking

**1**   themselves, well, what's going to happen when the axe falls

**2**   here; are you going to be able to represent me.  And I just

**3**   think it's self-evident.  You know, and it does -- it brings

**4**   to mind a quotation from Judge Friendly that Chief Justice

**5**   Roberts put into the Census case -- I think it's really

**6**   quite apt here, which is that courts are not required to

**7**   exhibit a naivety from which ordinary citizens are free.

**8**          Everyone knows what this is about; it is plain on

**9**   the face of it: it is an attack on this law firm.  It is a

**10**  attack on this law firm based on its representations, and

**11**  its design is to inflict harm in the here and now and harm

**12**  in the future.  There's just not any doubt about that.

**13**         **THE COURT:**  In a few of the other cases, the

**14**  complained of actions in the executive order had been

**15**  undertaken by individuals who are no longer associated with

**16**  the firm.  I understand that your client still represents

**17**  Dominion Voting.

**18**          But as to some prior representations, are we

**19**  talking about -- and in looking at sort of a fish, actions

**20**  that go to people who are actually at the firm or folks that

**21**  have since departed?

**22**         **MR. VERRILLI:**  Well, because the allegations are

**23**  so vague that we don't know what they're about, it's a

**24**  little bit hard to answer your -- I don't mean to flip about

**25**  it.  I mean, genuinely it's a little bit hard to answer Your

1    Honor's question.  But with respect to Dominion Voting, I do

2    think there's a significant point here.  Maybe it's a

3    coincidence, maybe it's a coincidence that this executive

4    order dropped right on the eve of when Susman Godfrey was

5    about to go to trial on behalf of Dominion Voting against

6    Newsmax based on the defamatory allegations -- the

7    defamatory statements from the 2020 election aftermath.

8    Maybe it's a coincidence, but that's what happened.

9         And I do think Your Honor raised a point about

10   other firms.  I think it is useful to look at the experience

11   of other firms.  Of course, you did see what happened with

12   other firms and their clients and their clients' reactions,

13   it's all documented, the basis of judicial findings now.  I

14   think it's equally important to look at the conduct of the

15   firms that settled with the Trump administration and to look

16   at their explanations.  You know, those explanations are a

17   matter of public record; they're out there, the Paul Weiss

18   chairman's message, the Skadden chairman's message.  One can

19   read those.

20        They didn't say, you know, we're really sorry, the

21   President is right; we've been behaving badly and so we're

22   doing this because it's the right thing.  They said these

23   executive orders are an existential threat to the continued

24   existence of our firm, and we had no choice but to settle.

25   I don't think there's any clearer proof of the irreparable

1    harm potential of these orders than those statements and the

2    actions that those prominent, powerful firms took in

3    response.

4        **THE COURT:**  And I suppose it might be even worse

5    for your client as one of the smaller firms in the --

6        **MR. VERRILLI:**  Susman Godfrey is a mighty firm,

7    and it's hugely successful and it's full of courageous

8    lawyers who are standing up here.  And if I may just say

9    this now, they're standing up for themselves certainly, but

10   they're doing more than that.  They're standing up for the

11   profession.  They're standing up for the rule of law.

12   They're standing up for the Constitution.  They're standing

13   up for this country.  And they've had the courage to do

14   that, but it's a risk.  They understand it, everyone

15   understands it.  And the reason is because everyone

16   understands what the point of this order is.  The point of

17   this order is to inflict grievous harm on these firms, on

18   this firm and the others.  That's its point.  And I just

19   think on any reasonable understanding of what irreparable

20   injury consists of, this qualifies.

21        Now, if I may, just the last couple of factors,

22   the balance of hardships and public interest, cases like

23   this involving the government that effuse together of

24   course.  And I won't spend any considerable time on it

25   unless Your Honor has questions about it, it just seems

1   obvious where the public interest lies here.  It just seems

2   obvious.  There is no injury whatsoever to the government

3   from the entry of a temporary restraining order.  And in

4   that regard, if the Court does choose to enter one, we'll of

5   course abide by any expedited schedule necessary to achieve

6   final resolution.  So there's really no harm to the

7   government here at all.

8        And it is just obvious where the public interest

9   lies.  It cannot be that the executive branch can exercise

10  power that it does not have by statute, that it does not

11  have under the Constitution to retaliate against a law firm

12  like Susman Godfrey going into court, representing its

13  clients zealously to the best of their ability.  That is the

14  core of what happened here.  It is the definition of the

15  public interest for Susman Godfrey to do the work that it

16  does.

17        **THE COURT:**  And it encroaches upon this court who

18  relies on your lawyers to negotiate with the federal

19  government in cases that you bring before us and bring

20  before other judges --

21        **MR. VERRILLI:**  Of course.

22        **THE COURT:**  -- or resolve cases before they come

23  to court.

24        **MR. VERRILLI:**  And that's why I said earlier, Your

25  Honor, this is not -- in a way it's worse than the Steel

1   Seizure case, because it's not just a presidential assertion

2   of power that the President doesn't have under our

3   Constitution, it's a direct assault on the Article III

4   courts, on the independence of the judicial branch.

5          You know, and there's language in Velazquez that I

6   think is quite relevant here where the court said that an

7   independent judiciary relies on an independent bar.  And the

8   point in that case was, of course, that it is

9   unconstitutional -- in that instance it was Congress through

10  legislation, but it's unconstitutional, it's a grave First

11  Amendment violation for the government to wield its power

12  against lawyers who come to court so that they cannot make

13  and they are deterred from making the full throated, zealous

14  defense of their clients' interests that the norms of the

15  profession and the rule of law require for the judiciary to

16  be able to do its job under our Constitution.

17          **THE COURT:**  All right, thank you very much.

18          **MR. VERRILLI:**  Thank you.

19          **THE COURT:**  I'll give you some time on rebuttal.

20  Mr. Lawson.

21          **MR. LAWSON:**  Good afternoon.

22          **THE COURT:**  Good afternoon.

23          **MR. LAWSON:**  Your Honor, at sort of a 30,000-foot

24  level, I would ask the Court to examine the issue of what

25  these sections really focus on.  And I'd like to focus on

1    Sections 3 and 5 at this high level.

2         THE COURT:  Well, could you start with Section 1

3    and tell me what you think are the allegations behind each

4    of the statements.

5         MR. LAWSON:  Your Honor, I heard the Court's

6    questions of counsel.  Regrettably, I don't have any further

7    information beyond what is contained in here aside from the

8    discrimination issue.  And for that, all I have is a web

9    page from the Susman website discussing some of the

10   diversity initiatives, which we think would speak to the

11   sort of gray zone under the Students for Fair Admissions

12   case and diversity and quotas and so forth.

13        THE COURT:  But you don't have any understanding

14   of what the funding groups that undermine the effectiveness

15   of the military is?

16        MR. LAWSON:  Regrettably, Your Honor, I have no

17   further information than what's contained in the order.  I

18   apologize, I just wasn't able to procure that before we got

19   here.

20        THE COURT:  All right, thank you.

21        MR. LAWSON:  But if I could, there is a theme that

22   will run through as this case progresses -- because

23   obviously I'm handling the other ones as well.

24        THE COURT:  Lucky you.

25        MR. LAWSON:  One way to put it.  Is the power --

1    how is the government acting here.  And then for that, we

2    have approached it from the idea of the government acting as

3    sovereign.  And is the government acting here in Section 3

4    as a contractor and in Section 5 as a landlord and an office

5    supervisor, not as the sovereign.

6         A key point, counsel for plaintiff referenced the

7    Vullo case earlier -- the Court is nodding, I'm sure the

8    Court is generally familiar, involving the issue of the

9    improper use of the power of the sovereign to sanction and

10   punish entities that did business with disfavored actors.

11   There's no sanction or punishment here, not when it's coming

12   to contracting, not when it's coming to office access, not

13   when it's coming to hiring.  This is not a fine.  This is

14   not jail time.  Classic case of Bantam Books where there

15   were books being sold at a bookstore, a concerned citizens

16   committee with the power to refer cases for criminal

17   prosecution sends a letter please remove these books.  There

18   was the threat of sanction and punishment.  This is --

19   Section 3 is, again, contracting.  Section 5 is landlord

20   employment, that type of thing.

21        **THE COURT:**  So walk me through how it's not a

22   sanction.  Because, I mean, I don't know if Susman has

23   itself government contracts, but if it does and it's

24   competed for and won those, why would unrelated actions

25   relating to cases that it brings, or whatever it might be

1    doing with groups that have something to do with the

2    military, have any -- be any permissible basis on which to

3    terminate such a contract?

4    **MR. LAWSON:**  So if we look at Section 3, there is

5    a reference in there to the racial discrimination angle.

6    And so for that point, the analogy would be to the LBJ

7    order, Executive Order 11246, regarding contractors and

8    their requirements to diversify their workforce.  Fifty

9    something -- 60 something years ago, an extraordinary body

10   of case law supporting that.

11   Also codified in the Code of Federal Regulations,

12   I would draw the Court's attention to 41 C.F.R. -- and

13   hopefully I've written this down correctly, 60-1.4(b)(8).

14   Don't we love federal regulations.  So I'll repeat, 41

15   C.F.R. 60-1.4(b)(8).  And this prevents contractors from

16   working with entities that have themselves, the third-party

17   entity, been debarred for failing to comply with the LBJ

18   executive order.  Now, I'm referencing this from the point

19   of view of this sort of downstream inquiry on the larger --

20   in compliance with the larger executive order has been on

21   the books for decades.  And so this idea of reaching out to

22   contractors saying who are you doing business with, that's

23   been a part of federal government contracting for decades.

24   And so there's some body of law that would support that.

25   And again, so to -- I could see the Court's

1    concern, and obviously the initial question was, okay, how

2    does this relate to the national security issue.  And this

3    is why I draw the Court's attention to Section 3 does

4    specifically references the racial discrimination angle.

5    Furthermore, under 40 -- we'll go to the statutes here, 40

6    U.S.C. 121(a), the President, as far as the acquisition

7    practice, is able to set -- to use the procurement power to

8    advance policies and public policies.  So there is a large

9    body of case law supporting the idea of the use of the

10   procurement power to advance social policy.

11          One of the leading cases, a very old case,

12   Contractors Association of Eastern Pennsylvania vs.

13   Secretary of Labor, 442 F.2d 159, and the spot cite running

14   from 168 to 171 talks about the use of -- it traces in that

15   section decades prior -- and this is from '71.  I apologize,

16   I didn't finish, the Third Circuit, 1971.  Going back

17   decades to the use of procurement power to advance social

18   policy initially in the defense era under FDR.  And it

19   goes -- the court at that point said:  "In the area of

20   government procurement, executive authority to impose

21   nondiscrimination contract provisions falls in Justice

22   Jackson's first category" -- this is the steel case,

23   Youngstown Sheet & Tube vs. Sawyer, 343 U.S. 579,

24   discussing -- well, various levels of that.  So falls in

25   Justice Jackson's first category, action pursuant to the

1   express or implied authorization of Congress.

2          And I'll further note in Chrysler Corporation vs.

3   Brown, 441 U.S. 281, spot cite 305 to 306, 1979, the court

4   was examining the origins of this LBJ order, 11246.  And the

5   court said at that point:  "The origins of congressional

6   authority for Executive Order 11246 are somewhat obscure and

7   have been roundly debated by commentators and courts."  And

8   then the court goes on to reference it draws equally from --

9   or it can draw equally from the Administrative Services Act,

10  Titles VI and VII of the Civil Rights Act and Equal

11  Opportunity Act.  So I'm referencing this from the point of

12  view that to the degree the Court -- and I suspect the Court

13  has noticed the various statutes that are and are not

14  referenced in this order, that that in and of itself is not

15  fatal.

16          Here we have a 1979 U.S. Supreme Court case

17  examining the LBJ order and noting it doesn't really say

18  what statutes are doing it.  But because the use of social

19  policy -- use of procurement power to advance social policy

20  has been so established, that I would submit that that's

21  permissible here.  And furthermore, it doesn't fall within

22  the world of sanctions and punishment, that it is discretion

23  on the purchasing entity, the contractor.

24          **THE COURT:**  So obviously this is the first time

25  you've been able to present your arguments in this Court, so

1    I appreciate all of the citations.  I've not had the chance

2    to review them.  But my sense of a lot of these are the

3    government can incentivize particularly policy aims in

4    engaging with who to contract with.  This seems to be quite

5    different because you're terminating existing contracts.

6         And so is there any support for that not being a

7    sanction?  I could understand that you might in the future

8    not want to engage in contractual relationships with

9    individuals or companies that don't support your

10   administration's policies, but is there grounds for this

11   kind of midstream termination?

12        **MR. LAWSON:**  So very excellent question.  I do not

13   read the order as necessarily calling for an immediate

14   termination that would violate any existing authority.

15   Obviously there are -- what is it, the Mount Healthy and

16   Umbehr line of cases.  Umbehr itself -- and I apologize for

17   Court and counsel, I don't have the cite handy, but it does

18   reference that its analysis does not apply to -- or it

19   specifically points that the case does not address future

20   contracts.

21        But to the Court's question as to is this -- the

22   cases that I rely on and just referenced, does it bless an

23   immediate termination.  To my knowledge, no immediate

24   termination of the contract has happened.  And obviously the

25   provisions of the EO would require that it would be

1    consistent with that body of case law, that line of First

2    Amendment retaliation of terminating an existing

3    relationship, whether it's the school teacher fired by the

4    board or the contractor who has it terminated ab initio, but

5    it would have to be consistent with that.

6         But the larger point I'm trying to make is that,

7    on its face, it's not necessarily a sanction, it's not

8    necessarily punishment.  So I would urge the Court to have

9    great caution as it examines these arguments under that

10   Vullo type of analysis.  That is the largest point I'd like

11   to leave the Court with as to Section 3.

12        As to Section 5, again, I would make the same

13   general arguments about we're acting here as landlord, as

14   employer.  But there is an issue that I would just indulge

15   the Court with, that while we would urge the Court to deny

16   the temporary restraining order, to the degree the Court

17   does grant it, there is a problem I've been dealing with in

18   the other cases which is the ripeness issue.  And there was

19   great foresight on plaintiff's counsel to note that I would

20   be referencing that.

21        And if the Court issues the order as I understand

22   it to have been drafted, not only is the issue -- in my

23   opinion would it not be ripe now, it can't be ripe because

24   the order as issued would prohibit agencies from developing

25   the guidance.  I would urge the Court to consider some sort

1    of opportunity to allow these guidances to be promulgated so

2    we can have something concrete here.  There is -- we've

3    already heard here, and the Court can imagine -- and we are

4    not immune to the parade of horribles that can come as far

5    as right to counsel, right to petition, but that's not

6    called for in this order here; it doesn't say that.  We need

7    the guidance to know if any of that parade of horribles

8    might be queuing up, much less beginning the parade.

9              And then just the last --

10             THE COURT:  Can I ask, has there been any guidance

11   being prepared?

12             MR. LAWSON:  I don't know, I cannot speak to that.

13   And to my knowledge, there's been no guidance on any of the

14   other cases at all that were developed prior to the TROs

15   being entered.  The one last point, to kind of go out of

16   order here -- we talked about 3, 5 and I'd like to jump back

17   to 1, which is --

18             THE COURT:  Well, actually, before you go there, I

19   take your point that you're trying to separate the

20   government as sovereign from the government as contractor or

21   landlord, but what interest does the landlord have in

22   barring individuals that the sovereign has problems with

23   from coming into a courthouse or a federal building?

24             MR. LAWSON:  Well, let me kind of go towards --

25   give an example that I think might apply, if I can, from

1    recent events.  I believe both the chair of the FTC and I

2    believe the Deputy Attorney General have issued guidance to

3    staff regarding engagement with the American Bar

4    Association.  I haven't studied them in great depth, I hope

5    everybody will forgive if I get some of this analogy off

6    point.  But at a high level, I think direction that would be

7    minimizing interactions with agencies -- like one of the

8    concerns with the ABA is is it nonpartisan or is it

9    partisan.

10         To the degree it's partisan, I think there's an

11   interest by these actors to distance engagement with the --

12   between agency staff.  So I'm coming at it from that angle

13   on the idea of within the power of an employer to state I

14   don't want you interacting with a certain entity in your

15   official capacity.  And to the degree that is consistent

16   otherwise with employment law -- obviously, people can pay

17   their own way and go to these meetings, that is fine.  But

18   to go speak on a panel would be something.  So I think that

19   might be an area where some of the guidance would develop

20   and flow from.

21         To speak to the issue of guidance that came out

22   and said that marshals are to keep counsel from the firm

23   from entering the court, I would hesitate to speculate that

24   that would be anything like what was coming up.  If the

25   guidance did come up, I'm quite confident that motions would

1    be filed and orders would be rendered by this Court before

2    we had an argument to hear whether you liked that position

3    or not.  So again, I just -- yes.

4         **THE COURT:**  What is the interest in keeping them

5    out of federal buildings, if not to retaliate against them?

6         **MR. LAWSON:**  Well, I would -- again, just to kind

7    of develop a bit of an analogy.  To the degree there was an

8    ability in a federal space to hold some sort of CLE on

9    diversity or so forth, maybe something along those lines

10   could apply.  But again, I think the Court's -- if I can

11   take the Court's question and highlight a position, this is

12   why we need the guidance.  Even if the Court issues like --

13   you know, to the degree any guidance is issued, it is to be

14   stayed pending review.  I don't want to propose that

15   necessarily, but I just want to highlight the great

16   challenge we have in getting this into a concrete position

17   for a full ruling from the Court on the matter.

18        And just to conclude very briefly, on Section 1,

19   this is -- the government, as much as anyone, has its own

20   right to speak.  I would view that these contents -- the

21   statements in Section 1 are classic government speech.  The

22   difference between the statements in Section 1 and a press

23   conference are very, very minimal, maybe more well thought

24   out and greater punctuation and so forth.  But --

25        **THE COURT:**  You say it's more well thought out,

1    but you don't actually know what the second sentence about

2    funding military groups means.

3            **MR. LAWSON:**  Well, correct.  As far as the detail,

4    the detail speaks for itself.  What I -- all I was really

5    meaning by well thought out is just, you know, coherent

6    phrases and so forth.  The -- but the larger point of

7    Section 1 is -- that we've been wrestling with is how do we

8    speak.  And the government has a right to speak.  And I

9    think -- and I would urge great caution from the Court on

10   the judiciary policing the executive branch's speech.  That

11   is just a very tricky area that is just extremely difficult

12   to try to implement.  And also, I don't think Section 1 has

13   any real operative effect.  Clearly Sections 3 and 5 are

14   giving instruction.  So I think an injunction on Section 1

15   just courts more trouble than it might solve.

16           **THE COURT:**  In other cases, my understanding is

17   that -- I think at least in the Wilmer case, that it's --

18   not that there's anything to enjoin in Section 1 because

19   it's not taking any action, but the TRO was to prevent the

20   government from discriminating against the firm on the basis

21   of that language.

22           **MR. LAWSON:**  Well, I think -- I believe Wilmer,

23   before Judge Leon, there was no injunction as to Section 1.

24           **THE COURT:**  Then it may be the Jenner case before

25   Judge Bates.

1    **MR. LAWSON:**   Jenner and Howell -- and plaintiff's

2    counsel will speak better to this.  I think their motion --

3    their proposed order tracks very closely, at least at a high

4    level, to what was entered before by Judges Bates and

5    Howell.  But that -- as I understand it, that is -- the

6    purpose of the injunction of Section 1 is the use with the

7    clients and whatnot.  But it becomes so difficult to know

8    what can or can't be said, what is -- what will be coming

9    before this Court to be explained as far as what we said or

10   not when it's all really, we would submit, protected by the

11   First Amendment.  The issues come in -- working on Section 3

12   and working on Section 5, spot that.  But Section 1, it's

13   just extraordinarily difficult to practically implement an

14   injunction as to that.

15       **THE COURT:**   Do you know why the administration has

16   been reaching out to certain firms ahead of these orders

17   versus why you just drop this on Susman without opportunity?

18       **MR. LAWSON:**   I cannot speak to that, I don't know,

19   and anything I would say would be rank speculation.

20       **THE COURT:**   Another concern that I have is, as

21   your friend on the other side points out, a lot of the

22   relationships between companies that may be federal

23   contractors and the firm are -- is non public information,

24   you know, potentially you're hiring the firm to investigate

25   whether you should merge with somebody, what some

1    consequences would be if you bring an IP suit against

2    somebody else.  And so it seems quite stark to make

3    contractors disclose that information to the federal

4    government.

5            **MR. LAWSON:**  Again, I would just -- I would draw

6    back to the comments I made earlier about the idea of if

7    this is an entity that it would otherwise not be compliant

8    with the old LBJ order, that contractors need to make sure

9    that they're not working with someone who would otherwise be

10   debarred.  So I do think that those -- that the line of

11   inquiry is permissible.  There are issues about whether or

12   not the representation of an individual by an attorney is

13   privileged.

14           My general understanding is that is privileged if

15   the acknowledgement would be material, someone consulting a

16   criminal defense lawyer 30 minutes after a presumed murder,

17   something along those lines, whereas like, okay, what is

18   this indicating.  But I believe, absent that, I'm not sure

19   there really is quite that same level of privilege.  I

20   certainly understand the Court's question and concern, but

21   I -- you know, and with more time to brief, I could probably

22   answer a little more fully the true parameters of doing that

23   downstream inquiry.  I'd just draw the Court's attention to

24   my earlier comments about that.

25           **THE COURT:**  And a lot of your argument today

1    focuses on maybe the government's actions as a landlord or

2    as a contractor.  Do those apply when we're talking about

3    the First Amendment analysis or is that just a question of

4    where the authority to enter such an order comes from?

5            MR. LAWSON:  Well, I think that tracks to our

6    conversation earlier regarding the Mount Healthy and Umbehr.

7    That's where First Amendment issues about retaliation and

8    viewpoint discrimination come in.  I don't see anything in

9    the order that is necessarily in conflict with that line of

10    cases, and so certainly the First Amendment applies.  But

11    there is another line of cases on this -- well, anyway,

12    sorry, that was a -- I was going the wrong direction on that

13    one.

14            I guess the answer to your question of how does

15    the First Amendment apply on that, I think that falls within

16    the Mount Healthy-Umbehr line, and I don't see anything that

17    these orders necessarily conflict with that.

18            THE COURT:  And do you agree that if we're looking

19    at viewpoint discrimination, strict scrutiny is the

20    appropriate standard?

21            MR. LAWSON:  I believe it is.  I haven't --

22            THE COURT:  And so under that, give me your best

23    on your compelling interest, and then we can talk about

24    whether it's narrowly tailored.

25            MR. LAWSON:  Sure.  Well, I think the critical

1    inquiry for viewpoint discrimination has to be that there's

2    punishment or sanction.  We start there.  This is why I went

3    to that at the beginning.  To the degree the Court finds

4    that this is a punishment, this is sanction, that this is in

5    the Vullo category, the Bantam Books category, well, that's

6    going to be a certain line of inquiry that I think I know

7    where the Court may go on that.

8         This is why I've been driving the issue towards

9    what is fundamentally going on here.  If this is use of the

10   procurement power to advance social policy, very well

11   supported.  And under the Northeastern Contractors -- I

12   think I've got that right, I cited it earlier, extremely

13   well supported under that first category from Youngstown

14   Sheet.  And even the court later, in the Brown vs. Kisor

15   case, is talking about this use of social -- of procurement

16   power to advance social policy is -- has many statutory

17   sources on that.

18         **THE COURT:**  And maybe you'll just repeat that

19   argument, but what about it being narrowly tailored?  So

20   this applies to every one of, I think it's, 328 or 329

21   people that work at the firm.  So the IT guy might not be

22   able to go get a job in government IT or the paralegal who's

23   also a vet may not be able to go to the VA.

24         **MR. LAWSON:**  So the narrowly tailored due

25   process -- I'll put those together, if the Court will

1    indulge, from the perspective that those are inquiries far

2    more appropriate for a legislative setting.  This is an

3    executive order within the ability to arrange contracting

4    provisions and within the ability to act as a landlord.

5    It's just a different -- it's just a different setting.

6    Again, this -- the Court also predicted, this is a

7    rephrasing of my earlier argument.  If it's not punishment,

8    if it's not sanction, if it is acting as landlord, then I

9    would submit that the strict scrutiny, narrowly tailored

10   analysis is just the wrong way to approach, that it's

11   something else.

12        **THE COURT:**  But I think, taking you at your word

13   that we're talking about the government as landlord, the

14   government as landlord doesn't have the right to engage in

15   viewpoint discrimination unless it can satisfy strict

16   scrutiny.

17        **MR. LAWSON:**  Well, let's just assume that for a

18   moment, yes.  We don't know what --

19        **THE COURT:**  Do we need to assume that?  I mean, do

20   you not agree with that?

21        **MR. LAWSON:**  Well, here's -- sure, I agree with

22   that, but the guidance, we don't know what the access is.

23   We can't say it's viewpoint discrimination, we don't know

24   what it says.  And if the Court issues the order as

25   requested, we won't know what it says.

1      **THE COURT:**  All right, I think I'm losing you,

2   because it strikes me that we can read the viewpoint

3   discrimination from Section 1 of the executive order.  You

4   do not like the views that this firm has taken on behalf of

5   its clients, and something to do with someone that's from

6   the military, and as a result you're then taking actions.

7   The degree of those actions, to be sure, we won't know until

8   we see the guidance, but the genesis is the disagreement

9   with the viewpoint.

10     **MR. LAWSON:**  Well, on that point, Your Honor, if

11   you're talking about the motivation -- now, this is where

12   I -- recall where I lost -- went down the wrong path

13   earlier, but I want to return to that.  If the Court is

14   talking about the motivation, there is a long body of case

15   law that when it comes to analyzing statutes where the state

16   is acting as sovereign -- McGowan vs. Maryland, criminal

17   prosecutions for violating Sunday closure laws; in U.S. v.

18   O'Brien, criminal prosecutions for the destruction of draft

19   cards, the courts -- the Supreme Court in both cases said if

20   there is a logical basis to support this decision, we will

21   not inquire any further into the discriminatory nature of

22   it, in any aspect of it.

23        So let us return on the landlord angle to the

24   example I was giving about -- say, for example, the ABA.

25   I'm not sure it would be out of place for the government, if

1    it could, if it had an access to a space and had the proper

2    discretion, otherwise compliant with the law, to deny access

3    to the ABA to use a federal facility and have -- place

4    prohibitions on official representatives representing these

5    agencies to speak at said conference.  But again, this goes

6    to we need the guidance.  We need to know how -- if it's

7    part of the parade of horribles or if it's within

8    established areas of discretion.

9           **THE COURT:**  You know, I confess I don't know that

10   much about the ABA other than it's a nonprofit that likes

11   the rule of law, but it strikes me that the ABA doesn't have

12   the same -- there's not the same societal interest in having

13   individuals being able to choose the lawyers that represent

14   them and in encouraging lawyers to take positions that might

15   be unpopular or indeed adverse to the current federal

16   government.

17          **MR. LAWSON:**  Well, on that point, as it relates,

18   again, to Section 5, access to buildings, employment, et

19   cetera, I will be the broken record and just say we need the

20   guidance, it's not ripe.  The Court's concern is not

21   ill-founded, we just don't know if it holds.  And if the

22   Court issues the order as requested, we won't know.  As it

23   relates to Section 3 and contracting, I would just repeat

24   the arguments I made earlier.

25          **THE COURT:**  All right, thank you very much.

1          **MR. LAWSON:**  Thank you, Your Honor.

2          **THE COURT:**  Mr. Verrilli.

3          **MR. VERRILLI:**  Thank you, Your Honor.  I'm going

4    to try to address some specific things that we heard from

5    the United States.  First, this point about the guidance.

6    You know, I'd call that argument a red herring, but that

7    would be unfair to red herrings.  These executive orders are

8    law firm-specific.  They can issue general guidance

9    tomorrow, tomorrow.  That's all they would need to do to

10   solve the whole problem, but they don't.

11         **THE COURT:**  Well, and they can develop guidance

12   even if there's an injunction in place.

13         **MR. VERRILLI:**  Of course they can.  I mean, you

14   know -- I'll try to control myself here, but it is a

15   completely insubstantial argument.  Now with respect to the

16   government as contractor and landlord, Your Honor's

17   questions, I think, I have elucidated the problem with that

18   argument, is that you can't violate the Constitution as a

19   contractor.  You can't violate the Constitution as a

20   landlord.  The Justice Department could not constitutionally

21   adopt a rule that said anyone who is a registered Democrat

22   may not enter the Department of Justice for a meeting.  It

23   could not constitutionally adopt a rule that said no black

24   person may enter the Department of Justice.  They can't act

25   unconstitutionally.

1           And as Your Honor's question made clear, this kind

2    of viewpoint discrimination and this kind of retaliation is

3    unconstitutional.  They can't do it as a contractor; they

4    can't do it as a landlord; they can't do it as a sovereign;

5    they can't do it, period.  Now --

6           **THE COURT:**  And what about your friend's point

7    that the LBJ order and other authorities support the notion

8    that the government can steer policy preferences through

9    contracting?

10          **MR. VERRILLI:**  So my friend, Mr. Lawson, made a

11   reference to the allegation of racial discrimination.  I

12   assume what he's referring to is the Susman Prize.  Of

13   course, the Susman Prize is lawful.  It's described in the

14   Srinivasan declaration.  Your Honor can look at it, it's

15   lawful, there's nothing unlawful about it.  And the other

16   thing is it certainly hasn't been adjudicated as unlawful by

17   anybody because we haven't had any process of any kind.  And

18   so the idea that you can invoke this notion that government

19   can pursue social policy to justify this kind of vindictive,

20   retaliatory order I think is just, again, completely

21   insubstantial argument.

22          Now, if I could, with respect to Section 1, my

23   friend says, well, that's just government speech.  A couple

24   of points about that.  I would urge on the Court the Vullo

25   case's discussion about that very issue.  That was exactly

1    the argument that the state made in Vullo: well, yeah, you

2    need to separate out the fact that we were criticizing the

3    NRA from these other actions we took for unlawful conduct by

4    the NRA.  And what the court held is no, no, no, you have to

5    consider them together.  You have to look at it as a whole,

6    as a pattern, and what the pattern shows you is that this

7    was in retaliation for their exercise of First Amendment

8    freedoms.

9            And I do think that goes back to the contractor

10   point we were just discussing.  You know, that logic in

11   Vullo seems to me to apply fully, that even -- as I said,

12   the prize is lawful, and it's certainly never been

13   adjudicated unlawful.  But even if it were, they can't do

14   this.  They can't do this because of that.  They can't

15   engage in this kind of retaliation.  And that was the case

16   in Vullo, you know, the NRA had violated the insurance

17   regulations, there wasn't any doubt about that.  So again,

18   nothing to that argument.

19           **THE COURT:**  And would that argument be the same if

20   the entirety of the executive order was Section 1 and there

21   weren't these Sections 3 and 5, which are tying action to

22   that statement?

23           **MR. VERRILLI:**  Yeah, that was the next point I

24   wanted to make actually, Your Honor.  The idea that Section

25   1 is just some standalone exercise in government speech,

1    again, seems -- I'll restrain myself here, let's call it

2    completely insubstantial.  Section 1 says that Susman

3    Godfrey is engaging in activities inconsistent with the

4    interests of the United States, and that the firm should not

5    have access to the nation's secrets nor be deemed

6    responsible stewards of any federal funds.

7            And then if one drops down to Section 3,

8    subsection two -- and this is the contracting section, it

9    instructs federal agencies, in addition to dropping the

10   specific contracts, to otherwise align their agency funding

11   decisions with the interests of the citizens of the United

12   States.  Paragraph one in Section 1 specifically said that

13   Susman Godfrey, in the view of the President, is acting in a

14   manner inimical to the interests of the United States.  So

15   the idea that this is just speech is, it seems to me, again,

16   completely insubstantial.

17           My friend's invocation of O'Brien, et cetera, what

18   that law is is that when there's a facially neutral statute

19   or a facially neutral government action, that only in rare

20   circumstances will a court look behind a facially neutral

21   action to see whether there's unconstitutional motive.  Now,

22   sometimes courts do, and there is First Amendment law saying

23   that you do.  But there's no need to do that here.  Beyond

24   constitutional motivation is right there in black and white

25   in the executive order.  It says it's being done in

1    retaliation for advocacy and speech, it says it.

2           And then if you had any doubts, if the Court had

3    any doubts about that, there's some publicly available

4    statements that we have referred to and quoted in our

5    complaint.  I'd direct the Court's attention to paragraph

6    101 of the complaint where we quote the President telling a

7    news outlet:  "We have lots of law firms that we're going to

8    be going after because they were very dishonest people.

9    They're a crooked law firm.  They're violent, vicious

10   lawyers.  They're fake lawyers."  That's the same president

11   who signed this executive order.

12          Then paragraph 105, this was not the President but

13   someone else in the White House telling the Washington Post:

14   "The President doesn't believe they," these firms, "should

15   have the privileges afforded to companies of their stature

16   to work and operate with the federal government since they

17   have made it very clear they are vehemently against the

18   President of the United States and their work proves that."

19   That's a White House official.  There isn't any doubt about

20   what this is.

21          If the Court has no further questions, I'd just

22   like to leave the Court with one additional thought, which I

23   think is important.  Think about what actually the

24   Department of Justice is asking you to bless here in this

25   case.  In the world that they're trying to bring about, when

1    Mr. Lawson or anybody in the chain of command above him, all

2    the way up to the Attorney General, four years from now,

3    they're done with their government service, there's a new

4    president, they're out there looking for a job, the new

5    president would be, on their view, entirely within his

6    rights or her rights to say, you know, the position that the

7    Department of Justice took in court today defending this

8    executive order was, to use the language that they used

9    against Jenner & Block, anti-American.  And the next

10   president could issue an executive order that says any law

11   firm that hires anybody who did that in court, who made that

12   representation of their client in that way in court, will

13   suffer exactly the same sanctions and disabilities that this

14   order imposes on Susman Godfrey.

15          And as we said in our complaint, today it's Susman

16   Godfrey, but if they're right, this could be anyone for any

17   reason at any time.  And make no mistake, they have made a

18   lot of progress already.  Some very prominent law firms have

19   bent the knee -- to use the words of the White House press

20   secretary, bent the knee by offering up hundreds of millions

21   of dollars in tribute to stay on the President's good side.

22   We're sliding very fast into an abyss here.  There's only

23   one way to stop that slide, and it's for the courts to act

24   decisively, and to act decisively now.

25          I respectfully submit, Your Honor, that, above

1    all, is what the Article III judicial power is for.  So we

2    respectfully ask this Court to grant a TRO, as we've

3    requested, and to move this case swiftly to a final

4    determination repudiating this unconstitutional executive

5    order.

6            **THE COURT:**  All right, thank you very much.

7            **MR. VERRILLI:**  Thank you.

8            **THE COURT:**  It's 3:05 now.  The Court will take a

9    brief recess until 3:15 and then we'll return with a ruling.

10       (Off the record at 3:05 p.m.)

11       (Back on the record at 3:16 p.m.)

12           **THE COURT:**  So thank you to the parties for their

13   arguments today.  I'm now going to issue an oral ruling,

14   which I will follow up with a written order shortly.  So

15   Plaintiff Susman Godfrey LLP moves for a temporary

16   restraining order to enjoin enforcement of Sections 1, 3 and

17   5 of President Trump's Executive Order 14263 dated

18   April 9th, 2025, entitled, quote, Addressing Risks from

19   Susman Godfrey, end quote.

20           After hearing from the parties, I am inclined to

21   grant the temporary restraining order, and I will set forth

22   in brief my reasons why.  First the legal standard.  A

23   temporary restraining order is an extraordinary remedy meant

24   to prevent serious and imminent harm in dire circumstances.

25   To obtain one, a court -- a party must, quote, show a

1    substantial likelihood of success on the merits; that it

2    would suffer irreparable injury if the injunction were not

3    granted; that an injunction would not substantially injure

4    other interested parties; and that the public interest would

5    be furthered by the injunction, end quote.  That comes from

6    Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290,

7    297; that's D.C. Circuit, 2006.

8          These four considerations are factors, not

9    elements, and a district court must balance the strength of

10   the requesting party's arguments in each of the four

11   required areas.  When the government is the opposing party,

12   the third and fourth factors merge.  That comes from a

13   variety of cases, but for purposes of the court record, I'll

14   cite Pursuing America's Greatness vs. Federal Election

15   Commission, 831 F.3d 500, jump cite 511, D.C. Circuit, 2016.

16   Here, Susman Godfrey has met its burden to satisfy each of

17   the factors, and therefore it is entitled to a temporary

18   restraining order enjoining the enforcement of Sections 1, 3

19   and 5 of the executive order.

20         Starting with the first factor, the likelihood of

21   success on the merits, the Court determines that Susman is

22   likely to succeed on the merits of their claims.  The Court

23   need not address each, but will focus on the First and Fifth

24   Amendment harms in brief.  As to the First Amendment, the

25   executive order is likely to violate the First Amendment for

1    several of the reasons outlined by Susman Godfrey in their

2    motion.  The order retaliates against the firm and its

3    clients for their actual and perceived exercise of speech

4    and associational rights.  The Court and the parties

5    discussed the NRA vs. Vullo case a lot today, and that

6    stands for the notion that, quote, use of the power of the

7    state to punish or suppress disfavored expression, end

8    quote, is prohibited.

9         In order to demonstrate First Amendment

10   retaliation, Susman must show that it, one, engaged in

11   conduct protected by the First Amendment; two, that a causal

12   link exists between the exercise of a constitutional right

13   and the adverse action; and three, that the government took

14   adverse action sufficient to deter a person of ordinary

15   firmness from speaking again.  That test comes from Aref vs.

16   Lynch, 833 F.3d 242, jump cite 258, D.C. Circuit, 2016.

17        Susman is likely to show a likelihood of success

18   on all three elements.  First, the firm's advocacy on behalf

19   of its clients, advice to its clients and petitioning of the

20   courts on behalf of its clients constitute constitutionally

21   protected expression that implicates central First Amendment

22   concerns.  That comes from Legal Services Corp. vs.

23   Velazquez, 531 U.S. at 547 and 548.  Second, the retaliatory

24   nature of the executive order is plain from the language of

25   the EO; namely, Section 1.  Further, the Court agrees the

1    context is important here.  The order against Susman is not

2    the first of its kind, it follows orders against Paul Weiss,

3    WilmerHale, Perkins Coie and others.  Notably, every firm to

4    have challenged the executive order has received a temporary

5    restraining order against its enforcement.

6        Third, the executive order constitutes a

7    sufficiently adverse action against the firm, quote, to give

8    rise to an actionable First Amendment claim, end quote.

9    That's Houston Community vs. Wilson, 595 U.S. 468, jump cite

10    477, 2022.  The order threatens the firm's clients with

11    disfavored contracting treatment and restricts attorneys

12    from engaging with federal employees, which is a routine

13    activity that is necessary for a wide range of the firm's

14    representations.  The order additionally threatens to deny

15    Susman's personnel access to government buildings, including

16    federal courthouses.  Any one of these actions alone meets

17    the standard for adverse action.

18        The executive order also discriminates against the

19    firm on the basis of viewpoint.  The order refers to the

20    firm's participation in the, quote, legal system in the

21    context of elections.  And it is highly likely that Susman

22    will be able to demonstrate that these references are veiled

23    illusions to the firm's reputation of Dominion Voting, state

24    government entities and other clients in connection with the

25    2020 election.

1          Again, quoting Vullo:  "At the heart of the First

2     Amendment's free speech clause is the recognition that

3     viewpoint discrimination is uniquely harmful to a free and

4     democratic society."  Viewpoint discrimination is subject to

5     strict scrutiny, which means that the government's action

6     must be sustained or will be sustained only if the

7     government proves that the order is narrowly tailored to

8     serve compelling governmental interests.  As the firm

9     argues, viewpoint discrimination, in the context of legal

10     representation, is especially pernicious.  In the context of

11     strict scrutiny, such viewpoint discrimination is all but

12     dispositive of the strict scrutiny test.

13          The Court agrees with Susman that nothing in the

14     order shows a compelling interest.  The order's unexplained

15     reference to national security and the supposed funding of

16     groups that, quote, engage in dangerous efforts to undermine

17     the effectiveness of the United States military through the

18     injection of political and radical ideology, end quote, is

19     quite vague; so much so that no party here today actually

20     knows what it is referencing.  Additionally, the firm --

21     sorry, the executive order's reliance on a purported award

22     that -- as to students of color and to representation of

23     individuals involved with voting litigation bears no

24     connection to the national security concerns that the

25     executive order is trying to promote.

1          In a similar vein, the order lacks the narrow

2     tailoring that would be required because it threatens the

3     termination of all government contracts held by any clients

4     of the firm but does not justify this far-reaching

5     punishment.  Further, it allows for barring all Susman

6     attorneys and staff from federal buildings, which could mean

7     courthouses, Post Offices, the VA hospital and beyond.

8          The Court will also find that Susman is likely to

9     prevail on its Fifth Amendment claim that the order violates

10    its right to due process.  The Due Process Clause is

11    violated when the plaintiff faces a deprivation of a

12    protected liberty or property interest and has not received

13    the process that is due.  Here, the firm was deprived of

14    protected liberty and property interests that include the

15    right of its attorneys to pursue their chosen profession,

16    the firm's good name, reputation, honor and integrity, and

17    the constitutionally protected interest in its contracts

18    with its own clients.  The firm has shown that the order was

19    issued with no process whatever, and it also raises viable

20    concerns that the order is impermissibly vague, and that

21    vagueness is its own independent due process flaw.

22         A federal law is unconstitutionally vague and thus

23    violates due process if it, quote, fails to provide a person

24    of ordinary intelligence fair notice of what is prohibited

25    or is so standardless that it authorizes or encourages

1    seriously discriminatory enforcement, end quote.  That is

2    from United States v. Williams, 553 U.S. 285, jump cite 304,

3    2008.

4         The government further finds that the firm has

5    made a showing that it is likely to succeed on other aspects

6    of its Fifth Amendment claims, including its right to equal

7    protection and its client's due process right to counsel.

8    However, given the compelling nature of the First Amendment

9    harms and the due process claim, the Court need not go into

10   those at length.

11        Next I want to turn to irreparable injury.  It's

12   well established that irreparable injury is a high standard

13   and the injury must be both certain and great, actual and

14   not theoretical, and of such imminence that there is a clear

15   and present need for equitable relief.  Additionally, the

16   injury must be beyond remediation, meaning that the

17   possibility of adequate compensatory or other corrective

18   relief at a later date could show against irreparable harm.

19   The Court concludes that Susman has carried its burden here.

20        Susman has described several harms to its firm.

21   First, it has argued that the order has impaired its First

22   and Fifth Amendment constitutional rights.  With regard to

23   the First Amendment, the loss of First Amendment freedoms,

24   even for minimal periods of time, alone constitutes

25   irreparable injury.  The Court agrees that if it does not

1   grant a TRO, Susman will suffer certain and imminent injury

2   because the order chills the firm's speech and advocacy.

3         Next, with regard to the Fifth Amendment, a

4   violation of Fifth Amendment due process rights, which

5   includes unlawful interference with the right to counsel,

6   can give rise to irreparable harm.  That is also true of

7   other Fifth Amendment harms the Court finds that the firm is

8   likely to establish, including equal protection.  Second,

9   the firm explains that it will suffer severe and irreparable

10  reputational harm as a result of the executive order because

11  statements in the order could damage the firm's corporate

12  good will and reputation.  Relying on the Srinivasan

13  declaration, Susman points to the order's description of the

14  firm's work as, quote, dangerous and, quote, detrimental to

15  critical American interests, end quote, and its accusation

16  that the firm is, quote, spearheading efforts to weaponize

17  the American legal system and degrade the quality of

18  American elections, end quote.  The Court agrees that this

19  characterization indeed threatens reputational harm and

20  justifies emergency relief.

21        Third, the firm argues that it is already

22  suffering irreparable economic injuries explaining that,

23  quote, without relief from the Court, the executive order

24  will subject Susman to unrecoverable losses, end quote.  By

25  not being able to meet with federal officials when one-third

1    of its business includes federal cases and where it has

2    cases not just in federal court, but also before various

3    federal agencies, including U.S. Attorney's Offices, the

4    Patent Review Board, the Coast Guard, and I believe other

5    agencies, will stymie a critical aspect of its business.

6          That is especially so when the firm engages in the

7    types of litigation that are particularly adjacent to the

8    government, including qui tam litigation and patent

9    litigation, as the firm has supported through its

10   declarations.  And while Susman admits that it has not yet

11   had any meetings canceled and has not yet been barred from

12   any federal building, it has pointed out there's every

13   reason to believe that the refusals are imminent.  And the

14   firm has already been fielding requests from clients about

15   how to handle such a situation.

16         Additionally, the order is discouraging current

17   clients from continuing their relationships with the firm

18   and prospective clients from beginning new relationships.

19   In particular, because the executive order directs agencies

20   to terminate contracts with contractors who have hired the

21   firm to perform services.  So the Court finds that for

22   purposes of a TRO, the firm has sufficiently demonstrated

23   that the possible loss resulting from the order threatens

24   the very existence of its business and warrants emergency

25   relief.

1           Turning to the balance of the equities and the

2    public interest, as noted, when the government is the

3    opposing party in the case, the third factor -- which is

4    harm to other parties, and the fourth factor -- which is the

5    public interest, merge.  Here, the balance of equities

6    overwhelmingly favors granting a TRO in this case.  The

7    government has sought to use its immense power to dictate

8    the positions that law firms may and may not take.  The

9    executive order seeks to control who law firms are allowed

10   to represent.  And this immensely oppressive power threatens

11   the very foundation of legal representation in our country.

12          The adversarial process lies at the heart of our

13   judicial system and maintains that all individuals,

14   regardless of beliefs, are entitled to representation.  As

15   the court wrote in Velazquez:  "An independent judiciary

16   requires an independent bar."  Here, the executive order

17   specifically targets lawyers because of the clients that

18   they represented.  The executive order is based on a

19   personal vendetta against a particular firm.  And frankly, I

20   think the framers of our Constitution would see this as a

21   shocking abuse of power.

22          We've already seen the effects of similar

23   executive orders against other law firms.  Law firms across

24   the country are entering into agreements with the government

25   out of fear that they will be targeted next, and that

1    coercion is plain and simple.  And while I wish other firms

2    were not capitulating as readily, I admire firms like Susman

3    for standing up and challenging it when does threaten the

4    very existence of their business.

5              But even for the many firms that have entered into

6    agreements with the administration, there is nothing

7    stopping the government from returning to target them in the

8    future.  But at base, the government cannot hold lawyers

9    hostage to force them to agree with it.  Allowing the

10    lawyers to coerce private -- sorry, allowing the government

11    to coerce private businesses, law firms and lawyers solely

12    on the basis of their views is antithetical to our

13    constitutional republic and hampers this Court and every

14    court's ability to adjudicate its cases.  Because this

15    executive order attacks a core principle of client

16    representation and threatens to punish both Susman and the

17    legal industry as a whole, the Court finds that the public

18    interest weighs in favor of granting a TRO.

19              On the flip side, granting a TRO would not inflict

20    harm to the government.  The government has no legal

21    interest in breaking the law.  And furthermore, as I've

22    already said, the government is purely trying to control

23    what private lawyers may do, which I do not think will

24    withstand constitutional scrutiny.

25              So for all of those reasons, today I will impose a

1   temporary restraining order.  I will put this in writing,

2   but it is ordered that plaintiff's motion for a temporary

3   restraining order is granted.

4           It is further ordered that defendants are enjoined

5   from implementing or giving effect to Sections 1, 3 and 5 of

6   the executive order of April 9th, 2025 entitled Addressing

7   Risks from Susman Godfrey, including by relying on any of

8   the statements in Section 1.

9           It is further ordered that defendants are directed

10  to rescind any and all guidance or direction that has

11  already issued that relates to implementing or enforcing

12  Sections 1, 3 and 5 of the executive order.

13          It is further ordered the defendants are directed

14  to immediately issue guidance to their officers, staff,

15  employees and contractors to disregard Sections 1, 3 and 5

16  of the executive order and carry on as if those sections of

17  the executive order were never issued.

18          It is further ordered that the defendants are

19  directed to immediately issue guidance to other agencies

20  subject to the executive order to suspend and rescind any

21  implementation or enforcement of Sections 1, 3 and 5.

22          It is further ordered the defendants are directed

23  to immediately, A, communicate to every recipient of a

24  request for a disclosure of any relationship with Susman

25  Godfrey or any person associated with the firm made pursuant

1    to Section 33(a) of the executive order, that such request

2    is rescinded until further order of the Court; and B, cease

3    making such requests for disclosure pursuant to Section

4    33(a) of the executive order until further order of the

5    Court.

6            It is further ordered the defendants are directed

7    to take in good faith any other steps that are necessary to

8    prevent the implementation or enforcement of Sections 1, 3

9    and 5 of the executive order.

10           And finally, it is ordered that defendants shall

11   file a joint -- file a status report by 5:00 p.m. tomorrow,

12   April 16th indicating the steps they've taken to comply with

13   the Court's TRO.

14           I do want to turn to scheduling, but before I do,

15   I do want to note that I am declining to impose a bond under

16   Federal Rule of Civil Procedure 65(c).  Under Rule 65(c),

17   the Court has broad discretion to determine the appropriate

18   amount of an injunction bond, including the discretion to

19   award no bond at all.  And here, requiring a bond would

20   potentially preclude Susman Godfrey's right to judicial

21   review.

22           So I will get a written order out later today.  I

23   would like to hear from the parties on whether there is a

24   need to proceed to preliminary injunction briefing or

25   whether we can move just to summary judgment.  And I'll hear

1    first from the plaintiffs.

2        **MR. VERRILLI:**  Thank you, Your Honor.  I believe

3    that the course here ought to parallel the course in the

4    other cases; in other words, move directly to summary

5    judgment.  With respect to the schedule, we do want

6    resolution expeditiously, as I said before.  With the

7    Court's indulgence, it may be that we can work out a

8    schedule jointly with the United States for prompt

9    submission of dispositive motions and then a hearing at Your

10   Honor's discretion.

11       It might make sense if we could schedule a brief

12   telephonic status conference in the next day or two so that

13   we can just nail that down and make sure that we've got

14   agreement upon that.  And we haven't discussed specific

15   dates yet, but I suspect we'll be able to work out a plan

16   that's amenable to both sides.  And if it's amenable to the

17   Court, then we can move forward that way.

18       **THE COURT:**  All right, thank you.  Anything to

19   add?

20       **MR. LAWSON:**  No, Your Honor, we're happy to move

21   quickly.

22       **THE COURT:**  All right.  I'll ask the parties to

23   file a joint status report by 5:00 p.m. tomorrow setting

24   forth the briefing schedule for summary judgment briefing

25   mindful of the fact that the TRO will be in effect for 14

1    days, so until April 29th.  If the parties agree to extend

2    it by another two weeks, that gives you a bit more time to

3    have your summary judgment briefing.  I would just ask that

4    you leave me at least a day or two to go through the

5    briefing before we have our hearing and before I need to

6    render any ruling before any TRO might expire.

7            All right.  Is there anything else you wish to

8    address today, Mr. Verrilli?

9            **MR. VERRILLI:**  Nothing.  Thank you, Your Honor.

10           **THE COURT:**  Anything else from you, Mr. Lawson?

11           **MR. LAWSON:**  No, Your Honor.

12           **THE COURT:**  All right, thank you very much.  I

13   appreciate everyone's availability today.  I'm grateful for

14   the arguments, and I will look out for the order on

15   compliance and the joint briefing schedule.  This matter is

16   adjourned.

17           (Proceedings adjourned at 3:36 p.m.)

18

19

20

21

22

23

24

25

1                          **C E R T I F I C A T E**

2

3                  I, **Jeff M. Hook, Official Court Reporter,**

4      certify that the foregoing is a true and correct transcript

5      of the record of proceedings in the above-entitled matter.

6

7

8

9         April 16, 2025                        _____

10              **DATE**                            **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK:**
**[1]**  2/2
**MR. LAWSON:**
**[28]**  2/21
17/21 17/23
18/5 18/16
18/21 18/25
20/4 23/12
25/12 25/24
27/6 28/3
28/22 29/1
29/18 30/5
31/5 31/21
31/25 32/24
33/17 33/21
34/10 35/17
36/1 55/20
56/11
**MR. VERRILLI:**
**[27]**  2/7 2/14
3/8 4/3 4/6
6/3 6/14 7/4
7/17 7/25 9/12
9/20 11/6 12/2
12/11 13/22
15/6 16/21
16/24 17/18
36/3 36/13
37/10 38/23
42/7 55/2 56/9
**THE COURT:**
**[56]**  2/13
2/18 2/24 3/21
4/5 5/24 6/6
6/22 7/12 7/18
9/8 9/19 11/4
11/25 12/4
13/15 15/4
16/17 16/22
17/17 17/19
17/22 18/2
18/13 18/20
18/24 19/21
22/24 25/10
25/18 27/4
27/25 28/16
28/24 29/15
29/20 30/25
31/18 31/22
32/18 33/12
33/19 34/1
35/9 35/25
36/2 36/11
37/6 38/19
42/6 42/8
42/12 55/18

55/22 56/10
56/12

**'**

**'71 [1]**  21/15

**1**

**1.4 [2]**  20/13
20/15
**101 [1]**  40/6
**105 [1]**  40/12
**1107 [2]**  1/4
2/4
**11246 [3]**  20/7
22/4 22/6
**1155 [1]**  1/14
**121 [1]**  21/6
**14 [1]**  55/25
**14263 [1]**
42/17
**15 [1]**  1/5
**159 [1]**  21/13
**168 [1]**  21/14
**16th [1]**  54/12
**171 [1]**  21/14
**1971 [1]**  21/16
**1979 [2]**  22/3
22/16
**1:25-cv-1107**
**[1]**  1/4

**2**

**20001 [1]**  1/25
**20004 [1]**  1/15
**2006 [1]**  43/7
**2008 [1]**  48/3
**2016 [2]**  43/15
44/16
**2020 [4]**  6/16
6/17 14/7
45/25
**2022 [1]**  45/10
**2025 [3]**  1/5
42/18 53/6
**20530 [1]**  1/20
**242 [1]**  44/16
**25-cv-1107 [1]**
2/4
**258 [1]**  44/16
**281 [1]**  22/3
**285 [1]**  48/2
**290 [1]**  43/6
**297 [1]**  43/7
**29th [1]**  56/1
**2:04 [1]**  1/7

**3**

**30 [2]**  10/7

30/16
**30,000-foot [1]**
17/23
**304 [1]**  48/2
**305 [1]**  22/3
**306 [1]**  22/3
**328 [1]**  32/20
**329 [1]**  32/20
**33 [2]**  54/1
54/4
**333 [1]**  1/24
**343 [1]**  21/23
**35 [1]**  10/7
**350 [1]**  1/17
**3:05 [1]**  42/8
**3:05 p.m [1]**
42/10
**3:15 and [1]**
42/9
**3:16 p.m [1]**
42/11
**3:36 p.m [1]**
56/17

**4**

**40 [2]**  21/5
21/5
**41 [2]**  20/12
20/14
**441 [1]**  22/3
**442 [1]**  21/13
**454 [1]**  43/6
**468 [1]**  45/9
**477 [1]**  45/10

**5**

**500 [1]**  43/15
**50th [1]**  1/17
**511 [1]**  43/15
**531 [1]**  44/23
**547 [1]**  44/23
**548 [1]**  44/23
**553 [1]**  48/2
**579 [1]**  21/23
**595 [1]**  45/9
**5:00 p.m [2]**
54/11 55/23

**6**

**60 [1]**  20/9
**60-1.4 [2]**
20/13 20/15
**65 [2]**  54/16
54/16

**7**

**7th [1]**  1/14

**8**

**831 [1]**  43/15
**833 [1]**  44/16

**9**

**90071 [1]**  1/17
**950 [1]**  1/20
**9th [2]**  42/18
53/6

**A**

**ab [1]**  24/4
**ABA [5]**  26/8
34/24 35/3
35/10 35/11
**abide [1]**  16/5
**ability [6]**
4/25 16/13
27/8 33/3 33/4
52/14
**able [18]**
10/15 10/16
10/17 10/20
10/23 10/25
11/2 13/2
17/16 18/18
21/7 22/25
32/22 32/23
35/13 45/22
49/25 55/15
**above [3]**  41/1
41/25 57/5
**above-entitled**
**[1]**  57/5
**absent [1]**
30/18
**abuse [1]**
51/21
**abyss [1]**
41/22
**access [7]**
19/12 33/22
35/1 35/2
35/18 39/5
45/15
**accusation [1]**
49/15
**achieve [1]**
16/5
**acknowledgement**
**[1]**  30/15
**acquisition [1]**
21/6
**across [1]**
51/23
**act [7]**  22/9
22/10 22/11
33/4 36/24

41/23 41/24
**acting [7]**
19/1 19/2 19/3
24/13 33/8
34/16 39/13
**action [12]**
1/3 2/4 21/25
28/19 38/21
39/19 39/21
44/13 44/14
45/7 45/17
46/5
**actionable [1]**
45/8
**actions [11]**
5/11 10/18
13/14 13/19
15/2 19/24
31/1 34/6 34/7
38/3 45/16
**activities [1]**
39/3
**activity [1]**
45/13
**actors [2]**
19/10 26/11
**actual [2]**
44/3 48/13
**actually [7]**
10/10 13/20
25/18 28/1
38/24 40/23
46/19
**add [1]**  55/19
**addition [1]**
39/9
**additional [2]**
4/11 40/22
**additionally**
**[4]**  45/14
46/20 48/15
50/16
**address [5]**
7/20 23/19
36/4 43/23
56/8
**Addressing [2]**
42/18 53/6
**adequate [1]**
48/17
**adjacent [1]**
50/7
**adjourned [2]**
56/16 56/17
**adjudicate [1]**
52/14
**adjudicated [2]**
37/16 38/13

**A**

administration
[5]   3/24 9/9
14/15 29/15
52/6

administration'
s [1]   23/10

Administrative
[1]   22/9

admire [1]
52/2

Admissions [1]
18/11

admit [1]   8/23

admits [1]
50/10

adopt [2]
36/21 36/23

advance [6]
21/8 21/10
21/17 22/19
32/10 32/16

adversarial [1]
51/12

adverse [5]
35/15 44/13
44/14 45/7
45/17

advice [1]
44/19

advocacy [6]
4/13 4/15 8/8
40/1 44/18
49/2

afforded [1]
40/15

aftermath [3]
6/16 6/17 14/7

afternoon [6]
2/18 2/21 3/2
3/9 17/21
17/22

again [18]
9/15 9/21
19/19 20/25
24/12 27/3
27/6 27/10
30/5 33/6 35/5
35/18 37/20
38/17 39/1
39/15 44/15
46/1

against [21]
3/9 3/16 4/12
4/14 14/5
16/11 17/12
27/5 28/20

30/1 40/17
41/9 44/2 45/1
45/2 45/5 45/7
45/18 48/18
51/19 51/23

agencies [10]
11/16 11/18
24/24 26/7
35/5 39/9 50/3
50/5 50/19
53/19

agency [3]
12/2 26/12
39/10

ago [2]   9/15
20/9

agree [6]   7/19
31/18 33/20
33/21 52/9
56/1

agreement [1]
55/14

agreements [2]
51/24 52/6

agrees [4]
44/25 46/13
48/25 49/18

ahead [1]
29/16

aims [1]   23/3

al [2]   1/6 2/4

align [1]
39/10

ALIKHAN [1]
1/10

allegation [2]
6/9 37/11

allegations [3]
13/22 14/6
18/3

allege [1]
12/7

allow [1]   25/1

allowed [1]
51/9

allowing [2]
52/9 52/10

allows [1]
47/5

alone [2]
45/16 48/24

along [3]   6/15
27/9 30/17

amenable [2]
55/16 55/16

Amendment [32]
4/12 5/25 8/4
8/14 8/20 8/22

10/1 17/11
24/2 29/11
31/3 31/7
31/10 31/15
38/7 39/22
43/24 43/24
43/25 44/9
44/11 44/21
45/8 47/9 48/6
48/8 48/22
48/23 48/23
49/3 49/4 49/7

Amendment's [1]
46/2

America's [1]
43/14

American [9]
6/10 6/11
11/24 12/3
26/3 41/9
49/15 49/17
49/18

amount [1]
54/18

analogy [3]
20/6 26/5 27/7

analysis [5]
8/10 23/18
24/10 31/3
33/10

analyzing [1]
34/15

ANDERS [2]
1/13 2/16

Angeles [1]
1/17

angle [4]   20/5
21/4 26/12
34/23

answer your [1]
13/24

anti [3]   11/24
12/3 41/9

anti-American
[3]   11/24
12/3 41/9

antithetical
[1]   52/12

antitrust [1]
10/21

apologize [3]
18/18 21/15
23/16

appearance [1]
2/6

appearances [2]
1/12 12/14

appearing [1]

2/25

applies [2]
31/10 32/20

apply [7]   10/7
23/18 25/25
27/10 31/2
31/15 38/11

appreciate [3]
2/25 23/1
56/13

approach [1]
33/10

approached [1]
19/2

appropriate [3]
31/20 33/2
54/17

April [5]   1/5
42/18 53/6
54/12 56/1

April 16th [1]
54/12

April 29th [1]
56/1

April 9th [2]
42/18 53/6

apt [1]   13/6

area [3]   21/19
26/19 28/11

areas [2]   35/8
43/11

Aref [1]   44/15

argued [1]
48/21

argues [2]
46/9 49/21

argument [18]
3/23 5/25 6/8
7/21 8/4 8/6
9/1 27/2 30/25
32/19 33/7
36/6 36/15
36/18 37/21
38/1 38/18
38/19

arguments [7]
22/25 24/9
24/13 35/24
42/13 43/10
56/14

Arizona [1]
6/16

arrange [1]
33/3

Article [3]
5/14 17/3 42/1

aside [2]
12/17 18/7

aspect [2]
34/22 50/5

aspects [1]
48/5

assault [2]
5/14 17/3

assertion [1]
17/1

associate [2]
2/22 4/17

associated [2]
13/15 53/25

Association [2]
21/12 26/4

associational
[1]   44/4

assume [4]
6/14 33/17
33/19 37/12

attack [2]
13/9 13/10

attacks [2]
3/14 52/15

attainder [1]
5/17

attention [4]
20/12 21/3
30/23 40/5

attorney [5]
2/22 11/20
26/2 30/12
41/2

Attorney's [1]
50/3

attorneys [3]
45/11 47/6
47/15

authorities [1]
37/7

authority [7]
5/12 5/12 5/14
21/20 22/6
23/14 31/4

authorization
[1]   22/1

authorizes [1]
47/25

availability
[1]   56/13

available [1]
40/3

Ave [2]   1/17
1/20

Avenue [1]
1/24

award [2]
46/21 54/19

aware [2]   6/19

**A**

aware... [1]
7/15
axe [4]    10/13
10/14 11/11
13/1

**B**

back [6]    10/9
21/16 25/16
30/6 38/9
42/11
bad [1]    5/10
badly [1]
14/21
balance [4]
15/22 43/9
51/1 51/5
Bankruptcy [1]
1/24
Bantam [2]
19/14 32/5
bar [3]    17/7
26/3 51/16
barred [1]
50/11
barring [2]
25/22 47/5
base [1]    52/8
based [7]    5/17
5/18 6/3 9/25
13/10 14/6
51/18
bases [1]    6/15
basis [12]    5/3
5/7 7/13 11/23
12/13 12/15
14/13 20/2
28/20 34/20
45/19 52/12
Bates [2]
28/25 29/4
bears [2]    5/16
46/23
becomes [1]
29/7
been focused
[1]    9/17
beginning [4]
2/6 25/8 32/3
50/18
behalf [5]
4/13 14/5 34/4
44/18 44/20
behaving [1]
14/21
behind [3]
2/11 18/3

39/20
beliefs [1]
51/14
below [1]
11/21
bent [2]    41/19
41/20
best [2]    16/13
31/22
better [1]
29/2
beyond [4]
18/7 39/23
47/7 48/16
Bhatia [1]
2/11
bill [1]    5/17
bit [6]    2/20
5/10 13/24
13/25 27/7
56/2
black [3]    4/22
36/23 39/24
bless [2]
23/22 40/24
block [3]    3/10
11/22 41/9
blue [3]    4/4
9/3 9/15
board [2]    24/4
50/4
body [5]    20/9
20/24 21/9
24/1 34/14
bolt [1]    4/3
bond [4]    54/15
54/18 54/19
54/19
books [5]
19/14 19/15
19/17 20/21
32/5
bookstore [1]
19/15
both [5]    26/1
34/19 48/13
52/16 55/16
BRAD [2]    1/16
2/14
branch [2]
16/9 17/4
branch's [1]
28/10
brazenly [2]
3/11 3/13
breaking [1]
52/21
BRIAN [2]    1/16

2/14
brief [5]
30/21 42/9
42/22 43/24
brief [1]    3/4
briefing [6]
54/24 55/24
55/24 56/3
56/5 56/15
briefly [1]
27/18
bring [6]
10/14 10/15
16/19 16/19
30/1 40/25
brings [2]
13/3 19/25
broad [1]
54/17
broadcasting
[1]    3/4
broken [1]
35/19
Brown [2]    22/3
32/14
building [2]
25/23 50/12
buildings [4]
27/5 35/18
45/15 47/6
burden [2]
43/16 48/19
business [6]
19/10 20/22
50/1 50/5
50/24 52/4
businesses [1]
52/11

**C**

C.F.R [2]
20/12 20/15
CA [1]    1/17
call [2]    36/6
39/1
called [1]
25/6
calling [1]
23/13
came [1]    26/21
can [31]    2/12
7/5 8/1 12/7
14/18 16/9
22/9 23/3 25/2
25/3 25/4
25/10 25/25
26/16 27/10
29/8 31/23

33/15 34/2
36/8 36/11
36/13 37/8
37/14 37/18
37/19 49/6
54/25 55/7
55/13 55/17
canceled [2]
12/6 50/11
capacity [1]
26/15
capitulating
[1]    52/2
cards [1]
34/19
carried [1]
48/19
carry [1]
53/16
case [27]    4/22
5/10 5/13 13/5
17/1 17/8
18/12 18/22
19/7 19/14
20/10 21/9
21/11 21/22
22/16 23/19
24/1 28/17
28/24 32/15
34/14 38/15
40/25 42/3
44/5 51/3 51/6
case's [1]
37/25
cases [27]
5/19 6/1 11/1
11/14 12/5
12/14 12/15
13/13 15/22
16/19 16/22
19/16 19/25
21/11 23/16
23/22 24/18
25/14 28/16
31/10 31/11
34/19 43/13
50/1 50/2
52/14 55/4
catalyst [1]
9/10
category [5]
21/22 21/25
32/5 32/5
32/13
causal [1]
44/11
caution [2]
24/9 28/9

cease [1]    54/2
Census [1]
13/5
central [1]
44/21
certain [6]
9/13 26/14
29/16 32/6
48/13 49/1
certainly [5]
15/9 30/20
31/10 37/16
38/12
certify [1]
57/4
cetera [2]
35/19 39/17
chain [1]    41/1
chair [1]    26/1
chairman [1]
2/15
chairman's [2]
14/18 14/18
challenge [1]
27/16
challenged [1]
45/4
challenging [1]
52/3
chance [1]
23/1
Chaplaincy [1]
43/6
characterizatio
n [1]    49/19
Chief [1]    13/4
child [2]    7/24
8/1
chilling [1]
9/25
chills [1]
49/2
choice [2]    5/8
14/24
choose [2]
16/4 35/13
chosen [1]
47/15
Chrysler [1]
22/2
Churches [1]
43/6
Circuit [4]
21/16 43/7
43/15 44/16
circulated [1]
11/14
circumstances
[2]    39/20

**C**

circumstances...
. [1]  42/24
citations [1]
23/1
cite [8]  21/13
22/3 23/17
43/14 43/15
44/16 45/9
48/2
cited [1]
32/12
citizens [3]
13/7 19/15
39/11
civil [7]  1/3
2/4 4/19 6/2
6/5 22/10
54/16
claim [3]  45/8
47/9 48/9
claims [2]
43/22 48/6
clarify [2]
9/10 9/10
clarity [1]
6/8
classic [2]
19/14 27/21
clause [2]
46/2 47/10
CLE [1]  27/8
clear [5]  5/2
7/5 37/1 40/17
48/14
clearer [1]
14/25
Clearly [1]
28/13
client [8]
3/23 4/25 7/14
9/9 13/16 15/5
41/12 52/15
client's [2]
6/12 48/7
clients [23]
3/15 4/13 4/17
4/20 5/7 10/16
12/24 14/12
16/13 29/7
34/5 44/3
44/19 44/19
44/20 45/10
45/24 47/3
47/18 50/14
50/17 50/18
51/17

clients' [2]
14/12 17/14
closely [1]
29/3
closure [1]
34/17
Coast [1]  50/4
Code [1]  20/11
codified [1]
20/11
coerce [2]
52/10 52/11
coerce private
[1]  52/10
coercion [1]
52/1
coherent [1]
28/5
Coie [3]  4/10
12/5 45/3
coincidence [3]
14/3 14/3
14/8
colleagues [1]
2/12
color [1]
46/22
COLUMBIA [1]
1/1
coming [7]
19/11 19/12
19/13 25/23
26/12 26/24
29/8
command [1]
41/1
commentators
[1]  22/7
comments [2]
30/6 30/24
Commission [1]
43/15
committed [1]
11/22
committee [1]
19/16
common [1]
12/23
communicate [1]
53/23
Community [1]
45/9
companies [3]
23/9 29/22
40/15
comparable [1]
4/9
compelling [5]

8/9 31/23 46/8
46/14 48/8
compensatory
[1]  48/17
competed [1]
19/24
complained [1]
13/14
complaint [3]
40/5 40/6
41/15
completely [8]
7/4 7/6 7/10
9/7 36/15
37/20 39/2
39/16
compliance [2]
20/20 56/15
compliant [2]
30/7 35/2
comply [2]
20/17 54/12
concern [4]
21/1 29/20
30/20 35/20
concerned [1]
19/15
concerns [4]
26/8 44/22
46/24 47/20
conclude [1]
27/18
concludes [1]
48/19
concrete [2]
25/2 27/16
conduct [3]
14/14 38/3
44/11
conference [3]
27/23 35/5
55/12
confess [1]
35/9
confessed [1]
6/22
confident [1]
26/25
conflict [2]
31/9 31/17
confusion [1]
6/23
Congress [2]
17/9 22/1
congressional
[1]  22/5
connection [2]
45/24 46/24

consequences
[1]  30/1
consequential
[1]  8/21
consider [2]
24/25 38/5
considerable
[1]  15/24
considerations
[1]  43/8
consistent [3]
24/1 24/5
26/15
consists [1]
15/20
constitute [1]
44/20
constitutes [2]
45/6 48/24
Constitution
[8]  1/24
15/12 16/11
17/3 17/16
36/18 36/19
51/20
constitutional
[7]  5/12
12/17 39/24
44/12 48/22
52/13 52/24
constitutionall
y [4]  36/20
36/23 44/20
47/17
consulting [1]
30/15
contained [2]
18/7 18/17
contempt [1]
3/5
contents [1]
27/20
context [4]
45/1 45/21
46/9 46/10
continue [1]
9/23
continued [1]
14/23
continuing [1]
50/17
contract [4]
20/3 21/21
23/4 23/24
contracting [8]
19/12 19/19
20/23 33/3
35/23 37/9

39/8 45/11
contractor [9]
19/4 22/23
24/4 25/20
31/2 36/16
36/19 37/3
38/9
contractors
[11]  12/20
20/7 20/15
20/22 21/12
29/23 30/3
30/8 32/11
50/20 53/15
contracts [7]
19/23 23/5
23/20 39/10
47/3 47/17
50/20
contractual [1]
23/8
control [3]
36/14 51/9
52/22
conversation
[1]  31/6
core [2]  16/14
52/15
Corp [1]  44/22
corporate [1]
49/11
Corporation [1]
22/2
corrective [1]
48/17
correctly [1]
20/13
counsel [12]
2/5 2/16 3/7
18/6 19/6
23/17 24/19
25/5 26/22
29/2 48/7 49/5
country [3]
15/13 51/11
51/24
couple [2]
15/21 37/23
courage [1]
15/13
courageous [1]
15/7
course [14]
8/6 8/19 9/14
12/23 12/23
14/11 15/24
16/5 16/21
17/8 36/13

**C**

**course... [3]**
37/13 55/3
55/3
**court [86]**
**court's [17]**
3/19 12/1 12/3
18/5 20/12
20/25 21/3
23/21 27/10
27/11 30/20
30/23 35/20
40/5 52/14
54/13 55/7
**courthouse [1]**
25/23
**courthouses [3]**
11/3 45/16
47/7
**courts [14]**
1/24 4/8 4/16
5/14 8/3 8/16
13/6 17/4 22/7
28/15 34/19
39/22 41/23
44/20
**criminal [4]**
19/16 30/16
34/16 34/18
**critical [3]**
31/25 49/15
50/5
**criticizing [1]**
38/2
**crooked [1]**
40/9
**current [2]**
35/15 50/16
**cut [1]**   4/15
**cv [2]**   1/4 2/4

**D**

**D.C [3]**   43/7
43/15 44/16
**damage [1]**
49/11
**dangerous [3]**
6/24 46/16
49/14
**date [2]**   48/18
57/10
**dated [1]**
42/17
**dates [1]**
55/15
**day [2]**   55/12
56/4
**days [2]**   9/15

56/1
**DC [4]**   1/5
1/15 1/20 1/25
**dealing [1]**
24/17
**debarred [2]**
20/17 30/10
**debated [1]**
22/7
**decades [4]**
20/21 20/23
21/15 21/17
**decision [2]**
8/11 34/20
**decisions [2]**
8/2 39/11
**decisively [2]**
41/24 41/24
**declaration [4]**
7/7 10/6
37/14 49/13
**declarations**
**[2]**   12/12
50/10
**declining [1]**
54/15
**deemed [1]**
39/5
**defamatory [2]**
14/6 14/7
**defendants [9]**
1/7 1/19 53/4
53/9 53/13
53/18 53/22
54/6 54/10
**defending [5]**
9/16 9/16 9/17
9/18 41/7
**defense [3]**
17/14 21/18
30/16
**definition [1]**
16/14
**degrade [2]**
6/11 49/17
**degree [8]**
22/12 24/16
26/10 26/15
27/7 27/13
32/3 34/7
**Democrat [1]**
36/21
**democratic [1]**
46/4
**demonstrate [2]**
44/9 45/22
**demonstrated**
**[1]**   50/22

**denies [3]**
4/23 5/5 5/7
**deny [3]**   24/15
35/2 45/14
**departed [1]**
13/21
**Department [7]**
2/22 11/13
36/20 36/22
36/24 40/24
41/7
**departments [1]**
11/16
**deprivation [1]**
47/11
**deprived [1]**
47/13
**depth [1]**   26/4
**Deputy [2]**
2/22 26/2
**described [2]**
37/13 48/20
**description [1]**
49/13
**design [1]**
13/11
**destruction [1]**
34/18
**detail [2]**
28/3 28/4
**detailed [2]**
9/24 10/6
**deter [1]**
44/14
**determination**
**[1]**   42/4
**determine [1]**
54/17
**determines [1]**
43/21
**deterred [1]**
17/13
**detrimental [1]**
49/14
**develop [3]**
26/19 27/7
36/11
**developed [1]**
25/14
**developing [1]**
24/24
**dictate [1]**
51/7
**difference [1]**
27/22
**different [3]**
23/5 33/5 33/5
**difficult [3]**

28/11 29/7
29/13
**dire [1]**   42/24
**direct [3]**
5/14 17/3 40/5
**directed [5]**
53/9 53/13
53/19 53/22
54/6
**direction [3]**
26/6 31/12
53/10
**directly [1]**
55/4
**director [1]**
11/21
**directs [1]**
50/19
**disabilities**
**[3]**   9/4 12/22
41/13
**disagreement**
**[1]**   34/8
**disclose [1]**
30/3
**disclosure [2]**
53/24 54/3
**discouraging**
**[1]**   50/16
**discretion [6]**
22/22 35/2
35/8 54/17
54/18 55/10
**discriminate**
**[1]**   7/12
**discriminates**
**[1]**   45/18
**discriminating**
**[1]**   28/20
**discrimination**
**[20]**   4/14
8/15 8/20 8/22
11/23 18/8
20/5 21/4 31/8
31/19 32/1
33/15 33/23
34/3 37/2
37/11 46/3
46/4 46/9
46/11
**discriminatory**
**[2]**   34/21
48/1
**discussed [2]**
44/5 55/14
**discussing [3]**
18/9 21/24
38/10

**discussion [1]**
37/25
**disfavored [3]**
19/10 44/7
45/11
**dishonest [1]**
40/8
**dispositive [2]**
46/12 55/9
**disregard [1]**
53/15
**disrupt [2]**
4/16 4/19
**disrupting [1]**
4/24
**distance [1]**
26/11
**district [6]**
1/1 1/1 1/10
1/24 11/19
43/9
**diversify [1]**
20/8
**diversity [3]**
18/10 18/12
27/9
**documented [1]**
14/13
**DOJ [1]**   1/19
**DOJ-USAO [1]**
1/19
**dollars [2]**
10/20 41/21
**Dominion [5]**
6/12 13/17
14/1 14/5
45/23
**Don [1]**   2/7
**DONALD [1]**
1/12
**done [3]**   3/15
39/25 41/3
**doubt [4]**   11/8
13/12 38/17
40/19
**doubts [2]**
40/2 40/3
**down [6]**   10/14
10/15 20/13
34/12 39/7
55/13
**downstream [2]**
20/19 30/23
**draft [1]**
34/18
**drafted [1]**
24/22
**draw [5]**   20/12

**D**

**draw... [4]**
21/3 22/9 30/5
30/23
**draws [1]** 22/8
**driving [1]**
32/8
**drop [1]** 29/17
**dropped [2]**
4/2 14/4
**dropping [1]**
39/9
**drops [1]** 39/7
**due [12]** 3/22
4/24 9/1 32/24
47/10 47/10
47/13 47/21
47/23 48/7
48/9 49/4
**duty [2]** 11/5
11/6

**E**

**earlier [9]**
16/24 19/7
30/6 30/24
31/6 32/12
33/7 34/13
35/24
**easily [1]**
10/8
**Eastern [1]**
21/12
**economic [2]**
10/5 49/22
**effect [3]**
28/13 53/5
55/25
**effectiveness**
**[3]** 6/25
18/14 46/17
**effects [1]**
51/22
**efforts [6]**
6/10 6/24 7/12
9/8 46/16
49/16
**effuse [1]**
15/23
**election [6]**
6/16 6/17 6/18
14/7 43/14
45/25
**election-relate**
**d [1]** 6/18
**elections [3]**
6/11 45/21
49/18

**elements [2]**
43/9 44/18
**else [6]** 6/19
30/2 33/11
40/13 56/7
56/10
**elucidated [1]**
36/17
**emergency [2]**
49/20 50/24
**employees [2]**
45/12 53/15
**employer [2]**
24/14 26/13
**employment [3]**
19/20 26/16
35/18
**encourages [1]**
47/25
**encouraging [1]**
35/14
**encroaches [1]**
16/17
**end [9]** 42/19
43/5 44/7 45/8
46/18 48/1
49/15 49/18
49/24
**enforcement [6]**
42/16 43/18
45/5 48/1
53/21 54/8
**enforcing [1]**
53/11
**engage [5]**
6/24 23/8
33/14 38/15
46/16
**engaged [1]**
44/10
**engagement [2]**
26/3 26/11
**engages [1]**
50/6
**engaging [3]**
23/4 39/3
45/12
**England [1]**
43/6
**enjoin [2]**
28/18 42/16
**enjoined [1]**
53/4
**enjoining [1]**
43/18
**enough [1]**
5/16
**enter [5]** 11/3

16/4 31/4
36/22 36/24
**entered [3]**
25/15 29/4
52/5
**entering [2]**
26/23 51/24
**entirely [1]**
41/5
**entirety [1]**
38/20
**entities [3]**
19/10 20/16
45/24
**entitled [5]**
42/18 43/17
51/14 53/6
57/5
**entity [4]**
20/17 22/23
26/14 30/17
**entry [1]** 16/3
**environmental**
**[1]** 10/23
**EO [2]** 23/25
44/25
**equal [4]** 5/5
22/10 48/6
49/8
**equally [4]**
8/16 14/14
22/8 22/9
**equitable [1]**
48/15
**equities [2]**
51/1 51/5
**era [1]** 21/18
**especially [2]**
46/10 50/6
**establish [2]**
10/8 49/8
**established [4]**
10/5 22/20
35/8 48/12
**et [4]** 1/6 2/4
35/18 39/17
**eve [1]** 14/4
**even [14]** 5/6
9/6 11/2 11/5
11/7 12/17
15/4 27/12
32/14 36/12
38/11 38/13
48/24 52/5
**events [1]**
26/1
**everybody [2]**
2/25 26/5

**everyone [3]**
13/8 15/14
15/15
**everyone's [1]**
56/13
**evident [1]**
13/3
**exactly [4]**
8/12 10/13
37/25 41/13
**examine [1]**
17/24
**examines [1]**
24/9
**examining [2]**
22/4 22/17
**example [3]**
25/25 34/24
34/24
**excellent [1]**
23/12
**exceptions [1]**
6/4
**executive [54]**
1/6 2/3 3/10
3/12 4/23 8/3
8/23 10/3
10/12 11/16
13/14 14/3
14/23 16/9
20/7 20/18
20/20 21/20
22/6 28/10
33/3 34/3 36/7
38/20 39/25
40/11 41/8
41/10 42/4
42/17 43/19
43/25 44/24
45/4 45/6
45/18 46/21
46/25 49/10
49/23 50/19
51/9 51/16
51/18 51/23
52/15 53/6
53/12 53/16
53/17 53/20
54/1 54/4 54/9
**exercise [6]**
8/7 16/9 38/7
38/25 44/3
44/12
**exercises [1]**
3/11
**exhibit [1]**
13/7
**existence [3]**

14/24 50/24
52/4
**existential [1]**
14/23
**existing [3]**
23/5 23/14
24/2
**exists [1]**
44/12
**expedited [1]**
16/5
**expeditiously**
**[1]** 55/6
**experience [1]**
14/10
**expire [1]**
56/6
**explain [1]**
12/12
**explained [1]**
29/9
**explaining [1]**
49/22
**explains [1]**
49/9
**explanations**
**[2]** 14/16
14/16
**express [1]**
22/1
**expression [3]**
10/1 44/7
44/21
**extend [1]**
56/1
**extraordinarily**
**[1]** 29/13
**extraordinary**
**[2]** 20/7
42/23
**extremely [2]**
28/11 32/12

**F**

**F.2d [1]** 21/13
**F.3d [3]** 43/6
43/15 44/16
**face [4]** 4/23
8/17 13/9 24/7
**faces [1]**
47/11
**facially [3]**
39/18 39/19
39/20
**facility [1]**
35/3
**fact [4]** 5/13
6/3 38/2 55/25

**F**

**factor [3]**
43/20 51/3
51/4
**factors [4]**
15/21 43/8
43/12 43/17
**failing [1]**
20/17
**fails [1]**
47/23
**fair [2]** 18/11
47/24
**faith [1]** 54/7
**fake [1]** 40/10
**fall [3]** 10/14
11/11 22/21
**falls [4]** 13/1
21/21 21/24
31/15
**familiar [1]**
19/8
**far [7]** 12/7
21/6 25/4 28/3
29/9 33/1 47/4
**far-reaching
[1]** 47/4
**fast [2]** 9/14
41/22
**fatal [1]**
22/15
**favor [1]**
52/18
**favorite [2]**
7/24 8/1
**favors [1]**
51/6
**FDR [1]** 21/18
**fear [1]** 51/25
**federal [26]**
11/3 16/18
20/11 20/14
20/23 25/23
27/5 27/8
29/22 30/3
35/3 35/15
39/6 39/9
40/16 43/14
45/12 45/16
47/6 47/22
49/25 50/1
50/2 50/3
50/12 54/16
**fellowship [1]**
7/13
**few [3]** 6/4
9/15 13/13

**fielding [1]**
50/14
**Fifth [7]**
43/23 47/9
48/6 48/22
49/3 49/4 49/7
**Fifty [1]** 20/8
**file [3]** 54/11
54/11 55/23
**filed [3]** 3/1
12/10 27/1
**final [2]** 16/6
42/3
**finally [1]**
54/10
**find [1]** 47/8
**findings [1]**
14/13
**finds [5]** 32/3
48/4 49/7
50/21 52/17
**fine [2]** 19/13
26/17
**finish [1]**
21/16
**fired [1]** 24/3
**firm [50]** 2/10
5/6 6/2 6/4
6/18 6/24 7/8
8/19 11/22
13/9 13/10
13/16 13/20
14/24 15/6
15/18 16/11
26/22 28/20
29/23 29/24
32/21 34/4
36/8 39/4 40/9
41/11 44/2
45/3 45/7
45/19 46/8
46/20 47/4
47/13 47/18
48/4 48/20
49/7 49/9
49/16 49/21
50/6 50/9
50/14 50/17
50/21 50/22
51/19 53/25
**firm's [11]**
6/15 9/17
44/18 45/10
45/13 45/20
45/23 47/16
49/2 49/11
49/14
**firm-specific
[1]** 36/8

**firmness [1]**
44/15
**firms [21]**
3/14 3/25
14/10 14/11
14/12 14/15
15/2 15/5
15/17 29/16
40/7 40/14
41/18 51/8
51/9 51/23
51/23 52/1
52/2 52/5
52/11
**first [43]** 2/9
3/7 3/18 3/20
4/1 4/12 8/4
8/13 8/19 8/21
10/1 17/10
21/22 21/25
22/24 24/1
29/11 31/3
31/7 31/10
31/15 32/13
36/5 38/7
39/22 42/22
43/20 43/23
43/24 43/25
44/9 44/11
44/18 44/21
45/2 45/8 46/1
48/8 48/21
48/21 48/23
48/23 55/1
**fish [1]** 13/19
**Five [1]** 12/21
**flat [2]** 8/9
8/11
**flaw [1]** 47/21
**flip [2]** 13/24
52/19
**Floor [2]** 1/14
1/17
**flow [1]** 26/20
**focus [3]**
17/25 17/25
43/23
**focused [3]**
9/16 9/17 9/18
**focuses [1]**
31/1
**folks [1]**
13/20
**follow [1]**
42/14
**follows [1]**
45/2
**foot [1]** 17/23

**forbidden [1]**
3/5
**force [1]** 52/9
**foregoing [1]**
57/4
**foresight [1]**
24/19
**forgive [1]**
26/5
**forth [6]**
18/12 27/9
27/24 28/6
42/21 55/24
**forward [2]**
2/5 55/17
**found [1]** 4/10
**foundation [1]**
51/11
**founded [1]**
35/21
**four [3]** 41/2
43/8 43/10
**fourth [2]**
43/12 51/4
**framers [1]**
51/20
**frankly [2]**
11/6 51/19
**free [4]** 9/25
13/7 46/2 46/3
**freedoms [2]**
38/8 48/23
**friend [3]**
29/21 37/10
37/23
**friend's [2]**
37/6 39/17
**Friendly [1]**
13/4
**front [1]** 11/1
**FTC [1]** 26/1
**full [4]** 15/7
17/13 27/17
43/6
**fully [2]**
30/22 38/11
**fundamentally
[1]** 32/9
**funding [4]**
18/14 28/2
39/10 46/15
**funds [2]** 6/24
39/6
**further [16]**
18/6 18/17
22/2 34/21
40/21 44/25
47/5 48/4 53/4

53/9 53/13
53/18 53/22
54/2 54/4 54/6
**furthered [1]**
43/5
**furthermore [3]**
21/5 22/21
52/21
**future [4]**
13/12 23/7
23/19 52/8

**G**

**gender [1]**
11/23
**general [7]**
2/22 11/20
24/13 26/2
30/14 36/8
41/2
**generally [1]**
19/8
**genesis [1]**
34/8
**genuinely [1]**
13/25
**GINGER [2]**
1/13 2/16
**given [1]** 48/8
**gives [1]** 56/2
**giving [3]**
28/14 34/24
53/5
**GODFREY [22]**
1/3 2/3 2/8
2/10 3/1 10/11
12/24 12/25
14/4 15/6
16/12 16/15
39/3 39/13
41/14 41/16
42/15 42/19
43/16 44/1
53/7 53/25
**Godfrey's [1]**
54/20
**goes [6]** 6/8
12/21 21/19
22/8 35/5 38/9
**good [9]** 2/7
2/18 2/21
17/21 17/22
41/21 47/16
49/12 54/7
**Gospel [1]**
43/6
**government [59]**

**G**

government's
**[2]**  31/1 46/5
governmental
**[1]**  46/8
Governor [1]
6/17
Grand [1]  1/17
grant [4]
24/17 42/2
42/21 49/1
granted [2]
43/3 53/3
granting [3]
51/6 52/18
52/19
grateful [1]
56/13
grave [1]
17/10
gray [1]  18/11
great [6]  24/9
24/19 26/4
27/15 28/9
48/13
greater [1]
27/24
Greatness [1]
43/14
grievous [1]
15/17
grounds [1]
23/10
groups [5]
6/24 18/14
20/1 28/2
46/16
Guard [1]  50/4
guess [1]
31/14
guidance [21]
11/10 24/25
25/7 25/10
25/13 26/2
26/19 26/21
26/25 27/12
27/13 33/22
34/8 35/6
35/20 36/5
36/8 36/11
53/10 53/14
53/19
guidances [1]
25/1
guy [1]  32/21

**H**

hallmarks [1]

5/16
hampers [1]
52/13
handle [1]
50/15
handling [1]
18/23
handy [1]
23/17
hanging [2]
7/16 10/3
happen [1]
13/1
happened [7]
9/14 12/10
12/11 14/8
14/11 16/14
23/24
happy [2]  9/20
55/20
hard [2]  13/24
13/25
hardships [1]
15/22
harm [29]  5/21
9/19 9/23 9/24
9/24 10/1 10/2
10/4 10/5 10/5
10/8 10/11
11/9 12/16
12/17 12/18
12/19 13/11
13/11 15/1
15/17 16/6
42/24 48/18
49/6 49/10
49/19 51/4
52/20
harmful [1]
46/3
harms [6]  9/24
10/11 43/24
48/9 48/20
49/7
hat [1]  7/16
heads [2]
11/16 12/2
Healthy [3]
23/15 31/6
31/16
Healthy-Umbehr
**[1]**  31/16
hear [4]  3/6
27/2 54/23
54/25
heard [6]  4/2
5/2 9/5 18/5
25/3 36/4

hearing [5]
1/9 3/3 42/20
55/9 56/5
heart [2]  46/1
51/12
held [2]  38/4
47/3
help [1]  6/7
here's [1]
33/21
herring [1]
36/6
herrings [1]
36/7
hesitate [1]
26/23
high [4]  18/1
26/6 29/3
48/12
highlight [2]
27/11 27/15
highly [1]
45/21
hired [1]
50/20
hires [1]
41/11
hiring [3]
12/24 19/13
29/24
history [1]
3/12
hold [2]  27/8
52/8
holds [1]
35/21
honor [25]  2/2
2/7 2/21 5/22
9/13 9/20
11/12 12/11
14/9 15/25
16/25 17/23
18/5 18/16
34/10 36/1
36/3 37/14
38/24 41/25
47/16 55/2
55/20 56/9
56/11
Honor's [6]
5/1 9/2 14/1
36/16 37/1
HONORABLE [1]
1/10
HOOK [3]  1/23
57/3 57/10
hooks [1]  7/15

hope [1]  26/4
hopefully [1]
20/13
hoping [1]  6/7
horribles [3]
25/4 25/7 35/7
hospital [1]
47/7
hostage [1]
52/9
House [3]
40/13 40/19
41/19
housekeeping
**[1]**  5/24
Houston [1]
45/9
Howell [2]
29/1 29/5
hugely [1]
15/7
hundreds [2]
10/19 41/20

**I**

idea [8]  19/2
20/21 21/9
26/13 30/6
37/18 38/24
39/15
identical [1]
8/3
identifies [1]
7/8
ideology [3]
7/1 11/24
46/18
III [3]  5/14
17/3 42/1
ill [1]  35/21
ill-founded [1]
35/21
illuminating
**[1]**  11/15
illusions [1]
45/23
imagine [1]
25/3
immediate [3]
23/13 23/23
23/23
immediately [3]
53/14 53/19
53/23
immense [1]
51/7
immensely [1]
51/10

imminence [1]
48/14
imminent [3]
42/24 49/1
50/13
immune [1]
25/4
impaired [1]
48/21
impairing [1]
4/25
impermissibly
**[2]**  5/3 47/20
implement [2]
28/12 29/13
implementation
**[2]**  53/21
54/8
implementing
**[2]**  53/5
53/11
implicates [1]
44/21
implied [1]
22/1
importance [1]
7/10
important [4]
10/9 14/14
40/23 45/1
impose [3]
21/20 52/25
54/15
imposed [3]
5/11 8/18
12/22
imposes [1]
41/14
imposing [1]
9/3
improper [1]
19/9
in the [1]
15/5
incentivize [1]
23/3
incidental [1]
10/12
inclined [1]
42/20
include [1]
47/14
includes [2]
49/5 50/1
including [7]
45/15 48/6
49/8 50/3 50/8
53/7 54/18

**I**

inconsistent
[1]   39/3
incredibly [1]
9/5
indeed [2]
35/15 49/19
independence
[2]   5/15 17/4
independent [5]
17/7 17/7
47/21 51/15
51/16
indicating [2]
30/18 54/12
indication [1]
4/4
indications [1]
12/5
indisputably
[1]   12/18
individual [1]
30/12
individuals [7]
12/1 13/15
23/9 25/22
35/13 46/23
51/13
indulge [2]
24/14 33/1
indulgence [1]
55/7
industry [1]
52/17
infer [1]   4/21
inflict [3]
13/11 15/17
52/19
information [4]
18/7 18/17
29/23 30/3
informing [1]
11/25
inimical [1]
39/14
initial [1]
21/1
initially [1]
21/18
initiatives [1]
18/10
initio [1]
24/4
injection [2]
7/1 46/18
injunction [10]
28/14 28/23

29/6 29/14
36/12 43/2
43/3 43/5
54/18 54/24
injure [1]
43/3
injuries [1]
49/22
injury [9]
15/20 16/2
43/2 48/11
48/12 48/13
48/16 48/25
49/1
inquire [1]
34/21
inquiries [1]
33/1
inquiry [5]
20/19 30/11
30/23 32/1
32/6
instance [1]
17/9
instances [1]
9/6
instruct [1]
11/17
instruction [1]
28/14
instructs [1]
39/9
insubstantial
[4]   36/15
37/21 39/2
39/16
insurance [1]
38/16
integrity [1]
47/16
intellectual
[1]   11/1
intelligence
[1]   47/24
intent [1]
4/21
interacting [1]
26/14
interactions
[1]   26/7
interest [17]
15/22 16/1
16/8 16/15
25/21 26/11
27/4 31/23
35/12 43/4
46/14 47/12
47/17 51/2

51/5 52/18
52/21
interested [1]
43/4
interests [8]
8/10 17/14
39/4 39/11
39/14 46/8
47/14 49/15
interference
[1]   49/5
into [11]   3/21
12/19 13/5
16/12 25/23
27/16 34/21
41/22 48/9
51/24 52/5
introduce [3]
2/9 2/12 2/14
investigate [1]
29/24
investigation
[1]   12/19
invocation [1]
39/17
invoke [1]
37/18
involved [1]
46/23
involving [2]
15/23 19/8
IP [1]   30/1
ironclad [1]
8/13
ironically [1]
10/19
irreparable
[18]   5/21
9/23 9/24 10/1
10/5 10/8 11/8
12/16 14/25
15/19 43/2
48/11 48/12
48/18 48/25
49/6 49/9
49/22
is hanging [1]
7/16
issue [16]
6/21 17/24
18/8 19/8 21/2
24/14 24/18
24/22 26/21
32/8 36/8
37/25 41/10
42/13 53/14
53/19
issued [7]

9/15 24/24
26/2 27/13
47/19 53/11
53/17
issues [7]
24/21 27/12
29/11 30/11
31/7 33/24
35/22

**J**

Jackson's [2]
21/22 21/25
jail [1]   19/14
JEFF [3]   1/23
57/3 57/10
Jenner [7]   4/9
11/14 11/21
12/4 28/24
29/1 41/9
JEREMY [2]
1/13 2/16
job [3]   17/16
32/22 41/4
joint [3]
54/11 55/23
56/15
jointly [1]
55/8
JR [1]   1/12
judge [5]   1/10
11/20 13/4
28/23 28/25
judges [2]
16/20 29/4
judgment [4]
54/25 55/5
55/24 56/3
judicial [5]
14/13 17/4
42/1 51/13
54/20
judiciary [5]
5/15 17/7
17/15 28/10
51/15
jump [5]   25/16
43/15 44/16
45/9 48/2
jury [2]   11/5
11/6
justice [11]
2/23 11/14
11/23 13/4
21/21 21/25
36/20 36/22
36/24 40/24
41/7

justifies [1]
49/20
justify [2]
37/19 47/4

**K**

Kalpana [1]
2/11
keep [1]   26/22
keeping [1]
27/4
key [2]   3/10
19/6
kind [12]   9/2
10/4 23/11
25/15 25/24
27/6 37/1 37/2
37/17 37/19
38/15 45/2
kinds [2]
12/14 12/15
Kisor [1]
32/14
knee [2]   41/19
41/20
knowledge [4]
3/24 9/12
23/23 25/13
knows [2]   13/8
46/20
KREISBERG [2]
1/13 2/17

**L**

Labor [1]
21/13
lacks [1]   47/1
landlord [14]
19/4 19/19
24/13 25/21
25/21 31/1
33/4 33/8
33/13 33/14
34/23 36/16
36/20 37/4
language [5]
6/21 17/5
28/21 41/8
44/24
large [1]   21/8
larger [4]
20/19 20/20
24/6 28/6
largest [1]
24/10
last [4]   8/12
15/21 25/9
25/15

**L**

**later [3]**
32/14 48/18
54/22
**latest [1]**
3/13
**law [32]**  3/14
8/20 9/25 10/8
11/22 13/9
13/10 15/11
16/11 17/15
20/10 20/24
21/9 24/1
26/16 34/15
35/2 35/11
36/8 39/18
39/22 40/7
40/9 41/10
41/18 47/22
51/8 51/9
51/23 51/23
52/11 52/21
**lawful [3]**
37/13 37/15
38/12
**laws [2]**  5/5
34/17
**LAWSON [6]**
1/19 2/22
17/20 37/10
41/1 56/10
**lawyer [1]**
30/16
**lawyers [14]**
4/19 5/8 15/8
16/18 17/12
35/13 35/14
40/10 40/10
51/17 52/8
52/10 52/11
52/23
**lawyers' [1]**
4/25
**LBJ [6]**  20/6
20/17 22/4
22/17 30/8
37/7
**leaders [1]**
2/9
**leading [1]**
21/11
**least [3]**
28/17 29/3
56/4
**leave [3]**
24/11 40/22
56/4

**legal [9]**  6/10
42/22 44/22
45/20 46/9
49/17 51/11
52/17 52/20
**legislation [1]**
17/10
**legislative [1]**
33/2
**length [1]**
48/10
**Leon [1]**  28/23
**less [1]**  25/8
**letter [2]**
11/7 19/17
**level [5]**
17/24 18/1
26/6 29/4
30/19
**levels [1]**
21/24
**liberty [2]**
47/12 47/14
**lies [3]**  16/1
16/9 51/12
**liked [1]**  27/2
**likelihood [7]**
3/18 4/6 5/20
7/21 43/1
43/20 44/17
**likely [8]**
4/11 43/22
43/25 44/17
45/21 47/8
48/5 49/8
**likes [1]**
35/10
**line [8]**  3/3
23/16 24/1
30/10 31/9
31/11 31/16
32/6
**lines [2]**  27/9
30/17
**link [1]**  44/12
**listening [1]**
3/4
**litigation [4]**
46/23 50/7
50/8 50/9
**little [3]**
13/24 13/25
30/22
**LLP [6]**  1/3
1/14 1/16 2/3
11/22 42/15
**local [1]**
11/19

**logic [1]**
38/10
**logical [1]**
34/20
**long [2]**  7/9
34/14
**longer [1]**
13/15
**look [10]**  8/1
11/13 14/10
14/14 14/15
20/4 37/14
38/5 39/20
56/14
**looking [4]**
7/18 13/19
31/18 41/4
**LOREN [1]**  1/10
**Los [1]**  1/17
**losing [1]**
34/1
**loss [2]**  48/23
50/23
**losses [1]**
49/24
**lost [1]**  34/12
**lot [5]**  23/2
29/21 30/25
41/18 44/5
**lots [1]**  40/7
**love [1]**  20/14
**Lucky [1]**
18/24
**Lynch [1]**
44/16

**M**

**mail [1]**  11/7
**maintains [1]**
51/13
**making [2]**
17/13 54/3
**mandated [1]**
11/20
**manner [1]**
39/14
**many [2]**  32/16
52/5
**marshals [1]**
26/22
**Maryland [1]**
34/16
**material [1]**
30/15
**matter [6]**
5/24 9/25
14/17 27/17
56/15 57/5

**may [16]**  3/8
11/2 11/9
12/18 15/8
15/21 28/24
29/22 32/7
32/23 36/22
36/24 51/8
51/8 52/23
55/7
**maybe [8]**  6/19
14/2 14/3 14/8
27/9 27/23
31/1 32/18
**McGowan [1]**
34/16
**mean [7]**  9/2
13/24 13/25
19/22 33/19
36/13 47/6
**meaning [2]**
28/5 48/16
**means [3]**  8/10
28/2 46/5
**meant [1]**
42/23
**meet [4]**  10/16
10/22 10/24
49/25
**meeting [1]**
36/22
**meetings [4]**
12/5 12/13
26/17 50/11
**meets [1]**
45/16
**memoranda [1]**
11/13
**mentioned [1]**
3/22
**merge [3]**
29/25 43/12
51/5
**merits [9]**
3/19 4/7 5/20
5/23 7/22 9/21
43/1 43/21
43/22
**message [2]**
14/18 14/18
**met [1]**  43/16
**midstream [1]**
23/11
**might [12]**  7/2
15/4 19/25
23/7 25/8
25/25 26/19
28/15 32/21
35/14 55/11

**56/6**

**mighty [1]**
15/6
**military [7]**
6/25 7/10
18/15 20/2
28/2 34/6
46/17
**millions [2]**
10/19 41/20
**mind [2]**  6/20
13/4
**mindful [1]**
55/25
**minimal [2]**
27/23 48/24
**minimizing [1]**
26/7
**minutes [1]**
30/16
**mistake [1]**
41/17
**moment [1]**
33/18
**more [8]**  15/10
27/23 27/25
28/15 30/21
30/22 33/2
56/2
**morning [1]**
2/7
**most [3]**  3/11
8/20 8/21
**motion [5]**  1/9
3/6 29/2 44/2
53/2
**motions [2]**
26/25 55/9
**motivation [3]**
34/11 34/14
39/24
**motive [1]**
39/21
**Mount [3]**
23/15 31/6
31/16
**move [6]**  9/19
42/3 54/25
55/4 55/17
55/20
**moves [1]**
42/15
**Mr. [5]**  17/20
36/2 37/10
41/1 56/8
**Mr. Lawson [3]**
17/20 37/10
41/1

**M**

**Mr. Verrilli**
 **[2]**  36/2 56/8
**much [9]**  2/24
 17/17 25/8
 27/19 35/10
 35/25 42/6
 46/19 56/12
**Munger [4]**
 1/14 1/16 2/8
 2/15
**murder [1]**
 30/16
**must [7]**  6/21
 42/25 43/9
 44/10 46/6
 48/13 48/16
**myself [2]**
 36/14 39/1
**mystified [3]**
 7/4 7/6 7/11

**N**

**nail [1]**  55/13
**naivety [1]**
 13/7
**name [1]**  47/16
**namely [1]**
 44/25
**narrow [1]**
 47/1
**narrowly [6]**
 8/10 31/24
 32/19 32/24
 33/9 46/7
**nation [1]**
 3/12
**nation's [1]**
 39/5
**national [3]**
 21/2 46/15
 46/24
**nature [4]**  6/5
 34/21 44/24
 48/8
**necessarily [6]**
 23/13 24/7
 24/8 27/15
 31/9 31/17
**necessary [3]**
 16/5 45/13
 54/7
**need [21]**  3/18
 4/21 7/20
 10/18 10/21
 10/24 25/6
 27/12 30/8
 33/19 35/6

35/6 35/19
36/9 38/2
39/23 43/23
48/9 48/15
54/24 56/5
**negotiate [1]**
 16/18
**negotiating [1]**
 3/25
**net [1]**  10/19
**neutral [3]**
 39/18 39/19
 39/20
**new [3]**  41/3
 41/4 50/18
**news [1]**  40/7
**Newsmax [1]**
 14/6
**next [8]**  6/23
 7/15 38/23
 41/9 48/11
 49/3 51/25
 55/12
**nodding [1]**
 19/7
**non [1]**  29/23
**nondiscriminati
on [1]**  21/21
**None [1]**  4/3
**nonpartisan [1]**
 26/8
**nonprofit [1]**
 35/10
**nor [1]**  39/5
**norms [1]**
 17/14
**Northeastern
 [1]**  32/11
**not one [1]**
 6/1
**Notably [1]**
 45/3
**note [5]**  2/5
 3/3 22/2 24/19
 54/15
**noted [1]**  51/2
**notice [6]**
 2/25 4/4 5/2
 9/4 11/25
 47/24
**noticed [1]**
 22/13
**notification
 [2]**  11/17
 11/21
**noting [1]**
 22/17
**notion [3]**

37/7 37/18
44/6
**NRA [4]**  38/3
38/4 38/16
44/5
**numerous [2]**
 7/8 10/7
**NW [3]**  1/14
 1/20 1/24

**O**

**O'Brien [2]**
 34/18 39/17
**obscure [1]**
 22/6
**obtain [1]**
 42/25
**obvious [4]**
 8/13 16/1 16/2
 16/8
**obviously [6]**
 18/23 21/1
 22/24 23/15
 23/24 26/16
**odious [1]**
 4/14
**off [3]**  4/15
 26/5 42/10
**offering [1]**
 41/20
**office [5]**  1/6
 2/3 11/7 19/4
 19/12
**officers [1]**
 53/14
**Offices [2]**
 47/7 50/3
**official [5]**
 1/23 26/15
 35/4 40/19
 57/3
**officials [6]**
 10/17 10/22
 10/24 12/6
 12/14 49/25
**old [3]**  4/18
 21/11 30/8
**Olson [4]**  1/14
 1/16 2/8 2/15
**OMB [1]**  11/20
**one [21]**  3/11
 6/1 6/14 11/14
 14/18 15/5
 16/4 18/25
 21/11 25/15
 26/7 31/13
 32/20 39/7
 39/12 40/22

41/23 42/25
44/10 45/16
49/25
**one-third [1]**
 49/25
**ones [4]**  4/18
 6/21 8/25
 18/23
**only [5]**  12/21
 24/22 39/19
 41/22 46/6
**opened [1]**  3/2
**operate [1]**
 40/16
**operative [1]**
 28/13
**opinion [1]**
 24/23
**opportunity [5]**
 5/2 9/4 22/11
 25/1 29/17
**opposing [2]**
 43/11 51/3
**oppressive [1]**
 51/10
**oral [1]**  42/13
**order [109]**
**order's [3]**
 46/14 46/21
 49/13
**ordered [9]**
 5/11 53/2 53/4
 53/9 53/13
 53/18 53/22
 54/6 54/10
**orders [10]**
 4/9 8/3 14/23
 15/1 27/1
 29/16 31/17
 36/7 45/2
 51/23
**ordinary [3]**
 13/7 44/14
 47/24
**origins [2]**
 22/4 22/5
**others [2]**
 15/18 45/3
**otherwise [5]**
 26/16 30/7
 30/9 35/2
 39/10
**ought [1]**  55/3
**ourselves [1]**
 9/16
**out [28]**  5/6
 8/9 8/11 9/3
 9/9 9/15 10/3

11/17 12/18
14/17 20/21
25/15 26/21
27/5 27/24
27/25 28/5
29/16 29/21
34/25 38/2
41/4 50/12
51/25 54/22
55/7 55/15
56/14
**outlet [1]**
 40/7
**outlined [1]**
 44/1
**outmanned [1]**
 2/20
**outreach [2]**
 4/1 4/4
**over [1]**  5/9
**overwhelmingly
 [2]**  6/5 51/6
**own [4]**  26/17
 27/19 47/18
 47/21

**P**

**p.m [6]**  1/7
 42/10 42/11
 54/11 55/23
 56/17
**page [1]**  18/9
**pages [1]**  10/7
**panel [1]**
 26/18
**papers [2]**
 9/23 12/8
**parade [4]**
 25/4 25/7 25/8
 35/7
**paragraph [4]**
 7/15 39/12
 40/5 40/12
**paralegal [1]**
 32/22
**parallel [1]**
 55/3
**parameters [1]**
 30/22
**part [2]**  20/23
 35/7
**participation
 [1]**  45/20
**particular [2]**
 50/19 51/19
**particularly
 [4]**  7/6 11/15
 23/3 50/7

**P**

**parties [8]**
42/12 42/20
43/4 44/4 51/4
54/23 55/22
56/1

**partisan [2]**
26/9 26/10

**partner [1]**
2/16

**party [5]**
20/16 42/25
43/11 46/19
51/3

**party's [1]**
43/10

**patent [2]**
50/4 50/8

**path [1]**  34/12

**pattern [2]**
38/6 38/6

**Paul [2]**  14/17
45/2

**pause [1]**  5/22

**pay [1]**  26/16

**pending [1]**
27/14

**Pennsylvania
[2]**  1/20
21/12

**people [4]**
13/20 26/16
32/21 40/8

**perceived [1]**
44/3

**perform [1]**
50/21

**Perhaps [1]**
7/5

**period [1]**
37/5

**periods [1]**
48/24

**Perkins [3]**
4/10 12/5 45/3

**permissible [3]**
20/2 22/21
30/11

**permission [1]**
3/19

**Permit [1]**  2/9

**pernicious [1]**
46/10

**perpetrating
[1]**  4/14

**person [4]**
36/24 44/14

**personal [1]**
51/19

**personally [1]**
11/21

**personnel [1]**
45/15

**perspective [1]**
33/1

**petition [2]**
4/15 25/5

**petitioning [1]**
44/19

**phrases [1]**
28/6

**pick [2]**  7/24
7/25

**place [4]**
11/19 34/25
35/3 36/12

**plain [3]**  13/8
44/24 52/1

**plaintiff [6]**
1/4 1/12 2/6
19/6 42/15
47/11

**plaintiff's [3]**
24/19 29/1
53/2

**plaintiffs [2]**
3/7 55/1

**plan [1]**  55/15

**plausible [1]**
5/6

**please [4]**  2/5
2/13 3/8 19/17

**point [26]**
10/11 10/12
14/2 14/9
15/16 15/16
15/18 17/8
19/6 20/6
20/18 21/19
22/5 22/11
24/6 24/10
25/15 25/19
26/6 28/6
34/10 35/17
36/5 37/6
38/10 38/23

**pointed [2]**
7/13 50/12

**points [4]**
23/19 29/21
37/24 49/13

**policies [3]**
21/8 21/8
23/10

**policing [1]**
28/10

**policy [9]**
21/10 21/18
22/19 22/19
23/3 32/10
32/16 37/8
37/19

**political [2]**
7/1 46/18

**position [4]**
27/2 27/11
27/16 41/6

**positions [3]**
8/18 35/14
51/8

**possibility [1]**
48/17

**possible [1]**
50/23

**Post [3]**  11/7
40/13 47/7

**potential [2]**
7/20 15/1

**potentially [2]**
29/24 54/20

**power [19]**
3/12 16/10
17/2 17/11
18/25 19/9
19/16 21/7
21/10 21/17
22/19 26/13
32/10 32/16
42/1 44/6 51/7
51/10 51/21

**powerful [1]**
15/2

**powers [1]**  5/9

**practically [1]**
29/13

**practice [2]**
5/1 21/7

**preclude [1]**
54/20

**predicted [1]**
33/6

**preferences [1]**
37/8

**preliminary [1]**
54/24

**prepared [1]**
25/11

**present [2]**
22/25 48/15

**president [17]**
1/6 2/4 5/10
10/3 14/21

**17/2 21/6
39/13 40/6
40/10 40/12
40/14 40/18
41/4 41/5
41/10 42/17**

**President's [1]**
41/21

**presidential
[1]**  17/1

**press [2]**
27/22 41/19

**presumed [1]**
30/16

**prevail [1]**
47/9

**prevent [3]**
28/19 42/24
54/8

**prevents [1]**
20/15

**principle [1]**
52/15

**prior [4]**  3/23
13/18 21/15
25/14

**private [3]**
52/10 52/11
52/23

**privilege [1]**
30/19

**privileged [2]**
30/13 30/14

**privileges [1]**
40/15

**prize [3]**
37/12 37/13
38/12

**probably [1]**
30/21

**problem [3]**
24/17 36/10
36/17

**problems [1]**
25/22

**Procedure [1]**
54/16

**proceed [1]**
54/24

**proceedings [2]**
56/17 57/5

**process [15]**
3/22 4/24 9/1
32/25 37/17
47/10 47/10
47/13 47/19
47/21 47/23
48/7 48/9 49/4

**51/12**

**procure [1]**
18/18

**procurement [7]**
21/7 21/10
21/17 21/20
22/19 32/10
32/15

**profession [4]**
5/1 15/11
17/15 47/15

**progress [1]**
41/18

**progresses [1]**
18/22

**prohibit [1]**
24/24

**prohibited [2]**
44/8 47/24

**prohibitions
[1]**  35/4

**prominent [2]**
15/2 41/18

**promote [1]**
46/25

**prompt [1]**
55/8

**promulgated [1]**
25/1

**proof [1]**
14/25

**proper [1]**
35/1

**property [3]**
11/1 47/12
47/14

**propose [1]**
27/14

**proposed [1]**
29/3

**prosecution [1]**
19/17

**prosecutions
[2]**  34/17
34/18

**prospective [1]**
50/18

**protected [8]**
8/7 8/8 29/10
44/11 44/21
47/12 47/14
47/17

**protection [3]**
5/5 48/7 49/8

**proud [1]**  7/9

**proves [2]**
40/18 46/7

**provide [1]**

**P**

**provide... [1]**
47/23

**provisions [4]**
3/10 21/21
23/25 33/4

**PTAB [1]**   11/2

**public [12]**
3/3 14/17
15/22 16/1
16/8 16/15
21/8 29/23
43/4 51/2 51/5
52/17

**publicly [1]**
40/3

**punctuation [1]**
27/24

**punish [3]**
19/10 44/7
52/16

**punishment [8]**
19/11 19/18
22/22 24/8
32/2 32/4 33/7
47/5

**punishments [3]**
5/11 8/18 9/3

**purchasing [1]**
22/23

**purely [2]**   6/1
52/22

**purported [1]**
46/21

**purpose [1]**
29/6

**purposes [2]**
43/13 50/22

**pursuant [3]**
21/25 53/25
54/3

**pursue [6]**
10/18 10/21
10/23 10/25
37/19 47/15

**Pursuing [1]**
43/14

**pursuits [2]**
11/24 12/3

**put [4]**   13/5
18/25 32/25
53/1

**putting [1]**
12/17

**Q**

**qualifies [1]**
15/20

**quality [2]**
6/11 49/17

**queuing [1]**
25/8

**qui [2]**   10/18
50/8

**quickly [1]**
55/21

**quite [9]**   9/12
11/13 13/6
17/6 23/4
26/25 30/2
30/19 46/19

**quotas [1]**
18/12

**quotation [1]**
13/4

**quote [21]**
40/6 42/18
42/19 42/25
43/5 44/6 44/8
45/7 45/8
45/20 46/16
46/18 47/23
48/1 49/14
49/14 49/15
49/16 49/18
49/23 49/24

**quoted [1]**
40/4

**quoting [1]**
46/1

**R**

**race [2]**   7/13
11/23

**racial [3]**
20/5 21/4
37/11

**radical [3]**
7/1 11/23
46/18

**raised [1]**
14/9

**raises [1]**
47/19

**range [1]**
45/13

**rank [1]**   29/19

**rare [1]**   39/19

**rational [1]**
5/6

**reach [1]**   9/9

**reaching [3]**
20/21 29/16
47/4

**reactions [1]**
14/12

**read [5]**   5/18
6/13 14/19
23/13 34/2

**readily [1]**
52/2

**reading [1]**
11/4

**ready [1]**
10/14

**real [1]**   28/13

**really [9]**
11/8 13/5
14/20 16/6
17/25 22/17
28/4 29/10
30/19

**reason [4]**
12/9 15/15
41/17 50/13

**reasonable [1]**
15/19

**reasons [5]**
4/8 4/11 42/22
44/1 52/25

**rebuttal [1]**
17/19

**recall [1]**
34/12

**received [2]**
45/4 47/12

**recent [1]**
26/1

**recess [1]**
42/9

**recipient [1]**
53/23

**recognition [1]**
46/2

**recognizing [1]**
7/9

**record [8]**   2/2
2/6 14/17
35/19 42/10
42/11 43/13
57/5

**recording [1]**
3/4

**red [2]**   36/6
36/7

**refer [1]**
19/16

**reference [6]**
6/12 20/5 22/8
23/18 37/11
46/15

**referenced [3]**
19/6 22/14
23/22

**references [2]**
21/4 45/22

**referencing [4]**
20/18 22/11
24/20 46/20

**referred [1]**
40/4

**referring [1]**
37/12

**refers [1]**
45/19

**reflected [1]**
9/2

**refusals [1]**
50/13

**regard [5]**
11/12 11/15
16/4 48/22
49/3

**regarding [3]**
20/7 26/3 31/6

**regardless [1]**
51/14

**registered [1]**
36/21

**Regrettably [2]**
18/6 18/16

**regulations [3]**
20/11 20/14
38/17

**relate [1]**
21/2

**related [1]**
6/18

**relates [4]**
3/22 35/17
35/23 53/11

**relating [1]**
19/25

**relationship
[2]**   24/3
53/24

**relationships
[6]**   4/19 4/25
23/8 29/22
50/17 50/18

**relevant [1]**
17/6

**reliance [1]**
46/21

**relied [2]**   8/4
8/16

**relief [5]**
48/15 48/18
49/20 49/23
50/25

**relies [2]**
16/18 17/7

**rely [1]**   23/22

**relying [2]**
49/12 53/7

**remediation [1]**
48/16

**remedy [1]**
42/23

**remove [1]**
19/17

**render [1]**
56/6

**rendered [2]**
8/2 27/1

**repeat [3]**
20/14 32/18
35/23

**rephrasing [1]**
33/7

**report [2]**
54/11 55/23

**Reporter [3]**
1/23 1/23 57/3

**represent [4]**
10/16 13/2
35/13 51/10

**representation
[8]**   6/12
30/12 41/12
46/10 46/22
51/11 51/14
52/16

**representations
[7]**   6/18
10/21 10/23
12/12 13/10
13/18 45/14

**representatives
[1]**   35/4

**represented [3]**
5/8 12/20
51/18

**representing
[3]**   3/15
16/12 35/4

**represents [2]**
12/21 13/16

**republic [1]**
52/13

**repudiating [1]**
42/4

**reputation [6]**
4/24 6/15 10/2
45/23 47/16
49/12

**reputational
[4]**   10/4
12/18 49/10
49/19

**R**

**request [2]**
53/24 54/1

**requested [3]**
33/25 35/22
42/3

**requesting [1]**
43/10

**requests [2]**
50/14 54/3

**require [2]**
17/15 23/25

**required [4]**
11/17 13/6
43/11 47/2

**requirements
[1]** 20/8

**requires [2]**
12/13 51/16

**requiring [1]**
54/19

**rescind [2]**
53/10 53/20

**rescinded [1]**
54/2

**reservists [1]**
7/8

**resolution [2]**
16/6 55/6

**resolve [1]**
16/22

**respect [8]**
4/6 5/22 6/20
8/5 14/1 36/15
37/22 55/5

**respectfully
[2]** 41/25
42/2

**respects [1]**
10/7

**response [1]**
15/3

**responsible [1]**
39/6

**restrain [1]**
39/1

**restraining
[12]** 3/2 7/19
11/18 16/3
24/16 42/16
42/21 42/23
43/18 45/5
53/1 53/3

**restricts [1]**
45/11

**result [3]** 3/5
34/6 49/10

**resulting [1]**
50/23

**retaliate [2]**
16/11 27/5

**retaliates [1]**
44/2

**retaliating [1]**
4/12

**retaliation
[10]** 3/14 8/4
8/6 24/2 31/7
37/2 38/7
38/15 40/1
44/10

**retaliatory [3]**
4/21 37/20
44/23

**return [3]**
34/13 34/23
42/9

**returning [1]**
52/7

**review [4]**
23/2 27/14
50/4 54/21

**reviewed [1]**
4/9

**RICHARD [2]**
1/19 2/21

**right [33]**
2/24 4/5 4/15
4/16 4/22 8/17
14/4 14/21
14/22 17/17
18/20 25/5
25/5 27/20
28/8 32/12
33/14 34/1
35/25 39/24
41/16 42/6
44/12 47/10
47/15 48/6
48/7 49/5
54/20 55/18
55/22 56/7
56/12

**rights [8]**
4/19 5/7 22/10
41/6 41/6 44/4
48/22 49/4

**ripe [4]** 11/9
24/23 24/23
35/20

**ripeness [1]**
24/18

**rise [2]** 45/8
49/6

**risk [1]** 15/14

**Risks [2]**
42/18 53/7

**Roberts [1]**
13/5

**rock [3]** 8/5
8/24 9/7

**roughshod [1]**
5/9

**roundly [1]**
22/7

**routine [1]**
45/12

**rule [7]** 15/11
17/15 35/11
36/21 36/23
54/16 54/16

**ruling [4]**
27/17 42/9
42/13 56/6

**rulings [1]**
5/18

**run [1]** 18/22

**running [1]**
21/13

**runs [1]** 5/9

**S**

**sadly [1]** 4/17

**same [7]** 24/12
30/19 35/12
35/12 38/19
40/10 41/13

**sanction [9]**
19/9 19/11
19/18 19/22
23/7 24/7 32/2
32/4 33/8

**sanctions [3]**
3/5 22/22
41/13

**satisfy [2]**
33/15 43/16

**Sawyer [1]**
21/23

**saying [3]**
8/12 20/22
39/22

**schedule [6]**
16/5 55/5 55/8
55/11 55/24
56/15

**scheduling [1]**
54/14

**school [1]**
24/3

**scrutiny [7]**
31/19 33/9
33/16 46/5

**46/11 46/12**
52/24

**second [3]**
28/1 44/23
49/8

**secretary [3]**
6/15 21/13
41/20

**secrets [1]**
39/5

**section [37]**
12/21 18/2
19/3 19/4
19/19 19/19
20/4 21/3
21/15 24/11
24/12 27/18
27/21 27/22
28/7 28/12
28/14 28/18
28/23 29/6
29/11 29/12
29/12 34/3
35/18 35/23
37/22 38/20
38/24 39/2
39/7 39/8
39/12 44/25
53/8 54/1 54/3

**sections [13]**
3/16 17/25
18/1 28/13
38/21 42/16
43/18 53/5
53/12 53/15
53/16 53/21
54/8

**security [3]**
21/2 46/15
46/24

**seeking [3]**
3/9 3/16 4/16

**seeks [1]** 51/9

**seem [1]** 8/23

**seems [12]** 8/5
8/13 8/16 9/7
12/16 15/25
16/1 23/4 30/2
38/11 39/1
39/15

**segregationist
[1]** 4/18

**Seizure [3]**
5/10 5/13 17/1

**self [1]** 13/3

**self-evident
[1]** 13/3

**send [1]** 11/21

**sends [1]**
19/17

**senior [1]**
2/16

**sense [4]** 7/2
12/23 23/2
55/11

**sentence [2]**
6/23 28/1

**separate [2]**
25/19 38/2

**separation [1]**
5/9

**serious [4]**
5/19 8/21 9/22
42/24

**seriously [1]**
48/1

**serve [1]** 46/8

**service [2]**
7/10 41/3

**services [3]**
22/9 44/22
50/21

**set [2]** 21/7
42/21

**setting [3]**
33/2 33/5
55/23

**settle [1]**
14/24

**settled [1]**
14/15

**several [2]**
44/1 48/20

**severe [1]**
49/9

**shall [1]**
54/10

**Sheet [2]**
21/23 32/14

**shocking [1]**
51/21

**short [1]** 2/25

**shortly [1]**
42/14

**show [5]** 3/18
42/25 44/10
44/17 48/18

**showing [1]**
48/5

**shown [1]**
47/18

**shows [2]** 38/6
46/14

**side [3]** 29/21
41/21 52/19

**sides [1]**

**S**

**sides... [1]**
55/16
**signed [1]**
40/11
**significant [1]**
14/2
**similar [3]**
4/17 47/1
51/22
**simple [1]**
52/1
**singling [1]**
5/6
**sitting [1]**
2/10
**situation [1]**
50/15
**Sixth [1]**   5/25
**Skadden [1]**
14/18
**slide [1]**
41/23
**sliding [1]**
41/22
**smaller [1]**
15/5
**smears [2]**   5/4
10/2
**so to [1]**
20/25
**social [8]**
21/10 21/17
22/18 22/19
32/10 32/15
32/16 37/19
**societal [1]**
35/12
**society [1]**
46/4
**sold [1]**   19/15
**solely [1]**
52/11
**solid [3]**   8/5
8/24 9/7
**solve [2]**
28/15 36/10
**somebody [2]**
29/25 30/2
**someone [4]**
30/9 30/15
34/5 40/13
**sometimes [1]**
39/22
**somewhat [1]**
22/6
**sorry [4]**

14/20 31/12
46/21 52/10
**sort [6]**   13/19
17/23 18/11
20/19 24/25
27/8
**sought [2]**   3/1
51/7
**sources [1]**
32/17
**south [2]**   1/17
4/18
**sovereign [7]**
19/3 19/5 19/9
25/20 25/22
34/16 37/4
**space [2]**   27/8
35/1
**speak [11]**
7/14 18/10
25/12 26/18
26/21 27/20
28/8 28/8 29/2
29/18 35/5
**speaking [1]**
44/15
**speaks [1]**
28/4
**spearheading
[1]**   49/16
**spearheads [1]**
6/10
**specific [4]**
36/4 36/8
39/10 55/14
**specifically
[5]**   3/16 21/4
23/19 39/12
51/17
**speculate [1]**
26/23
**speculation [1]**
29/19
**speech [11]**
8/7 8/8 27/21
28/10 37/23
38/25 39/15
40/1 44/3 46/2
49/2
**spend [1]**
15/24
**spot [3]**   21/13
22/3 29/12
**Srinivasan [5]**
2/11 7/7 10/6
37/14 49/12
**staff [4]**   26/3
26/12 47/6

53/14
**stage [1]**   7/18
**standalone [1]**
38/25
**standard [6]**
8/19 10/8
31/20 42/22
45/17 48/12
**standardless
[1]**   47/25
**standing [7]**
15/8 15/9
15/10 15/11
15/12 15/12
52/3
**stands [1]**
44/6
**stark [1]**   30/2
**start [2]**   18/2
32/2
**Starting [1]**
43/20
**state [6]**   6/16
26/13 34/15
38/1 44/7
45/23
**statement [1]**
38/22
**statements [9]**
9/11 14/7 15/1
18/4 27/21
27/22 40/4
49/11 53/8
**states [13]**
1/1 1/10 4/18
6/25 10/4 36/5
39/4 39/12
39/14 40/18
46/17 48/2
55/8
**stature [1]**
40/15
**status [3]**
54/11 55/12
55/23
**statute [2]**
16/10 39/18
**statutes [4]**
21/5 22/13
22/18 34/15
**statutory [2]**
5/12 32/16
**stay [1]**   41/21
**stayed [1]**
27/14
**staying [1]**
12/25
**steel [4]**   5/10

5/13 16/25
21/22
**steer [1]**   37/8
**step [1]**   10/9
**steps [2]**   54/7
54/12
**stewards [1]**
39/6
**still [1]**
13/16
**stop [1]**   41/23
**stopping [1]**
52/7
**Street [1]**
1/14
**strength [1]**
43/9
**strict [6]**
31/19 33/9
33/15 46/5
46/11 46/12
**strictly [1]**
3/5
**strikes [2]**
34/2 35/11
**string [1]**
3/13
**strong [2]**
8/16 9/1
**strongest [1]**
7/23
**students [2]**
18/11 46/22
**studied [1]**
26/4
**stymie [1]**
50/5
**subject [3]**
46/4 49/24
53/20
**submission [1]**
55/9
**submit [4]**
22/20 29/10
33/9 41/25
**subsection [1]**
39/8
**substantial [1]**
43/1
**substantially
[1]**   43/3
**succeed [2]**
43/22 48/5
**success [7]**
3/19 4/7 5/20
7/21 43/1
43/21 44/17
**successful [1]**

15/7
**suffer [5]**
9/23 41/13
43/2 49/1 49/9
**suffering [2]**
9/22 49/22
**sufficient [1]**
44/14
**sufficiently
[2]**   45/7
50/22
**suit [2]**   3/1
30/1
**summary [4]**
54/25 55/4
55/24 56/3
**Sunday [1]**
34/17
**supervisor [1]**
19/5
**support [5]**
20/24 23/6
23/9 34/20
37/7
**supported [3]**
32/11 32/13
50/9
**supporting [2]**
20/10 21/9
**suppose [1]**
15/4
**supposed [1]**
46/15
**suppress [1]**
44/7
**Supreme [3]**
8/12 22/16
34/19
**sure [9]**   2/13
19/7 30/8
30/18 31/25
33/21 34/7
34/25 55/13
**SUSMAN [53]**
1/3 2/3 2/8
2/10 2/25 4/7
4/13 5/5 6/9
9/17 9/22
10/11 10/15
12/13 12/20
12/24 12/25
14/4 15/6
16/12 16/15
18/9 19/22
29/17 37/12
37/13 39/2
39/13 41/14
41/15 42/15

**S**

**SUSMAN... [22]**
42/19 43/16
43/21 44/1
44/10 44/17
45/1 45/21
46/13 47/5
47/8 48/19
48/20 49/1
49/13 49/24
50/10 52/2
52/16 53/7
53/24 54/20
**Susman's [7]**
3/6 4/16 4/24
5/7 9/17 10/2
45/15
**suspect [2]**
22/12 55/15
**suspend [1]**
53/20
**sustained [2]**
46/6 46/6
**swiftly [1]**
42/3
**system [4]**
6/10 45/20
49/17 51/13

**T**

**tailored [6]**
8/10 31/24
32/19 32/24
33/9 46/7
**tailoring [1]**
47/2
**talk [1]**   31/23
**talked [1]**
25/16
**talking [7]**
9/6 13/19 31/2
32/15 33/13
34/11 34/14
**talks [1]**
21/14
**tam [2]**   10/18
50/8
**target [1]**
52/7
**targeted [1]**
51/25
**targets [1]**
51/17
**tarring [1]**
4/24
**teacher [1]**
24/3
**telephonic [1]**

55/12
**telling [2]**
40/6 40/13
**temporary [12]**
3/1 7/19 11/18
16/3 24/16
42/15 42/21
42/23 43/17
45/4 53/1 53/2
**term [1]**   8/12
**terminate [2]**
20/3 50/20
**terminated [1]**
24/4
**terminating [2]**
23/5 24/2
**termination [5]**
23/11 23/14
23/23 23/24
47/3
**terms [1]**   7/21
**test [2]**   44/15
46/12
**theme [1]**
18/21
**theoretical [1]**
48/14
**therefore [1]**
43/17
**thinking [2]**
12/24 12/24
**third [7]**
20/16 21/16
43/12 45/6
49/21 49/25
51/3
**third-party [1]**
20/16
**thought [4]**
27/23 27/25
28/5 40/22
**threat [2]**
14/23 19/18
**threaten [1]**
52/3
**threatens [7]**
45/10 45/14
47/2 49/19
50/23 51/10
52/16
**three [5]**   4/8
5/19 8/2 44/13
44/18
**throated [1]**
17/13
**thus [1]**   47/22
**Titles [1]**
22/10

**today [11]**   7/5
30/25 41/7
41/15 42/13
44/5 46/19
52/25 54/22
56/8 56/13
**together [4]**
5/18 15/23
32/25 38/5
**Tolles [4]**
1/14 1/16 2/8
2/15
**tomorrow [4]**
36/9 36/9
54/11 55/23
**took [5]**   8/19
15/2 38/3 41/7
44/13
**total [1]**   4/3
**totally [2]**
5/4 8/24
**towards [2]**
25/24 32/8
**traces [1]**
21/14
**tracks [2]**
29/3 31/5
**tradition [1]**
7/9
**transcript [2]**
1/9 57/4
**treatment [1]**
45/11
**trial [1]**   14/5
**tribute [1]**
41/21
**tricky [1]**
28/11
**TRO [14]**   3/9
3/16 12/1 12/3
28/19 42/2
49/1 50/22
51/6 52/18
52/19 54/13
55/25 56/6
**TROs [1]**   25/14
**trouble [1]**
28/15
**true [3]**   30/22
49/6 57/4
**Trump [1]**
14/15
**Trump's [1]**
42/17
**try [4]**   9/9
28/12 36/4
36/14
**trying [6]**

4/15 24/6
25/19 40/25
46/25 52/22
**Tube [1]**   21/23
**turn [5]**   3/20
5/21 6/6 48/11
54/14
**Turning [1]**
51/1
**two [8]**   2/9
7/24 8/23 39/8
44/11 55/12
56/2 56/4
**tying [1]**
38/21
**type [2]**   19/20
24/10
**types [1]**   50/7

**U**

**U.S [9]**   1/24
21/23 22/3
22/16 34/17
44/23 45/9
48/2 50/3
**U.S.C [1]**   21/6
**Umbehr [4]**
23/16 23/16
31/6 31/16
**unanimous [1]**
8/11
**unapologetic
[1]**   4/22
**unconstitutiona
l [10]**   3/11
3/14 4/7 4/11
5/17 17/9
17/10 37/3
39/21 42/4
**unconstitutiona
lly [2]**   36/25
47/22
**under [14]**
11/3 11/4
16/11 17/2
17/16 18/11
21/5 21/18
24/9 31/22
32/11 32/13
54/15 54/16
**under 40 [1]**
21/5
**undermine [3]**
6/25 18/14
46/16
**understands [2]**
15/15 15/16
**undertaken [1]**

13/15
**undertakes [1]**
12/13
**unexplained [1]**
46/14
**unfair [1]**
36/7
**unfortunate [1]**
7/7
**unfortunately
[1]**   3/13
**unfounded [1]**
10/2
**uniquely [1]**
46/3
**UNITED [12]**
1/1 1/10 6/25
10/4 36/5 39/4
39/11 39/14
40/18 46/17
48/2 55/8
**unlawful [5]**
37/15 37/16
38/3 38/13
49/5
**unless [2]**
15/25 33/15
**unpopular [1]**
35/15
**unrecoverable
[1]**   49/24
**unrelated [1]**
19/24
**unsubstantiated
[1]**   5/4
**up [14]**   7/5
15/8 15/9
15/10 15/11
15/12 15/13
25/8 26/24
26/25 41/2
41/20 42/14
52/3
**upon [2]**   16/17
55/14
**urge [5]**   24/8
24/15 24/25
28/9 37/24
**USAO [1]**   1/19
**use [15]**   19/9
21/7 21/9
21/14 21/17
22/18 22/19
29/6 32/9
32/15 35/3
41/8 41/19
44/6 51/7
**used [2]**   4/18

**U**

**used... [1]**
41/8
**useful [1]**
14/10

**V**

**VA [2]**    32/23
47/7
**vague [7]**    5/4
6/20 9/5 13/23
46/19 47/20
47/22
**vagueness [2]**
6/8 47/21
**valuable [1]**
11/13
**variety [1]**
43/13
**various [3]**
21/24 22/13
50/2
**vehemently [1]**
40/17
**veiled [1]**
45/22
**vein [1]**    47/1
**Velazquez [4]**
8/7 17/5 44/23
51/15
**vendetta [1]**
51/19
**VERRILLI [4]**
1/12 2/8 36/2
56/8
**versus [1]**
29/17
**vet [1]**    32/23
**veterans [1]**
7/9
**VI [1]**    22/10
**viable [1]**
47/19
**vicious [1]**
40/9
**view [5]**    20/19
22/12 27/20
39/13 41/5
**viewpoint [17]**
4/14 8/15 8/20
8/22 31/8
31/19 32/1
33/15 33/23
34/2 34/9 37/2
45/19 46/3
46/4 46/9
46/11
**views [2]**    34/4

52/12
**VII [1]**    22/10
**vindictive [1]**
37/19
**Vineet [1]**
2/11
**violate [4]**
23/14 36/18
36/19 43/25
**violated [2]**
38/16 47/11
**violates [3]**
4/12 47/9
47/23
**violating [1]**
34/17
**violation [6]**
8/9 8/11 8/14
8/21 17/11
49/4
**violent [1]**
40/9
**virtually [1]**
8/3
**voting [6]**
6/13 13/17
14/1 14/5
45/23 46/23
**Vullo [10]**
8/12 19/7
24/10 32/5
37/24 38/1
38/11 38/16
44/5 46/1

**W**

**walk [1]**    19/21
**warrants [1]**
50/24
**Washington [5]**
1/5 1/15 1/20
1/25 40/13
**way [10]**    9/5
10/19 16/25
18/25 26/17
33/10 41/2
41/12 41/23
55/17
**ways [1]**    4/17
**weaponization
[1]**    11/22
**weaponize [2]**
6/10 49/16
**web [1]**    18/8
**website [1]**
18/9
**weekly [2]**
12/13 12/15

**weeks [1]**    56/2
**weighs [1]**
52/18
**Weiss [2]**
14/17 45/2
**welcome [1]**
2/18
**weren't [2]**
5/15 38/21
**what's [3]**
10/10 13/1
18/17
**whatnot [1]**
29/7
**whatsoever [4]**
4/3 4/4 5/3
16/2
**whereas [1]**
30/17
**white [5]**    4/22
39/24 40/13
40/19 41/19
**who's [1]**
32/22
**whole [3]**
36/10 38/5
52/17
**wide [1]**    45/13
**wield [1]**
17/11
**wielding [1]**
10/13
**Williams [1]**
48/2
**Wilmer [2]**
28/17 28/22
**WilmerHale [2]**
4/10 45/3
**Wilson [1]**
45/9
**Wisconsin [1]**
6/17
**wish [2]**    52/1
56/7
**within [7]**
22/21 26/13
31/15 33/3
33/4 35/7 41/5
**without [5]**
5/1 5/6 5/11
29/17 49/23
**withstand [1]**
52/24
**won [1]**    19/24
**word [1]**    33/12
**words [2]**
41/19 55/4
**work [9]**    3/15

6/4 16/15
32/21 40/16
40/18 49/14
55/7 55/15
**workforce [1]**
20/8
**working [4]**
20/16 29/11
29/12 30/9
**world [2]**
22/22 40/25
**worse [3]**    5/13
15/4 16/25
**wrestling [1]**
28/7
**writing [1]**
53/1
**written [3]**
20/13 42/14
54/22
**wrong [3]**
31/12 33/10
34/12
**wrote [1]**
51/15

**Y**

**years [2]**    20/9
41/2
**yesterday [2]**
3/1 3/2
**Youngstown [2]**
21/23 32/13

**Z**

**zealous [1]**
17/13
**zealously [1]**
16/13
**zone [1]**    18/11