## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SUSMAN GODFREY LLP, | Case No. 1:25-cv-1107-LLA |
| *Plaintiff*, |  |
| *v.* |  |
| EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, |  |
| *Defendants*. |  |

**UNOPPOSED MOTION OF AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF THE DISTRICT OF COLUMBIA, CATO INSTITUTE, CENTER FOR INDIVIDUAL RIGHTS, ELECTRONIC FRONTIER FOUNDATION, FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, INSTITUTE FOR JUSTICE, KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, NATIONAL COALITION AGAINST CENSORSHIP, REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS, RUTHERFORD INSTITUTE, AND SOCIETY FOR THE RULE OF LAW INSTITUTE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to this District's Local Civil Rule 7(o), the American Civil Liberties Union, the American Civil Liberties Union of the District of Columbia, the Cato Institute, the Center for Individual Rights, the Electronic Frontier Foundation, the Foundation for Individual Rights and Expression, the Institute for Justice, the Knight First Amendment Institute at Columbia University, the National Coalition Against Censorship, the Reporters Committee for the Freedom of the Press, the Rutherford Institute, and the Society for the Rule of Law Institute (together, "Amici") hereby move for leave to file the attached memorandum amicus curiae in support of Plaintiff Susman Godfrey LLP's motion for summary judgment. The parties do not oppose this motion.

The American Civil Liberties Union (ACLU) is a nationwide, nonprofit organization that since 1920 has sought to protect the civil liberties of all Americans. The ACLU of the District of Columbia (ACLU-DC) is the ACLU's Washington, D.C. affiliate. The ACLU and ACLU-DC have frequently appeared in this Court, as counsel to parties or as amicus, in cases raising significant questions about the meaning of the Constitution, its limitations on government power, and the breadth of rights it grants. They have also participated as counsel or amici curiae in many consequential First Amendment cases, including those involving retaliation and constitutional protection for legal advocacy. *See, e.g.*, *NRA v. Vullo*, 602 U.S. 175 (2024) (counsel); *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001) (amicus). The ACLU and ACLU-DC also frequently collaborate with law firms on lawsuits challenging government action.

The Cato Institute is a nonpartisan public-policy research foundation established in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to help restore the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato files amicus briefs, publishes books and studies, conducts conferences, and produces the annual *Cato Supreme Court Review*.

The Center for Individual Rights is a national public interest legal organization that provides free representation to clients whose rights have been violated or are threatened. Founded in 1989, CIR has a record of landmark victories in the Supreme Court of the United States and many other courts, setting legal precedents that restore and protect fundamental individual rights that are necessary for a flourishing and free society. It has a special interest in First Amendment rights and has represented clients in a wide variety of First Amendment cases. *See, e.g.*, *Rosenberger v. Rectors and Visitors of the University of Virginia*, 515 U.S. 819 (1995) and

*Sypniewski v. Warren Hills Regional Bd. of Educ.*, 307 F.3d 243 (3d Cir. 2002). It has also participated as an amicus in a number of cases involving structural limits and separation of powers in the U.S. Constitution, including *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 477 (2010). Moreover, CIR has represented plaintiffs in many high-profile cases challenging race-conscious admissions practices in universities, including *Gratz v. Bollinger*, 539 U.S. 244 (2003) and *Grutter v. Bollinger*, 539 U.S. 306 (2003). While CIR strongly disagrees with the position many large firms have taken on behalf of their clients in favor of race-based practices in admissions and other endeavors (and with the Supreme Court's decision in *Grutter*), the law firms CIR has opposed have represented their clients with professionalism and skill. CIR vigorously opposes the use of governmental sanctions to punish such firms for that advocacy, knowing, as it does, that a precedent permitting such sanctions could be used, by a different administration, against firms (like CIR) that advocated the anti-preference position in *Gratz* and *Grutter*.

The Electronic Frontier Foundation (EFF) is a nonprofit legal organization that has defended the rights of technology users in U.S. courts for almost 35 years. EFF's impact litigation includes numerous cases against the federal government challenging both legislative and executive actions. EFF's work is founded on the belief that lawsuits against the federal government are a vital component of the system of checks and balances that undergirds American democracy.

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit that defends the rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended First Amendment rights on college campuses nationwide through public advocacy, targeted litigation, and amicus curiae filings in cases that implicate expressive rights. In June 2022, FIRE expanded its advocacy beyond the university

setting and now defends First Amendment rights both on campus and in society at large. In lawsuits across the United States, FIRE works to vindicate First Amendment rights without regard to the speakers' views. *Trump v. Selzer*, No. 4:24-cv-449 (S.D. Iowa, filed Dec. 17, 2024); *Volokh v. James*, No. 23-356 (2d Cir. argued Feb. 16, 2024); *Novoa v. Diaz*, No. 4:22-cv-324, ECF No. 44 (N.D. Fla., Nov. 17, 2022), *pending appeal sub nom. Novoa v. Diaz*, No. 22-13994 (11th Cir. argued June 14, 2024); *Netchoice, LLC v. Bonta*, No. 22-cv-08861-BLF (N.D. Cal. Mar. 13, 2025) (granting preliminary injunction); *Villarreal v. Alaniz*, __ US __ ,145 S. Ct. 368 (2024). As a free speech organization whose litigators are of necessity adverse to government bodies in all branches of government in the vast majority of their cases, often representing speakers with whom government actors strongly disagree, it is imperative that FIRE remain free to zealously advocate on behalf of its clients without fear of unconstitutional official reprisal or retaliation.

The Institute for Justice (IJ) is a nonprofit public-interest law firm that litigates nationwide on behalf of Americans' most fundamental constitutional rights, among them the right to be free from government retaliation for protected speech. IJ's work on that front has led to important victories, including the Supreme Court's decision last Term in *Gonzalez v. Trevino*, 602 U.S. 653 (2024). This case therefore squarely implicates IJ's longstanding efforts to make it more difficult for government officials to punish their political opponents. But this case also implicates IJ's work more broadly. IJ (like any other public-interest law firm) often angers government officials. Still, IJ needs access to government information (sometimes including sensitive information) for litigation or to publish its groundbreaking strategic research.[1] IJ needs access to government buildings and government officials, sometimes to advise those officials on how to reform policies to better respect individual rights and sometimes to warn them of litigation if they fail to do so.

---

[1] *See* www.ij.org/research.

And IJ needs public-interest clients who are secure in the knowledge that they will not be targeted just because they chose IJ to represent them in their suits against the government. The government's position in this case is that it can take all those things away if it dislikes a law firm's advocacy. To accept that position is to accept that the government can only be challenged by lawyers it finds ideologically congenial—which is to say it cannot be challenged at all. IJ therefore files this brief to help protect its own right to sue the government, even when the government doesn't like it.

The Knight First Amendment Institute at Columbia University is a non-partisan, not-for-profit organization that works to defend the freedoms of speech and the press in the digital age through strategic litigation, research, and public education. The Institute's aim is to promote a system of free expression that is open and inclusive, that broadens and elevates public discourse, and that fosters creativity, accountability, and effective self-government.

The National Coalition Against Censorship (NCAC) is an alliance of more than 60 national non-profit literary, artistic, religious, educational, professional, labor, and civil liberties groups. NCAC was founded in 1974 in response to the United States Supreme Court's landmark decision in *Miller v. California*, 413 U.S. 15 (1973), which narrowed First Amendment protections for sexual expression and opened the door to obscenity prosecutions. The organization's purpose is to promote freedom of thought, inquiry and expression and to oppose censorship in all its forms. NCAC engages in direct advocacy and education to support the free expression rights of activists, students, teachers, librarians, artists, and others. It therefore has a longstanding interest in assuring the continuance of robust free expression protections for all—which includes access to counsel who can vindicate individual First Amendment rights. The positions advocated in this brief do not necessarily reflect the views of NCAC's member organizations.

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association. It was founded by leading journalists and media lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

The Rutherford Institute is a nonprofit civil liberties organization headquartered in Charlottesville, Virginia. Founded in 1982 by its President, John W. Whitehead, the Institute provides legal assistance at no charge to individuals whose constitutional rights have been threatened or violated and educates the public about constitutional and human rights issues affecting their freedoms. The Rutherford Institute works tirelessly to resist tyranny and threats to freedom by seeking to ensure that the government abides by the rule of law and is held accountable when it infringes on the rights guaranteed by the Constitution and laws of the United States.

The Society for the Rule of Law Institute (SRLI) is a nonpartisan, nonprofit, social welfare organization dedicated to the defense of the rule of law, the Constitution, and American democracy. Its mission is to protect these essential features of American liberty against rising threats posed by illiberal forces in society, without regard to political party or partisan affiliation. This case is of central concern to SRLI because it implicates indispensable protections of our system of ordered liberty, specifically the Constitution's provision of separation of powers and the First Amendment's guarantee of freedom of speech.

Amici are legal advocacy organizations from across the ideological spectrum that have in common an abiding commitment to the Constitution and the liberties it protects. We write to set out the ways in which the First Amendment, the separation of powers, and due process rights

prohibit the President's Executive Order sanctioning Susman Godfrey LLP for its constitutionally protected legal advocacy. While Amici support Plaintiff's claims, their perspective as nonprofit legal advocacy organizations is necessarily different from that of a for-profit law firm. The national attention focused on this case—and its attendant consequences for Americans' ability to retain legal counsel in important matters, to arrange their business and personal affairs as they like, and to speak their minds—support the inclusion of independent voices addressing the grave constitutional issues raised by the Executive Order.

DATE: April 25, 2025

Respectfully submitted,

Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Ste. 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org

*Counsel for Amici Curiae*

*/s/ Cecillia D. Wang*
Cecillia D. Wang (D.D.C. Bar No. CA00042)
Ben Wizner
Brian Hauss (D.D.C. Bar No. NY0581)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
cwang@aclu.org

*Counsel for Amici Curiae*

7