# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SUSMAN GODFREY LLP,

*Plaintiff*,

*v.*

EXECUTIVE OFFICE OF THE
PRESIDENT, *et al.*,

*Defendants*.

Case No. 1:25-cv-1107-LLA

**BRIEF OF AMICI CURIAE OF AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF THE DISTRICT OF COLUMBIA, CATO INSTITUTE, CENTER FOR INDIVIDUAL RIGHTS, ELECTRONIC FRONTIER FOUNDATION, FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, INSTITUTE FOR JUSTICE, KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, NATIONAL COALITION AGAINST CENSORSHIP, REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS, RUTHERFORD INSTITUTE, AND SOCIETY FOR THE RULE OF LAW INSTITUTE IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ............................................................................................................ 1

INTERESTS OF AMICI CURIAE ..................................................................................... 2

ARGUMENT .................................................................................................................... 7

    I.   The Executive Order Unconstitutionally Retaliates Against Susman Godfrey
        for Its Legal Advocacy. ........................................................................................ 8

    II.  The Executive Order Violates Separation of Powers and Due Process. ..................... 12

CONCLUSION................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Abel v. United States,*
    362 U.S. 217 (1960) ................................................................................................. 13

*Aref v. Lynch,*
    833 F.3d 242 (D.C. Cir. 2016) ................................................................................. 9

*Backpage.com, LLC v. Dart,*
    807 F.3d 229 (7th Cir. 2015) ................................................................................... 8

*BEG Invs., LLC v. Alberti,*
    144 F. Supp. 3d 16 (D.D.C. 2015) ......................................................................... 10

*Borough of Duryea, Pa. v. Guarnieri,*
    564 U.S. 379 (2011) ................................................................................................. 9

*Doe v. District of Columbia,*
    697 F.2d 1115 (D.C. Cir. 1983) .............................................................................. 15

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ................................................................................................. 3

*Gonzalez v. Trevino,*
    602 U.S. 653 (2024) ................................................................................................. 5

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) ................................................................................................. 3

*Grutter v. Bollinger,*
    539 U.S. 306 (2003) ................................................................................................. 3

*Hartman v. Moore,*
    547 U.S. 250 (2006) ................................................................................................. 8

*Hollins v. Oklahoma,*
    295 U.S. 394 (1935) ................................................................................................. 13

*In re Debs,*
    158 U.S. 564 (1895) ................................................................................................. 12

*Joint Anti-Fascist Refugee Comm. v. McGrath,*
    341 U.S. 123 (1951) ................................................................................................. 10

*Legal Services Corp. v. Velazquez,*
    531 U.S. 533 (2001) ........................................................................................... passim

*Lozman v. City of Riviera Beach,*
  585 U.S. 87 (2018) ........................................................................................ 8

*Marbury v. Madison,*
  1 Cranch 137 (1803) ..................................................................................... 12

*Miller v. California,*
  413 U.S. 15 (1973) ......................................................................................... 6

*N.Y. Times Co. v. United States,*
  403 U.S. 713 (1971) ..................................................................................... 13

*NAACP v. Button,*
  371 U.S. 415 (1963) ..................................................................................... 11

*Netchoice, LLC v. Bonta,*
  No. 22-cv-08861-BLF (N.D. Cal. Mar. 13, 2025) ...................................... 4

*Novoa v. Diaz,*
  No. 4:22-cv-324, ECF No. 44 (N.D. Fla., Nov. 17, 2022), *pending appeal sub nom.,*
  *Novoa v. Diaz,* No. 22-13994 (11th Cir. argued June 14, 2024) ............... 4

*NRA v. Vullo,*
  602 U.S. 175 (2024) .................................................................................. 2, 11

*Powell v. Alabama,*
  287 U.S. 45 (1932) ....................................................................................... 15

*Rosenberger v. Rectors and Visitors of the University of Virginia,*
  515 U.S. 819 (1995) ....................................................................................... 3

*Sypniewski v. Warren Hills Regional Bd. of Educ.,*
  307 F.3d 243 (3d Cir. 2002). ......................................................................... 3

*Thomas v. Collins,*
  323 U.S. 516 (1945) ....................................................................................... 9

*Trump v. Selzer,*
  No. 4:24-cv-449 (S.D. Iowa, filed Dec. 17, 2024) ....................................... 4

*Villarreal v. Alaniz,*
  __ US __ ,145 S. Ct. 368 (2024) ................................................................... 4

*Volokh v. James,*
  No. 23-356 (2d Cir. argued Feb. 16, 2024) ................................................. 4

## Other Authorities

@realDonaldTrump, TruthSocial (Apr. 20, 2025, 8:46 a.m.) ..................................... 11

1 Annals of Cong. 439 (J. Madison) (Joseph Gales ed., 1834)..................................................... 12

Albin Krebs, *Edward Bennett Williams, 68, Influential Trial Lawyer Dies; A Brilliant 'Superlawyer,"* N.Y. Times (Aug. 14. 1988).......................................................................... 13

*Arthur Hill Dies; Lawyer in Boston*, N.Y. Times, 76 (Nov. 30, 1947) ........................................ 13

Clay Risen, *At a Time When Lawyers Feared Defending Government Enemies, One Law Firm Stood Up*, Politico (Mar. 26, 2025) .................................................................................. 13

*Constance Baker Motley*, Supreme Court Historical Society....................................................... 13

Linda Qiu, *Fact-Checking the Breadth of Trump's Election Lies*, N.Y. Times, A18 (Aug. 20, 2023) ................................................................................................ 11

Maggie Haberman, Ben Protess & Michael S. Schmidt, *Another Law Firm Braces for Possible Blowback From Trump*, N.Y. Times (Apr. 7, 2025) ................................................... 1

Matthew Goldstein, *Top Law Firms File for Permanent Relief From Trump's Executive Orders*, N.Y. Times (Apr. 8, 2025)............................................................................................ 10

Neil A. Lewis, *Official Attacks Top Law Firms Over Detainees*, N.Y. Times (Jan. 13, 2007) .............................................................................................................. 13

Robert Yoon, *Trump's Drumbeat of Lies About the 2020 Election Keeps Getting Louder. Here Are the Facts*, Associated Press (Aug. 27, 2023)........................................................... 11

Sen. John Danforth, et al., Lost, Not Stolen:  The Conservative Case that Trump Lost and Biden Won the 2020 Presidential Election 1 (July 2022) ...................................................... 11

The Diary of John Adams, March 5, 1773.................................................................................... 12

**Rules**

Exec. Order No. 14237, 90 Fed. Reg. 13039, "Addressing Risks from Paul Weiss," (Mar. 14, 2025) ...................................................................................................................... 1

Exec. Order No. 14244, 90 Fed. Reg. 13685, "Addressing Remedial Action by Paul Weiss," (Mar. 21, 2025) ......................................................................................................... 1

Exec. Order No. 14246, 90 Fed. Reg. 13997, "Addressing Risks from Jenner & Block," (Mar. 25, 2025) ...................................................................................................................... 1

Exec. Order No. 14250, 90 Fed. Reg. 14549, "Addressing Risks from WilmerHale," (Mar. 27, 2025) ...................................................................................................................... 1

Exec. Order No. 14263, 90 Fed. Reg. 15615 "Addressing Risks from Susman Godfrey" (Apr. 9, 2025).............................................................................................................. passim

Executive Order 14230, 90 Fed. Reg. 11781, "Addressing Risks from Perkins Coie LLP"
(Mar. 6, 2025) ...................................................................................................................... 1

# INTRODUCTION

As part of a concerted effort to coerce law firms into toeing the Administration's ideological line, President Trump has targeted Susman Godfrey LLP for serious, potentially business-ending sanctions by executive fiat. Here, the sanctions are based on Susman Godfrey's representation of Dominion Voting Systems and state election officials in lawsuits related to the integrity of the 2020 election, which President Trump maintains was rigged against him. The Executive Order characterizes Susman Godfrey's advocacy in these cases as "activities detrimental to critical American interests." President Trump has signed analogous Executive Orders sanctioning several other law firms for their protected advocacy, and he has extracted concessions, including promises to provide pro bono legal services to the Administration's preferred causes, from still more firms by threatening to similarly retaliate against them.[1]

The President's retaliation against Susman Godfrey violates fundamental First Amendment freedoms and other constitutional protections. More generally, his systematic use of executive orders to cow law firms into political and ideological submission undermines the rule of law at its foundation. The fallout from these assaults on the bar's independence may not be limited to lawyers who represent clients or causes that are perceived as hostile to President Trump; the precedent created here could be used by future presidents, of either party, to chill advocacy against

---

[1] *See* Exec. Order No. 14230, 90 Fed. Reg. 11781, "Addressing Risks from Perkins Coie LLP" (Mar. 6, 2025); Exec. Order No. 14237, 90 Fed. Reg. 13039, "Addressing Risks from Paul Weiss," (Mar. 14, 2025); Exec. Order No. 14246, 90 Fed. Reg. 13997, "Addressing Risks from Jenner & Block," (Mar. 25, 2025); Exec. Order No. 14250, 90 Fed. Reg. 14549, "Addressing Risks from WilmerHale," (Mar. 27, 2025). President Trump revoked the Paul Weiss Executive Order pursuant to an agreement with the firm. Exec. Order No. 14244, 90 Fed. Reg. 13685, "Addressing Remedial Action by Paul Weiss," (Mar. 21, 2025). *See generally* Maggie Haberman, Ben Protess & Michael S. Schmidt, *Another Law Firm Braces for Possible Blowback From Trump*, N.Y. Times (Apr. 7, 2025) (describing concessions made by Skadden Arps, Willkie Farr & Gallagher, and Milbank, and negotiations involving Kirkland & Ellis and Cadwalader, Wickersham & Taft), https://perma.cc/P6B5-VPA6.

their policies or executive branch officials. If allowed to stand, these pressure tactics will have broad and lasting impacts on Americans' ability to retain legal counsel in important matters, to arrange their business and personal affairs as they like, and to speak their minds.

Amici are legal advocacy organizations from across the ideological spectrum that have in common an abiding commitment to the Constitution and the liberties it protects. We write to set out the ways in which the First Amendment, the separation of powers, and due process rights prohibit the President's order sanctioning Susman Godfrey for its protected legal advocacy.

## INTERESTS OF AMICI CURIAE[2]

The American Civil Liberties Union (ACLU) is a nationwide, nonprofit organization that since 1920 has sought to protect the civil liberties of all Americans. The ACLU of the District of Columbia (ACLU-DC) is the ACLU's Washington, D.C. affiliate. The ACLU and ACLU-DC have frequently appeared in this Court, as counsel to parties or as amicus, in cases raising significant questions about the meaning of the Constitution, its limitations on government power, and the breadth of rights it grants. They have also participated as counsel or amici curiae in many consequential First Amendment cases, including those involving retaliation and constitutional protections for legal advocacy. *See, e.g.*, *NRA v. Vullo*, 602 U.S. 175 (2024) (counsel); *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001) (amicus). The ACLU and ACLU-DC also frequently collaborate with law firms on lawsuits challenging government action.

The Cato Institute is a nonpartisan public-policy research foundation established in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to

---

[2] Pursuant to Local Civil Rule 7(o)(5), counsel for Amici Curiae certify that no counsel for a party authored this brief in whole or in part, and no person other than Amici Curiae, their members, or their counsel made a monetary contribution to the brief's preparation or submission.

help restore the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato files amicus briefs, publishes books and studies, conducts conferences, and produces the annual *Cato Supreme Court Review*.

The Center for Individual Rights is a national public interest legal organization that provides free representation to clients whose rights have been violated or are threatened. Founded in 1989, CIR has a record of landmark victories in the Supreme Court of the United States and many other courts, setting legal precedents that restore and protect fundamental individual rights that are necessary for a flourishing and free society. It has a special interest in First Amendment rights and has represented clients in a wide variety of First Amendment cases. *See, e.g.*, *Rosenberger v. Rectors and Visitors of the University of Virginia*, 515 U.S. 819 (1995) and *Sypniewski v. Warren Hills Regional Bd. of Educ.*, 307 F.3d 243 (3d Cir. 2002). It has also participated as an amicus in a number of cases involving structural limits and separation of powers in the U.S. Constitution, including *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 477 (2010). Moreover, CIR has represented plaintiffs in many high-profile cases challenging race-conscious admissions practices in universities, including *Gratz v. Bollinger*, 539 U.S. 244 (2003) and *Grutter v. Bollinger*, 539 U.S. 306 (2003). While CIR strongly disagrees with the position many large firms have taken on behalf of their clients in favor of race-based practices in admissions and other endeavors (and with the Supreme Court's decision in *Grutter*), the law firms CIR has opposed have represented their clients with professionalism and skill. CIR vigorously opposes the use of governmental sanctions to punish such firms for that advocacy, knowing, as it does, that a precedent permitting such sanctions could be used, by a different administration, against firms (like CIR) that advocated the anti-preference position in *Gratz* and *Grutter*.

The Electronic Frontier Foundation (EFF) is a nonprofit legal organization that has defended the rights of technology users in U.S. courts for almost 35 years. EFF's impact litigation includes numerous cases against the federal government challenging both legislative and executive actions. EFF's work is founded on the belief that lawsuits against the federal government are a vital component of the system of checks and balances that undergirds American democracy.

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit that defends the rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended First Amendment rights on college campuses nationwide through public advocacy, targeted litigation, and amicus curiae filings in cases that implicate expressive rights. In June 2022, FIRE expanded its advocacy beyond the university setting and now defends First Amendment rights both on campus and in society at large. In lawsuits across the United States, FIRE works to vindicate First Amendment rights without regard to the speakers' views. *Trump v. Selzer*, No. 4:24-cv-449 (S.D. Iowa, filed Dec. 17, 2024); *Volokh v. James*, No. 23-356 (2d Cir. argued Feb. 16, 2024); *Novoa v. Diaz*, No. 4:22-cv-324, ECF No. 44 (N.D. Fla., Nov. 17, 2022), *pending appeal sub nom. Novoa v. Diaz*, No. 22-13994 (11th Cir. argued June 14, 2024); *Netchoice, LLC v. Bonta*, No. 22-cv-08861-BLF (N.D. Cal. Mar. 13, 2025) (granting preliminary injunction); *Villarreal v. Alaniz*, __ US __ , 145 S. Ct. 368 (2024). As a free speech organization whose litigators are of necessity adverse to government bodies in all branches of government in the vast majority of their cases, often representing speakers with whom government actors strongly disagree, it is imperative that FIRE remain free to zealously advocate on behalf of its clients without fear of unconstitutional official reprisal or retaliation.

The Institute for Justice (IJ) is a nonprofit public-interest law firm that litigates nationwide on behalf of Americans' most fundamental constitutional rights, among them the right to be free

from government retaliation for protected speech. IJ's work on that front has led to important victories, including the Supreme Court's decision last Term in *Gonzalez v. Trevino*, 602 U.S. 653 (2024). This case therefore squarely implicates IJ's longstanding efforts to make it more difficult for government officials to punish their political opponents. But this case also implicates IJ's work more broadly. IJ (like any other public-interest law firm) often angers government officials. Still, IJ needs access to government information (sometimes including sensitive information) for litigation or to publish its groundbreaking strategic research.[3] IJ needs access to government buildings and government officials, sometimes to advise those officials on how to reform policies to better respect individual rights and sometimes to warn them of litigation if they fail to do so. And IJ needs public-interest clients who are secure in the knowledge that they will not be targeted just because they chose IJ to represent them in their suits against the government. The government's position in this case is that it can take all those things away if it dislikes a law firm's advocacy. To accept that position is to accept that the government can only be challenged by lawyers it finds ideologically congenial—which is to say it cannot be challenged at all. IJ therefore files this brief to help protect its own right to sue the government, even when the government doesn't like it.

The Knight First Amendment Institute at Columbia University is a non-partisan, not-for-profit organization that works to defend the freedoms of speech and the press in the digital age through strategic litigation, research, and public education. The Institute's aim is to promote a system of free expression that is open and inclusive, that broadens and elevates public discourse, and that fosters creativity, accountability, and effective self-government.

---

[3] *See* www.ij.org/research.

The National Coalition Against Censorship (NCAC) is an alliance of more than 60 national non-profit literary, artistic, religious, educational, professional, labor, and civil liberties groups. NCAC was founded in 1974 in response to the United States Supreme Court's landmark decision in *Miller v. California*, 413 U.S. 15 (1973), which narrowed First Amendment protections for sexual expression and opened the door to obscenity prosecutions. The organization's purpose is to promote freedom of thought, inquiry and expression and to oppose censorship in all its forms. NCAC engages in direct advocacy and education to support the free expression rights of activists, students, teachers, librarians, artists, and others. It therefore has a longstanding interest in assuring the continuance of robust free expression protections for all—which includes access to counsel who can vindicate individual First Amendment rights. The positions advocated in this brief do not necessarily reflect the views of NCAC's member organizations.

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association. It was founded by leading journalists and media lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

The Rutherford Institute is a nonprofit civil liberties organization headquartered in Charlottesville, Virginia. Founded in 1982 by its President, John W. Whitehead, the Institute provides legal assistance at no charge to individuals whose constitutional rights have been threatened or violated and educates the public about constitutional and human rights issues affecting their freedoms. The Rutherford Institute works tirelessly to resist tyranny and threats to

freedom by seeking to ensure that the government abides by the rule of law and is held accountable when it infringes on the rights guaranteed by the Constitution and laws of the United States.

The Society for the Rule of Law Institute (SRLI) is a nonpartisan, nonprofit, social welfare organization dedicated to the defense of the rule of law, the Constitution, and American democracy. Its mission is to protect these essential features of American liberty against rising threats posed by illiberal forces in society, without regard to political party or partisan affiliation. This case is of central concern to SRLI because it implicates indispensable protections of our system of ordered liberty, specifically the Constitution's provision of separation of powers and the First Amendment's guarantee of freedom of speech.

## ARGUMENT

Amici write to address two basic points.

First, President Trump's executive order titled "Addressing Risks from Susman Godfrey," (the "Executive Order") unconstitutionally retaliates against Susman Godfrey for its legal advocacy, in violation of the First Amendment. *See* Exec. Order No. 14263, 90 Fed. Reg. 15615 (Apr. 9, 2025). Both the Speech and Petition Clauses protect lawyers' advocacy on behalf of their clients against arbitrary or viewpoint-based government interference. The sweeping and draconian sanctions imposed by the Executive Order—including the loss of access to federal facilities and federal employees, an implicit blacklist on the firm's business with federal contractors, and the suspension of security clearances held by the firm's attorneys—threaten irreparable harm to Susman Godfrey and would chill any law firm from participating in litigation disfavored by President Trump and his Administration. And the Executive Order's sanctions are premised on the firm's protected advocacy, particularly its representation of Dominion Voting Systems and state election officials in litigation regarding the integrity of the 2020 election.

Second, the Executive Order violates fundamental separation-of-powers principles by striking at the bar's independence. The judiciary depends on an independent bar to fulfill its constitutional role as a bulwark against usurpations by the legislative and executive branches. By chilling lawyers from engaging in zealous advocacy on behalf of clients adverse to the Administration, the Executive Order not only infringes the protected speech and petitioning of private parties, it also deprives courts of the expert counsel necessary, in our adversarial legal system, for a full and fair adjudication of the most pressing constitutional and statutory issues. And the Executive Order has dire immediate consequences for Susman Godfrey's clients, infringing their due process right to counsel by, among other things, arbitrarily prohibiting the firm's lawyers from using federal facilities and engaging with federal officials.

"[W]here would such official bullying end, were it permitted to begin?" *Backpage.com, LLC v. Dart*, 807 F.3d 229, 235 (7th Cir. 2015). This Court must strongly rebuke and permanently enjoin the Administration's unconstitutional attempt to punish Susman Godfrey for its protected advocacy and to intimidate other law firms and lawyers from taking on matters adverse to the government.

## I.    The Executive Order Unconstitutionally Retaliates Against Susman Godfrey for Its Legal Advocacy.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *accord, e.g.*, *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018). To make out a First Amendment retaliation claim, a plaintiff must show that: (i) it engaged in constitutionally protected expression; (ii) defendants responded with an adverse action sufficient to deter a person of ordinary firmness in the plaintiff's position from speaking again; and (iii) there is a causal connection between the plaintiff's protected speech and the retaliatory actions taken

against it. *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016). Susman Godfrey easily satisfies all three factors in this case.

First, the Constitution safeguards Susman Godfrey's legal advocacy on behalf of its clients. Such advocacy is protected under both the Speech and Petition Clauses of the First Amendment. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (holding that the Petition Clause protects access to federal courts, while acknowledging that the plaintiff "just as easily could have alleged that his employer retaliated against him for the speech contained within his grievances and lawsuit"). The analysis under either Clause, for purposes of Susman Godfrey's retaliation claim, is substantially the same. *See id.* at 388 (holding that the framework for public employee retaliation claims under the Speech Clause applies to similar claims raised under the Petition Clause) ("It is not necessary to say that the two Clauses are identical in their mandate or their purpose and effect to acknowledge that the rights of speech and petition share substantial common ground. This Court has said that the right to speak and the right to petition are 'cognate rights.'" (quoting *Thomas v. Collins,* 323 U.S. 516, 530 (1945))).

The First Amendment bars the government from punishing or suppressing legal advocacy because of its viewpoint, as the Supreme Court recognized in *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001). There, plaintiffs challenged a statute prohibiting the use of federal Legal Services Corporation funds in cases challenging federal statutes under the U.S. Constitution, or state statutes under federal law or the U.S. Constitution. *Id.* at 537. The Court held that lawyers' advocacy on behalf of their nongovernmental clients is constitutionally protected speech, regardless of who pays for it. *See id.* at 548–49. And it concluded that viewpoint-based restrictions on such advocacy, even in the form of statutory restrictions on the use of legal services funds to raise federal statutory and constitutional challenges in litigation, violate the First Amendment. *Id.*

("Where private speech is involved, even Congress' antecedent funding decision cannot be aimed at the suppression of ideas thought inimical to the Government's own interest.").

Second, the draconian sanctions imposed by the Executive Order would deter an ordinary person in Susman Godfrey's position, *i.e.*, other law firms, from engaging in similar advocacy in the future. *See* Pl.'s Statement of Undisputed Material Facts ("Pl.'s SOF") ¶¶ 204–213, ECF No. 51-2. Indeed, "several big law firms" have cut "deals with the White House" in order "to prevent big corporate clients from fleeing to other firms." Matthew Goldstein, *Top Law Firms File for Permanent Relief From Trump's Executive Orders*, N.Y. Times (Apr. 8, 2025).[4] "One provision of the deals is that the firms will perform free legal work for causes the president supports. In effect, those firms are agreeing not to support public interest groups challenging administration policies." *Id.* These responses are, unfortunately, not surprising. The sanctions imposed by the Executive Order and its brethren—including the denial of access to federal facilities and federal employees, the effective blacklisting of the firm by all federal contractors for even nongovernment work, and the *en masse* suspension of security clearances—are nothing short of a death sentence for any but the smallest and most local law firms. *See* Pl.'s SOF ¶¶ 171–225, ECF No. 51-2; *see also Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 143 (1951) (Black, J., concurring) ("[G]overnment blacklists" of disfavored organizations "smack[] of a most evil type of censorship."). The message to the bar is unmistakable: Cross the Administration at your peril.

Finally, while direct evidence of retaliatory animus is not required, *BEG Invs., LLC v. Alberti*, 144 F. Supp. 3d 16, 22 (D.D.C. 2015), the causal connection between the Executive Order and Susman Godfrey's protected advocacy is readily apparent on the Order's face. It identifies the firm's lawsuits challenging false and defamatory statements about Dominion Voting Systems, as

---

[4] *Available at* https://perma.cc/WG6W-BXX2.

well as its representation of state officials defending claims of election fraud, as "activities detrimental to critical American interests." This is a straightforward admission that the Executive Order was predominantly motivated by the firm's successful advocacy on behalf of its clients in connection with matters of grave national importance.

The Executive Order's characterization of Susman Godfrey's advocacy as "detrimental to critical American interests"—according to President Trump, who continues to maintain his thoroughly debunked assertion that that there was widespread fraud in the 2020 election[5]—does not remove one iota of First Amendment protection. Of course the Emperor wants to punish the boy who points out that his new clothes are imaginary. But "whatever may be or may have been true of suits against government in other countries, the exercise in our own . . . of First Amendment rights to enforce constitutional rights through litigation, as a matter of law, cannot be deemed malicious." *NAACP v. Button*, 371 U.S. 415, 439–40 (1963). To the contrary, the First Amendment flatly prohibits the government from sanctioning law firms in order to punish and deter legal advocacy on behalf of clients and causes disapproved by the Administration. *See NRA v. Vullo*, 602 U.S. 175, 180–81 (2024) (holding that the NRA stated a First Amendment claim based on allegations that New York officials coerced financial services firms into blacklisting the NRA and other gun-promotion groups). It is hard to imagine a more important application of that principle

---

[5] *See* @realDonaldTrump, TruthSocial (Apr. 20, 2025, 8:46 a.m.) (referring to "to all of the people who CHEATED in the 2020 Presidential Election"), https://perma.cc/K4AD-CQFT. *But see, e.g.*, Sen. John Danforth, et al., *Lost, Not Stolen:  The Conservative Case that Trump Lost and Biden Won the 2020 Presidential Election* 1 (July 2022) ("[T]here is absolutely no evidence of fraud in the 2020 Presidential Election on the magnitude necessary to shift the result in any state, let alone the nation as a whole. In fact, there was no fraud that changed the outcome in even a single precinct."), *available at* https://perma.cc/W8X9-JWHW; Robert Yoon, *Trump's Drumbeat of Lies About the 2020 Election Keeps Getting Louder. Here Are the Facts*, Associated Press (Aug. 27, 2023), https://perma.cc/D72D-E9EF; Linda Qiu, *Fact-Checking the Breadth of Trump's Election Lies*, N.Y. Times, A18 (Aug. 20, 2023), https://perma.cc/5F3Z-FNR7.

than here, where the President has retaliated against a law firm for legal advocacy defending the integrity of an election he lost.

## II.    The Executive Order Violates Separation of Powers and Due Process.

The Executive Order's retaliatory attack on Susman Godfrey for the firm's constitutionally protected legal advocacy is not only a textbook First Amendment violation; it also threatens to undermine the bar's independence, violating basic separation-of-powers principles. The Framers conceived of the courts as an "impenetrable bulwark against every assumption of power in the Legislative or Executive." 1 Annals of Cong. 439 (J. Madison) (Joseph Gales ed., 1834). *See also Marbury v. Madison*, 1 Cranch 137, 177 (1803) ("It is emphatically the province and the duty of the judicial department to say what the law is."). To play its role effectively, the bench depends on the skill and integrity of the bar. In other words, "[a]n informed, independent judiciary presumes an informed, independent bar." *Velazquez*, 531 U.S. at 534. Courts cannot guard against the usurpations of the other branches without the assistance of lawyers willing to challenge those usurpations on their clients' behalf.

American lawyers have earned their reputation for independence by standing ready to challenge the government, even in the most controversial and high-profile matters, whether in support of a cause in which they believe or on the principle that everyone deserves a robust defense. John Adams famously boasted that his representation of British soldiers in the Boston Massacre prosecution was "one of the best Pieces of Service I ever rendered my Country." The Diary of John Adams, March 5, 1773.[6] Clarence Darrow represented Eugene Debs, then the leader of the American Railway Union, in his conspiracy prosecution for encouraging workers to strike in violation of a federal court injunction. *See In re Debs*, 158 U.S. 564 (1895). Arthur Hill of Hill &

---

[6] *Available at* https://perma.cc/SLA3-ATBJ.

Barlow represented Nicola Sacco and Bartolomeo Vanzetti, both immigrants from Italy, in their prosecution for murder. *Arthur Hill Dies; Lawyer in Boston*, N.Y. Times, 76 (Nov. 30, 1947). While working at the NAACP Legal Defense & Education Fund, Charles Hamilton Houston represented a Black man convicted of rape by an all-white jury, *see Hollins v. Oklahoma*, 295 U.S. 394 (1935), and Constance Baker Motley defended Rev. Dr. Martin Luther King, Jr. after he was arrested in Birmingham, Alabama, *see Constance Baker Motley*, Supreme Court Historical Society.[7]

More examples abound. Arnold & Porter took on the cases of government employees accused of Communist sympathies during the Second Red Scare. *See* Clay Risen, *At a Time When Lawyers Feared Defending Government Enemies, One Law Firm Stood Up*, Politico (Mar. 26, 2025).[8] James Donovan defended accused Soviet spy Rudolf Abel in the Hollow Nickel case. *See Abel v. United States*, 362 U.S. 217 (1960).[9] Floyd Abrams of Cahill, Gordon & Reindel defended the New York Times against the government's attempt to suppress the publication of the Pentagon Papers on national security grounds. *See N.Y. Times Co. v. United States*, 403 U.S. 713 (1971). Edward Bennett Williams of Williams & Connolly represented Senator Joe McCarthy in censure proceedings before the U.S. Senate. *See* Albin Krebs, *Edward Bennett Williams, 68, Influential Trial Lawyer Dies; A Brilliant 'Superlawyer'*," N.Y. Times (Aug. 14. 1988).[10] And numerous major law firms represented detainees at Guantánamo Bay. *See* Neil A. Lewis, *Official Attacks Top Law Firms Over Detainees*, N.Y. Times (Jan. 13, 2007).[11]

Members of the bar uphold its best traditions when they provide zealous advocacy to clients facing the full weight of the federal government—and justice would be poorly served if only the

---

[7] *Available at*: https://perma.cc/S75C-R7HG.
[8] *Available at*: https://perma.cc/A9QW-QYPB.
[9] The case was dramatized in the film "Bridge of Spies" (Steven Spielberg, 2015).
[10] *Available at*: https://perma.cc/QN6J-RSPB.
[11] *Available at*: https://perma.cc/F73H-WUYW.

exceedingly brave or the independently wealthy were willing to undertake such representations. Particularly in complex, high-stakes matters, clients depend on their lawyers to orchestrate the evidence, precedents, and arguments necessary to make the best submission on their behalf. But many firms would sensibly decline to take any case, no matter how meritorious or significant, that presents even a small risk of ruinous sanctions.

This is what makes the Executive Order so pernicious to the separation of powers. "By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend for the proper exercise of the judicial power." *Velazquez*, 531 U.S. at 545. If allowed to stand, the Administration's retaliatory attack on Susman Godfrey will chill many law firms and lawyers from taking on high-profile cases against the government—particularly pro bono cases defending the civil and constitutional rights of ordinary individuals. *See* Pl.'s SOF ¶¶ 208–213, ECF No. 51-2; Goldstein, *supra* n.4 (noting that firms are agreeing "not to support public interest groups challenging administration policies" as a condition of avoiding presidential sanctions). And if the President can hobble a litigation powerhouse like Susman Godfrey with the stroke of pen, the chilling effects on smaller firms and the bar at large will be only more severe.

Even when lawyers take on a representation adverse to the government, the threat of sanctions will chill them from taking positions or making arguments that offend the Administration. This fundamental conflict of interest will "distort[] the legal system by altering the traditional role of the attorneys" as zealous advocates for their clients. *Velazquez*, 531 U.S. at 544. As a result, clients will mistrust their counsel's loyalty, courts will confront case after case where only one view—the Administration's—is adequately and zealously represented, and the public will lose faith in the integrity of the judicial process. As this Court put it, "allowing the

14

government to coerce private businesses, law firms and lawyers solely on the basis of their views is antithetical to our constitutional republic and hampers this Court and every court's ability to adjudicate its cases." Tr. of TRO Hearing 52:10–14 (Apr. 15, 2025), ECF No. 19; *see also Velazquez*, 531 U.S. at 546 ("The courts and the public would come to question the adequacy and fairness of professional representations when the attorney, either consciously to comply with this statute or unconsciously to continue the representation despite the statute, avoided all reference to questions of statutory validity and constitutional authority.").

The Executive Order also infringes due process rights. The interest in obtaining the assistance of counsel is a fundamental aspect of due process. *See Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983) ("[E]very litigant has a powerful interest in being able to retain and consult freely with an attorney."). The government infringes "due process in the constitutional sense" when it "arbitrarily" interferes with the attorney–client relationship. *Powell v. Alabama*, 287 U.S. 45, 69 (1932). By obstructing Susman Godfrey's lawyers from entering federal buildings and interacting with federal officials, the Executive Order arbitrarily prevents the firm from doing much of the work incumbent on counsel, from negotiating with government attorneys to advocating before regulatory officials. Pl.'s SOF ¶¶ 171–79, ECF No. 51-2. The Executive Order's disclosure provision requires the firm's clients to divulge confidential relationships as a condition of receiving government contracts. *Id.* ¶¶ 186–193. And the suspension of security clearances held by Susman Godfrey's personnel, pending a firm-specific security clearance review, will harm its ability to represent clients in matters involving classified information. *Id.* ¶¶ 194–203. If this governmental bullying goes unchecked, the bar will swiftly lose its independence—to the detriment of litigants, courts, and public trust in the judicial process.

15

## CONCLUSION

The Executive Order is an unconstitutional attempt to punish Susman Godfrey for its protected advocacy on behalf of its clients, and to intimidate other law firms from challenging the Administration or its officials. For the reasons stated above, Amici respectfully submit that the Court should grant Plaintiff's motion for summary judgment.

DATE: April 25, 2025

Respectfully submitted,

Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF THE DISTRICT OF
 COLUMBIA
529 14th Street, NW, Ste. 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org

*Counsel for Amici Curiae*

Clark M. Neily III
Thomas A. Berry
CATO INSTITUTE
1000 Mass. Ave. N.W.
Washington, D.C. 20001
(202) 425-7499
cneily@cato.org

*Counsel for Cato Institute*

William Creeley
Robert Corn-Revere
Ronald G. London
FOUNDATION FOR INDIVIDUAL RIGHTS AND
 EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473

*Counsel for Foundation for Individual Rights &
Expression*

Alex Abdo
Jameel Jaffer
KNIGHT FIRST AMENDMENT INSTITUTE
 AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500

*Counsel for Knight First Amendment Institute
at Columbia University*

*/s/ Cecillia D. Wang*
Cecillia D. Wang (D.D.C. Bar No. CA00042)
Ben Wizner
Brian Hauss (D.D.C. Bar No. NY0581)
AMERICAN CIVIL LIBERTIES
 UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
cwang@aclu.org

*Counsel for Amici Curiae*

Michael E. Rosman
Caleb Kruckenberg
Todd F. Gaziano
CENTER FOR INDIVIDUAL RIGHTS
1233 20th St. NW, Suite 300
Washington, DC 20036
(202) 833-8400
Rosman@cir-usa.org

*Counsel for Center for Individual Rights*

David Greene
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
davidg@eff.org

*Counsel for Electronic Frontier Foundation*

Scott G. Bullock
Robert J. McNamara
Robert R. Johnson
Anya A. Bidwell
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320

*Counsel for Institute for Justice*

17

Bruce D. Brown
Lisa Zycherman
Gabriel Rottman
Mara Gassmann
Grayson Clary
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1020
Washington, DC 20005
(202) 795-9300
bbrown@rcfp.org

*Counsel for Reporters Committee for Freedom of the Press*

Gregg Nunziata
SOCIETY FOR THE RULE OF LAW INSTITUTE
601 Pennsylvania Ave NW
South Building, Suite 900
Washington, DC 20004
(202) 410-0659
info@societyfortheruleoflaw.org

*Counsel for Society for the Rule of Law Institute*

Lee Rowland
NATIONAL COALITION AGAINST CENSORSHIP
29 Broadway, Suite 1400
New York, NY 10006
(212) 807-6222

*Counsel for National Coalition Against Censorship*

John W. Whitehead
William E. Winters
THE RUTHERFORD INSTITUTE
109 Deerwood Road
Charlottesville, VA 22911
legal@rutherford.org

*Counsel for Rutherford Institute*

18