## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SUSMAN GODFREY LLP,

           *Plaintiff,*

v.

EXECUTIVE OFFICE OF THE
PRESIDENT, *et al.*,

           *Defendants.*

Case No. 1:25-cv-01107-LLA

## BRIEF OF *AMICUS CURIAE* UIA-IROL
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Jerome C. Roth (*pro hac vice*)

ROTH GLOBAL LAW/ARB
990 Green Street
San Francisco, CA 94133
Telephone: (415) 860-0909
Jerry@RothGlobal.com

Jacqueline R. Scott (*pro hac vice*)
D.C. Bar No. 495479

FORTNEY & SCOTT, LLC
1909 K Street, NW Suite 330
Washington, D.C. 20006
Telephone (202) 689-1200
jscott@fortneyscott.com

*Counsel for* Amicus Curiae *UIA-IROL*

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* UIA-IROL (the Institute for the Rule of Law) is an independent arm of UIA (the Union Internationale des Avocats or, in English, the International Lawyers' Association), a not-for-profit association formed under French law and headquartered in Paris, with almost 2,000 lawyer and bar association members from around the world. UIA and UIA-IROL have no parent corporations or subsidiaries and do not issue stock.

# **<u>TABLE OF CONTENTS</u>**

CORPORATE DISCLOSURE STATEMENT .......................................................................... i

TABLE OF CONTENTS............................................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................................... iii

INTEREST OF *AMICUS CURIAE*........................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    A.   Sources of International Law Protecting the Independence of the Bar ............................ 4

    B.   The Rights Implicated under International Law ............................................................... 7

    C.   The Order Violates Internationally Recognized Rights of Lawyers................................ 14

CONCLUSION ........................................................................................................................... 15

CERTIFICATE OF COMPLIANCE .......................................................................................... 17

CERTIFICATE OF SERVICE .................................................................................................... 18

# **TABLE OF AUTHORITIES**

## **Cases**

*Canada (Attorney General) v. Federation of Law Societies of Canada,* [2015]
1 S.C.R. 401 (Can.) ................................................................................................9, 10

*Law Society of Kenya v. Attorney General of Kenya,* [2016] KEHC 3806 (KLR)...................... 10

*Morris v. France*, Eur. Ct. H.R., Application *9369/10*, (Apr. 15, 2015) ................................. 10, 14

*Prosecutor v. Alex Tamba Brima,* 2005 SCC Online SCSL 38.................................................... 10

*R.Muthukrishnan v. Registrar General of High Court of Judicature at Madras*
[2019] 1 S.C.R. 589 ................................................................................................ 13

## **Other Authorities**

Council of Bars and Law Societies of Europe's *Charter of Core Principles of the European
Legal Profession*, adopted in Brussels in 2006.,
https://www.ccbe.eu/fileadmin/speciality_distribution/public/documents/
DEONTOLOGY/DEON_CoC/EN_DEON_CoC.pdf ................................................. 6, 7, 12, 13

Council of Europe *Newsroom* website page, https://www.coe.int/en/web/portal/-/
council-of-europe-adopts-international-convention-on-protecting-lawyers.............................. 5

Council of Europe, Comm. of Members, Rec. No. R(2000)21, 727th Mtg.,
(CM/Notes/727/10.3) (Oct. 13, 2000) (available at https://rm.coe.int/1680502fe8) (Adopted by
the Committee of Ministers on 25 October 2000 at the 727th meeting of the ministers'
Deputies) ................................................................................................................. 8, 12

Council of Europe, Convention for the Protection of the Profession of Lawyer,
*10.1 European Comm. On Legal Co-Operation*, 1 (Mar. 12, 2025),
https://rm.coe.int/native/0900001680b4c020 ................................................................ passim

Exec. Order No. 14263, 90 Fed. Reg. 15615 (Apr. 9, 2025). ....................................................... 2

Int'l Bar Assoc., *Int'l Principles on Conduct for the Legal Profession* (Oct. 11 2018),
https://www.ibanet.org/document?id=-International-Principles-on-Conduct-for-the-Legal-
Profession-2018 ............................................................................................................. 6, 7

Int'l Comm'n of Jurists, Int'l Principles on the Independence and Accountability of Judges,
Lawyers, and Prosecutors, Practitioners Guide No.1, at 64 (available at
https://www.icj.org/wp-content/uploads/2012/04/International-Principles-on-the-
Independence-and-Accountability-of-Judges-Lawyers-and-Procecutors-No.1-
Practitioners-Guide-2009-Eng.pdf) ................................................................... 9, 11, 13

iii

United Nations Basic Principles on the Role of Lawyers, adopted by the Eighth United Nations Congress on the Prevention of Crime and the Treatment of Offenders, Havana, Cuba, 7 September 1990, https://www.ohchr.org/en/instruments-mechanisms/ instruments/basic-principles-role-lawyers. ....................................................................... passim

United Nations Human Rights Counsel, Rep. of the Spec. Rapporteur, *Safeguarding the independence of judicial systems in the face of contemporary challenges to democracy,* U.N. Doc.A/HRC/56/62, ¶¶ 49, 50 (Jun. 21, 2024) .................................... 9, 11, 14

United Nations Human Rights Council, Resolution, *Independence and impartiality of the judiciary, jurors and assessors and the independence of lawyers.* G.A. Res. 56/3, U.N.Doc. A/HRC/RES/56/3 (July 11, 2024) ...................................................................... 5, 11

## INTEREST OF *AMICUS CURIAE*

The Institute for the Rule of Law of UIA (UIA-IROL) is an independent arm of UIA (the Union Internationale des Avocats or, in English, International Lawyers' Association), a not-for-profit association of almost 2,000 lawyers and bar associations from over 100 countries around the world (including the United States), formed under French law with its headquarters in Paris, France. UIA facilitates cross-border professional development and training, exchange of ideas, transnational collegiality and networking; advocates for the peaceful resolution of disputes; and, most importantly here, defends and promotes the independence of the legal and judicial professions and the Rule of Law around the globe.

The UIA-IROL arm of the association is dedicated to addressing Rule of Law and human rights issues, particularly the defense of the legal profession against government intrusion. As such, UIA-IROL works with individual and bar association members of UIA to support, protect, and advocate for lawyers around the world who may be persecuted, prosecuted, harassed, threatened, or otherwise retaliated against as a result of their professional work as lawyers, the clients they represent, and/or the legal positions they advocate.

UIA-IROL is committed to the internationally-recognized principles that an independent bar, free from government interference or retribution, is essential to the Rule of Law; to fundamental due process rights to counsel, a fair trial, and presumption of innocence; to access to justice by all members of society; to independence of the judiciary; and to protection of human rights. It strives to ensure that lawyers are not identified with, equated to, or sanctioned based on the actions or legal status, causes, or positions of their clients. UIA-IROL recognizes that concern for these core principles is most heightened when lawyers are threatened based on the

identity of their clients and/or the legal positions taken by their clients against the government's own perceived interests.

In light of that unwavering commitment, UIA-IROL submits this *amicus* brief to support the motion for summary judgment of plaintiff law firm Susman Godfrey ("Plaintiff") to enjoin officials and agencies of the United States government from implementing the Executive Order signed by U.S. President Donald J. Trump on April 9, 2025, entitled *Addressing Risks from Susman Godfrey* (the "Executive Order" or "Order").  Exec. Order No. 14263, 90 Fed. Reg. 15615 (Apr. 9, 2025).  That Order, one of a series of similar orders issued by the President in recent months, imposes harsh sanctions on Plaintiff based explicitly on the firm's representation of clients and its advocacy of positions the executive branch of the U.S. government, and the President, particularly, disfavors.

UIA-IROL seeks to underscore, in particular, that such retaliatory conduct against lawyers violates not only domestic law, including the U.S. Constitution, as Plaintiff maintains, but also internationally-recognized principles designed to protect the independence of the bar and the Rule of Law.  Those principles, which reflect many of the same rights and values as those embodied in the U.S. Constitution, derive from numerous international sources and instruments and are definitively set forth in the 1990 *United Nations Basic Principles on the Role of Lawyers*, the most authoritative statement of international norms regarding the protection of lawyers and of the independence of the bar.  *See*, United Nations Basic Principles on the Role of Lawyers, adopted by the Eighth United Nations Congress on the Prevention of Crime and the Treatment of Offenders, Havana, Cuba, 7 September 1990, https://www.ohchr.org/en/instruments-mechanisms/instruments/basic-principles-role-lawyers (hereinafter "UN Basic Principles").  In fact, the Council of Europe codified the rights enshrined in the *UN Basic Principles* only last

month in the *Convention for the Protection of the Profession of Lawyer* (the "*Convention*"), an international treaty subject to ratification and intended to respond to increasing governmental attacks on lawyers across the globe for merely practicing their profession. *See* Council of Europe, Convention for the Protection of the Profession of Lawyer, *10.1 European Comm. On Legal Co-Operation*, 1 (Mar. 12, 2025) (hereinafter "Convention").

In light of its founding mission and activities to protect lawyers throughout the world, UIA-IROL has a strong interest in seeing that enforcement of the Executive Order is enjoined by this Court; that the rights of Plaintiff and other lawyers and law firms throughout the United States are protected against similar interference and retaliation by the President and his Administration; and that the United States does not join the growing list of governments that sadly have taken anti-democratic actions in recent years to suppress the independence of the bar and to punish lawyers for no other reason than that they have fulfilled their professional duties as lawyers.[1]

## **ARGUMENT**

The Executive Order purports to punish Plaintiff law firm based on its representation of a client and positions that client took in litigation concerning the integrity of the 2020 United States presidential election. The firm's offense appears to be that it advanced arguments on behalf of its client that are contrary to the interests of the President and his Administration. By its own terms, the Order is purely and even proudly retaliatory. Other similar executive orders recently issued by the President also have sought to punish law firms for clients represented and

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus* UIA-IROL certifies that (1) this brief was authored entirely by counsel for the *amicus curiae* and not by counsel for any party, in whole or part; (2) no party or counsel for any party contributed money to fund preparing or submitting this brief; and (3) apart from the *amicus curiae* and its counsel, no other person contributed money to fund preparing or submitting this brief.

positions taken by their lawyers (prior to, during, or after their tenure at the firms) that were contrary to the interests of the President and his Administration. The prescribed punishment is severe and threatens the livelihood and continued viability of the firms in question. It includes stripping security clearances necessary to handle sensitive cases, barring access to federal buildings and facilities, and prohibiting federal contracts with the firms or with the firms' clients.

Plaintiff and several other firms similarly threatened have challenged the actions of the President and his Administration as a violation of United States law, including provisions of the U.S. Constitution. *Amicus curiae* UIA-IROL writes to explain that the executive orders, including the Order in this case, also violate long-standing and widely-recognized international norms and standards as they relate to the rights of lawyers: 1) to practice law; 2) to not be identified with or equated to their clients or the causes or positions of their clients; 3) to appear in courts where they are appropriately qualified; 4) to associate freely; and 5) to enjoy freedom of expression.

### A.    Sources of International Law Protecting the Independence of the Bar

International norms and standards governing the role of lawyers and their protection from harassment and retribution derive from numerous sources, including customary international law, the Law of Nations, and foundational international instruments. These long-standing norms and standards form the foundation of the *UN Basic Principles*, a set of international guidelines adopted by the 8th United Nations Congress on the Prevention of Crime and the Treatment of Offenders, which took place in Havana, Cuba, in 1990. UN Basic Principles, *supra*. The *UN Basic Principles* recognize that lawyers play an essential role in upholding the Rule of Law, ensuring the right to counsel and other due process rights, promoting access to justice, and safeguarding human rights. *Id.* It further recognizes that lawyers can fulfill this critical role only if permitted to exercise their profession freely and to represent clients without intimidation by

governmental authorities.  *Id.*  The *UN Basic Principles* are also rooted in the truism that there can be no independent judiciary without an independent bar since, absent clients' access to lawyers able to challenge governmental action, advocate for disfavored groups, and fight for human rights, there would be no cases for courts to independently adjudicate.  *Id.*

For the past 35 years, the *UN Basic Principles* have stood as the authoritative statement of the precepts that undergird the protection of lawyers across the globe.  *Id.*  They have been repeatedly reaffirmed by international organs and law, including the United Nations Human Rights Council resolution titled *Independence and impartiality of the judiciary, jurors and assessors and the independence of lawyers*.  *See* G.A. Res. 56/3, U.N.Doc. A/HRC/RES/56/3 (July 11, 2024) (hereinafter "Human Rights Council 2024 Resolution")  ("*Expressing its concern* about situation where the entry into or continued practice within the legal profession is controlled or arbitrarily interfered with by the executive branch . . .").

Their significance and universal application were further recognized just this year, in March 2025, when the Council of Europe, the organization overseeing human rights and the Rule of Law for 46 countries and over 700 million citizens, relied on the *UN Basic Principles* to enter into the *Convention for the Protection of the Profession of Lawyer* (the "*Convention*"). *See* Convention, *supra*.  That *Convention*, the ratification process of which will begin in May 2025, expressly responds "to increasing reports of attacks on the practice of the profession, whether in the form of harassment, threats or attacks, or interference with the exercise of professional duties (for example, obstacles to access to clients)."  Council of Europe *Newsroom* website page, https://www.coe.int/en/web/portal/-/council-of-europe-adopts-international-convention-on-protecting-lawyers.  Under the *Convention*, governments will not only be prohibited from interfering with lawyers carrying out their professional duties but will have an affirmative

obligation to ensure that lawyers have the right to practice law without interference from any source and that professional associations "can operate as independent self-governing bodies." *Id.*; see also Convention, *supra*.

The *Convention* followed a number of other European guidelines recognizing these long-standing principles, such as the Council of Bars and Law Societies of Europe's *Charter of Core Principles of the European Legal Profession*, adopted in Brussels in 2006. *See* https://www.ccbe.eu/fileadmin/speciality_distribution/public/documents/DEONTOLOGY/DEON_CoC/EN_DEON_CoC.pdf (hereinafter "*Charter of Core Principles*"). The *Charter of Core Principles* provides that "a lawyer needs to be free - politically, economically and intellectually - in pursuing his or her activities of advising and representing the client. This means that the lawyer must be independent of the state and other powerful interests…" Charter of Core Principles, *supra*, Principle (a), at p. 8. In underlining the importance of self-regulation of bar associations, the *Charter of Core Principles* states unequivocally that "[i]t is one of the hallmarks of unfree societies that the state, either overtly or covertly, controls the legal profession and the activities of lawyers." Charter of Core Principles, *supra*, Principle (j), at p. 9.

Likewise, the International Bar Association, an international association of lawyers founded in London in 1947, adopted its *International Principles on Conduct for the Legal Profession* in 2011, which were amended in 2018. *See* Int'l Bar Assoc., *Int'l Principles on Conduct for the Legal Profession* (Oct. 11 2018), https://www.ibanet.org/document?id=-International-Principles-on-Conduct-for-the-Legal-Profession-2018 (hereinafter "IBA Principles"). The first foundational principle of the document emphasizes that "a lawyer shall maintain independence and be afforded the protection such independence offers in giving clients

6

unbiased advice and representation." IBA Principles, *supra*, Principle 1, at p.5. The explanatory notes explain that:

> It is indispensable to the administration of justice and the operation of the Rule of Law that a lawyer act for the client in a professional capacity free from direction, control or interference. If a lawyer is not guaranteed independence and is subject to interference from others, *especially those in power*, it will be difficult for the lawyer fully to protect clients. Therefore, the guarantee of a lawyer's independence is an essential requirement for the protection of citizens' rights in a democratic society.

IBA Principles, *supra,* Explanatory note 1.2, at p. 12 (emphasis added).

The *UN Basic Principles*, the *Convention,* the *Charter of Core Principles*, the *IBA Principles*, as well as the customary law and international instruments from which they derive, make clear that the Executive Order punishing Plaintiff for representing clients and taking positions adverse to the current Administration constitute a plain violation of international norms and standards. The Order runs afoul of several specific guarantees articulated in those sources as explained in more detail below.

### B.    The Rights Implicated under International Law

#### 1)    Lawyers' Right to Exercise Their Professional and Practice Law

International law recognizes that foundational to core democratic values such as due process rights to counsel, fair trial and presumption of innocence, independence of the judiciary, and protection of human rights, is the right of lawyers to exercise their profession and practice law freely, independently, and without government or other outside interference. The *UN Basic Principles* prescribe in Principle 16 that "[g]overnments shall ensure that lawyers (a) are able to perform all of their professional functions without intimidation, hindrance, harassment or improper interference" and "(c) shall not suffer, or be threatened with, prosecution or administrative, economic or other sanctions for any action taken in accordance with recognized professional duties, standards and ethics." UN Principles, *supra*.

The *Convention* likewise provides that States must ensure lawyers can:

a. offer and provide legal advice, assistance, and representation, including for the purpose of defending human rights and fundamental freedoms;

. . .

c. have prompt and effective access to their clients and prospective clients, even when they are deprived of liberty;
d. be recognised as persons who are authorised to advise, assist or represent their clients;
e. have effective access to any relevant materials in the possession or control of the competent public authorities, courts and tribunals when acting on behalf of their clients without undue delay and restrictions;
f. have effective access to, and communication with, a court, tribunal or other similar body before which they are qualified to appear;

. . .

h. effectively participate in all proceedings in which they are acting on behalf of their clients;
i. inform the public about their services.

Convention, *supra*, Article 6(1); *see also* Council of Europe, Comm. of Members, Rec. No. R(2000)21, 727th Mtg., (CM/Notes/727/10.3) (Oct. 13, 2000) (hereinafter "Recommendation No. R(2000)21) ("All necessary measures should be taken to respect, protect, and promote the freedom of exercise of the profession of lawyer without discrimination and without improper interference from the authorities or the public….").

Customary international law enshrines the same core principles.  This has been recognized in the *International Principles on the Independence and Accountability of Judges, Lawyers and Prosecutors,* a compendium of source documents on the subject published by the International Commission of Jurists (ICJ), an organization of jurists from around the globe with consultative status at various United Nations sections and international bodies.  As the ICJ explains:

In order for legal assistance to be effective, it must be carried out independently. This is recognised in the [*UN Basic Principles*], which states that "adequate protection of the human rights and fundamental freedoms to which all persons are entitled, be they economic, social and culture, or civil and political, requires that all persons have effective access to legal services provided by an independent legal

profession."  To this end, international law establishes certain safeguards aimed at ensuring the independence of individual lawyers as well as of the legal profession as a whole.

Int'l Comm'n of Jurists, Int'l Principles on the Independence and Accountability of Judges, Lawyers, and Prosecutors, Practitioners Guide No.1, at 64 (available at https://www.icj.org/wp-content/uploads/2012/04/International-Principles-on-the-Independence-and-Accountability-of-Judges-Lawyers-and-Procecutors-No.1-Practitioners-Guide-2009-Eng.pdf) (hereinafter "ICJ Principles"); *see also* United Nations Human Rights Counsel, Rep. of the Spec. Rapporteur, *Safeguarding the independence of judicial systems in the face of contemporary challenges to democracy,* U.N. Doc.A/HRC/56/62, ¶¶ 49, 50 (Jun. 21, 2024) (hereinafter "2024 Report of the Special Rapporteur") ("lawyers may be punished simply for doing their job. . . . The politically motivated disciplinary actions . . . risk corrosion of the ability of justice systems to fulfil their essential democratic role and weaken public trust in them. . . . Lawyers . . . could become reluctant to work with individuals who are out of favour with the government or to pursue cases that challenge State authority and protect fundamental democratic rights.")

   High courts around the world also have relied not only on domestic law but also on international sources that establish the rights of lawyers to practice their profession and to be protected from interference.  In *Canada (Attorney General) v. Federation of Law Societies of Canada,* [2015] 1 S.C.R. 401 (Can.), for example, which struck down certain provisions of a Canadian anti-money laundering statute as applied to lawyers, the Supreme Court of Canada relied in part on the fact that:

   Various international bodies have also broadly affirmed the fundamental importance of preventing state interference with legal representation.   The [*UN*]*Basic Principles* . . . state that "adequate protection of the human rights and fundamental freedoms to which all persons are entitled . . . requires that all persons have effective access to legal services provided by an independent legal profession." [*Citations omitted*]  Similarly the Council of Bars and Law Societies

of Europe's *Charter of Core Principles of the European Legal Profession* emphasizes lawyers' "freedom . . . to pursue the client's case", including it as the first of 10 "core principles" (p. 5(online)). The [*IBA's*] *International Principles . . . .* also emphasize committed client representation as the first principle governing lawyers' conduct: "A lawyer shall maintain and be afforded the protection such independence offers in giving clients unbiased advice and representation."

*Canada (Attorney General) v. Fed'n of Law Societies of Canada*, [2015] 1 S.C.R. 401, 101 (Can.) (internal citations omitted); s*ee also Law Society of Kenya v. Attorney General of Kenya,* [2016] KEHC 3806 (KLR) (Kenya Supreme Court finds that *UN Basic Principles* are part of the laws of Kenya; "without an independent, committed and effective law profession, the realization of the rights and fundamental freedoms envisaged under the Constitution will be a mirage."); *see also Morris v. France*, Eur. Ct. H.R., Application *9369/10*, (Apr. 15, 2015) ("The specific status of lawyers gives them a central position in the administration of justice as intermediaries between the public and the courts. They therefore play a key role in ensuring that the courts, whose mission is fundamental in a State based on the rule of law, enjoy public confidence") (*citations omitted*); *see also Prosecutor v. Alex Tamba Brima,* 2005 SCC Online SCSL 38 (Special Court of Sierra Leone relying upon *UN Basic Principles* to find that government authorities have an obligation to protect lawyers in the practice of their profession).

### 2) Lawyers' Right Not to Be Identified With or Equated To Their Clients

The *UN Basic Principles* provide that "Lawyers shall not be identified with their clients or their clients' causes as a result of discharging their duties." UN Basic Principles, *supra*, at Principle 18. Similarly, the *Convention* requires states to "ensure that lawyers do not suffer adverse consequences as a result of being identified with their clients or their clients' causes." Convention, *supra,* Principle 6(5). These consistent admonitions arise from the increasingly common but dangerous tactic of governmental authorities portraying lawyers not as independent

counsel representing a client pursuant to their professional obligations but rather as equivalent to that client and responsible for its conduct. As the *ICJ Principles* underlined:

> This rule is extremely important due to the tendency, in certain countries, to assimilate clients' causes to their lawyers.
>
> ▪ In one report to the UN Commission on Human Rights [the predecessor to the United Nations Human Rights Council], the Special Rapporteur on the independence of judges and lawyers noted his concern at "the increased number of complaints concerning Governments' identification of lawyers with their clients' causes. Lawyers representing accused persons in politically sensitive cases are often subjected to such accusations". The Special Rapporteur concluded that "identifying lawyers with their clients' causes, unless there is evidence to that effect, could be construed as intimidating and harassing the lawyers concerned". According to international law, the Special Rapporteur said, "where there is evidence of lawyers identifying with their clients' causes, it is incumbent on the Government to refer the complaints to the appropriate disciplinary body of the legal profession."

ICJ Principles, *supra*, at 66 (quoting *UN Basic Principles on the Role of Lawyers*, Principle 19).

This unjustified association of lawyer and client effectively erases the meaning of independent legal representation and may subject the lawyer to even worse opprobrium, harassment and punishment than their disfavored clients. International law prohibits this false equivalence, recognizing that, regardless of the client's conduct, the lawyer is its representative only, and acts in such capacity to ensure justice as an integral part of the legal system. *See* 2024 Report of Special Rapporteur, *supra* ("Disparagement and labelling by government officials of judges, prosecutors and lawyers may interfere with their independence and sow the seeds of disdain among the public. . . .; lawyers have been labelled as "traitors" or "foreign agents" when they represented politically sensitive clients or took on human rights-related matters"); *see also* Human Rights Council 2024 Resolution, *supra*, ¶ 7 ("[u]nderscores that lawyers must not be identified with their clients or their clients' causes as a result of discharging their function").

11

### 3) Lawyers' Right to Appear in Courts Where They Are Qualified and to Access Information

Article 6(1)(f) of the *Convention* requires the government to "ensure that lawyers have effective access to, and communication with, a court, tribunal, or other similar body before which they are qualified to practice." This provision represents an extension of the predecessor *Recommendation No. R(2000)* which provides in Principle 1(7) that "[l]awyers should not be refused access to a court before which they are qualified to appear and should have access to all relevant files when defending the rights and interests of their clients in accordance with their professional standards." Recommendations No. R(2000), *supra*, Principle 1(7); *see also* UN Basic Principles*, supra*, No. 19 ("No court or administrative body before whom the right to counsel is recognized shall refuse to recognize the right of a lawyer to appear before it for his or her client unless that lawyer has been disqualified in accordance with national law and practice and in conformity with these principles."; UN Basic Principles*, supra*, No. 21("It is the duty of competent authorities to ensure lawyers access appropriate information, files, and documents in their possession or control in sufficient time to enable lawyers to provide effective legal assistance to their clients.  Such access should be provided at the earliest appropriate time").

Restrictions on qualified lawyers' access to courts, governmental agencies, and relevant information constitute a pernicious restraint on the independence of the bar and, indirectly, of the judiciary.  Assurances of the right to legal counsel, to a fair trial and other components of due process become meaningless if counsel cannot represent their client before the court or agency in which a matter is pending or have the opportunity to review pertinent files and evidence.

### 4) Lawyers' Right to Free Association

International standards make clear that lawyers have a particularized right to associate with their colleagues and their clients.  This right is set forth in Article 23 of the *UN Basic Principles* and is recognized by high courts around the globe.  The Indian Supreme Court, for example, in *R.Muthukrishnan v. Registrar General of High Court of Judicature at Madras [2019] 1 S.C.R. 589,* cited the *UN Basic Principles* as ensuring that lawyers "have the right to freedom of association and assembly, which includes the right to form and join self-governing professional associations to represent their interests."  *See also* ICJ International Principles, at 67 ("As is the case with judges, freedom of expression and association constitute essential requirements for the proper functioning of the legal profession.  Although these freedoms are enjoyed by all persons, they acquire specific importance in the case of persons involved in the administration of justice.") (*citing* UN Basic Principles*, supra*, Principle 23).

### 5) Lawyers' Right to Free Expression

Recognized by the *UN Basic Principles,* lawyers' right to free expression forms a cornerstone of international law.  As set forth in Article 7 of the *Convention*, governments are obligated to "ensure the right of lawyers to inform the public about matters relating to the cases of their clients," subject only to restrictions imposed by professional ethics, the administration of justice and privacy rights.  Convention, *supra*, Article 7(1).  The provision also requires governments to ensure "the right of lawyers . . . to promote the rule of law and adherence to it, to take part in public discussion on the substance, interpretation and application of existing and proposed legal provisions, judicial decisions, the administration of access to justice and the promotion and protection of human rights, as well as to make proposals for reforms concerning these matters."  Convention, *supra*, Article 7(2).

As the European Court of Human Rights held in *Morris v. France*,

134. …freedom of expression is applicable also to lawyers. It encompasses not only the substance of the ideas and information expressed but also the form in which they are conveyed. [citations omitted] Lawyers are thus entitled, in particular, to comment in public on the administration of justice, provided that their criticism does not overstep certain bounds. [citations omitted]. . .

135. *The question of freedom of expression is related to the independence of the legal profession, which is crucial for the effective functioning of the fair administration of justice.*"

*Morris v. France*, *supra*, at II.D.1(c) (*Citations omitted*) (*emphasis added*). *See also* 2024 Report of the Special Rapporteur, *supra*, ¶ 48 ("disciplinary proceedings against lawyers have been enabled or initiated—sometimes resulting in disbarment or suspension—following statements that amount to the legitimate exercise of freedom of expression") (citing examples).

### C.    The Order Violates Internationally Recognized Rights of Lawyers

The Executive Order directed at Plaintiff violates each of these rights recognized under international law. It punishes Plaintiff merely for practicing law, representing clients, and taking positions the President and his Administration disfavor. The statement in the Order that Plaintiff "spearheads efforts to weaponize the American legal system and degrade the quality of American elections" amounts to nothing more than a bald and unspecified assertion that Plaintiff's clients took positions in litigation relating to the 2020 election that the President disagrees with. It also seeks to equate the law firm with its clients and to punish lawyers as though their conduct were at issue, a strategy routinely adopted by anti-democratic regimes to castigate the legal profession in retaliation for its representation of disfavored groups. The Order further disallows Plaintiff's lawyers from entering certain federal buildings and facilities, thereby restricting them from appearing before courts, agencies and other entities necessary for the

practice of law in the federal system.  It infringes Plaintiff's rights to association and free expression by purporting to punish its lawyers for the identity of their clients, the causes and positions they have advocated, and statements they have made on their clients' behalf in and outside the courtroom.  In short, the Executive Order amounts to an egregious infringement of a range of internationally-recognized rights designed to ensure the independence of lawyers and to protect them from harassment and intimidation,

## **CONCLUSION**

UIA-IROL has taken steps to protect lawyers around the world from attacks by governments intent on curbing the independence of the bar.  It has done so in the conviction that rights to due process, to counsel, to a fair trial, and against self-incrimination, as well as the importance of an independent judiciary, all require that lawyers be free to practice their profession without government harassment.  International law – like U.S. law, including the Constitution – recognizes that lawyers' freedom to exercise their profession is fundamental to the protection of democracy and human rights.  Regrettably, in recent years, certain governments increasingly have opted to interfere with lawyers' freedoms, attacking them for the clients they represent and the positions they take, and equating them with their clients – a dangerous trend that puts core democratic values at risk.

United States bar associations and lawyers have stood shoulder to shoulder with UIA-IROL to safeguard lawyers from intimidation.  To be sure, the United States has been a leader in those efforts.  Yet now, the United States President has issued executive orders to punish law firms for the lawyers they hire, positions they take, and clients they represent.  It would have devastating consequences for the bar, the judiciary, and people throughout the United States and worldwide if this nation were to now join the ranks of those countries opportunistically

15

undercutting the independence of the bar and of the judiciary for anti-democratic, authoritarian

ends.  It would also violate clear and widely-recognized international norms, putting the United

States on the wrong side of protection of democratic values, the Rule of Law, and human rights.

For these reasons, UIA-IROL respectfully supports Plaintiff's motion for summary

judgment to enjoin enforcement of the offending Executive Order.


Dated: April 28, 2025.

/s/ Jerome C. Roth

Jerome C. Roth (*pro hac vice*)


ROTH GLOBAL LAW/ARB
990 Green Street
San Francisco, CA 94133
Telephone: (415) 860-0909
Jerry@RothGlobal.com

/s/ Jacqueline R. Scott

Jacqueline R. Scott (*pro hac vice)*
D.C. Bar No. 495479
FORTNEY & SCOTT, LLC
1909 K Street, NW Suite 330
Washington, D.C. 20006
Telephone (202) 689-1200
jscott@fortneyscott.com

*Counsel for* Amicus Curiae *UIA-IROL*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with Local Civil Rule 7(o)(4) and does not exceed 25 pages.  I further certify that the attached *amicus* brief complies with the typeface and type style requirements of Local Rule 5.1(d) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 12-point Times New Roman font.

Dated: April 28, 2025.

*/s/ Jacqueline R. Scott*
Jacqueline R. Scott
D.C. Bar No. 495479
FORTNEY & SCOTT, LLC
1909 K Street, NW Suite 330
Washington, D.C. 20006
Telephone (202) 689-1200
jscott@fortneyscott.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 28, 2025, I filed the foregoing and served electronically via the Court's CM/ECF system upon all counsel of record.

Dated:  April 28, 2025.

Respectfully submitted:

*/s/ Jacqueline R. Scott*
Jacqueline R. Scott
D.C. Bar No. 495479
FORTNEY & SCOTT, LLC
1909 K Street, NW Suite 330
Washington, D.C. 20006
Telephone (202) 689-1200
jscott@fortneyscott.com