UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSMAN GODFREY LLP, <br><br> Plaintiff, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, et al., <br><br> Defendants | Civil Action No. 1:25-cv-01107 |

**BRIEF OF AMICI CURIAE 23 NONGOVERNMENTAL ORGANIZATIONS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF PLAINTIFF SUSMAN GODFREY LLP**

William E. Zapf (D.C. Bar No. 987213)
Sarah Fink (D.C. Bar 166663)
Amelia Schmidt (D.C. Bar 1012380)
Kaiser PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
T: (202) 640-2850
F: (202) 280-1034
wzapf@kaiserlaw.com
sfink@kaiserlaw.com
aschmidt@kaiserlaw.com

*Attorneys for Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

No amici curiae has a parent corporation or issues stock.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ................................................................................i

TABLE OF CONTENTS ............................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ...........................................................................................................................1

INTERESTS OF AMICI CURIAE ..................................................................................................3

ARGUMENT ..................................................................................................................................9

    I.   THE ORDER WILL CHILL NGOS FROM EXERCISING THEIR FIRST AMENDMENT RIGHT TO PETITION THE GOVERNMENT FOR FEAR OF RETRIBUTION. ..................................................................................................................11

    II.  BY THREATENING NGOS' ABILITY TO ACCESS COUNSEL, THE ORDER ALSO VIOLATES AMICI'S FIRST AMENDMENT FREEDOM OF ASSOCIATION. .........12

    III. THE ORDER IS AN AFFRONT TO THE RULE OF LAW. ..........................................14

CONCLUSION .............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) ...................................................................................................................11

*BE & K. Constr. Co. v. NLRB*,
   536 U.S. 516 (2002) ...................................................................................................................9

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ...........................................................................................................14, 15

*Healy v. James*,
   408 U.S. 169 (1972) .................................................................................................................10

*Houston Cmty. Coll. Sys. v. Wilson*,
   595 U.S. 468 (2022) .................................................................................................................10

*NAACP v. Alabama*,
   357 U.S. 449 (1958) .................................................................................................................12

*NAACP v. Button*,
   371 U.S. 415 (1963) .....................................................................................................9, 11, 14

*Nat'l Rifle Ass'n of Am. v. Vullo*,
   602 U.S. 175 (2024) ...............................................................................................10, 11, 13, 14

*Nieves v. Bartlett*,
   587 U.S. 391 (2019) .................................................................................................................10

*United Transp. Union v. State Bar of Mich.*,
   401 U.S. 576 (1971) .................................................................................................................10

**Other Authorities**

*The Roles of Litigation in American Democracy*,
   65 Emory L. J. 1657 (2016)......................................................................................................10

Pursuant to Local Civil Rule 7(o), by and through undersigned counsel, the amici curiae ("Amici") named herein submit this brief in support of the motion for summary judgment by Plaintiff Susman Godfrey LLP ("Susman Godfrey").[1]

## **INTRODUCTION**

Amici are twenty-three (23) nonprofit groups and nongovernmental organizations ("NGOs") that share a common interest and concern: The President's April 9, 2025 Executive Order, titled "Addressing Risks from Susman Godfrey" ("Order"), is unconstitutional with respect to the First Amendment rights of both Susman Godfrey and NGOs that have either worked with Susman Godfrey in the past and/or that might bring challenges against the Trump administration in the future, either in court or elsewhere. As has become clear in the past month, the Order against Susman Godfrey is the continuation of a clear trend: The President has targeted several other major law firms, including for their pro bono work on behalf of NGOs like Amici. The Order sets a dangerous precedent that, if permitted to stand, will stifle the President's critics through unconstitutional threats of retribution and erode the rule of law.[2]

The Order harms NGOs like Amici in three principal ways. First, it chills NGOs' First Amendment right to petition the government for redress of grievances. The President is targeting and threatening lawyers who have represented certain causes he disfavors to severe effect: canceling their government contracts, revoking security clearances, blocking them from meeting with federal officials, and even barring them from entering government buildings. Such

---

[1] Pursuant to Local Civil Rule 7(o)(5), counsel for Amici certify that no counsel for a party authored this brief in whole or in part, and no person other than Amici, their members, or their counsel made a monetary contribution to the brief's preparation or submission.

[2] The Order is particularly pernicious because organizations might find themselves sanctioned even for taking public positions in support of federal, state, or local government policies that the Trump administration subsequently decides to oppose.

1

unvarnished viewpoint discrimination against law firms sends a clear message to Amici: Do not challenge the President or you will be next. This directly impinges on Amici's protected advocacy efforts and is plainly unconstitutional.

Second, by targeting law firms like Susman Godfrey, the Order restricts Amici's access to effective legal representation, impeding their ability to challenge or support government policies and actions in court, and violating Amici's First Amendment freedom of association. Susman Godfrey is not the only law firm that has been targeted by the President. The Order is one of a series of presidential actions meting out retribution against law firms and their clients for one reason: They have supported positions that the President does not like. As a result, NGOs rightfully fear being targeted themselves by the Trump administration if they engage Susman Godfrey or other firms that may be targeted by the President. And Susman Godfrey and firms like it, in turn, fear retribution if they represent NGOs concerning interests that do not align with the views of the President. The end result necessarily includes a diminished ability of NGOs to obtain effective counsel, including on a pro bono basis, further impinging on their First Amendment rights.

Third, the Order threatens the rule of law, which depends on organizations like Amici to challenge or lend support to governmental policies and actions when merited through action in the courts. The rule of law similarly depends on the ability of private and public interest lawyers to represent clients without fear of personal, political retribution. Championing such causes through court action is central to America's system of checks and balances—it is a fundamental way for the American people to hold accountable a government pushing the boundaries of its authority. NGOs serve a special role in initiating and amplifying such causes. They must be able

2

to engage in constitutionally protected speech and association to do their work without fear of retribution.

## INTERESTS OF AMICI CURIAE

Amici are nonprofit groups and nongovernmental organizations ("NGOs") that work on a wide range of legal and public-policy issues, including civil rights, environmental issues, government accountability, gun violence, public health, and social justice. As nonpartisan organizations, Amici sometimes work collaboratively with or support federal, state, and local governments, sometimes advocate for reforms or regulatory changes, and sometimes challenge government policies and actions informally or in court. Amici have both supported and challenged certain policies and actions of the federal government in a variety of circumstances, regardless of the president's political party. Together, they have grave constitutional concerns about the Executive Order directed at Susman Godfrey and support Susman Godfrey's request that the Court declare it unconstitutional and enjoin it permanently.

The following is a list of Amici:[3]

1. **Advocates for Transgender Equality Education Fund ("A4TE")** is a nonprofit organization dedicated to advocating for the rights of transgender and nonbinary individuals across the United States. A4TE seeks to achieve full-lived equality for the transgender and nonbinary community through impact litigation, policy advocacy, and education in areas such as employment, healthcare, housing, conditions of confinement, education, identity documents, and public accommodations.

2. **American Oversight** is a nonpartisan, nonprofit section 501(c)(3) organization committed to advancing truth, accountability, and democracy by enforcing the public's

---

[3] The list of Amici is also included in the Appendix to this brief.

3

right to government records. Through research and Freedom of Information Act (FOIA) and other public records requests, American Oversight uses the information it gathers, and its analysis of that information, to educate the public about the activities and operations of federal, state, and local governments through reports, published analyses, press releases, and other media.

3. **Americans United for Separation of Church and State ("Americans United")** is a nonpartisan, not-for-profit educational and advocacy organization that brings together people of all religions and none to protect the right of everyone to believe as they want and stop anyone from using their beliefs to harm others. Americans United fights in the courts, legislatures, and the public square for freedom without favor and equality without exception. It regularly files lawsuits and submits amicus briefs to defend the Constitution, the rule of law, and our cherished American principle of the separation of religion and government.

4. **Brady Center to Prevent Gun Violence ("Brady")** is the nation's most longstanding nonpartisan, nonprofit organization dedicated to reducing gun violence. Brady passes and defends gun violence prevention laws, reforms the gun industry, and educates the public about responsible gun ownership. Brady's work to free America from gun violence involves critical partnerships with pro bono counsel on amicus brief filings, gun violence prevention law defense, and affirmative litigation against the gun industry.

5. **Campaign for Accountability ("CfA")** is a non-profit 501(c)(3) organization dedicated to exposing misconduct and malfeasance in public life. To advance its mission, CfA relies on research, litigation, and legal complaints to share evidence of wrongdoing with the American public.

6. **The Center for Reproductive Rights** is the only global legal advocacy organization dedicated to advancing reproductive rights. For more than 30 years, the Center has litigated groundbreaking reproductive rights cases against government defendants—including the U.S. government—regardless of the political party in power. The Center frequently partners with private law firms, including some of the law firms that have been targeted by President Trump's punitive executive orders, who work pro bono to defend the reproductive rights of patients, healthcare providers, and others against government incursion.

7. **Children's Rights, Inc.** is a national advocacy organization committed to improving the lives of children who are in or impacted by government systems. Through strategic advocacy and legal action—often in partnership with leading law firms as co-counsel—Children's Rights holds governments accountable for keeping kids safe, healthy, and supported. Since its founding in 1995, Children's Rights has achieved lasting, systemic change for hundreds of thousands of children across more than 20 jurisdictions throughout the United States.

8. **Citizens for Responsibility and Ethics in Washington ("CREW")** is a nonpartisan, nonprofit government watchdog organization committed to protecting the rights of citizens to be informed about the activities of government officials and agencies and to ensure ethics, transparency, and integrity in government. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW routinely uses government records made available to it under FOIA, the Federal Advisory Committee Act, and other federal laws, and widely disseminates those records to the public.

9. **Earthjustice** is the nation's largest public interest environmental law organization. Its staff includes over 200 attorneys who litigate at the federal, state, and local level. Since its founding over 50 years ago, Earthjustice has brought hundreds of lawsuits against both Democratic- and Republican-led administrations, and has always represented its clients free of charge.

10. **The Environmental Law & Policy Center ("ELPC")** is the Midwest's leading regional environmental advocacy organization. For more than 30 years, ELPC has used litigation, policy advocacy, and strategic communications to improve environmental quality and protect the Midwest's natural resources.

11. **GIFFORDS Law Center to Prevent Gun Violence** is the legal arm of the gun violence prevention organization founded and led by former Congresswoman and gun violence survivor Gabby Giffords.

12. **GLBTQ Legal Advocates & Defenders (GLAD Law)** is New England's leading public interest legal organization dedicated to creating a just society free of discrimination based on transgender status, HIV status, and sexual orientation. Through federal court litigation GLAD Law advances the rights of LGBTQ people and people living with HIV.

13. **Lambda Legal Defense and Education Fund, Inc. (Lambda Legal)** is the nation's oldest and largest legal organization committed to achieving full recognition of the civil rights of lesbian, gay, bisexual, transgender people, and everyone living with HIV through impact litigation, education, and policy advocacy. Lambda Legal has been instrumental in securing landmark legal victories for LGBTQ+ people, including the right to marriage equality and broad protections against discrimination.

14. **Lawyers for Good Government ("L4GG")** is a high-impact nonprofit whose mission is to mobilize lawyers to ensure that all levels of government—federal, state, and local—promote equal justice under the law and uphold civil and human rights. Since L4GG's founding in 2016, it has mobilized over $100 million in pro bono legal services through a dedicated network of more than 125,000 lawyers and advocates in all 50 states.

15. **Multicultural Media, Telecom and Internet Council ("MMTC")** was established in 1986 as a national nonprofit organization dedicated to promoting and preserving equal opportunity and civil rights in the mass media, telecommunications, and broadcast industries. MMTC performs civil rights advocacy; conducts research and analysis, particularly in the area of broadband access and broadband adoption for people of color and other vulnerable populations; and regularly participates in agency rulemaking proceedings affecting these issues.

16. For more than 55 years, the **National Health Law Program ("NHeLP")** has engaged in litigation and policy advocacy to address barriers to health care being experienced by limited-income people, people with disabilities, older adults, and children. As such, NHeLP is interested in the issues raised by this case.

17. **The National Network to End Domestic Violence ("NNEDV")** represents the 56 U.S. State and territorial coalitions against domestic violence. NNEDV was instrumental in the passage and implementation of the Violence Against Women Act. NNEDV is dedicated to creating a social, political, and economic environment in which domestic violence no longer exists and works to make domestic violence a national priority, change the way society responds to domestic violence, and strengthen domestic violence advocacy at every level.

18. **The National Police Accountability Project ("NPAP")** was founded in 1999 to address misconduct by law enforcement officers through coordinating and assisting civil rights lawyers. NPAP has approximately 550 attorney members practicing in every region of the United States. Every year, NPAP members litigate the thousands of egregious cases of law enforcement abuse that do not make news headlines as well as the high-profile cases that capture national attention. NPAP provides training and support for these attorneys and resources for non-profit organizations and community groups working on police and corrections officer accountability issues.

19. **The National Women's Law Center ("NWLC")** is a nonprofit legal organization, founded in 1972, that fights for gender justice in the courts, in public policy, and in our society. NWLC works across issues that are central to the lives of women and girls—especially women of color, LGBTQ people, and low-income women and families.

20. **Natural Resources Defense Council, Inc. ("NRDC")** is a nonprofit advocacy organization that works to protect public health and the environment. Since 1970, NRDC has litigated many hundreds of cases, some as a plaintiff challenging governmental actions and some as an intervenor or amicus, defending governmental actions.

21. **Public Rights Project ("PRP")** is a national nonprofit that helps local officials fight for civil rights through training, legal advice, and litigation. PRP has a network of more than 200 government offices across the country, committed to a multiracial democracy where even the most marginalized can thrive.

22. **Sierra Club** is a national nonprofit organization with over 620,000 members whose mission includes practicing and promoting the responsible use of the earth's ecosystems and resources, protecting the quality of the environment, and using all lawful means to

carry out these objectives. Sierra Club's interest in the present case is to protect the organization's ability to use lawful means to carry out its mission, and in particular to advocate for and defend strong federal environmental policies and to bring litigation challenging federal actions that violate environmental laws and undermine public participation in executive decision making.

23. As the largest environmental advocate focused on the South and one of the most robust nonprofit environmental law firms in the nation, the **Southern Environmental Law Center ("SELC")** represents hundreds of grassroots organizations and local governments every year as they advocate for environmental policies, enforce environmental laws, and hold governments and industry accountable. SELC's advocates appear in every level of the state and federal courts and advocate in Congress and before federal environmental and land management agencies. In the service of its public interest mission, SELC has filed successful federal litigation against one or more federal agencies under every presidential administration over the past 40 years.

## ARGUMENT

The First Amendment right to petition the government is at the core of America's democratic system of government and the rule of law. The Supreme Court has recognized the "right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K. Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (internal quotation marks omitted). Litigation is "a form of political expression. Groups which find themselves unable to achieve their objectives through the ballot frequently turn to the courts." *NAACP v. Button*, 371 U.S. 415, 429 (1963). "And under the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." *Id.* at 430.

This includes the right to petition the government without fear of retaliation. "[V]iewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). Government officials are prohibited "from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). *See also Vullo*, 602 U.S. at 188 ("What [the government official] cannot do … is use the power of the State to punish or suppress disfavored expression.").

Relatedly, NGOs have a First Amendment right to freely associate with law firms like Susman Godfrey in their endeavors without fear of retribution. *See Healy v. James*, 408 U.S. 169, 181 (1972) ("Among the rights protected by the First Amendment is the right of individuals to associate to further their personal beliefs."). "[C]ollective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971).

NGOs that work on a wide range of issues provide critical oversight and a check on government action that may exceed the law. Petitioning the courts for redress, including through associating with counsel, is an important part of that work. "An obvious example of how the process of litigation promotes democracy is civil rights litigation, which allows individuals who are otherwise shut out of the democratic process to access a governmental official (the judge) who must listen to their claim." Alexandra D. Lahav, *The Roles of Litigation in American Democracy*, 65 Emory L. J. 1657, 1659 (2016). NGOs often represent the interests and concerns of their own members and advocate for citizens and causes that may otherwise go unfunded or ignored. That activity is unquestionably protected by the First Amendment.

Yet, the Order violates the law in three critical ways. First, by retaliating against a law firm for its client advocacy, the Order is intended to chill anyone who might consider engaging in First Amendment activity that is disapproved by any presidential administration. Second, it undermines Amici's First Amendment right to freely associate by improperly incentivizing law firms like Susman Godfrey to forgo representing NGOs like Amici or co-counseling with them, especially in litigation that may be disfavored by the President. Third, by setting a precedent for constricting the ability of NGOs to challenge any president who may choose to punish parties for exercising their First Amendment rights, the Order also gravely erodes the rule of law.

## I.   THE ORDER WILL CHILL NGOS FROM EXERCISING THEIR FIRST AMENDMENT RIGHT TO PETITION THE GOVERNMENT FOR FEAR OF RETRIBUTION.

The very nature of the Order is designed to chill NGOs from exercising their First Amendment right to petition the government for fear that the President will turn on them next for challenging or criticizing his policies and actions. If Amici challenge the administration in court, they could find themselves the target of the next executive order. *See Button*, 371 U.S. at 432 ("For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar."). And that is because "a government entity's 'threat of invoking legal sanctions and other means of coercion' against a third party 'to achieve the suppression' of disfavored speech violates the First Amendment." *Vullo*, 602 U.S. at 180 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)). *See also Button*, 371 U.S. at 433 ("These freedoms are delicate and

vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions.").[4]

The Order plainly seeks to punish speech activity. Section Five, for example, precludes Susman Godfrey from meeting with government officials and even entering public buildings, literally locking them out from petitioning the government. *See* Order, Section 5(a). Such measures, if applied to NGOs like Amici, could cripple their missions simply for exercising their First Amendment rights.

## II.   BY THREATENING NGOS' ABILITY TO ACCESS COUNSEL, THE ORDER ALSO VIOLATES AMICI'S FIRST AMENDMENT FREEDOM OF ASSOCIATION.

NGOs often depend on access to skilled outside counsel to assist with matters of public significance, including sometimes on a pro bono basis. The Order, if allowed to stand, not only would discourage Susman Godfrey from representing and co-counseling with Amici and similarly situated NGOs; it would strike fear throughout the bar that, if a law firm takes on a case opposed by the President, they could be the next firm to suffer sanctions. The result would be a direct infringement on NGOs' First Amendment freedom of association. *See NAACP v. Alabama*, 357 U.S. 449, 460 (1958) ("It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of [freedom of speech].").

The President's ire has gone far beyond Susman Godfrey. Before the Order targeting Susman Godfrey, the President had issued executive orders or memoranda against Covington &

---

[4] And, as noted above, the nature of the Order issued by President Trump is especially threatening to First Amendment rights because it imposes sanctions for activities by law firms in support of actions by prior administrations.

12

Burling LLP;[5] Perkins Coie LLP;[6] Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss");[7] Jenner & Block LLP;[8] and Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale").[9] The Order expressly targets Susman Godfrey's work the President disapproves of. *See* Susman Godfrey Order, Section 1 (claiming Susman Godfrey's work "degrade[s] the quality of American elections"). The President has similarly targeted other firms' work, including pro bono work. *See, e.g.,* WilmerHale Order, Section 1 (criticizing firms' "harmful activity through their powerful pro bono practices, earmarking hundreds of millions . . . for destructive causes").

Moreover, at least nine major firms (Paul Weiss; Skadden, Arps, Slate, Meagher & Flom LLP; Willkie Farr & Gallagher LLP; Milbank LLP; Kirkland & Ellis LLP; Latham & Watkins LLP; Allen Overy Shearman Sterling LLP; Simpson Thacher & Bartlett LLP; Cadwalader, Wickersham & Taft LLP) and counting have entered into agreements with the President to avoid sanctions—and all of these agreements together expressly require the firms to devote nearly a billion dollars in pro bono legal aid to causes the President approves. *See* Ella Lee, *Law Firms Fight for Decisive Relief from Targeted Trump Orders*, The Hill (Apr. 23, 2025).[10] These agreements demonstrate that the President's illicit strategy is working as designed. *See Vullo*, 602 U.S. at 193 (citing the reaction of the threatened parties as evidence of coercion).

---

[5] *Fact Sheet: President Donald J. Trump Directs Suspension of Security Clearances and Evaluation of Government Contracts for Involvement in Government Weaponization* (Feb. 25, 2025).
[6] *Addressing Risks from Perkins Coie LLP* (Mar. 6, 2025).
[7] *Addressing Risks from Paul Weiss* (Mar. 14, 2025).
[8] *Addressing Risks from Jenner & Block* (Mar. 25, 2025).
[9] *Addressing Risks from WilmerHale* (Mar. 27, 2025) ("WilmerHale Order").
[10] Available at https://thehill.com/regulation/court-battles/5263915-trump-executive-orders-perkins-coie-willmerhale/https://www.reuters.com/legal/jenner-block-sues-us-government-following-trump-executive-order-2025-03-28/.

13

The goal in all of this is to intimidate lawyers into not representing certain clients or causes, including pro bono matters, that are unpopular with the President. This is rank viewpoint discrimination. By constraining NGOs' ability to obtain counsel to participate in protected speech through threats to third parties (the law firms), the Order violates the First Amendment. *See id.* at 191 (holding that it was a violation of the First Amendment for a New York government official to threaten third-party insurance carriers with punishment if they did business with the NRA).

Through this intimidation, the President aims to silence his critics through threats of retribution. In this way, the Order transforms an NGO's choice to challenge a federal policy or action consistent with its mission into a perilous decision about its own survival. It transforms the decisions about whether and whom to engage as counsel from a professional decision by the client and lawyer into a potentially existential question for NGOs—driven by fear of retribution from the President. In sum, the Order drives a wedge between NGOs and their counsel, a blatant infringement on NGOs' freedom of association. *See Button*, 371 U.S. at 437 (holding that state limitations on arranging for legal representation violated First Amendment freedom of association).

## III.     THE ORDER IS AN AFFRONT TO THE RULE OF LAW.

The practical result of the Order is that it stifles the speech of NGOs like Amici, suppresses their freedom to petition the government and of association, and insulates the presidential administration from both criticism and the limits imposed by the law. As such, it is a direct assault on the rule of law. "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010). "Premised on mistrust of governmental power, the First Amendment stands against

14

attempts to disfavor certain subjects or viewpoints." *Id.* at 340. If the Order is permitted to stand, and similar orders follow, where there once was vibrant and legitimate criticism and a valuable check on executive power, there will be silence. NGOs that might otherwise challenge the legality of certain government action will be silenced—whether by fear of retribution from the President directly or because they cannot access skilled legal representation from law firms that, too, have been silenced by fear.

## CONCLUSION

For these reasons, the Amici urge the Court to safeguard their survival—and the survival of the First Amendment—by granting Susman Godfrey's motion for summary judgment and permanently enjoining the President's Order.

Respectfully submitted,

DATED: April 25, 2025

*/s/ William E. Zapf*
William E. Zapf (D.C. Bar No. 987213)
Sarah Fink (D.C. Bar 166663)
Amelia Schmidt (D.C. Bar 1012380)
Kaiser PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
T: (202) 640-2850
F: (202) 280-1034
wzapf@kaiserlaw.com
sfink@kaiserlaw.com
aschmidt@kaiserlaw.com

*Attorneys for Amici Curiae*

15

# **APPENDIX**

1. Advocates for Transgender Equality Education Fund
2. American Oversight
3. Americans United for Separation of Church and State
4. Brady Center to Prevent Gun Violence
5. Campaign for Accountability
6. Center for Reproductive Rights
7. Children's Rights, Inc.
8. Citizens for Responsibility and Ethics in Washington
9. Earthjustice
10. Environmental Law & Policy Center
11. GIFFORDS Law Center to Prevent Gun Violence
12. GLBTQ Legal Advocates & Defenders
13. Lambda Legal Defense and Education Fund, Inc.
14. Lawyers for Good Government
15. Multicultural Media, Telecom and Internet Council
16. National Health Law Program
17. National Network to End Domestic Violence
18. National Police Accountability Project
19. National Women's Law Center
20. Natural Resources Defense Council, Inc.
21. Public Rights Project
22. Sierra Club
23. Southern Environmental Law Center