**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SUSMAN GODFREY LLP,

        *Plaintiff*,

   v.

EXECUTIVE OFFICE OF THE
PRESIDENT, *et al.*,

        *Defendants*.

Civil Case No.: 1:25-cv-01107
Judge Loren L. AliKhan

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ......................................................................................................1

ARGUMENT ...........................................................................................................2

I.     DEFENDANTS' OPPOSITION ESTABLISHES THAT SUSMAN IS ENTITLED TO A PERMANENT INJUNCTION.................................................2

     A.    Defendants Fail to Dispute the Operative Facts or Rebut Susman's Legal Arguments.............................................................................2

     B.    Defendants Do Not Dispute the Existence of Irreparable Harm or the Equitable Basis for Enjoining the Order ...............................8

II.    DEFENDANTS' REMAINING COUNTERARGUMENTS ARE EASILY REJECTED ...............................................................................9

CONCLUSION........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Ams. for Prosperity Found. v. Bonta*,
    594 U.S. 595 (2021)...................................................................................................6

* *Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...............................................................................................3, 4

*Cause of Action Inst. v. U.S. Dep't of Justice*,
    330 F. Supp. 3d 336 (D.D.C. 2018)........................................................................13

*Dep't of Navy v. Egan*,
    484 U.S. 518 (1988)................................................................................................10

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)..................................................................................................7

*Internet Fin. Servs. v. L. Firm of Larson-Jackson, P.C.*,
    310 F. Supp. 2d 1 (D.D.C. 2004).............................................................................3

*Karem v. Trump*,
    960 F.3d 656 (D.C. Cir. 2020)..................................................................................8

*Koch v. Holder*,
    930 F. Supp. 2d 14 (D.D.C. 2013)............................................................................5

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)....................................................................................14

* *Legal Servs. Corp. v. Velazquez*,
    531 U.S. 533 (2001)...........................................................................................3, 8, 9

*McCutcheon v. Fed. Election Comm'n*,
    572 U.S. 185 (2014)..................................................................................................6

*NAACP v. Alabama ex. rel. Patterson*,
    357 U.S. 449 (1958)..................................................................................................6

* *NRA v. Vullo*,
    602 U.S. 175 (2024)............................................................................................4, 10

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984)..................................................................................................5

*Sioux Tribe of Indians v. United States*,
    316 U.S. 317 (1942)................................................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023)........................................................................................5

*UAW-Lab. Emp. & Training v. Chao*,
  325 F.3d 360 (D.C. Cir. 2003) ......................................................................12

*United States v. Dynamic Visions Inc.*,
  971 F.3d 330 (D.C. Cir. 2020) ........................................................................3

*Yazzie v. Nat'l Org. for Women*,
  712 F. Supp. 3d 56 (D.D.C. 2024) ...............................................................3, 4

**FEDERAL STATUTES**

22 U.S.C. § 612(a) ...............................................................................................13

22 U.S.C. § 613(g) ...............................................................................................13

40 U.S.C. § 121 *et seq.*........................................................................................12

**FEDERAL RULES**

Fed. R. Civ. P. 56(c) ..............................................................................................3

Fed. R. Civ. P. 56(e)(2)..........................................................................................3

**FEDERAL REGULATIONS**

Executive Order 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025).............................12

## INTRODUCTION

The Department of Justice asks this Court to bless a world in which the President may use the power of his office to exact revenge against a law firm—or any other entity or individual—for advocating for clients and causes that the President views as contrary to his personal and political interests. Rather than acknowledge that this is what they seek, Defendants attempt to obscure the true nature of their objectives. They ignore the Order's own statement of retaliatory intent and the Administration's many promises to attack disfavored lawyers; they treat the Order's punitive provisions as random, unconnected actions rather than interwoven parts of a comprehensive retaliatory scheme; and they insist that Susman Godfrey may not obtain judicial review until the Order's sword of Damocles has actually fallen. But no amount of obfuscation can mask what is going on here. The Order is an unconstitutional act of vengeance against the President's declared political enemies, plain and simple. It is ripe for review now. And it should be stopped now.

Indeed, Susman is merely the latest of the President's targets. Although a few firms in addition to Susman have stood up for their rights, many other law firms have already acceded to the President's demands by pledging to work toward Administration-approved causes, subject to the ever-present threat of further punishment should the firms stray from the path the President has dictated. This series of executive orders and negotiated "deals" is more than just an attack on the legal profession. It is a frontal assault on the Bill of Rights, the rule of law, and the Judiciary's ability to perform its constitutionally assigned responsibility to decide cases and controversies—including cases against the federal government—with the aid of zealous advocacy. The courts have rightfully stood in the way of the President's efforts to trample on the principles that have preserved this Nation since its inception. Just days ago, another court in this District permanently enjoined the executive order attacking the Perkins Coie law firm, finding it to be an "unprecedented

attack on these foundational principles."[1]  This Court should follow the same course.  Having temporarily enjoined the Order based on its blatant unconstitutionality, the Court should now grant final judgment to Susman and enter a permanent injunction.

## ARGUMENT

I.    **DEFENDANTS' OPPOSITION ESTABLISHES THAT SUSMAN IS ENTITLED TO A PERMANENT INJUNCTION**

### A.    Defendants Fail to Dispute the Operative Facts or Rebut Susman's Legal Arguments

In temporarily enjoining the Order, this Court held that Susman was likely to prevail on (at minimum) its claims that the Order violates the First and Fifth Amendments.  *See* Tr. of TRO Hearing 43:20-48:10 (Apr. 15, 2025), ECF No. 19 ("Tr.").  This Court held that the Firm was likely to prevail on its claims that the Order violates the First Amendment due to impermissible retaliation and viewpoint discrimination against Susman based on the Firm's advocacy for clients that the President views as enemies and for causes of which he disapproves.  *Id.* at 43:24-47:7.  This Court also held that the Firm was likely to prevail on its claims that the Order deprives the Firm of protected liberty and property interests without due process, denies the Firm the equal protection of the laws, and infringes Susman's clients' right to counsel.  *See id.* at 47:8-48:10.  And the Court held that the Order threatens to inflict irreparable constitutional, reputational, and economic injuries on Susman.  *Id*. at 48:11-50:25.  Now, after this Court has had the opportunity to consider Defendants' best arguments in defense of the Order, Susman's entitlement to permanent relief is indisputable.  Defendants do not meaningfully dispute *any* of the facts underlying Susman's claims, and they have no answer on the law.

1.  Susman has established beyond any possible doubt that the Order punishes the Firm for

---

[1] Memorandum Opinion 3, *Perkins Coie v. DOJ*, No. 25-cv-716 (D.D.C. May 2, 2025), ECF No. 185 ("*Perkins* Op.").

protected advocacy.  *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001).  Defendants

do not (and cannot) dispute what the Order says on its face:  in the President's own words, Susman

acted against the "national interest" by, among other things, supposedly "spearhead[ing] efforts to

. . . degrade the quality of American elections," and the Order's punishments have been imposed

*for that reason*.  Order § 1.  Defendants do not dispute that the Order's accusation could refer only

to Susman's representation of Dominion Voting Systems and state elections officials in defending

the integrity of the 2020 election—anathema to the President.  Defs. Resp. to Statement of

Undisputed Material Facts ("SOF Resp.") ¶¶ 54-68; Opp. to Mot. for Summ. J. ("Opp.") 8.

Defendants do not dispute that the President and other officials publicly attacked the Firm, its

clients, and other perceived political opponents, and did so on the ground that the President

disapproved the viewpoints being expressed.  SOF Resp. ¶¶ 54, 71-75, 89-91, 103-08, 112-13,

118-22, 160-66.  Defendants do not dispute that the White House Staff Secretary told President

Trump when handing him the Order to sign that "[t]his is an executive order that *takes certain*

*measures against Susman Godfrey* to ensure that they can't access government resources [or]

government buildings."  *Id.* ¶ 160 (emphasis added).[2]  It is thus undisputed—and indisputable—

---

[2] As the text indicates and Defendants' responsive statement of facts confirms, the vast majority
of material facts are either wholly undisputed or not meaningfully disputed (i.e., Defendants
observe only that Susman's stated facts "speak for themselves").  *See* SOF Resp. ¶¶ 1-9, 11-20,
22-24, 26-32, 34-37, 39-52, 54-62, 65-115, 117-54, 156-58, 160-66, 168, 170-77, 182, 184, 189-
91, 194-99, 202-03, 206, 209-212, 217-18, 223, 226-27.  Although Defendants occasionally assert
that Susman's facts concerning the harms inflicted by the Order are legal conclusions, or label
them "disputed" without explanation, that is insufficient to create a genuine dispute of material
fact.  A "party asserting that a fact . . . is genuinely disputed must support the assertion" by "citing
to particular parts of materials in the record," including "documents," "affidavits," or
"declarations."  Fed. R. Civ. P. 56(c).  "[M]ere allegation or denials" are not enough.  *Anderson v.
Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986); *see United States v. Dynamic Visions Inc*., 971 F.3d
330, 337 (D.C. Cir. 2020).  Neither are "[a]rguments of counsel."  *Internet Fin. Servs. v. L. Firm
of Larson-Jackson, P.C*., 310 F. Supp. 2d 1, 4 (D.D.C. 2004).  The Court therefore may "consider"
facts disputed without explanation or as legal conclusions to in fact be "undisputed."  Fed. R. Civ.
P. 56(e)(2); *see Yazzie v. Nat'l Org. for Women*, 712 F. Supp. 3d 56, 94 (D.D.C. 2024).  Defendants

that the Order imposes punitive measures *because* Susman engaged in speech and advocacy that angers the President.  Defendants' briefing confirms what was already crystal clear at the TRO stage and must now be treated as established in law and fact:  the Order is a brazenly unconstitutional effort to "use the power of the State to punish or suppress disfavored expression." *NRA v. Vullo*, 602 U.S. 175, 188 (2024).

Defendants' efforts to muster a defense only make matters worse for them.  Defendants suggest that at least some of the Order's provisions are permissible responses to Susman's purported "efforts to discriminate on the basis of race."  Order § 1.  That suggestion is frivolous. Defendants' accusations of discrimination are not merely unadjudicated:  they are baseless assertions that treat innocuous website statements as evidence of illegality and have been levied against the Firm without any notice or opportunity to be heard. Indeed, Defendants have already acknowledged to this Court the Executive views those activities as being within a legal "gray zone."  *See* SOF ¶ 170; *Perkins* Op. at 96 n.38 ("the government confirmed that no determination must be made regarding the lawfulness of" Perkins's employment practices "to resolve the pending summary judgment motion").  At best, those accusations are a transparent effort to paper over the Order's targeting of First Amendment protected activities, and as a result they cannot possibly justify a presidential effort to harm or even destroy the Firm.  *See Vullo*, 602 U.S. at 196 (even as to a "conceded[ly] illegal[] program," the state "cannot [pursue violations] in order to punish or suppress . . . protected expression").

In all events, Defendants' accusations of discrimination do not hold water.  It is undisputed that the Susman Godfrey Prize is not an offer of employment covered by Title VII, SOF ¶¶ 168-

---

have thus failed to "set forth specific facts showing that there is a genuine issue," *Anderson*, 477 U.S. at 256, and the Court may deem Susman's statement of facts uncontroverted, *see Yazzie*, 712 F. Supp. 3d at 94.

69; SOF Resp. ¶¶ 168-69, thus giving the lie to the Order's spurious accusation that the Prize offers "employment opportunities" on the basis of race, Order § 1. Defendants offer no other theory of illegality; they may disapprove of the cash prize and mentoring opportunities offered, Opp. 12, but the President's disapproval is not the law. *See, e.g.*, *Koch v. Holder*, 930 F. Supp. 2d 14, 17 (D.D.C. 2013) (Title VII covers "only employees in a direct employment relationship with the employer and applicants for employment").[3] Defendants also take issue with Susman's professed support for "members of groups underrepresented in today's legal profession," Lawson Decl. Ex. 2, but there is nothing wrong with inclusiveness as to such individuals (including, e.g., first-generation lawyers), and the very material on which Defendants rely reaffirms Susman's compliance with all anti-discrimination laws. *Id.*; *see* SOF Resp. ¶ 167. Finally, Defendants point to Susman's statement of support for "gender parity." Opp. 13 (citing Lawson Decl. Ex. 3). But "parity" means "equality"—as in equality for women in the workplace—and Defendants offer no support whatsoever for their assertion that it must mean "quota." *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 626 (1984) ("Assuring women equal access to . . . goods, privileges, and advantages clearly furthers compelling state interests."). That Defendants would seek to justify the Order's unprecedented draconian punishments on such weak grounds speaks volumes.

Moving on from those baseless accusations, Defendants also point to Susman's purported "fund[ing of] groups that engage in dangerous efforts to undermine the effectiveness of the United States military." Order § 1. At long last, Defendants offer an explanation for that opaque accusation. They would have been better off continuing to profess ignorance. *See* SOF ¶ 164 (at TRO hearing: "I have no further information than what's contained in the order."). Defendants

---

[3] Defendants cite *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), but that decision's disapproval of race-conscious offers of admission to public and federally funded institutions does not suggest any basis for challenging the legality of the Susman Godfrey Prize or any of Susman's statements.

now submit that Susman "has provided funds to GLBTQ Legal Advocates and Defenders (GLAD)"—under $4,999, per the report Defendants cite—and that GLAD "previously sued the Federal Government to enjoin Department of Defense policy, based on a radical theory of gender ideology."  Opp. 13 n.2; Lawson Decl. Exs. 9-10.  Even putting aside the outrageousness of Defendants' assertion that contributing a few thousand dollars to an advocacy organization constitutes a "dangerous effort[] to undermine the effectiveness of the military," Defendants' newly minted accusation proves Susman's case.  Donating money in support of a political or legal cause—including the LGBTQ-related causes and legal action now disfavored by the Executive Branch—is unquestionably protected speech.  *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606-07 (2021); *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 460 (1958); *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014).  Defendants' attempt to provide a valid basis for the Order is therefore actually just an admission that they targeted Susman not only because of its election-related work but also because of an *additional* category of protected First Amendment activity.  In short, Defendants have acknowledged that the Order's various punishments are in retaliation for speech, and Susman has established beyond any doubt that the Order violates the First Amendment.

2.    Defendants' briefing also vividly confirms the Order's violation of the Fifth Amendment.  Defendants barely address Susman's due process claims.  *See* Tr. 47:8-48:3.  Defendants do not dispute that Susman was given no notice or opportunity to respond to the allegations in the Order and Fact Sheet before they issued, SOF ¶¶ 157-58—meaning that Susman concededly received no process whatsoever.  Defendants do not challenge the legal propositions that Susman has constitutionally protected interests in engaging in its law practice, contracting with its clients (including its clients that serve as government contractors), and maintaining its

reputation.  Nor do Defendants meaningfully dispute that the Order damages those interests by disparaging the Firm's work as "dangerous" and "detrimental to critical American interests," Order § 1; requiring government-contractor Susman clients to disclose their often-nonpublic relationships with Susman, SOF ¶¶ 190, 193; Order § 3; and imposing disabilities that severely impede Susman's ability to maintain and take on representations requiring security clearances or engagement with the federal government, SOF ¶¶ 177-79, 198-201; Order §§ 2, 5.[4]  The Order therefore deprives Susman of its protected liberty and property interests without process.

With respect to the Order's unconstitutional vagueness, Defendants' sole response is to rely on the speculative possibility of further agency "guidance."  That is no answer.  The threat of amorphous "guidance" based on the "interests of the United States" is so standardless that it gives agencies sweeping discretion to further restrict Susman's federal access and curtail its contracts and those of its clients over time, perhaps in retaliation for future representations the President disfavors.  That opportunity for "arbitrary and discriminatory application" is paradigmatic vagueness.  *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).  It would be inequitable in the extreme to allow Defendants to defend the Order on the ground that future guidance will cure its constitutional defects.

As to Susman's equal protection and right-to-counsel claims, nothing more need be said because Defendants do not raise *any* defense whatsoever.  This Court has already concluded that Susman is likely to succeed on those claims, and so injunctive relief is proper as to those claims as well.

---

[4] With respect to Susman's need to enter government buildings to effectively represent its clients and practice law, Defendants at times "dispute that entrance into federal buildings is required for stated purposes."  SOF Resp. ¶¶ 21, 25, 33, 38, 178.  That purported dispute lacks any substance— and therefore underscores that Defendants cannot defend the Order's deprivation of Susman's constitutionally protected interests.

3.  The same is true of Susman's separation of powers claims.  Defendants do not address those claims, thereby confirming that the President lacks statutory or constitutional authority to issue the Order and that the Order impermissibly intrudes on "the proper exercise of the judicial power."  *Velazquez*, 531 U.S. at 545; *see* Opp. to Mot. to Dismiss ("Susman Opp.") 32.

### B.    Defendants Do Not Dispute the Existence of Irreparable Harm or the Equitable Basis for Enjoining the Order

Defendants' bury-their-heads-in-the-sand approach does not end there:  they do not mention, much less contest, Susman's showing that the Order inflicts irreparable harm and that the balance of the equities favors injunctive relief.

As Susman has demonstrated, the Order undeniably gives rise to three distinct types of irreparable harm.  *See* Mot. for Summ. J. ("Mot.") 41-43.  First, this Court has already recognized that, if the Order is allowed to go into effect, "Susman will suffer certain and imminent injury because the order chills the firm's speech and advocacy," Tr. 48:25-49:2—and the Firm will similarly suffer other infringements of its constitutional rights, *see Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020); *see also Perkins* Op. 99 (violations of "the Firm's rights" under First and Fifth Amendments "would continue were the injunction lifted").  Second, the reputational harm inflicted by the Order is plain.  After all, the Order disparages the Firm's work as "dangerous" and "detrimental to critical American interests" and accuses the Firm of, among other things, "spearhead[ing] efforts to weaponize the American legal system and degrade the quality of American elections." Order § 1.  Finally, as this Court has concluded, the Order inflicts irreparable economic injury on Susman.  Tr. 49:21-50:25; *see* Mot. 42-43; *Perkins* Op. 99-101.

Each of those irreparable injuries is backed up by now-undisputed facts.  Defendants do not dispute that in the days between the signing of the Order and entry of a TRO, clients contacted Susman to inquire about the Order's effects and whether it could negatively affect Susman's

continued representation of those clients.  SOF ¶ 223.  Defendants similarly do not dispute numerous facts concerning the severe impact that the Order would have on the Firm's representations and client relationships.  *See id.* ¶¶ 20, 22-51.  Susman has established that it will suffer ongoing irreparable harm if the Order is not permanently enjoined.

The balance of equities and public interest also decisively favor a permanent injunction. There can be no serious question that the Order severely injures Susman.  And beyond that harm to Susman, the Order's "immensely oppressive power threatens the very foundation of legal representation in our country," Tr. 51:10-11, as it imperils the "informed, independent bar" on which our judicial system depends, *Velazquez*, 531 U.S. at 545, and threatens a slide into authoritarianism, *see Perkins* Op. 1 ("Eliminating lawyers as the guardians of the rule of law removes a major impediment to the path to more power.").  In contrast, "granting a TRO would not inflict harm to the government."  Tr. 52:19-20; *see Perkins* Op. 101-02.[5]  Defendants do not, and could not, contend otherwise.

## II.    DEFENDANTS' REMAINING COUNTERARGUMENTS ARE EASILY REJECTED

Instead of coming to grips with the Order's fatal flaws, Defendants try a divide-and-conquer approach.  That approach fails:  whether considered as a whole or piece by piece, the Order violates the Constitution.

A.  Once again, Defendants take the indefensible position that this Court should overlook Section 1's defamatory findings because that provision qualifies as government speech.  Opp. 4-5.  But as Susman has already explained, Section 1 singles out the Firm for retribution, makes a

---

[5] *See also, e.g.*, *Perkins* Op. 1 ("The importance of independent lawyers to ensuring the American judicial system's fair and impartial administration of justice has been recognized in this country since its founding era."); Brief of Amici Curiae 366 Former Judges 3, ECF No. 141 ("For courts and judges to fulfill their constitutional role, lawyers must be free to represent their clients without fear of governmental retribution.").

series of blatantly false assertions about its work, and imposes sanctions predicated on those lies. The provision is thus punishment in action, not mere presidential speech that the First Amendment does not reach.  *See* Mot. 34-35; Susman Opp. 34-35; *see also Perkins* Op. 35 ("government's attempt to reframe this case as about governmental speech is subterfuge" because the firm "challenge[s] the use of governmental power, not governmental speech").

In response, Defendants insist that enjoining Section 1 "carries with it a dangerous risk of the Judiciary muzzling" the Executive.  Opp. 1; *see id.* at 5 ("courts are on dangerous ground when enjoining the speech of co-equal branches of government").  That is an ironic defense of an Order that expressly aims to suppress protected speech.  Equally to the point, nothing about the relief that Susman seeks would prevent the President from speaking his mind; he can still "forcefully condemn[] views with which [he] disagrees."  *Vullo*, 602 U.S. at 198.  What he cannot do is wield his "power selectively to punish or suppress speech," which is a form of retribution that the Constitution condemns.  *Id.*

B.   Defendants also continue to defend Section 2—not on the ground that it is constitutional, but on the ground that this Court lacks the power to decide whether that is so.  Opp. 5-7.  But although *Department of Navy v. Egan*, 484 U.S. 518 (1988), generally precludes courts from reviewing "predictive judgments" made by "those with the necessary expertise" about an "*individual's*" proclivity to "compromise sensitive information," *id.* at 528-29 (emphasis added), Section 2 does not reflect any such judgment.  Rather, Section 2 is a *categorical* determination that Susman employees will be subjected to clearance suspensions and reviews.  Section 2 is not individualized; it does not grant or deny clearance; it makes no findings about trustworthiness; and it does not so much as whisper the words "national security."  Thus, *Egan* does not apply.  *See* Mot. 35-38; Susman Opp. 35-37; *Perkins* Op. 41 (clearance determinations are not unreviewable

"simply because the Executive branch invoked 'the national interest,'" as that "would represent a breathtaking expansion of executive power at the expense of the constitutionally mandated role of the judicial branch and the concomitant safeguards for the individual rights of Americans").

In attempting to defend Section 2 as "provid[ing] for the very sort of individualized, nuanced review of clearances" that *Egan* protects, Opp. 7, Defendants give away the game. Defendants stress that "any individual employee" of the Firm "with a security clearance that is suspended will receive appropriate process with regard to maintaining or restoring their individual security clearance." *Id.* In other words, *after* Susman employees' clearances are suspended, and *after* they are subjected to an extraneous review, an agency official will make an individualized decision covered by *Egan*. But that hardly qualifies as a defense of Section 2, which requires the suspension and the review and does so upstream from any ultimate clearance decision that may be insulated from judicial examination.

C. Defendants offer nothing of substance as to Section 3 either. First, Defendants contend that Susman's showing that Section 3 violates the Constitution in numerous ways does not matter because the Executive is merely "acting as a contractor" to "fulfill[] . . . its public policy" goals. Opp. 8-13. But that contention was weak when Defendants first made it, *see* Tr. 19:3-5, and it has not gotten stronger through repetition. As Susman has explained, the President does not have freewheeling statutory authorization to advance public policy by regulating federal contracts. Mot. 38-40; Susman Opp. 37-40. And whatever the scope of the President's procurement authority, the President may not use that power as a cudgel against disfavored speakers or to otherwise violate the Constitution. Mot. 38-40; Susman Opp. 37-40; *see Perkins* Op. 51 ("the government is no mere 'contractor'" and "must conform to the limits imposed by the Constitution").

Second, Defendants assert that Section 3 falls into *Youngstown*'s first category, Opp. 8, 10-11, then utterly fail to substantiate that claim.  They invoke regulations "reflect[ing]" the President's power over procurement, Opp. 10-11, but regulations concerning contracting in the "Government's interest," *id.* at 11, hardly equate to "express constitutional or statutory authorization" to punish contractors for protected speech and association, *Sioux Tribe of Indians v. United States*, 316 U.S. 317, 331 (1942).  They also invoke the Procurement Act, *see* Opp. 10 (citing 40 U.S.C. § 121 *et seq.*), but that statute's requirement of a "sufficiently close nexus" to "econom[y] and efficien[cy]," and the courts' deferential treatment of the government's pursuit of *permissible* policy goals such as an informed workforce, *UAW-Lab. Emp. & Training v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003), do not come close to authorizing the Order's numerous violations of the First and Fifth Amendments.  Mot. 40; Susman Opp. 39-40.

In addition, the Order does not further any legitimate "social policy."  Defendants attempt to defend Section 3 as an "Executive Order . . . designed to address diversity in the Federal contracting process" by repeating the Order's defamatory allegation that the Firm has engaged in "unlawful discrimination, including discrimination on the basis of race."  Opp. 8-13 (quoting Order § 1).  But again, that accusation is baseless.  *See supra* at pp. 4-5; Susman Opp. 17-18.  In all events, the President has enforcement tools at hand to combat actual discrimination to the extent that it may exist; for instance, months ago the President issued a *separate* executive order on "ending illegal preferences and discrimination" in federal contracting.  *See* Executive Order 14173 § 3, 90 Fed. Reg. 8633, 8634 (Jan. 21, 2025).  If the goal were really to end discrimination in the contracting system—rather than to suppress constitutionally protected advocacy—one would think that he would have relied on the earlier order.  *See Perkins* Op. 83 ("most obvious reason[]" for

law-firm executive order is "to address and suppress conduct" that "constitutes First Amendment protected activity disliked by President Trump").

Third, Defendants offer a perplexing defense of Section 3 grounded in attorney-client privilege. Opp. 14. They contend that "Section 3 does not unlawfully limit the ability of Susman to represent its clients" because "generally 'the attorney-client privilege does not protect'" attorney-client relationships from "disclosure." *Id.* (quoting *Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 350 (D.D.C. 2018)). But Susman is not claiming a violation of the attorney-client privilege; it is claiming violations of the Constitution.[6]

Finally, Defendants advance two other positions that Susman has already refuted—that the harm inflicted by Section 3 is somehow "speculative," Opp. 13-14, and that even if Section 3 were retaliatory, it could be upheld on another legitimate basis, *id.* at 8-9. As before, both of those positions are wrong. The injuries inflicted by Section 3 are immediate and concrete. *See* Susman Opp. 5-8. Any non-retaliatory grounds the President may or may not have considered do not change the reality that the Order issued because Susman's election-related litigation work drew the President's ire. *See* Mot. 18; Susman Opp. 16-17.

D. Defendants have nothing persuasive to say about Section 4 either. They begin by suggesting that Susman has not challenged that provision—but Susman's summary-judgment motion establishes otherwise. *See* Mot. 4, 33-34. They then reprise the contention that Section 4 causes no injury because Susman would be "subject to inquiries by the EEOC" regardless. Opp. 15. Yet nowhere do they address the many ways that Section 4 harms the Firm—by directing the

---

[6] To the extent that Defendants' identification of the client-disclosure requirement in the Foreign Agents Registration Act ("FARA"), *see* 22 U.S.C. §§ 612(a), 613(g), is meant as evidence that Section 3's disclosure requirement is permissible, the comparison is entirely inapt. FARA does not require disclosure in retaliation for protected speech, and it furthers genuine national-security interests.

EEOC to prioritize Susman for investigation, by damaging Susman's reputation, and by chilling First Amendment activity.  Susman Opp. 8-9.  Defendants also continue to insist that because diversity, equity, and inclusion programs were in the Administration's sights before the Order issued, Susman cannot establish a causal link between the Order and some protected activity.  Opp. 15-16.  That makes no sense.  Whatever the Administration's broader interest in such programs, the Order *announces* that it was issued for a separate and facially retaliatory reason:  antipathy towards Susman's elections-related work.  *See* Susman Opp. 17; *Perkins* Op. 46.

Defendants' one new argument about Section 4 misrepresents the relief that Susman seeks. Defendants contend that Susman has not established redressability because this Court cannot "enjoin the EEOC from simply reviewing the practice of law firms" and thereby grant Susman "immunity from Title VII."  Opp. 15.  True enough—but that is not the relief that Susman seeks. Susman asks this Court to enjoin the EEOC from setting enforcement priorities or otherwise acting *based on the Order*.  *See* Proposed Order 2, ECF No. 51-71.

E.  On Section 5, Defendants continue to insist that Susman's challenges are not ripe—that is, that this Court is powerless to act until agencies actually implement the President's directive to "limit[]" Susman's access to federal government buildings and federal employees.  Order § 5; *see* Opp. 17.  In other words, Defendants would have this Court conclude that the sword of Damocles must actually fall before Susman can obtain relief.  That is not a serious argument—as case law establishes, *see League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016), as Susman has explained at length, Susman Opp. 9-14, and as this Court has already concluded, Tr. 34:3-9, 48:11-50:25; *see Perkins* Op. 49 ("whatever the exact details of the final guidance may be," it "constitutes unconstitutional retaliation to suppress viewpoints with which the current presidential

administrations disagrees"). And the purportedly forthcoming guidance is no solution for Section 5's unconstitutional vagueness for the reasons explained above. *Contra* Opp. 17 & n.4.

*    *    *

In the end, Defendants' arguments should be seen for what they are: an effort to obscure the Order's true nature. It is not "simpl[e]" government speech, or an innocuous "use of the procurement power," or a "lawful examination of security clearances and government access." Opp. 1-2. It is instead an attack on the legal profession that is unprecedented in our Nation's history—a naked attempt to wreak vengeance, exact submission, chill disfavored speech, and ultimately silence opposition to the government's actions. Defendants do not defend that reality head on, because it is indefensible. If an Order like this one were permitted to stand, this Executive Branch—and every Executive Branch in the future—would have free rein to suppress ideas, blacklist political enemies, and impose vindictive sanctions. And if Defendants' meritless ripeness and standing arguments were accepted, the courts would be powerless to stop the President's retributive campaign before it achieves the very punitive ends he seeks. To preserve the rule of law, the Order must be enjoined.

## <u>CONCLUSION</u>

The Court should grant summary judgment in favor of Susman Godfrey and enter the proposed order for declaratory and permanent injunctive relief.

15

Dated: May 5, 2025                     Respectfully submitted,


                                       */s/ Donald B. Verrilli, Jr.*
                                       Donald B. Verrilli, Jr. (D.C. Bar. No. 420434)
                                       Elaine J. Goldenberg (D.C. Bar No. 478383)
                                       Ginger D. Anders (D.C. Bar. No. 494471)
                                       MUNGER, TOLLES & OLSON LLP
                                       601 Massachusetts Avenue, NW, Suite 500E
                                       Washington, D.C. 20001
                                       (202) 220-1100
                                       Donald.Verrilli@mto.com
                                       Elaine.Goldenberg@mto.com
                                       Ginger.Anders@mto.com

                                       Brad D. Brian (*pro hac vice*)
                                       Michael R. Doyen (*pro hac vice*)
                                       Hailyn J. Chen (*pro hac vice*)
                                       MUNGER, TOLLES & OLSON LLP
                                       350 S. Grand Avenue, Fiftieth Floor
                                       Los Angeles, California 90071
                                       (213) 683-9100
                                       Brad.Brian@mto.com
                                       Michael.Doyen@mto.com
                                       Hailyn.Chen@mto.com

                                       *Attorneys for Susman Godfrey LLP*

                                       (*Additional counsel listed on following page*)

Bethany W. Kristovich (*pro hac vice*)
Adam B. Weiss (*pro hac vice*)
Jennifer L. Bryant (*pro hac vice*)
Miranda E. Rehaut (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
(213) 683-9100
Bethany.Kristovich@mto.com
Adam.Weiss@mto.com
Jennifer.Bryant@mto.com
Miranda.Rehaut@mto.com

Rachel G. Miller-Ziegler (D.C. Bar No. 229956)
Jeremy S. Kreisberg (D.C. Bar No. 1048346)
Kyle A. Schneider (D.C. Bar No. 90024468)
Esthena L. Barlow (D.C. Bar No. 90000252)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
Rachel.Miller-Ziegler@mto.com
Jeremy.Kreisberg@mto.com
Kyle.Schneider@mto.com
Esthena.Barlow@mto.com

Juliana Yee (*pro hac vice*)
Shannon C. Galvin Aminirad (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
(415) 512-4000
Juliana.Yee@mto.com
Shannon.Aminirad@mto.com

*Attorneys for Susman Godfrey LLP*

17