# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSMAN GODFREY LLP,<br><br>               Plaintiff,<br><br>   v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et* al.,<br><br>               Defendants. | Civil Action No. 25-1107 (LLA) |

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
### DEFENDANTS' MOTION TO DISMISS

**INTRODUCTION**

Defendants have moved to dismiss (ECF 58). Plaintiff Susman Godfrey LLP ("Susman" or "Plaintiff") has filed a memorandum opposing Defendants' Motion to Dismiss (ECF 158). Defendants hereby reply, urging the Court to dismiss this suit concerning President Trump's April 9, 2025, Executive Order 14263, titled "Addressing Risks from Susman Godfrey," 90 Fed. Reg. 15615 (April 15, 2025) ("Order" or "EO").

**ARGUMENT**

Susman concedes and indeed confirms what the government has been saying all along: that Plaintiff has not in fact been injured and Plaintiff's concerns are not yet ripe for review. Specifically, Plaintiff concedes that "during the six-day period between issuance of the Order and entry of the TRO, the Order did not (to Susman's knowledge) result in Susman's loss of specific existing clients or in cancellation of any government contracts." Pl.'s Opp. to Defs' MTD (ECF 158) at 6. Nor has Susman alleged any lost contracts or lost clients since then. That alone is a sufficient basis to resolve this case.

Recall, Section 1 of EO 14263 is simply government speech, articulating the President's own views about Susman's actions and suitability for federal benefits. Nothing in that section deprives Plaintiff of any legal right. Section 2, for its part, merely directs agencies to implement a policy decision falling within a "core Article II power" of the President. *See Lee v. Garland*, 120 F.4th 880, 888 (D.C. Cir. 2024). Plaintiff cannot credibly argue that its employees should enjoy security clearances if *contrary* to the national interest, and Plaintiff runs up against recent D.C. Circuit precedent in asking this Court to challenge the President's assessment of Plaintiff's suitability to possess such clearance. *Id.* at 893. Section 3 concerns the government's use of the procurement power, but Plaintiff has not alleged that it has lost any government contracts. To the

1

contrary, it concedes that it is not aware of losing any such contracts. Pl.'s Opp. to Defs' MTD (ECF 158) at 6. Section 4 is simply a rule of construction that does not "limit section 4 of Executive Order 14230," EO 14263, § 4, which in turn directs the Attorney General and the Chair of the Equal Employment Opportunity Commission ("EEOC") to review whether large law firms are violating the civil rights laws. Plaintiff does not allege that it has yet faced any adverse action, including any formal investigation, from the Attorney General or the EEOC for violations of civil rights laws. Nor can Plaintiff meaningfully argue that large law firms should be a strange exception to the EEOC's general duty to consider possible civil rights violations in the workplace. Finally, Section 5 calls for agencies to provide guidance on access to federal buildings and hiring practice. But again, agencies have not issued such guidance, and Plaintiffs have not identified any cases where they have been denied access to buildings.

Susman requests unprecedented relief that this Court cannot provide. Susman requests that this Court issue an opinion contradicting the opinions the President articulates in Section 1—effectively using the judiciary to muzzle the President's speech on a topic of national concern. On Section 2, Susman requests the Court enjoin the Executive branch from even reviewing whether its employees should continue to maintain security clearances—effectively asking the judiciary to usurp the Executive's control of classified information and immunize a class of individuals from administrative scrutiny. As for Section 3, Susman has not identified any contracts it has with the government, much less any government contracts it has lost, and so cannot even request that the Court provide relief on that issue. As for Section 4, Susman requests perpetual immunity to violate our nation's civil rights laws—effectively asking the court to forever enjoin the Attorney General or EEOC from investigating them for misconduct. This is especially egregious since Plaintiff by its own website admits to using race-based considerations.

*See* Def's MTD (ECF 58-1) at 8-9.  Finally, Susman asks the Court to enjoin agencies from even considering guidance to address access to Federal buildings, to which Susman has never been denied.

Section 1 of the EO is "government speech" which "is exempt from First Amendment scrutiny." *Johanns v. Livestock Marketing Assn.*, 544 U.S. 550, 553 (2005).  The Court cannot censor presidential proclamations or Executive Orders any more than it can enjoin the President from making certain statements at the State of the Union.

Section 2 concerns the ability of the President to control access to classified information, which "flows primarily from [the] constitutional investment of power in the President and exists quite apart from any congressional grant." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988).  "It should be obvious that no one has a 'right' to a security clearance," *id.* at 528, and by extension, the right to enjoin the President from merely reviewing whether existing clearances are consistent with the national interest.  Such claims are non-justiciable. *See Lee v. Garland*, 120 F.4th 880 (D.C. Cir. 2024).  And for good reason.  Whether someone should have a security clearance is an "inexact science at best." *Egan*, 484 U.S. at 529 (quoting *Adams v. Laird*, 420 F.2d 230, 239 (1969).  That decision involves "an assessment of intangible qualities such as loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment." *Lee*, 120 F.4th at 893.  Plaintiff cannot plausibly argue that who someone works for is completely and *per se* irrelevant to that person's "strength of character," "discretion," and "sound judgment."  And if the President is allowed to consider that fact (and surely he is), its weight and materiality in the security clearance context is simply outside the judicial ken.  The Court should not accept Plaintiff's invitation to intrude on the Executive's administration of national security information.

Section 3 directs agencies to "take appropriate steps to terminate any contracts" with Plaintiff and, "to the extent permissible by law," requires other "[g]overnment contractors … to disclose any business they do with Susman." EO 14263, § 3. But as Susman concedes, it has not lost any government contracts—nor has it identified any. Pl.'s Opp. to Defs' MTD (ECF 158) at 6. Moreover, the only concrete harm that could hypothetically flow from the government's request to contractors would be the loss of clients—yet again, Susman admits that it has not lost any clients as a result of the Executive Order. Pl.'s Opp. to Defs' MTD (ECF 158) at 6. Nor does Plaintiff allege that its clients have lost government contracts. Plaintiff therefore lacks standing to challenge this section, and its claims are unripe.

Section 4 merely cross-references an entirely separate EO that applies in general terms to large law firms. EO 14263, § 4. Plaintiff alleges harms the firm's "reputation" by suggesting "there is some special reason to believe that Susman . . . has engaged in illegal practices." Pl.'s Opp. to Defs' MTD (ECF 158) at 9. Section 4 by its express terms says the opposite—that nothing in the EO should "be construed to limit action authorized by [EO 14230]." EO 14263, § 4. Moreover, even under Plaintiff's reading, this Court not should entertain the possibility of providing relief against this Section, which could only take the form of granting Plaintiff immunity in perpetuity from any prosecutions or even investigations into its violations of civil rights laws.

Section 5 only directs Federal agencies to issue guidance concerning Plaintiff's access to Federal buildings. EO 14263, § 5. Agencies have not issued guidance, and Plaintiff has not been denied access to buildings. Plaintiff's claim is unripe, and it would raise separation of powers concerns to enjoin the Executive branch from even deliberating over potential guidance on this or any other topic, as such deliberations are protected by Executive privilege, which the Supreme

4

Court has explained "is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974). For now, Plaintiff's concerns are all merely speculative and conjectural.

In the end, the President has criticized Susman for its actions and Susman simply dislikes this public criticism. Susman has not been denied any government contract; it even concedes it has not lost any clients. Plaintiff ultimately seeks to use this Court to criticize the President's own speech and to "force the President himself to contradict his earlier statement." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 30 (2015). This Court should decline Plaintiff's invitation to join "in the rarified atmosphere of a debating society." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). The President and Plaintiff may engage in public debate themselves. But unless and until Plaintiff is deprived of a government contract or suffers some actual harm, Plaintiff lacks standing and its claims are not yet ripe for review.

Finally, judicial intervention is especially precarious here where Plaintiff effectively seeks judicial approval for immunity from EEOC review. As the Supreme Court has made clear, "[e]liminating discrimination means eliminating all of it." *Students for Fair Admissions, Inc., v. President & Fellows of Harvard College*, 600 U.S. 181, 230 (2023). "[H]owever well intentioned," *id.* at 213, or whatever its "commendable goals," *id.* at 214, Susman's employment policies must comport with the requirement of Federal law. When the President is concerned that an industry may be engaged in violations of employment laws it is well within his prerogative to ask the EEOC Chair to review these practices.

## CONCLUSION

For all the reasons stated herein and in Defendants' prior briefing, the Court should deny Plaintiff's motion for summary judgment and instead grant Defendants' motion to dismiss.

Dated: May 5, 2025  
       Washington, D.C.

Respectfully submitted,

CHAD MIZELLE  
Acting Associate Attorney General

/s/ *Richard Lawson*  
RICHARD LAWSON  
Deputy Associate Attorney General  
950 Pennsylvania Avenue, NW  
Washington, DC 20530  
Telephone: (202) 445-8042

*Counsel for Defendants*