<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3    SUSMAN GODFREY, LLP,
                                             Civil Action
 4             Plaintiff,                    No. 1: 25-1107

 5          vs.                              Washington, DC
                                             May 8, 2025
 6    EXECUTIVE OFFICE OF THE
      PRESIDENT, et al,
 7
               Defendants.
 8    _____/

 9
                      TRANSCRIPT OF MOTION HEARING
10          BEFORE THE HONORABLE LOREN L. ALIKHAN
                   UNITED STATES DISTRICT JUDGE
11

12    APPEARANCES:

13    For the Plaintiff:      Donald Verrilli, Jr.
                              Ginger Anders
14                            Jeremy Kreisberg
                              Munger, Tolles & Olson LLP
15                            1155 F Street, NW, 7th Floor
                              Washington, DC 20004
16
                              Brad Brian
17                            Munger, Tolles & Olson LLP
                              350 South Grand Ave, 50th Floor
18                            Los Angeles, CA 90071

19    For the Defendant:      Richard Lawson
                              DOJ-USAO
20                            950 Pennsylvania Ave, NW
                              Washington, DC 20530
21

22    Court Reporter:         Sherry Lindsay
                              Official Court Reporter
23                            U.S. District & Bankruptcy Courts
                              333 Constitution Avenue, NW
24                            Room 6710
                              Washington, DC 20001
25
</pre>

```
1                    P R O C E E D I N G S

2         THE COURTROOM DEPUTY:  Good afternoon, Your Honor.

3   We are now the record for Susman Godfrey, LLP, versus Executive

4   Office of the President, et al, civil action 25-1107.

5         Could counsel please come forward and note their

6   appearance for the record beginning with the plaintiff.

7         MR. VERRILLI:  Good afternoon, Your Honor.  And may

8   it please the Court, I am Don Verrilli for Susman Godfrey.

9   With me at counsel table is firm chair, Brad Brian, Ginger

10  Anders, Elaine Goldenberg and Jerry Kreisberg.  Also

11  representing Susman Godfrey here this afternoon we have Kalpana

12  Srinivasan and Vineet Bhatia.  In addition in the audience we

13  have our comanaging partner at Munger, Tolles; Hailyn Chen, and

14  several other lawyers and employees of the firm.

15        THE COURT:  Good afternoon.

16        MR. LAWSON:  Good afternoon, Your Honor.  Richard

17  Lawson with the Department of Justice.

18        THE COURT:  Good afternoon.

19        So we are here today for a hearing on the motions for

20  summary judgment and motions to dismiss.

21        Oh, forgive me.  Before me begin, Ms. Pham reminds me

22  that we have activated the public line for this hearing.  Any

23  unauthorized broadcast will be subject to sanctions including

24  contempt.

25        So with that, we are here for a hearing on the motion
```

1    to dismiss, a motion for summary judgment.

2          I do want to hear just briefly from the parties

3    before we begin about the import of the order I issued earlier

4    today about the schedule for an amended complaint and

5    subsequent briefing.

6          So I will hear first from you, Mr. Verrilli, because

7    it was your motion.

8          MR. VERRILLI:  Thank you, Your Honor.

9          May it please the Court, we made that motion in the

10   aftermath of discussion of this very issue in the *Perkins Coie*

11   case in which the United States made an issue regarding any

12   order that the Court might issue to the United States as a

13   whole, or to the Executive Office of the President, would run

14   by its own terms against every Executive Branch agency or

15   whether all of the Executive Branch agencies needed to be

16   named.  In the *Perkins* case, the plaintiff amended the

17   complaint to name every executive agency to avoid that problem.

18   And we are just taking the same step here to avoid that

19   potential ambiguity.

20         THE COURT:  All right.  Thank you.  Are you intending

21   to drop any parties like the Executive Office of the President

22   or the United States?

23         MR. VERRILLI:  No.

24         THE COURT:  All right.  Thank you.

25         Do you have anything to add, Mr. Lawson?

1          MR. LAWSON:  No, Your Honor.  I think that is a fair

2    summary.

3          THE COURT:  All right.  Thank you very much.  So I

4    know you have dueling motions, so I suppose we could flip a

5    coin to decide who goes first.  But I am inclined to hear first

6    from counsel for the plaintiff.  I will note that we have

7    already had an extensive hearing on the temporary restraining

8    order, which focused on Sections 1, 3 and 5 of the executive

9    order.  So if you could give me any developments or additional

10    arguments you have as to those sections, but also walk me

11    through Sections 2 and 4 since we haven't yet had the

12    opportunity to discuss those.

13          MR. VERRILLI:  I would be happy to.

14          May it please the Court, in Your Honor's provisional

15    ruling granting the temporary restraining order, the Court

16    observed that the framers would have found that executive order

17    to be a shocking abuse of power.  The summary judgment

18    submissions vividly confirm the accuracy of that observation.

19    We now have undisputed facts that establish that the order

20    retaliates against the firm for its advocacy on behalf of

21    Dominion Voting Systems and state election officials.  And

22    remarkably now we know that it also retaliates against Susman

23    Godfrey for a charitable contribution to an organization that

24    advocates for gay and lesbian equality.  Now, that violates the

25    First Amendment for all of the reasons that Your Honor found

```
 1    provisionally and that we discussed previously.  It is

 2    retaliatory.  It is odious viewpoint discrimination.  It

 3    burdens the right to petition and it disrupts our association

 4    with our clients.

 5            THE COURT:  If I could press you on that.  So this

 6    charitable contribution, do you have a sense of how it is

 7    related to the -- what the order calls interference with

 8    military operations?  I am looking for the precise quote, but I

 9    think you know which phrasing --

10            MR. VERRILLI:  I certainly do, Your Honor.  And I am

11    speculating here.  Of course, it is something that is

12    presumably within the knowledge of the United States.  My

13    speculation goes something like this:  The organization GLAAD,

14    to which the contribution was made, is an advocacy

15    organization.  One of the things it advocates for is equal

16    treatment for gay and lesbian service members.  And I believe

17    also it takes positions with respect to equal treatment for

18    transgender service members.  And I presume that they have

19    brought litigation to try to advance those interests, although

20    I don't know specifically what litigation the government has in

21    mind, if it does have in mind that litigation.  And that

22    litigation, I assume, is what the government suggests is

23    interference with military operations.  That is the best I can

24    do, but I think it must be something like that.

25            THE COURT:  And the Susman firm, they were not
```

1    involved in bringing any of this litigation?

2            MR. VERRILLI:  Correct.  It was a charitable

3    contribution to an organization.

4            THE COURT:  Do you have a sense of when the

5    charitable contribution was made?

6            MR. VERRILLI:  I don't have it at my fingerprints.  I

7    apologize, Your Honor.  I should know that.  I can try to

8    figure it out, but I don't have it at my fingerprints.

9            THE COURT:  But in your view, it was made not in

10   connection with any type of litigation?

11           MR. VERRILLI:  That is my understanding, right.  Even

12   if it were, of course, it would be completely and thoroughly

13   protected under the Supreme Court's *Bonta* decision. But I don't

14   believe that there was any specific connection of that kind.

15           THE COURT:  All right.  And while we are it, why

16   don't you also tell me a bit about the Susman Godfrey Prize.

17           MR. VERRILLI:  Yeah.  This goes, I guess, to the

18   order as a whole and to Section 3 and to Section 5 and maybe

19   Section 4.  The undisputed facts, which we have submitted in

20   the form of declaration establish that the Susman Godfrey Prize

21   is a prize that includes a cash award and mentoring.  It does

22   not include an offer of employment.  And as a result of it not

23   including an offer of employment, it is not within Title VII

24   because it is not a term or condition of employment.  It cannot

25   be a violation of 42 U.S.C Section 1981 because it is a grant,

1    a gift, and not a contract.  So there is nothing unlawful about

2    it, nothing.

3            THE COURT:  All right.  Thank you very much.

4            MR. VERRILLI:  Now, with -- what I would like to

5    do -- you know, I will work through the specifics and focus on

6    the issues we haven't talked about as much.  But if Your Honor

7    would permit me, I would like to make two overarching points at

8    the outset here.  I want to make sure they don't get lost as we

9    work through the specifics on the merits.  I want to make sure

10   we don't miss the forest for the trees.  What James Madison

11   said in the early days of the republic by way of explanation,

12   was, "We guarantee free speech principally and primarily to

13   ensure that citizens can check and constrain their government,"

14   that they can do that when the government is wrong including in

15   court.

16           And since the time of the Magna Carta, the guarantee

17   of due process has existed principally to check and constrain

18   the arbitrary use of executive power to threaten life, liberty

19   or property.  And the framers put those guarantees in our

20   constitution precisely for moments like this one.

21           And, second, again, I don't want to have us miss the

22   forest for the trees when we are talking about the equities and

23   the public interest.  The whole point of the Susman Godfrey

24   executive order and the others like it is to intimidate law

25   firms into abandoning advocacy on a behalf of their clients.

1          Now Susman Godfrey is fighting that effort and

2    intimidation.  But as our statement of material facts and our

3    supporting declaration show, other firms are already

4    acquiescing to that intimidation.  And that is

5    unconstitutional, full stop, no matter what the motivation is.

6    But the specific goal of this intimidation is what makes it so

7    pernicious.  The issue specific point of these orders is to

8    prevent courts from hearing the best arguments from the best

9    lawyers challenging executive actions.

10          It is to silence the challenges to the myth that the

11   2020 election was somehow rigged.  It is really to silence any

12   argument that the President finds threatening to the image he

13   wants to project to the world and the policies he wants to

14   pursue.  That is why it is such an extensional -- particular

15   extensional threat to the independence of the Bar, to the

16   independence of the judiciary, to our constitution and to our

17   basic commitment to the rule of law.  That is why every section

18   of this order needs to be enjoined, respectfully.

19          With respect to Section 1, I do think we did discuss

20   it.  There are, I think, a couple of points that would be

21   helpful to make before moving to Section 2.  The government's

22   pitch at TRO stage and the pitch now is this is just good

23   old-fashioned government speech, Section 1, and you should just

24   treat it as a standalone basis of good old-fashioned government

25   speech.  To point out the irony of this first -- what the

1    President of the -- they are describing what we are doing here

2    as an effort to muzzle the speech of the President, when what

3    is at issue is one of the most brazen efforts by a President

4    ever to muzzle private speech.  And it can't be defended as

5    government speech and *Vullo* is really controlling here.  The

6    President can speak all he wants.  What the President can't do

7    is retaliate against us for protected speech.

8         And just as Judge Howell found in the *Perkins Coie*

9    case, Section 1 is government action.  It is not just some

10   disembodied opinion.  It is findings.  And those findings are

11   that operative basis for all of the specific commands that

12   follow.

13        THE COURT:  So in your view, if the entirety of the

14   executive order was Section 1, you still would have an argument

15   that this is not purely government speech?

16        MR. VERRILLI:  Absolutely, we absolutely would.  And

17   there are a couple of reasons for that.  The first one is --

18   and I think the first of the two can be illustrated by the

19   Jenner & Block experience that we talked about at the TRO

20   hearing.  Those findings are findings that operationalize

21   Sections 2 through 5.  But they are also findings that

22   government agencies in the Executive Branch could rely on more

23   broadly to take action against Susman Godfrey.  And, of course,

24   that is exactly what the attorney general and the Director of

25   the Office of Management and Budget in a memorandum in the wake

1    of the TRO issued in the Jenner & Block case urged government

2    agencies to do.  This is the -- after the TRO was in place and

3    the order was enjoined, this memo went around.  I am just going

4    to reiterate what I said last time because it so astounding

5    that "Jenner & Block is a law firm committed to the

6    weaponization of justice, discrimination on the basis of race,

7    radical gender idealogy" --

8              THE COURT REPORTER:  Sir, you need to slow down.

9              MR. VERRILLI:  I'm sorry.

10             -- "radical gender idealogy and other anti-American

11   pursuits."

12             And then the key for present purposes as this note

13   says, "Of course, as noted in the Court order agencies are

14   permitted to carry on their ordinary course of business, which

15   carries with it the authority to decide with whom to work" --

16   so that consequence right there going beyond Sections 2 through

17   5.

18             And then, of course, the important part of our due

19   process claim is that our reputation -- and through it our

20   ability to attract and retain clients has been seriously

21   damaged by the -- what our -- what we believe to be the

22   completely baseless findings in Section 1.

23             So our due process claim also goes directly to

24   Section 1.  So if it were alone, we would still I think would

25   have very, very powerful arguments that ought to be enjoined.

1    But, of course, it is not alone.

2            THE COURT:  And so again just taking it on its own,

3    is it the findings itself?  I am just trying to determine where

4    is the line between government speech and government action?

5            MR. VERRILLI:  So I think the key thing, Your Honor,

6    if I may is to point the Court to the -- our proposed order and

7    the relief that we seek.  And this is on page 2 in particular

8    of our proposed order.

9            THE COURT:  Give me a minute to get there.

10           MR. VERRILLI:  Of course, paragraph 2 on page 2.

11           THE COURT:  I'm sorry.  There is a lot of pages here.

12           All right.

13           MR. VERRILLI:  What we are seeking the Court to do --

14   asking the Court to enjoin is any Executive Branch employee,

15   et cetera, from relying on or using in any way or for any

16   purpose or otherwise taking any action based upon the

17   statements laid out in Section 1 of the executive order.

18           We are not asking -- we are asking that it -- that

19   those statements not be operationalized within the four corners

20   of this executive order or more broadly as attempted with

21   respect to *Jenner & Block*.  So we are not asking that any

22   speech be enjoined.  What we are asking is that the operative

23   effect of that speech be comprehensively enjoined.

24           THE COURT:  And how does that work with regard to

25   Section 1?  Because I understand your argument to be Section 1

1    states why Sections 2 through 5 are necessary in the

2    government's view.  So if I enjoin Sections 2 through 5, can

3    Section 1 stand or is it part and parcel of the action?

4            MR. VERRILLI:  No.  I think it has to be part and

5    parcel, in part because enjoining Sections 2 through 5 would

6    not cure all of the constitution harm and practical harm to us

7    for the sort of *Jenner & Block* circumvention kind of reasons I

8    was talking about.

9            THE COURT:  And it wouldn't prevent the Executive

10   Branch from issuing a *Jenner & Block* like memorandum.

11           MR. VERRILLI:  Correct.  Precisely.  It also would

12   not address our due process objection to the defamatory and

13   baseless statements about our reputation.  And there is also

14   this direct connection between Section 1 and Section 3 where

15   Section 1, baselessly says that Susman Godfrey is acting

16   against the national interest.  And then Section 3 tells every

17   federal government agency supervising government contracts that

18   it should take the fact that -- it should take the national

19   interest into account in deciding which contracts to terminate.

20   So it just seems to me -- that is, I think, helpful in

21   illustrating that it is just interwoven with the whole

22   document.  There is no way I think it could be allowed to stand

23   for all of those reasons.

24           If Your Honor has no more questions about Section 1,

25   I can move to Section 2.

1          THE COURT:  Yes.

2          MR. VERRILLI:  I think the key question here about

3    Section 2 is the security clearances issue.

4          THE COURT:  Do you know if any Susman Godfrey

5    employees have had their security clearances revoked?  I know

6    you weren't seeking a temporary restraining order about that.

7          MR. VERRILLI:  I am not aware that they have, Your

8    Honor.  I am not aware that they have.

9          THE COURT:  Thank you.

10          MR. VERRILLI:  But the question here I think is

11   whether our constitution claims are justiciable.  And both *Egan*

12   in the Supreme Court and *Lee* in the D.C. Circuit are

13   justiciability cases.  And I think it is quite important to

14   look at what *Egan* talks about and to contrast it with what we

15   have in this executive order.  *Egan* describes the

16   determinations that are insulated from judicial review that

17   aren't justiciable as protective judgments about an

18   individual's future actions, specifically attempts to assess

19   whether under compulsion of circumstances or for other reasons,

20   the individual might compromise sensitive information and

21   threaten national security.  That is at pages 528 and 529.  So

22   in other words, individualized decisions about the

23   trustworthiness of particular applicants or holders of security

24   clearances, that is not this.

25          And I think maybe to illustrate that the fundamental

1    difference if a President were to issue an executive order that

2    no woman could receive a security clearance or that no

3    republican could receive a security clearance, there is not a

4    chance in the world that the Supreme Court or the D.C. Circuit

5    would find that executive order to be nonjusticiable.  And that

6    is because it differs fundamentally from what *Egan* and *Lee* were

7    talking about.

8            And this EO is a version of the same thing.  This is

9    a categorical suspension of security clearances to a class

10   defined by its exercise of First Amendment rights.  That is

11   what it is.  There is no individualized consideration that

12   preceded the suspension.  There is a suspension and then they

13   claim there will be individualized consideration to follow

14   about whether to restore that which has been suspended.  But

15   the suspension occurred on the basis of retaliation for the

16   collective exercise of First Amendment freedoms by the firm and

17   not based on any individualized determination about anyone.

18           THE COURT:  And what do you make of your friend on

19   the other side's argument that a post deprivation process like

20   this review about whether the clearance should be reinstated is

21   sufficient for purposes of due process?

22           MR. VERRILLI:  Well, the first observation I would

23   make about that, Your Honor, is it doesn't address the First

24   Amendment problem.  This was imposed in retaliation for

25   exercise of First Amendment rights and has suffered the same

1    defect that an order saying no woman or no republican can hold

2    a security clearance would have.  It is based on a categorical

3    judgment and an impermissible criterion defending that

4    categorical judgment.  That is the first problem with it.

5           The second problem with it is that the suspension has

6    adverse effects in the here and now.  And because it will

7    prevent those who do have security clearances from being able

8    to use them to -- in the event that the firm is retained to

9    carry out work that requires the security clearances.  And as

10   we have demonstrated in our factual submissions, the firm

11   routinely does that kind of work.  Of course, we have got

12   somebody in the reserves who needs a security clearance

13   unrelated to firm work.  And that person's security clearance

14   has been suspended.  There is also a defamatory element to the

15   suspension of the security clearances that happens in the here

16   and now.  The argument is that no one in Susman Godfrey is

17   trustworthy enough to have a security clearance.  It is just

18   pure defamation that occurred with no process.

19           THE COURT:  And is not connected at all to the

20   specific problems that Section 1 is trying to address?

21           MR. VERRILLI:  None whatsoever.

22           Your Honor, I will point -- it is a little bit

23   surprising.  Section 2 doesn't even have the words national

24   security in the Section.

25           And so, you know, a couple more points if I could

1    make about this.  You know, this exact same suspension of

2    security clearances, was in the Paul Weiss executive order and

3    exact same justification that Paul Weiss had undertaken

4    representation that were against national interest that is what

5    justified the suspension of the Paul Weiss security clearances.

6    And then whenever it was, a few days later, the President

7    rescinded the Paul Weiss order.  There was no change in

8    circumstances with respect to the trustworthiness of Paul Weiss

9    lawyers between the imposition of that executive order and its

10   recision a few days later, I think in some ways that tells you

11   all you need to know about whether there is anything legitimate

12   about the suspension.

13          THE COURT:  Is the Paul Weiss the only order that was

14   issued and rescinded?  Am I correct in thinking the other

15   agreements, as least to public knowledge didn't --

16          MR. VERRILLI:  I believe that is correct, Your Honor,

17   yes.

18          THE COURT:  Thank you.

19          MR. VERRILLI:  And then, you know, the other one more

20   point I would make about Section 2, if I could -- and in

21   particular I would commend to Your Honor's attention the D.C.

22   Circuit's *Rattigan* decision, which we cite in our briefs.  And

23   the -- what the Court said in that decision I think is exactly

24   what we are talking about here.  It said that the Court has

25   dual responsibilities in a security clearance situation.  Its

1    duty is to follow *Egan*, but it is also -- and I am quoting

2    here, "To preserve to the maximum extent possible" legal

3    protections for individuals.  That is at page 770 of 689 F.3d.

4        Judge Howell said something very much along the same

5    lines at page 41 of her opinion enjoining the equivalent

6    provisions of the Perkins Coie order.

7        If the Court has nothing further on Section 2, I will

8    move to Section 3.

9        THE COURT:  You argue in the alternative that *Lee* is

10   bad law.  But I don't need to reach that --

11       MR. VERRILLI:  No.  We are preserving that in case we

12   need it.  We don't think we need it for all of the reasons.  We

13   have identified this is, as we have said is -- this is upstream

14   of the kind of decision that is at issue in *Lee*.  But we are

15   just preserving that issue.  We are not asking Your Honor to

16   rule on it.

17       With respect to Section 3, I think there is a pretty

18   clear way to just cut through it all.  And it is this:  If one

19   looks at page 16 of the government's motion to dismiss, there

20   is a sentence there --

21       THE COURT:  If you will give me a moment to get

22   there.

23       MR. VERRILLI:  Sure.

24       THE COURT:  I am with you.

25       MR. VERRILLI:  Just in the very middle of the page,

1    it is the sentence penultimate -- it is the last sentence of

2    the carryover paragraph that starts with the word furthermore.

3    The key language I think for the moment here is that it says,

4    "While Section 3 relies equally on plaintiff's racial

5    discrimination and its malfeasance in election litigation for

6    its authority."  So the government has conceded that Section 3,

7    the disabilities imposed and burdens imposed by Section 3 rest

8    equally on our election litigation and their baseless

9    allegations of racial discrimination.  One of those two things

10   is a blatant First Amendment violation.  It is retaliation,

11   viewpoint discrimination, et cetera.  So once one recognizes

12   that there is viewpoint discrimination and retaliation going on

13   here in violation of the First Amendment, then what we have is,

14   in the best case scenario for the government, you have got an

15   order that is justified equally by the unconstitutional First

16   Amendment violation and their concern -- purported concern with

17   race discrimination.

18          Well, there is a well associated constitutional

19   methodology for dealing with a situation like that.  It is the

20   *Mount Healthy* methodology.  The Supreme Court applied it just

21   earlier this year in the TikTok case.  You have to ask the

22   question, whether the government would have gone forward with

23   the action based solely on the -- on the rationale that doesn't

24   violate the constitution.  And the government bears the burden

25   of making that proof.  They didn't even try to make that

1    argument.  So I just think it is game over on that.  They have

2    conceded retaliation.  And they haven't tried to defend on the

3    *Mount Healthy*.  I would point out that this case that -- about

4    which they make a great deal, the *Umbehr* case by the Supreme

5    Court -- the holding of that case, the holding of that case was

6    that government contracts may not be terminated based on

7    government officials' retaliation or viewpoint discrimination

8    against the speech of the contract.  And then it goes on to

9    apply the *Mount Healthy* kind of analysis that I just described.

10   It instructed the lower courts to do so, because it hadn't been

11   done yet.  But the case they cite establishes the principle

12   that defeats their position on that issue.  It is just plain as

13   could be.

14            THE COURT:  Which case are you relying on there?

15            MR. VERRILLI:  It is the *Umbehr* case.

16            THE COURT:  Okay.  Because they cite *McGowan* for the

17   notion that you can support it under both an unconstitutional

18   and a constitutional justification and just evaluate on the

19   basis --

20            MR. VERRILLI:  Right.  *But McGowan* is a very old

21   case.  And the Supreme Court law has evolved a very great deal

22   since then to the *Mount Healthy*, *TikTok* approach.  As I said,

23   the best proof for it is the *Umbehr* case, which they cite which

24   says exactly what I am saying now about how to go about it.

25   And they haven't attempted that.  And, you know, I think there

1    is probably a good reason why they haven't attempted it,

2    because they couldn't possibly justify what they have done here

3    on the basis of the spurious allegations of racial

4    discrimination that they have made in the executive order that

5    they have sought to defend in the summary judgment proceedings.

6              There are really two elements to it.  The first is

7    the Susman Prize, which they point to.  Your Honor has asked

8    appropriately about that.  I have explained, it is 100 percent

9    lawful.  That can't possibly justify this.  And the only

10    thing -- the only other evidence that they support to are some

11    statements that they pulled off of the website basically that

12    says that Susman is committed to diversity and that they have

13    signed a pledge that commits them to gender parity.  I mean,

14    God forbid that Susman Godfrey would pledge itself to equal

15    treatment for men and woman.  That is what they are saying

16    constitutes the unlawful discrimination.

17              And I do think it is important too if I could ask

18    Your Honor to take a look at page 13 of the defendant's

19    opposition to our summary judgment motion.

20              THE COURT:  You said page 13?

21              MR. VERRILLI:  Thirteen, yes.

22              THE COURT:  I am ready when you are.

23              MR. VERRILLI:  Yes.  This is the first full

24    paragraph.  So they have pointed to these statements on the

25    website "And our commitment to gender equality" and they say --

1    and I just -- I am going read to it out loud because it is just

2    astounding.  They say, "This is precisely the sort of racial

3    and gender considerations prohibited by civil rights laws.  And

4    Susman appears to have fallen short of these principles.  Such

5    explicit race-based criterion goes well beyond the hidden

6    consideration of race that the Supreme Court condemned in

7    *SSFA*."  They are saying these website statements go

8    considerably beyond what was at issue in *SSFA*.  What was at

9    issue in *SSFA* was express race conscious decision making that

10   granted benefits on the basis of race.  They are saying those

11   website statements go beyond what was at issue.  They don't

12   remotely approach what was at issue in *SSFA*.  And the idea the

13   United States would say something like this in a brief, I mean,

14   I just -- I -- I am speechless, frankly.  So there is no

15   possible way that this race discrimination justification, even

16   if they had tried to prove what they have to prove on *Mount*

17   *Healthy*, even if they had tried, and they haven't, there is no

18   way it could uphold any part of this order.

19            THE COURT:  This is a better question for your friend

20   on the other side so I will ask him.  But what law do you

21   perceive then to believe the statements on the website to be

22   violating certainly?  Title VII is out of the picture, because

23   the Susman Godfrey Prize and some mere statements I think

24   wouldn't rise to the level of a Title VII claim.  Do you have

25   any other guesses?

1              MR. VERRILLI:  I don't know.  We are not subject to

2       the equal protection clause because we are a private entity.

3       And maybe they have got some Title VI theory in mind.  I don't

4       know.  I think what their theory is basically, we don't like

5       what they are doing.  And because we don't like what they are

6       doing, we are going to impose this Draconian set of

7       punishments.  This language I read tries to gesture at some

8       thought that maybe this is unlawful in some way, but it just

9       isn't.  It just isn't.

10             With respect to -- I can move on to Sections 4 and 5

11      and I think I can move pretty quickly through them, Your Honor.

12      With respect to Section 4, I think the point, again, is very

13      straightforward.  We are not seeking an injunction that the

14      EEOC may never investigate Susman Godfrey.  We are seeking an

15      injunction that the EEOC and every other government agency

16      can't open an investigation or otherwise come after us on the

17      basis of this executive order, because this executive order is

18      impermissibly retaliatory in violation of the First Amendment.

19      An EEOC investigation prompted by this executive order would be

20      a form of retaliation.  We are not asking for an immunity from

21      EEOC proceedings.  And so I just think this is very

22      straightforward.  This goes back to the language that Your

23      Honor and I discussed in page 2 of the proposed order.  It

24      could prohibit the EEOC from acting on the basis of the

25      findings in Section 1 or anything else in the EO.  But it

1    doesn't ask for immunity, so I think that is pretty

2    straightforward.

3            THE COURT:  Now, I confess I have some concerns about

4    Section 4.  It would be one thing I think were Section 4 to put

5    you at the head of the line of any EEOC investigation.  All

6    this seems to be saying is that nothing in the order is

7    constraining the prior order which had directed these type of

8    EEOC investigations.  So is Section 4 actually doing something

9    affirmative as opposed to just limiting its potential to be

10   construed as undermining an earlier order?

11           MR. VERRILLI:  Yes.  And it is because of the

12   connection between Section 1 and Section 4.  Section 1 contains

13   as I hope I have demonstrated absolutely spurious allegations

14   that we have engaged in race discrimination.  And Section 4 is

15   connected to Section 1 in the same executive order.  And our --

16   and the remedy we propose in that language that we were

17   discussing earlier, Your Honor, is that you can't act on the

18   basis of this executive order.  So the EEOC can't open an

19   investigation based on the findings in Section 1.  I think that

20   is quite important.  And so it is not shutting down an EEOC

21   permanently, but they can't do that.  Just like every other

22   agency in the Executive Branch can't act on the basis of those

23   findings.

24           THE COURT:  And Section 4 of the *Perkins Coie* order

25   has been enjoined?

```
1              MR. VERRILLI:  It has.

2              THE COURT:  I think there are more steps in that

3    litigation to come.  Isn't there also an even earlier order,

4    the EO on DEI, does that affect you or is it really just the

5    Perkins Coie order from which these EEOC investigations are

6    stemming?

7              MR. VERRILLI:  So it doesn't effect the firm directly

8    in the sense that we haven't been -- Susman hasn't subjected

9    to -- it wasn't on the list of firms subjected to the EEOC

10   investigations.  And, you know, I think given that it wasn't on

11   the list, there would be lot of reasons to be suspect of being

12   put on the list now in light of what is happening.  Again, all

13   we are asking for is that the Court enter that the -- the

14   language that we propose on page 2 in paragraph 2 of our

15   proposed order, which would prohibit what we think would be the

16   unconstitutional action while leaving the EEOC with the

17   authority to proceed in regular order in a proper way without

18   any unconstitutional taint.

19             THE COURT:  Thank you.

20             MR. VERRILLI:  With respect to Section 5, two points.

21   The first, it has the exact same problems as Section 3.  I

22   mean, on the merits what the government is trying to do with

23   respect to Section 5 is argue, well, you know, we are a

24   contractor.  We have rights.  We have broader latitude than we

25   have as a sovereign.  And when we are landlord or proprietor we
```

1    have broader rights than we have as a sovereign.  You don't

2    have the right as -- just as you don't have the right as a

3    contractor to engage in blatant viewpoint discrimination, you

4    don't have the right as a proprietor or landlord or anything

5    else to engage in blatant viewpoint discrimination.  You don't

6    have the right, period, if you are the government.  You don't

7    have the right to deny due process as a landlord or proprietor,

8    just like you don't have a right to deny due process as a

9    contractor.

10            So it really just -- exactly the same arguments apply

11   that they -- you know, in order to have any chance of

12   prevailing on this, they would have to come in and say, there

13   is some neutral, non -- some neutral constitutional ground that

14   we are invoking to justify the exclusion from government

15   buildings and facilities, et cetera, and that the President

16   would have adopted this executive order with this exact same

17   restriction, even absent the retaliatory First Amendment

18   motive.  They haven't tried to make that argument.  So, again,

19   on the *Mount Healthy* analysis there is -- they just -- it is

20   game over.  They haven't made the -- even begun to make the

21   case they would have to make to make the relief.  And they

22   couldn't, of course, because of the reasons we talked about

23   with respect to Section 3.

24            THE COURT:  Do you perceive this dichotomy between

25   the government as sovereign and the government as contractor or

1  landlord?

2          MR. VERRILLI:  So the government -- there is some

3  difference.  There is some latitude that the government has as

4  employer or as contractor or as landlord.  But it is not that

5  the constitution applies to the government as sovereign and the

6  constitution doesn't apply to the government as landlord and

7  contractor, et cetera.  Again, the *Umbehr* case on which they

8  rely, that is exactly what it says.  So that is a case about --

9  that was a case about retaliation against a contractor for the

10  contractor's criticism of local government officials.  And what

11  the court held in that case was that the government can't

12  retaliate, can't terminate a contract in retaliation for that.

13          And so while there might be some additional latitude,

14  it doesn't extend so far as to the types of things the

15  government is trying to do here.  So I really think that is the

16  fundamental problem.

17          THE COURT:  Your friend on the other side relies on

18  *Rust v. Sullivan* and that line of cases to say the government

19  is allowed to favor particular types of speech.  Is your view

20  that, be that as it may, that does not apply when you are

21  cutting off a contract or retaliating or how do you sort of

22  square those lines of cases?

23          MR. VERRILLI:  So I will address contracting in a

24  minute.  It can't possibly justify keeping us out of government

25  buildings.  That has no bearing on that whatsoever.  And then

1    with respect to the -- with respect to government contracts,

2    what it says is that, you know, the government can decide that

3    the government's money will be, you know, put to the uses that

4    the government directs that it be put to.  But, of course, all

5    of that is happening with respect to the contracts that would

6    be at issue here.  And what they are trying to do is impose an

7    extraneous set of constraints.  I mean, you couldn't possibly,

8    I think, justify a rule that said, no women-owned businesses

9    shall receive government contracts based on the fact that

10    government wants only men, only male-owned businesses to

11    receive government contracts.  You couldn't possibly do that on

12    the theory that government can spend its own money any way it

13    wants.  It can't do that.

14          And then the *Umbehr* case specifically holds that you

15    can't -- that whatever *Rust v. Sullivan* might have said, it

16    doesn't mean that the government can terminate a contract based

17    on its disagreement with the -- or in retaliation for the

18    particular political viewpoints that the speaker -- that the

19    speaker manifests.  And so I just think that that argument

20    is -- you know, *Rust v. Sullivan* stands for a limited

21    proposition, an important one, but it is a limited one and it

22    doesn't come close to justifying what they have done here.

23          And with that, Your Honor, I do have one more point

24    to make about Section 5, but of course, I want to answer any

25    questions Your Honor has.

```
 1                THE COURT:  No.  Give me your point and then I have a
 2     few questions.
 3                MR. VERRILLI:  Okay.  So with respect to the other
 4     argument they make with respect to Section 5 is the ripeness
 5     argument.  I think that was thoroughly vetted at the TRO
 6     hearing.  And it was just obviously ripe.  And one thing I
 7     think is worth pointing to is -- and this is in our statement
 8     of facts 160.  When the President was signing the executive
 9     order, the official who handed him the document to sign said,
10     this is an executive order that takes certain measures against
11     Susman Godfrey to ensure they cannot access government
12     resources, government buildings, et cetera -- to ensure that
13     they cannot access.  Okay.  And so I just think the idea that
14     it isn't ripe is just an insubstantial argument.
15                THE COURT:  Can I turn you to your vagueness
16     argument?
17                MR. VERRILLI:  Sure.
18                THE COURT:  So your friend on the other side
19     maintains that your due process vagueness argument doesn't hold
20     water because this is neither criminal nor regulatory.  So what
21     is your response to that?
22                MR. VERRILLI:  Well, fortunately, it is not criminal.
23     It is obviously regulatory.  It is instructing government
24     agencies to take regulatory action against us.  I don't see how
25     you could think of it any other way.  And the idea that -- and
```

1   then, just stepping back again, you know, let's not lose the

2   forest for the trees here.  Look at what they are doing.  They

3   are saying, you can't bring a First Amendment challenge --

4   excuse me -- a due process vagueness challenge against an order

5   like this, because in some technical sense it is not

6   challenging the application of the regulation.  I mean, how

7   could that be?  How could it be that a private citizen, a

8   private entity subject to Draconian punishment like this can't

9   object to the fact that it was done without any notice, without

10  any opportunity to be heard?  How could that be?

11          THE COURT:  And the last question I have for you is,

12  obviously, we have the benefit of the *Perkins Coie* opinion from

13  Judge Howell.  Does that affect how you wish this proceeding to

14  proceed?

15          MR. VERRILLI:  So, you know, I think the -- what we

16  are hoping to have happen in this proceeding is final judgment,

17  entry of permanent injunction enjoining the order as a whole in

18  the manner that we have described in our proposed order.  And

19  we think Judge -- we think Judge Howell's opinion is supportive

20  in every particular, that result.  And so I think in that

21  respect, the -- we endorse Judge Howell's reasoning.  And we

22  think it -- we think it provides a quite useful road map.  And

23  we think that the -- we hope that the Court is able to move

24  expeditiously to a final judgment here.

25          THE COURT:  And is there any portion of the Judge

1    Howell opinion with which you take issue?

2              MR. VERRILLI:  I don't think there is any portion

3    with which we take issue.  We might emphasize, you know, the

4    arguments that we have made today in some places are maybe a

5    little bit different in emphasis than Judge Howell's, but there

6    are no real fundamental diversions I don't think.

7              THE COURT:  Thank you very much.

8              MR. VERRILLI:  Okay.  Thank you, Your Honor.

9              THE COURT:  Mr. Lawson.

10             MR. LAWSON:  Good afternoon, Your Honor.

11             I believe as I mentioned at the TRO hearing, we

12   think -- and counsel for plaintiffs approached it this way as

13   far as section by section.  And I think, as I believe I

14   referenced at the TRO hearing, at sort of a 30,000-foot level,

15   I think the biggest point of difference is whether or not these

16   are punishments in the traditional sense that the court -- the

17   Supreme Court has looked at and in cases like *Vullo* and *Bantam*

18   *Books* or if this is more discretionary.  Our position, of

19   course, is that this is executive discretion.  One of the

20   reasons, I am -- I'm sorry I have already forgotten the example

21   that Mr. Verrilli was referencing a moment ago in the due

22   process section.  We would point -- our general overarching

23   position is that due process would apply certainly in a

24   criminal type of prosecution, certainly would apply in a

25   licensing type of issue where there is an inherent right of

1    access and so forth.

2            Our position is that on these points, the -- there is

3    no inherent right of access, that the -- it is discretionary as

4    to who has and is able to maintain security clearances,

5    discretion as to who can be a contractor with the government,

6    discretion as to the guidance given to Executive Branches to

7    inquire into areas.

8            And if I can just flag on Section 4, an EEOC

9    investigation is a bit of a term of art as I have been

10   learning.  And this is more of a review.

11           But then also to kind of round out, discretion, no

12   inherent right on the Section 5, the last point, that, you

13   know, access to buildings, access to staff, hiring, again

14   discretionary.

15           THE COURT:  Isn't there --

16           MR. VERRILLI:  It is conceivable --

17           I'm sorry, Your Honor.

18           THE COURT:  Isn't there an inherent right of access

19   to federal courthouses for purposes of the petition clause?

20           MR. LAWSON:  Of course.  I don't want to go down the

21   hypothetical of saying this guidance regarding access to

22   buildings would necessarily violate, because between the time I

23   gave the hypothetical and the guidance came out, maybe I could

24   come up with some reason on it.  I have to concede that it

25   could be possible for some guidance limiting access to a

1    building to at the very least affect the right of petition, but

2    that it is conceivable that is done.  But that drives home the

3    point that I have been making throughout this proceeding that

4    it is not ripe.  We don't have that.  Obviously, we have

5    submitted that that is a grounds to dismiss.  If the Court

6    denies the dismissal and denies the motion for summary

7    judgment, then perhaps the Court could revisit the issue on the

8    TRO aspect and at least allow the guidance to be developed to

9    see if we are coming across an issue that raises constitutional

10    implications.  Right now, we have hypothetical parades of

11    horribles.  I would submit that we need something granular and

12    specific on that point.

13              So that is the sort of 30,000-foot variation and

14    approach.  And I think however the Court decides on that point,

15    much will flow for the rest of the order and the decision.

16    Certainly, I can go section by section as to how we view it.

17    Unfortunately, this may be a bit of a repeat for the Court from

18    some of the prior hearings.

19              THE COURT:  Before we get there, can I just ask --

20              MR. LAWSON:  Yes.

21              THE COURT:  -- some factual questions?

22              MR. LAWSON:  Please.

23              THE COURT:  I think you had said at the TRO stage

24    that no one reached out to the firm before issuing the order,

25    which is different than what happened with a lot of other law

 1     firms.

 2              MR. LAWSON:  I don't -- I can't speak to that.  And I

 3     apologize if I said that that was the case.  I don't think I

 4     have ever known one way or the other on that.

 5              THE COURT:  All right.  Maybe your friend on the

 6     other side said it and you didn't contradict it.

 7              MR. LAWSON:  Yes.  I have no evidence either way that

 8     I can give.  If his representation is no contact was made, I

 9     have nothing to refute that, certainly.

10              THE COURT:  Do you have any explanation for why

11     certain firms were entitled to dialogue and Susman was not?

12              MR. LAWSON:  No, I don't have any information on the

13     nature of those conversations with the White House.  I have

14     been purely handling the litigation.

15              THE COURT:  Do you know if the agreements with the

16     firms that entered into agreements are written agreements?

17              MR. LAWSON:  I know of nothing beyond I think the

18     generally publicly available information.  I think there have

19     been some press releases that have some details.  I cannot

20     remember if plaintiffs -- any of those releases were attached

21     in the declarations from plaintiff.  I don't think we included

22     them.  But to my knowledge that I know of, no other documents

23     than that.  That is not saying there isn't any, but I know of

24     no others.

25              THE COURT:  Do you know if any security clearances

1    have been revoked that belong to Susman employees?

2              MR. LAWSON:  No, I do not know of that.

3              THE COURT:  No, they haven't; or, no, you do not

4    know?

5              MR. LAWSON:  I do not have any information on that

6    point.  If Mr. Verrilli is saying that none have done -- I have

7    nothing to contradict that.

8              THE COURT:  All right.  Thank you.  You can return to

9    your previously scheduled remarks.

10             MR. LAWSON:  I appreciate the Court's enthusiasm on

11   the point.

12             So, again, as to Section 1 I think the Court's

13   questions as to the fundamental issue in Sections 2, 3, 4 and 5

14   are not present, is there anything worth enjoining in Section

15   1?  I would submit, no, that Section 1 really is just

16   commentary.  We have made the argument in the other cases or

17   made the notation in the other cases that it is informative as

18   to how the sections, the operative sections, would be viewed.

19   I can't dispute that.  It is certainly in the order.  And if

20   someone is going to be looking at how to deal with Section 3,

21   they would probably look at Section 1 for some information on

22   that.  But I don't think that makes Section 1 operative.  I

23   don't think in a vacuum -- if you are an agency and you see

24   Section 1, I don't think there is any direction to take.  It is

25   a little more than reading a press conference.  That would be

1    our position.

2              THE COURT:  But you agree that Section 1 informs what

3    actions may be taken under Sections --

4              MR. LAWSON:  Absolutely.  It is part of the order.  I

5    can't deny there is information there.

6              THE COURT:  So given that, why doesn't Section 1

7    confirm that what we are looking at here are punishments as

8    opposed to discretionary decisions, because the language is in,

9    I think even you would concede, quite punitive terms.

10             MR. LAWSON:  That is a great question.  And I would

11   submit that the punishment has to be looked at at the act being

12   taken.  And so therefore, this is why in all of these cases and

13   in all of these points -- or all of these motions, we have gone

14   granular in Sections 2, 3, 4 and 5.  Is whatever may be

15   informed in Section 1, whatever intent someone may want to read

16   into Section 1, the rubber hits the road on whether this is

17   punishment or discretion by the terms of the operative

18   sections.  And on each one of those, I make the point as the

19   Court is now painfully aware on it being a form of discretion,

20   that this is how it is determined.

21             So the punishment in some of the other cases and

22   maybe even in some of the amicus briefs and there has been the

23   issue of bills of attainder and that type of issue.  So the

24   punishment -- is it barring somebody from something they have

25   an absolute right to?  The practice of law versus, you know,

1    being able to act as a contractor.  One is eliminating

2    somebody's ability to get a bar license is considerably

3    different than the ability to work as a government contractor.

4    The ability to, again -- you can just apply that to all of the

5    other sections.

6            So that is where -- and, again, we -- obviously in

7    that context, we are outside of a criminal section.  And this

8    is where -- I am mixing and jumping ahead to the *McGowan* and

9    the *O'Brien* issues, those were the Court giving some deference

10   to intent reading in favor of congressional intent on criminal

11   punishment.  And so here we have an executive order where the

12   consequences are not jail time on any of these, far from.  It

13   is not barring anybody from anything they would like to do or

14   have a right to do.  It is -- strike that.  It is not something

15   they have a right to do.  It is something that they may want to

16   do, but there is a counter-party who has discretion and that is

17   the government in this case.

18           THE COURT:  So there are a lot of circumstances in

19   which the Executive Branch or the Judicial Branch has

20   discretion.  So if I were to instruct my law clerk in applying

21   an abuse of discretion standard to do so with a retaliatory

22   intent, is the mere fact that we are exercising discretion

23   enough to immunize that retaliatory intent?

24           MR. LAWSON:  No.  And I think we concede that point

25   when we cite the cases discussed earlier with -- well, I can't

1   remember if we cite *Mount Healthy*, but we certainly channel it

2   when we cite the *Umbehr* line of cases.  And even in *Umbehr*

3   there is the -- forgive me if I am mispronouncing it.  There is

4   the point at the case in the -- this is around page 685 of the

5   point where if a plaintiff is able to establish that speech

6   issues had some role in a termination -- this is, of course, a

7   contract termination -- the government would then have a valid

8   defense if it can show by a preponderance of the evidence that

9   in light of their knowledge and policies at the time, they

10  would have terminated regardless of the speech.  So there is

11  still that -- there is still that inquiry.  Is there something

12  else?  Is there the valid choice?  If the Court's instruction

13  to the clerk was irredeemably ill-motivated that would be one

14  issue.  But I think this is a case -- and again it is the

15  *Umbehr*, *Mount Healthy* line is far more on point than the *Vullo*

16  line.  Because *Vullo* is, of course, involving real sanctions.

17  I don't think crime, criminal sanctions were at play, they were

18  more regulatory, but sanctions nonetheless.  And that is the

19  state acting as a sovereign.  Here is not a sovereign, here is

20  a balancing factor.  So there is that inquiry.

21          THE COURT:  So this is where you are relying on

22  *McGowan*, which there is a --

23          MR. LAWSON:  To a degree, yes.

24          THE COURT:  -- permissible and impermissible, the

25  Court should look at the permissible.  So how does that work in

1    practice?  Because you are talking about unlawful racial

2    discrimination.  And it doesn't seem like anything that you

3    have alleged in Section 1 actually constitutes unlawful racial

4    discrimination.

5              MR. LAWSON:  So what I would put to is obviously

6    Section 1 is as detailed and it states what it states.  I --

7    the verbiage there is what it is.  What we have referenced in

8    some of our summary judgment pleadings -- I think it is in the

9    declaration.  One of the points that -- and this just may be a

10   fundamental legal philosophical difference here.  Our view of

11   the *SSFA* decision is that -- and I want to get this right.  It

12   is sort of upper case diversity.  Diversity as it was

13   formulated in the *Bakke* decision and then evolved.  That

14   necessarily deals with -- and it is interested in the academic

15   setting on race-based balancing, representation.  And one of

16   the points that you will see in our exhibit regarding the

17   Susman Godfrey website on diversity is the phrase or the word,

18   underrepresented.

19             The concern that is present with that approach is

20   that it is presuming there is inadequate representation based

21   on race, ethnicity, gender.  And that is what *SSFA* has

22   completely undermined.  There are five Justices in that case,

23   three in dissent, two in concurrence who have acknowledged that

24   the *Bakke* line is over.  The majority, of course, is coming at

25   it from the *Grutter* 25-year extension is not done.  But

1    logically what it is speaking to there is that the balancing,

2    which was limited exclusively in the academic setting for

3    student body and representation based on these categories are

4    not applicable.  So the Court had a question.  Hopefully I will

5    get to the --

6        THE COURT:  But before we get there, I guess I don't

7    understand how much weight you are putting on underrepresented.

8    So, for example, let me give you the hypothetical, which is

9    somewhat grounded in reality.  My understanding is that women

10   make up a majority of law school graduates but are a

11   significant minority of law firm partners.  Given that, would

12   it be an objective factual statement to say that women lawyers

13   are underrepresented in the partner ranks?

14       MR. LAWSON:  No, because I think you are just talking

15   about what the statistics show.  But if you start to make

16   hiring decisions based on -- not on individual merit, but from

17   an idea of, hey, we need to get this group up to a certain

18   level, then is that person being hired on merits and individual

19   quality or they almost like some identity ambassador to fill

20   that represented category that is deemed to need to be hired?

21       THE COURT:  So you're essentially getting that Susman

22   has a quota system -- I believe this ECF 159-2 at page 10 ECF

23   page.  It is the statement, "The firm strongly encourages

24   members of all grounds underrepresented in the profession to

25   apply to join us."

1          MR. LAWSON:  That is one example.  There are multiple

2     throughout that page.

3          THE COURT:  It goes on to say, Susman Godfrey does

4     not discriminate based race, creed, religion, color, national

5     origin, ancestry, sex, age, marital status, disability, sexual

6     orientation or gender identity.  So why are we not reading that

7     earlier statement in context?  Which it is to say as in my

8     hypothetical, women who want to be law firm partners, we

9     encourage you to apply because we know that you are objectively

10    underrepresented in this pool.  That said, we abide by Title

11    VII -- I assume the DCHRA or whatever other -- I guess they

12    don't have a DC office -- what other state antidiscrimination

13    statutes there are to say, we encourage everyone to apply,

14    especially those in underrepresented groups but in making a

15    decision of whether to hire you, we are going to abide by the

16    letter of the anti-discrimination laws.

17         MR. LAWSON:  The next section, the diversity

18    committee is -- and this is the second sentence, but the

19    first --

20         THE COURT:  Before we get to that, could you answer

21    my question as it gets to the talent section.  I mean, they

22    say, we encourage people from underrepresented backgrounds, but

23    we will follow the law; correct?

24         MR. LAWSON:  That is correct, but in the next

25    paragraph they talk about dedicating to improving diversity in

 1    the firm by recruiting and supporting lawyers.  So we are

 2    talking there about what I think is not an unreasonable

 3    interpretation of hiring decisions based on trying to address

 4    an underrepresented issue, which is quite suspect after the

 5    *SSFA* decision.

 6            THE COURT:  By virtue of a recruiting, which I take

 7    to be sort of encouraging lawyers to apply and supporting those

 8    lawyers?

 9            MR. LAWSON:  I would also think that recruiting and

10    hiring are synonymous there.

11            THE COURT:  So you think that recruiting means hiring

12    a quota of underrepresented --

13            MR. LAWSON:  I am not asking the Court to make an

14    inquiry into whether or not -- or a ruling into whether or not

15    setting up interviews are the issue.  This -- the concern would

16    be true hiring -- you know, I am not necessarily saying there

17    is no issue with the hiring -- or strike that -- no issue with

18    the interviewing process.  I am not looking at that.  That is

19    not the concern.  The concern would be actual hiring decisions

20    based on trying to hit a representative, however determined

21    level that is deemed appropriate.  That is what I think is

22    quite suspect in light of the *SSFA* decision.

23            THE COURT:  Okay.  So I am just trying to assess if

24    we are in the *McGowan* world and we are putting your retaliatory

25    motive to one side --

```
1            MR. LAWSON:  Okay.

2            THE COURT:  -- whether this can stand on your

3    presumption they are engaging in unlawful race discrimination.

4    I think we are agreeing today it would actually have to be

5    hiring some number of underrepresented individuals that might

6    not otherwise be hired in a diversity blind procedure.

7            So you then go on to say in Section 1, "Susman itself

8    engages in unlawful discrimination, including discrimination on

9    the basis of race."  What is your support for that statement?

10           MR. LAWSON:  I would -- I would really just draw to

11   the -- the exhibit we were talking about a moment ago, the

12   information off of the website.  I don't have the hard data on

13   hiring.  We move on an expedited basis for various reasons,

14   the Court is familiar with.  I don't have the --

15           THE COURT:  So your evidence of unlawful

16   discrimination including discrimination on the basis of race

17   is, this award they have, which doesn't go to hiring, which I

18   think we all agree.

19           MR. LAWSON:  Yes.

20           THE COURT:  So really it is just the word recruiting

21   and supporting lawyers who identify as members of

22   underrepresented groups?

23           MR. LAWSON:  Underrepresented, yes, that is the key

24   concern.

25           THE COURT:  Okay.  So if you are factually incorrect
```

1    or if I am unable to determine whether or not you are factually

2    correct or incorrect, how can I sustain the order on the basis

3    of their alleged racial discrimination?

4            MR. LAWSON:  I think that you could -- there is still

5    the element of discretion.  We are talking in the world of

6    Section 3, the contracting world.  You have the -- you have

7    that -- the government acting as a contractor, not as the

8    sovereign with discretion.  If it is concerned about these

9    hiring practices, what does this really mean?  I don't -- I

10   have not read the case that says that it has to grant the

11   contract without a preponderance of the evidence conclusively

12   issuing that these hiring patterns are or are not existent.  If

13   it is concerned about this generally, that is one thing.  And,

14   again, I would track back to the decades of law supporting the

15   old LBJ order.  That if the social policy -- I think really

16   where this comes to -- and hopefully I am getting close to

17   answering the Court's key question here.  If the social

18   policy -- I think the Court's question is really what is the

19   quantum of evidence that must be present either in the order or

20   supportable through litigation that could support the validity

21   of the social policy?  I think in this context, given the

22   extraordinary -- we cite the *Chao* case, I think it is, in this

23   circuit in particular the great deference that is given to

24   executive order, determining efficiencies and obviously that

25   was the -- there is no end of law regarding diversity and

1    affirmative action, et cetera, as a social policy that

2    increases efficiency.  I would think that absent the hard data

3    of who has applied, who has been hired, who has not been hired,

4    which we do not have, I still think there is some discretion

5    that the executive would have if they look at this and they are

6    like, I think I know what this means, I am not sure I want to

7    jump into business with that person.  I think there has to be

8    some level of discretion given to the executive on that.

9          THE COURT:  I do agree that you have some discretion.

10   But you rely very heavily on efforts to combat racial

11   discrimination dating back to 1940 as it pertains to government

12   contracting.

13         MR. LAWSON:  Yes.

14         THE COURT:  There I believe there was a documented,

15   objective understanding that these contracts were not being

16   awarded on a race-neutral basis.  And here you make this

17   allegation -- one that your friend on the other side says is

18   potentially defamatory that Susman engages in unlawful

19   discrimination, including discrimination on the basis of race.

20   And other than one sentence about trying to recruit individuals

21   from underrepresented backgrounds, you don't have any evidence

22   of that.  So it strikes me that if you are engaging in a

23   discretionary decision to which you might be entitled to

24   deference on the basis of incorrect data, that is sort of

25   necessarily an abuse of your discretion.

1          Right?  If I commit a legal error, I have necessarily

2    abused my discretion.

3          MR. LAWSON:  Yes.

4          THE COURT:  So I don't know how if you are relying on

5    a legally erroneous statement you are entitled to exercise that

6    discretion.

7          MR. LAWSON:  Well, I think it -- would be in the

8    realm for the executive to kind of look at the context of what

9    is meant by diversity.  We cite a few other points that the --

10   increasing parity from the -- it is the *Houston Bar*

11   *Association*.

12         THE COURT:  So increasing parity, that we should pay

13   people that do the same work, similar salaries.

14         MR. LAWSON:  That wouldn't be objectionable.  What is

15   objectionable is saying, hey, we need this number of people to

16   make sure this underrepresented group is properly represented.

17   At what level?  Why?

18         THE COURT:  And I think if we saw that on the Susman

19   website, I might follow your argument, right?  If it said only

20   members of underrepresented minorities should apply or we have

21   a specific pipeline or we have a quota.  I just don't see any

22   evidence of that.

23         MR. LAWSON:  I would submit that, again, it goes back

24   to the point we were just chatting about that.  That is going

25   towards an issue of what is the quantum of proof that must

1    exist for the executive to determine a social policy and try to
2    use the procurement power to further that.  And the -- *Kahn* I
3    think is the underlying case where the circuit -- the Court is
4    nodding -- it was dealing with an inflation issue.  And the
5    Circuit Court here in DC said, look, it is an economic issue,
6    it is a procurement issue.  There is plenty of good reasons on
7    one side versus the other as to whether or not this is going to
8    work.  We are deferring.  And I think that was a play again at
9    *Chao*, which I am remembering a little better, which involved
10   the presence of posters being required to alert workers that
11   they didn't have to join a union.  And I believe the Court made
12   a passing reference, you know, putting that sign in there may
13   boost union membership as much as deflate it.
14        So, again, I think if the Court -- if I am
15   understanding the Court's question, I think it is going towards
16   what is the quantum of proof that is required I would submit
17   under the circuit precedence is low when it comes to this
18   issue.
19        THE COURT:  And assuming that it is low, I think that
20   is -- there is some room for debate.  I think it is hard in
21   looking at this part of Section 1 to say Susman itself engages
22   in unlawful discrimination, including discrimination on the
23   basis of race.  For example, and then you go on to discuss the
24   Susman Prize, which I think is not, I think you agree, unlawful
25   discrimination on the basis of race.

1          So if I say, Judge AliKhan's chambers engages in

2     unlawful discrimination, including discrimination on the basis

3     of race and then I say, for example, she has hired all women.

4     That obviously would not be an example of unlawful

5     discrimination on the basis of race, because the two don't jibe

6     together.  I think that is exactly what you have here.  So when

7     we are talking about the quantum of proof, I think if you had

8     come in and your second sentence had said, here is our evidence

9     of unlawful discrimination, then you might be entitled to some

10    deference in this space.  I just don't know how you square the

11    circle of the first sentence and the only quantum of proof you

12    are offering is the second sentence, which I think you agree --

13    and please tell me if I am wrong, you agree is not evidence of

14    racial discrimination.

15         MR. LAWSON:  I think if I am understanding the point

16    that counsel has made regarding the prize is that that is an

17    award.  That is not Title VII employment decisions.

18         THE COURT:  Do you agree with that?

19         MR. LAWSON:  Yes, this is just a prize.  Now, I am

20    going to put that most of the concern I think that is in the

21    order regarding racial discrimination is regarding to Title VII

22    employment.  And an academic prize, as I sit here now, I don't

23    particularly view as relating to employment.  Is there some

24    subset of Title VII law that I am overlooking?  I -- so I can't

25    sit here and say, look, it is -- that it is not.  But I don't

1    see it offhand.  And it certainly is not the key issue of the

2    hiring decisions that are the real concern with hiring towards

3    these goals of an ideal level of representation based off of

4    quite sensitive categories.

5                THE COURT:  That is not the example that you

6    included, even crediting that would be evidence of

7    discrimination.

8                MR. LAWSON:  Well, the order is what it is.  I

9    can't -- I can't say, no, Your Honor, we cited something else.

10               THE COURT:  So you agree that the only example of

11   this purported unlawful discrimination is not itself unlawful

12   discrimination?  Yes or no?

13               Yes or no, sir?

14               MR. LAWSON:  I would like to think about that, Your

15   Honor.

16               THE COURT:  I would like an answer before you leave

17   my courtroom.

18               MR. LAWSON:  I understand.  And I think the Court

19   knows the concern I have got is -- I just haven't examined if

20   there is a Title VII application to scholarships.  That is the

21   fundamental issue on that point.  To the degree Title VII --

22   the Court pointed to Title VII as employment.  This is not

23   employment, I can give you that answer, yes.

24               THE COURT:  So this is not --

25               MR. LAWSON:  It is not employment, but is there a

1    Title VII application towards scholarships?  I am not in a

2    position to give an affirmative answer or negative.

3            THE COURT:  Last I checked, Title VII was concerned

4    with employment in terms of --

5            MR. LAWSON:  But there are subsections, of course,

6    that deal with training and education and there may be some

7    angle in there that I am overlooking.

8            THE COURT:  All right.  Just to make sure that we are

9    on the same page here, assuming that we think of -- reading the

10   first sentence of Susman engages in unlawful discrimination,

11   including discrimination on the basis of race, if you and I

12   agree that Title VII goes to the terms and conditions of

13   employment, do you agree the Susman Prize is not an example of

14   unlawful racial discrimination?

15           MR. LAWSON:  I think that is a correct reading.

16           THE COURT:  So given that we are on the same page

17   about that, doesn't your only quantum of evidence fall out of

18   the equation?

19           MR. LAWSON:  If it is in the order.  But the

20   deference that is given -- that is required to be given to

21   courts -- or by courts to executive orders is quite broad.

22   That was the --

23           THE COURT:  I understand that.  I guess, I -- I am

24   just trying to understand, why I am supposed to defer to

25   something I can't read.  Right?  The President wrote these

1    words.  I assume that his example was the best example, because
2    if there was some other one out there, it would have been good
3    to include it.  And we don't see that here.  And so I don't
4    know how as someone who is reading this and trying to decide
5    how to implement this, I can accord you any deference or
6    determine that you are exercising discretion, as opposed to
7    putative action based on something I can't read.

8         MR. LAWSON:  Well, I guess I can only kind of repeat
9    what I have said earlier regarding the -- under *Kahn* and *Chao*
10   cases with the deference due on procurement power that there is
11   a very low burden of proof.  Perhaps the Court is not satisfied
12   that that low burden of proof has been met, but that is -- I
13   believe it is a low burden.

14        THE COURT:  And you are not, as you stand here today,
15   trying to defend the election interference or the malfeasances
16   in election litigation as an appropriate reason to discriminate
17   or penalize the firm?

18        MR. LAWSON:  I think as far -- certainly, no.  I can
19   give a very simple answer on that, no.  Because we don't view
20   this as a penalty, as the Court knows already.

21        As it relates to Section 3, I think obviously a core
22   portion of the defense of Section 3 is under the diversity
23   issue, et cetera.  I am not prepared to just wipe out the --
24   the election issues, because, again, not viewing this as
25   viewpoint retaliation, not viewing this as punishment, not

1    viewing it as falling under the First Amendment, we would view

2    that as just part of the factors that an executive not acting

3    as sovereign would have as discretion.  But, again, this goes

4    back to that 30,000-foot level if you go down the path of

5    punishment, that is one answer.  We would submit it is not.

6            THE COURT:  All right.  And so getting into this

7    world of election malfeasance.  So explain to me your best

8    argument for why that would be an appropriate basis on which to

9    exercise any deference or discretion as opposed to a penalty?

10           MR. LAWSON:  Okay.  Well, for the election issue that

11   I think was referenced in the order, I would view -- I have

12   viewed that as mainly going towards Section 2, regarding the

13   security clearances.

14           THE COURT:  Well, in your brief citing, you know,

15   *McGowan*, you say that Section 3 can stand because it relies

16   equally either on racial discrimination or malfeasance in

17   election litigation.

18           MR. LAWSON:  Correct.  So as to Section 3, we would

19   view it as just -- some of the concerns that the executive

20   voiced regarding some of the work that had been done on this

21   issue.  I don't have anything more specific that I can give on

22   that point.  The majority, of course, is, as we referenced on

23   the discrimination issue, thus the bifurcation.  I mean, we

24   obviously wanted to put that in there in case the Court

25   disregarded it.  But --

```
 1                     Yes.

 2             THE COURT:  What is election malfeasance if not

 3     discrimination on the viewpoint of the clients that the firm is

 4     retaining?

 5             MR. LAWSON:  I would -- I viewed -- and I would like

 6     to shift over if I could to Section 2.

 7             THE COURT:  I want to stay on Section 3 --

 8             MR. LAWSON:  Section 3?

 9             THE COURT:  -- because I am looking at your brief and

10     we are talking about Section 3.

11             MR. LAWSON:  I understand.  I would view that as some

12     of the concerns of the executive as to the firm as a

13     counter-party to the government and does it want to work with

14     that entity?  I think there is some discretion given to the

15     executive on that.

16             THE COURT:  Ostensibly the firm has clients.  Those

17     clients have positions that are adverse to the federal

18     government.  So your view is that the President can say, I

19     don't want any firm that has ever been adverse to me in any

20     type of litigation to receive government contracts?

21             MR. LAWSON:  I don't think it would have to be that

22     broad.  I think it could be -- if I have a particular concern

23     about certain issues, I think it could be more narrow than

24     that.

25             THE COURT:  And am I correct in thinking that in most
```

1    if not all of these cases where Susman was representing

2    individuals affiliated with election interference, they

3    prevailed in court?

4              MR. LAWSON:  I don't -- I -- that would certainly be

5    the reading I have taken from pleadings from plaintiff.  And I

6    have no evidence to counteract that.

7              THE COURT:  Do you dispute that the monies they got

8    for Dominion Voting were I think the highest defamation award?

9              MR. LAWSON:  I have no dispute on that.

10             THE COURT:  Okay.  And so I guess I am just trying to

11   figure out where your line is between presidential preferences

12   and viewpoint discrimination.

13             MR. LAWSON:  The -- I think a large part of it is

14   driven by the nature of the act taken.  If this was real

15   punishment, if this was a direction to try to sanction, you

16   know, prevent them from practicing, exact fines, threatened

17   criminal prosecution, yeah, that is an issue.  If it is an

18   inherently discretionary act, contracting, there -- there is no

19   right to have full access if they just don't want to be a

20   counter-party.

21             THE COURT:  So there is no legal limit?  So if I

22   said, I as the President don't want government contracts going

23   to anyone who defends criminal defendants.  I don't think they

24   are entitled to a defense.  I think that any firm that takes

25   that on is not a firm I want as a counter-party.  Is that

 1    appropriate?

 2              MR. LAWSON:  I think a variation on that is --

 3              THE COURT:  No.  Answer my hypothetical, please.

 4              MR. LAWSON:  Well, I think the -- the concern I see

 5    is that who gets to challenge what?  Is every denial of a

 6    contract now going to be a justiciable issue where everyone is

 7    coming in, saying, hey, I wanted this contract, I didn't get

 8    it, you know, he looked at me crosswise, he knew I gave money

 9    to the other opponent a few years ago, I ran against him.  I

10    mean, we could have candidates going against candidates and

11    litigating over denial of contracts.

12              THE COURT:  That strikes me as a far cry from the

13    situation that we are in where we have an executive order.

14    This isn't like a nudge and wink where I am seeing ghosts where

15    I shouldn't.  This is, I don't like the things that you did, so

16    I am going to bar you from this space.  You are saying because

17    that is not putative in your view, there is no constitutional

18    test.

19              MR. LAWSON:  I think if there is not punishment, no.

20    Now, the Court may dispute whether or not it is punishment or

21    not.  But if there is not punishment, all of those cases,

22    whether *Vullo* and *Bantam* or whether it is *Umbehr* and *Mount*

23    *Healthy*, all of them involve some punitive aspect.

24              THE COURT:  So an executive order that says, I only

25    like women, I only want my contracts to go to women.

1          MR. LAWSON:  That would have problems.

2          THE COURT:  And what are the problems?  Because in

3     your view, that is not punitive; right?  It is giving contracts

4     to people that you want to have as counter-parties.

5          MR. LAWSON:  Well, what plausible basis could there

6     be for --

7          THE COURT:  I really like women.  My clerks are

8     women.  I think they are good lawyers.  I want them to be on my

9     legal team.

10          MR. LAWSON:  You would have certainly some equal

11     protection issues I think at play in a situation like that.

12          THE COURT:  All right.  What if we take it a step

13     further and it is any gender, but I only want people who have

14     represented women, because I think women are entitled to a good

15     defense?  So I only want to engage with firms that have

16     represented women?

17          MR. LAWSON:  I -- I --

18          THE COURT:  I am not asking these questions to

19     browbeat you.  I am trying to figure out where the lines are.

20     Because it seems like you are saying that when we get to the

21     outer bounds of what we think would be problematic, it doesn't

22     matter that it is punishment versus discretion.  And I just

23     don't know why this is where your line is and why Susman falls

24     on one side and my hypotheticals fall on the other.  Right.  If

25     I rule for you, I need to write an opinion.

```
 1              MR. LAWSON:  Yes.

 2              THE COURT:  What would that opinion say?

 3              MR. LAWSON:  Well, I think it would say that a --

 4    there needs to be a denial of the contract that could be -- a

 5    denied access, a canceled contract that meets with Umbehr

 6    before it could be reviewable.  If it doesn't -- again, this

 7    goes back to some issues that we have raised in our motion to

 8    dismiss regarding what is at play here.  There is concern from

 9    plaintiff as to the way the order is written.  Where is the

10    injury?  If this -- you know, an order would -- needs to be

11    mindful of opening the door to just every single denial of a

12    federal contract being subject to inquiry.

13              THE COURT:  What if it were limited to EOs that say

14    don't contract?

15              MR. LAWSON:  Well, the -- I think that still opens

16    the door considerably to massive amounts of litigation over

17    what was in somebody's mind at the time they decided to deny a

18    contract when that just will massively impede the functioning

19    of the government.

20              THE COURT:  I know you have been wanting to talk

21    about Section 2, so I will let you go there.

22              MR. LAWSON:  Okay.  Well, Section 2, I think the --

23    obviously there is inherent discretion on security clearances

24    that are deferred to by the courts.  And obviously the Court

25    knows the -- there is Egan and Lee cases.  And so we would view
```

1    this as falling within that category of the --

2         THE COURT:  So you argue that Section 2, the

3    challenge is both nonjusticiable, but is it also not ripe.

4    Which is it in your view?  My sense is if it is nonjusticiable,

5    it would never become ripe for me.

6         MR. LAWSON:  I think as written, it is not

7    justiciable.  As I understand the justiciability issue when it

8    comes to security clearances, it is -- what is justiciable is a

9    process-based analysis.  I would submit -- I will just jump

10   right into this issue that has come up elsewhere and I suspect

11   will come up in a few minutes, so I will try to anticipate it.

12   That the direction is to take steps consistent with applicable

13   law.  And I would submit that before the suspensions -- if you

14   have a pool of Susman attorneys and Susman staff who have

15   clearances, if you have that pool -- and under this term, I

16   would view it as under applicable law, those clearances have to

17   be suspended, applicable with law, which would require as under

18   the rules, each clearance holder's clearance to be individually

19   analyzed to make sure that the initial suspension was correct.

20        And then there is, of course, the second provision

21   that is requiring -- you know, what is the phrase?  Pending

22   review of whether the clearance -- so that is a very specific,

23   individualized review.

24        The reason I am jumping straight to this is I think

25   that really harps on it.  If the clearance issue is

1    individually focused, I think there is extraordinary deference,

2    to the degree it is a group approach I think that is where some

3    of the concern has come from plaintiff's counsel and some of

4    the other courts on the issue.  And that has been our approach

5    here is that the suspension has to be done consistent with the

6    applicable law rather than just a wholesale approach.

7         THE COURT:  You think consistent with applicable law

8    necessarily means on an individualized basis?

9         MR. LAWSON:  Yes.  Before you could -- before you

10   could take it -- you know, there are going to be various rules

11   and regulations -- forgive me, I don't have them at the ready

12   and recall as far as what they would be.  But whatever the

13   agency procedures are regarding the granting suspension of

14   clearances, those would have to be followed.  And you could

15   take the individual and run that through that process for the

16   suspension.  And then you could conduct the more fulsome,

17   individual review.

18        THE COURT:  And so you had said in your brief that

19   this was a situation where post-deprivation process was

20   appropriate.  So are you walking that back now and saying --

21        MR. LAWSON:  I'm sorry.

22        THE COURT:  You said in your brief that vis-a-vis

23   Section 2, post deprivation process, the subsequent review that

24   was supposed to happen was an adequate substitute for

25   pre-deprivation process.  But now it seems like you are saying

1    there is pre-deprivation process.

2            MR. LAWSON:  Well, certainly as it states in the

3    order that there is the applicable law provision.  The order

4    also is calling for a much more fulsome post-suspension review,

5    individual.  But I think that that -- the big concern that I

6    have seen is this group being singled out without any sort of

7    merits-based analysis.  And I think that it -- you know, any

8    agency trying to implement this would have to take that first

9    step as it states in the order, consistent with applicable law.

10           THE COURT:  All right.  Talking about

11   post-deprivation process, my understanding is that

12   post-deprivation process is appropriate where there is some

13   extraordinary situation where there is a government interest at

14   stake in acting before you can give pre-deprivation process.

15   What is that circumstance here?

16           Or I am misunderstanding the test?

17           MR. LAWSON:  I don't -- I am not in a position to say

18   the Court is misunderstanding the process.  As to --

19           THE COURT:  So I am quoting your motion to dismiss at

20   page 15.  You cite *Smith versus District of Columbia*, "In

21   extraordinary situations where some valid governmental interest

22   is at stake that justifies postponing the hearing until after

23   the deprivation, a post-deprivation opportunity to be heard

24   suffices."

25           And you cite that in support of your argument that

1    there will be appropriate process with regard to maintaining or

2    restoring the security clearance.

3              MR. LAWSON:  Yes.  I think we are -- the point we are

4    trying to make there is that post deprivation, I guess is the

5    phrase, revocation can be undertaken.  And that would be an

6    example.  I don't -- I don't have anything particular beyond

7    what is in the order as far as the extraordinary circumstances

8    provision.  I think that is the Court's question.  I don't have

9    anything beyond what is actually included in Section 1 to

10   expand on that.

11             THE COURT:  All right.  So in the absence of that,

12   don't you necessarily lose?

13             MR. LAWSON:  I would submit that the -- we don't have

14   to lose, no.  Because there is the provision in there that the

15   first suspension is done consistent with applicable law.

16             THE COURT:  And what also do you make of the fact

17   that Section 2 speaks of being consistent with the national

18   interest, as opposed to national security?  And I am wondering

19   in particular to what extent does that undermine your *Lee* and

20   *Egan* argument.  Because I absolutely agree with you that the

21   executive has the authority to determine who, for purposes of

22   national security, is entitled or not entitled to a security

23   clearance.  But here the national interest seems to be not

24   related to national security but purely the types of clients

25   they represent -- not even they represent.  Anyone in the firm

1          seems to be tarred and feathered with this, even if they have

2          nothing to do with the voting litigation or any sort of

3          purported unlawful discrimination.

4                    MR. LAWSON:  Well, I think, you know, Section 2 is

5          labeled security clearance review.  I think national interest

6          is going to definitely be defined and cabined, if you will,

7          within that interest.  You know, one of the points in the

8          deference is, you know, is the custodian -- the executive as

9          custodian for national secrets, is he able to -- does he have

10         confidence in the people who have security clearances?  And I

11         think that, you know, it could be a broad individualized

12         inquiry as to whether or not people should be able to retain

13         and hold on to their clearances.

14                   So, you know -- I guess to the Court's question as to

15         what is the national interest, I think it is something that is

16         definitely driven by national security, even if it didn't use

17         that phrase.  I cannot sit here and tell you, well, they chose

18         national interest or that word was used or national security

19         for X, Y, Z reasons.  I am not in a position to be able to do

20         that, but I think it is certainly informed by it within the

21         framing of the section.

22                   THE COURT:  Did you want to move to Section 4?

23                   MR. LAWSON:  I am happy to help the Court.

24                   So Section 4 is actually a very interesting one.  The

25         *Perkins* order directed a review by the chair of the EEOC of

```
 1    large law firms' diversity practices.  I don't believe to this
 2    date Susman has received any inquiry, whether investigation as
 3    a term of art or review is a term of art, from EEOC.  So I
 4    think there is a significant issue as to their ability to
 5    challenge that.  It is almost like there is some agency over
 6    there that is doing something in my industry and I want to go
 7    stop it.  I don't think there has been any direct impact there.
 8    I think that there -- I would urge great care in the Court's
 9    order as to Section 4 as to the impact of any order impairing
10    the ability of the executive to give some direction as to
11    prioritization of efforts by cabinet agencies and other
12    government entities like the EEOC.
13          That has been something that we have wrestled with
14    significantly on Section 4 as to how does this -- what does
15    this do?  Is this inadvertently immunizing an entire industry
16    from any Title VII review?  And that is a bit of the art of the
17    drafting, so I would urge care from the Court on that point.
18    But I think the larger point is, what is Susman's interest in
19    Section 4 of the *Perkins'* order?  I am not quite sure I see
20    that.
21          THE COURT:  Do you take issue with how your friend on
22    the other side framed it, which is just any injunction would be
23    against using the order -- this order as a basis for --
24          MR. LAWSON:  The only issue I would have, as I
25    understood his argument, is that viewing again -- returning to
```

1    the 30,000-foot level, is this discretion?  Is this punitive?

2    As I heard it, he is, of course, taking the view that it is

3    punishment, it is punitive -- that I understood him to be

4    stating that the relief he would be seeking from this Court is

5    that no inquiry pursuant to this order be used, not any sort of

6    blanket Title VII immunity.  I am sure he will be able to clean

7    up anything I have mistaken about.

8            THE COURT:  That is how I understand Mr. Verrilli as

9    well.  So if that is the world we are in, what is your

10   objection to that?

11           MR. LAWSON:  Well, at the 30,000-foot level, I am

12   objecting to the punishment.  But I certainly see where that is

13   coming from.  An order that is simply stating that Section 4 --

14   I mean, I would urge the Court to not issue an -- or deny the

15   relief on Section 4, because I don't think it -- I think it is

16   too complicated given the fact that it is not in this case or

17   it is not in the order of Susman.  And it is -- there has been

18   no outreach by the EEOC.  But that being said, an order that is

19   simply saying that no retaliatory efforts pursuant to this

20   order can be engaged in is -- I think is workable.

21           Noting, of course, hopefully that I am not suggesting

22   that there is a retaliatory angle.  I am just trying to work

23   out, how does an order get written that is not overbroad?  So

24   that is really the biggest point and maybe the only point to

25   talk about on 4.

1          A related theme on Section 5, I think we talked about

2     that very early as far as we just need the granularity of the

3     guidance, as to access to buildings, access to staff.  We don't

4     have that.  I will, as I mentioned earlier, concede that it is

5     possible that something could be drawn that could impact -- I

6     think the clearest, easiest one is the petition process that --

7     but that -- there is -- I don't think there is a reason to

8     believe it would be written that broadly.  And we haven't seen

9     it, we don't know what exactly we are enjoining.

10          THE COURT:  Your friend on the other side argues that

11     clients are getting sheepish.  They point to other firms that

12     have had clients withdraw, because they are worried about

13     whatever this guidance might say.  So how is it that the harm

14     now can't be remedied until we have the guidance?  Because the

15     guidance may or may not prove to be uniquely harmful.

16          MR. LAWSON:  Yeah.  It is -- well, let me put it this

17     way:  That might be sufficient harm to grant a TRO.  But for a

18     summary judgment, what is the relief?  What is the problem that

19     is being enjoined?  We don't know.  We haven't seen it.  And so

20     that just may be one to -- I mean, formally that we don't think

21     a TRO would be appropriate.  But just practically speaking, we

22     need the granularity to know what is being enjoined, even if it

23     is simply, you know, the government shall have 30 days to

24     propose something and submit to the Court or something along

25     those lines.  That would be a much better decision than we are

1    in right now.

2            THE COURT:  What is to prevent you from thinking up

3    that guidance now?

4            MR. LAWSON:  As I read the Court's order, I think it

5    is --

6            THE COURT:  You can't act on it, if you thought there

7    was --

8            MR. LAWSON:  Implement and develop and enforce, I

9    have -- we viewed it quite broadly and we have wanted to steer

10   clear on that.

11           THE COURT:  All right.

12           MR. LAWSON:  Obviously, we have been moving at a

13   lightning pace on these things.  So the core issue, if it moves

14   beyond, if you issue a final judgment, we have that to deal

15   with.  If you deny both motions, then we can address it then.

16   So --

17           THE COURT:  All right.  Fair point.

18           Did you have anything else that you would like to

19   address?

20           MR. LAWSON:  I think I am going to end on the Court

21   stating fair point.

22           THE COURT:  I do have one more question.

23           MR. LAWSON:  I thought I made it out.

24           THE COURT:  Do you think that the *Perkins Coie*

25   opinion effects this Court's proceedings in any way?

```
 1              MR. LAWSON:  I can't think offhand -- has driving

 2   things in one fashion or another.  I don't know if the Court

 3   has a specific issue.  No, I --

 4              THE COURT:  I am wondering if you thought -- wanted

 5   to stay this proceeding something else, whether you had views

 6   about how these cases should travel.

 7              MR. LAWSON:  No, I don't -- there is nothing in there

 8   that I -- obviously, we take issue with the finding, but I

 9   don't think there is anything urgent I need to bring to the

10   Court's attention.

11              THE COURT:  My final question for you, given that

12   these are cross-motions, would you like some time for rebuttal

13   on your motion to dismiss or have you said everything you would

14   like to say?

15              MR. LAWSON:  I have essentially said everything I

16   would like to say, but maybe if I have one material question or

17   point to make, I would keep it very limited.

18              THE COURT:  I will give you that opportunity.

19              MR. LAWSON:  Thank you.

20              THE COURT:  Thank you, Mr. Lawson.

21              Mr. Verrilli.

22              MR. VERRILLI:  Thank you, Your Honor.  I might want

23   to start at the granular level and then ascend to 30,000 feet.

24              With respect to discrimination, I think as a result

25   of Your Honor's questioning, what we have established now is
```

1    that the support for the President's finding in an executive
2    order that Susman Godfrey has engaged in unlawful
3    discrimination on the basis of race consists of a website
4    statement that uses the word underrepresented and the fact that
5    the firm has agreed to a pledge that focuses on gender parity.
6    That is it.  That is the sum total.
7           Now what my friend, Mr. Lawson, said was that, you
8    know, these are exactly the kinds of things that go to what was
9    at the heart of what was concerning in the majority of the
10   Supreme Court in the *SSFA* decision -- well, I commend Your
11   Honor's attention at page 2166 of 143, Supreme Court where
12   Chief Justice Roberts said in the *SSFA* decision that, "The
13   goals of improving diversity and dealing with
14   underrepresentation are commendable."  What he said was that
15   those goals don't provide a sufficiently compelling
16   justification for specific racial preferences because they are
17   too amorphous.  He didn't say that they were dangerous.  He
18   didn't say that they were negative.  He said, they were
19   commendable.  So the very things that my friend on the other
20   side is saying are the reason why Susman Godfrey should be
21   suspect, are things that the Chief Justice said in *SSFA* were
22   commendable.
23          Now, I can't help but point out that my friend on the
24   other side also referenced President Johnson's executive order.
25   Of course, that executive order was rescinded by this

1    President.

2         THE COURT:  I guess I am surprised you are starting

3    with the *SSFA* and not the fact that none of those concerns

4    actually made it into the executive order.

5         MR. VERRILLI:  So the -- well, what I heard my friend

6    on the other side saying is that is the factual support for the

7    finding that this is unlawful.  And I guess what I am trying to

8    suggest is not only is it not unlawful, but it is quite a

9    substantial distance from anything that was concerning the

10   Supreme Court in *SSFA*.  Because I quoted from their papers

11   earlier to Your Honor that they said these are exactly the

12   kinds of concerns that animated *SSFA*.  And I guess I am just

13   trying to suggest that that really is not correct.

14        Now, I want to reiterate a point I made earlier.  I

15   just want to make sure it is clear that, you know, the weakness

16   of this discrimination rationale I think is apparent from the

17   discussion today.  But even if it had any substance -- it

18   doesn't, but even if it did, the burden would still be on the

19   government here under *Mount Healthy* and *TikTok* to prove that

20   this executive order with all of its terms would have been

21   adopted based solely on that rationale putting aside the

22   retaliation for Susman's constitutionally protected speech.

23   They haven't tried to do that.  And so they just -- so they

24   just lose for that reason alone.

25        Now, my friend raised this issue about the risk of

1    speculation here with respect to government motives.  There is

2    some hard cases maybe with respect to that.  This is not one of

3    them.  There is no need to speculate.  We are not asking the

4    Court to speculate.  All we are asking the Court to do is read

5    the executive order.  It is right there what the President's

6    reasons were.

7          The point about Section 4 -- I think, you know -- I

8    think Your Honor's questioning accurately represented what we

9    are asking for.  But the idea that we don't -- that we

10   shouldn't have any concern about Section 4.  In Section 1, the

11   President of the United States determined that we have engaged

12   in unlawful racial discrimination.

13         And then Section 4 is a direction to the EEOC.  And

14   so, you know, if the EEOC were to issue a notice saying they

15   are launching an investigation against Susman Godfrey because

16   the President of the United States has found that Susman

17   Godfrey engaged in unlawful racial discrimination, that would

18   be unconstitutional.  So, of course, we have a concern over

19   that.

20         With respect to the Section 5, again, my friend has

21   raised this issue, well, we don't know what the guidance would

22   say.  I think here is the fundamental problem with that.  There

23   is nothing that the government could do, nothing, in Section 5

24   in terms of restricting Susman's lawyers from access to federal

25   buildings, talking to federal officials, et cetera, nothing

1   that they could constitutionally do in retaliation for Susman

2   exercising its constitutionally protected First Amendment

3   rights to advocate on behalf of its clients.  There is not a

4   single thing that they could constitutionally do.  No guidance

5   is necessary for the Court to reach that conclusion.

6          THE COURT:  What if we are looking at not the

7   retaliatory election litigation, but the allegation of racial

8   discrimination?

9          MR. VERRILLI:  Same problem under *Mount Healthy*.

10  They would have to prove they would take that step irrespective

11  of their retaliatory motive.  They haven't tried, so they lose

12  on that ground.  Beyond that, I don't know.  I don't -- I am

13  trying to be careful here.  It seems ridiculous to me to say

14  that because Susman Godfrey said on its website that it had

15  used the word underrepresented groups and it supports gender

16  equality that one could justify any restriction, any

17  restriction at all on access to government facilities or

18  buildings or the ability to meet with government personnel.  I

19  don't see how anyone could possibly think that is okay.

20          Now, the -- my friend has stressed this idea that

21  there is a big difference between punishment and discretion

22  and, of course, the government can't do these things as

23  punishment.  It can do these things if it has discretion.  I

24  just want to spend a minute with that.  The -- because it is

25  wrong.  The government may have some additional latitude, as we

1    discussed earlier, Your Honor, with respect to contractor, et

2    cetera.  But they don't have the discretion to blatantly

3    violate the constitution.  And a good example came up in Your

4    Honor's questioning.  You know, the government doesn't have the

5    discretion to afford preferences on government contracting

6    based on race.  Right?  That is discretion whether to award a

7    contract.  But they don't have that.  That is the *Adarand*

8    decision.  That is 30-plus years old now.  That is contracting.

9    That is discretion.  But the constitution limits the

10   discretion.

11          And the *Umbehr* decision that we were discussing

12   earlier, again the case that the government relies on and that

13   Mr. Lawson discussed today, I think it is helpful.  I am going

14   to read something from page 674 of the decision, because I

15   think it is complete refutation of the core premise of the

16   government's argument here.  The opinion is discussing the

17   Court's precedence on page 674 and says, "Those precedents have

18   long since rejected Justice Holmes' famous dictum that a

19   policeman may have a constitutional right to talk politics, but

20   he has no constitutional right to be a policeman.  Recognizing

21   that the constitutional violations may arise from the deterrent

22   or chilling effect of government efforts that fall short of

23   direct prohibition against the exercise of First Amendment

24   rights, our modern 'unconstitutional conditions' doctrine holds

25   that the government may not deny a benefit to a person on the

1    basis that infringes his constitutionally protected freedom of

2    speech even if he has no entitlement to that benefit."  In

3    other words, even if the government is exercising discretion.

4    So that whole premise is just misconceived.

5           And then, you know, to ascend to 30,000 feet here, if

6    I could.  I would like to take a step back and think about what

7    this executive order says.  In Section 1 it says -- this is a

8    President of the United States in an operative legal document

9    directing federal agencies to take action against Susman.  It

10   says, in the second paragraph of Section 1, "Susman spearheads

11   efforts to weaponize the American legal system and to degrade

12   the quality of American elections."

13          Now what does that amount to?  Susman's

14   constitutionally protected right to advocate on behalf of

15   Dominion Voting Systems and on behalf of the Secretaries of

16   State of Wisconsin and Arizona in defense of the integrity of

17   Dominion's voting machines and the integrity of the electoral

18   results in those states.  That is what this refers to.

19          And then the next sentence, "Susman also funds groups

20   that engage in dangerous efforts to undermine the effectiveness

21   of the United States military through injection of political

22   and radical ideology."

23          Now, what does that amount to?  A charitable

24   contribution to the GLAAD organization.  Again, something that

25   the Supreme Court has said as recently as *Bonta* is fully

1    constitutionally protected.

2            And then, third, it supports efforts to discriminate

3    on the basis of race.  And Susman itself engages in unlawful

4    discrimination.  So we discussed that.  It is completely

5    baseless.

6            And the government is trying very hard here to make

7    it seem like this executive order is no big deal.  But as this

8    Court has already observed in the TRO ruling and as everyone in

9    this country knows, these executive orders are designed to

10   intimidate law firms so that they will not advocate on the

11   basis -- for the interests of their clients if the President of

12   the United States doesn't like what they are advocating for.

13   And we know that while Susman is fighting and several other

14   firms are fighting that several of the nation's largest and

15   most powerful law firms have agreed to acquiesce to this

16   intimidation.  We know that clients aren't getting

17   representation that they need because of that intimidation.

18   This is as serious as it gets.  This is as serious an abuse of

19   executive power as has happened in the history of this country.

20   And I would urge the Court as promptly as the Court can

21   reasonably do so to issue a judgment definitively and

22   permanently enjoining it.  Thank you.

23           THE COURT:  All right.  Thank you very much.

24           Mr. Lawson.

25           MR. LAWSON:  I have no specific points unless the

1    Court has any.

2              THE COURT:  All right.  Thank you very much.  I will

3    take the motions under advisement.  I will endeavor to get

4    something out in due course.  I believe the parties have agreed

5    to keep the TRO in place until my ultimate merits ruling.  The

6    parties are still in agreement on that?

7              MR. VERRILLI:  Yes, Your Honor.

8              MR. LAWSON:  Yes, Your Honor.

9              THE COURT:  Thank you.  I thank the parties and the

10   amici for their briefing.  You have given me and my clerks a

11   lot to think about and I very much appreciate it.

12             So this matter is adjourned.

13             (Proceedings concluded at 3:55 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I, SHERRY LINDSAY, Official Court Reporter, certify

4    that the foregoing constitutes a true and correct transcript of

5    the record of proceedings in the above-entitled matter.

6

7

8

9

10                   Dated this 9th day of May, 2025.

11

12                   _____
                     Sherry Lindsay, RPR
13                   Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

MR. LAWSON: [88]
MR. VERRILLI: [49]   2/7 3/8 3/23
4/13 5/10 6/2 6/6 6/11 6/17 7/4
9/16 10/9 11/5 11/10 11/13 12/4
12/11 13/2 13/7 13/10 14/22 15/21
16/16 16/19 17/11 17/23 17/25
19/15 19/20 20/21 20/23 22/1
23/11 24/1 24/7 24/20 26/2 26/23
28/3 28/17 28/22 29/15 30/2 30/8
31/16 66/22 68/5 70/9 74/7
THE COURT REPORTER: [1]   10/8
THE COURT: [135]
THE COURTROOM DEPUTY: [1]   2/2

**'**

'unconstitutional [1]   71/24

**1**

10 [1]   39/22
100 percent [1]   20/8
1107 [2]   1/4 2/4
1155 [1]   1/15
13 [2]   20/18 20/20
143 [1]   67/11
15 [1]   59/20
159-2 [1]   39/22
16 [1]   17/19
160 [1]   28/8
1940 [1]   44/11
1981 [1]   6/25

**2**

20001 [1]   1/24
20004 [1]   1/15
2020 [1]   8/11
2025 [2]   1/5 75/10
20530 [1]   1/20
2166 [1]   67/11
25-1107 [2]   1/4 2/4
25-year [1]   38/25

**3**

30 [1]   64/23
30,000 feet [2]   66/23 72/5
30,000-foot [5]   30/14 32/13 51/4
63/1 63/11
30-plus [1]   71/8
333 [1]   1/23
350 [1]   1/17
3:55 [1]   74/13

**4**

41 [1]   17/5
42 [1]   6/25

**5**

50th [1]   1/17
528 [1]   13/21
529 [1]   13/21

**6**

6710 [1]   1/24
674 [2]   71/14 71/17
685 [1]   37/4
689 [1]   17/3

**7**

770 [1]   17/3
7th [1]   1/15

**9**

90071 [1]   1/18
950 [1]   1/20
9th [1]   75/10

**A**

abandoning [1]   7/25
abide [2]   40/10 40/15
ability [7]   10/20 36/2 36/3 36/4
62/4 62/10 70/18

able [9]   15/7 29/23 31/4 36/1
about [60]   3/3 3/4 6/16 7/1 7/6
7/22 9/19 12/8 12/13 12/24 13/2
13/6 13/14 13/17 13/22 14/7 14/14
14/17 14/20 14/23 16/1 16/11
16/12 16/20 16/24 19/3 19/24
19/24 20/8 23/3 25/22 26/8 26/9
27/24 38/1 39/15 40/25 41/2 42/11
43/8 43/13 44/20 45/24 47/7 48/14
49/17 52/10 52/23 56/21 59/10
63/7 63/25 64/1 64/12 66/6 68/25
69/7 69/10 72/6 74/11
above [1]   75/5
above-entitled [1]   75/5
absence [1]   60/11
absent [2]   25/17 44/2
absolute [1]   35/25
absolutely [5]   9/16 9/16 23/13
35/4 60/20
abuse [4]   4/17 36/21 44/25 73/18
abused [1]   45/2
academic [3]   38/14 39/2 47/22
access [15]   28/11 28/13 31/1 31/3
31/13 31/13 31/18 31/21 31/25
53/19 56/5 64/3 64/3 69/24 70/17
accord [1]   50/5
account [1]   12/19
accuracy [1]   4/18
accurately [1]   69/8
acknowledged [1]   38/23
acquiesce [1]   73/15
acquiescing [1]   8/4
across [1]   32/9
act [7]   23/17 23/22 35/11 36/1
53/14 53/18 65/6
acting [6]   12/15 22/24 37/19 43/7
51/2 59/14
Adarand [1]   71/7
add [1]   3/25
addition [1]   2/12
additional [3]   4/9 26/13 70/25
address [7]   12/12 14/23 15/20
26/23 41/3 65/15 65/19
adequate [1]   58/24
adjourned [1]   74/12
adopted [2]   25/16 68/21
advance [1]   5/19
adverse [3]   15/6 52/17 52/19
advisement [1]   74/3
advocacy [3]   4/20 5/14 7/25
advocate [3]   70/3 72/14 73/10
advocates [2]   4/24 5/15
advocating [1]   73/12
affect [3]   24/4 29/13 32/1
affiliated [1]   53/2
affirmative [3]   23/9 44/1 49/2
afford [1]   71/5
after [4]   10/2 22/16 41/4 59/22
aftermath [1]   3/10
afternoon [7]   2/2 2/7 2/11 2/15
2/16 2/18 30/10
again [23]   7/21 11/2 22/12 24/12
25/18 26/7 29/1 31/13 34/12 36/4
36/6 37/14 43/14 45/23 46/8 46/14
50/24 51/3 56/6 62/25 69/20 71/12
72/24
against [18]   3/14 4/20 4/22 9/7
9/23 12/16 16/4 19/8 26/9 28/10
28/24 29/4 54/9 54/10 62/23 69/15
71/23 72/9
age [1]   40/5
agencies [7]   3/15 9/22 10/2 10/13
28/24 62/11 72/9

agency [9]   3/14 3/17 12/17 22/15
23/22 38/2 62/8 62/11 62/18 62/5
ago [3]   30/21 42/11 54/9
agree [11]   35/2 42/18 44/9 46/24
47/12 47/13 47/18 48/10 49/12
49/13 60/20
agreed [3]   67/5 73/15 74/4
agreeing [1]   42/4
agreement [1]   74/6
agreements [4]   16/15 33/15 33/16
33/16
ahead [1]   36/8
al [2]   1/6 2/4
alert [1]   46/10
ALIKHAN [1]   1/10
AliKhan's [1]   47/1
all [43]   3/15 3/20 3/24 4/3 4/25
6/15 7/3 9/6 9/11 11/12 12/6
12/23 15/19 16/11 17/12 17/18
23/5 24/12 27/4 33/5 34/8 35/12
35/13 35/13 36/4 39/24 42/18 47/3
49/8 51/6 53/1 54/21 54/23 55/12
59/10 60/11 65/11 65/17 68/20
69/4 70/17 73/23 74/2
allegation [2]   44/17 70/7
allegations [3]   18/9 20/3 23/13
alleged [2]   38/3 43/3
allow [1]   32/8
allowed [2]   12/22 26/19
almost [2]   39/19 62/5
alone [3]   10/24 11/1 68/24
along [2]   17/4 64/24
already [5]   4/7 8/3 30/20 50/20
73/8
also [19]   2/10 4/10 4/22 5/17
6/16 9/21 10/23 12/11 12/13 15/14
17/1 24/3 31/11 41/9 57/3 59/4
60/16 67/24 72/19
alternative [1]   17/9
although [1]   5/19
am [62]   2/8 4/5 5/8 5/10 10/3
11/3 13/7 13/8 16/14 17/1 17/24
19/24 20/22 21/1 21/14 30/20 36/8
37/3 41/13 41/16 41/18 41/23 43/1
43/16 44/6 46/9 46/14 47/13 47/15
47/19 47/24 49/1 49/7 49/23 49/24
50/23 52/9 52/25 53/10 54/14
54/16 55/18 55/19 57/24 59/16
59/17 59/19 60/18 61/19 61/23
62/19 63/6 63/11 63/21 63/22
65/20 66/4 68/2 68/7 68/12 70/12
71/13
ambassador [1]   39/19
ambiguity [1]   3/19
amended [2]   3/4 3/16
Amendment [14]   4/25 14/10 14/16
14/24 14/25 18/10 18/13 18/16
22/18 25/17 29/3 51/1 70/2 71/23
American [3]   10/10 72/11 72/12
amici [1]   74/10
amicus [1]   35/22
amorphous [1]   67/17
amount [2]   72/22 72/23
amounts [1]   56/16
analysis [4]   19/9 25/19 57/9 59/7
analyzed [1]   57/19
ancestry [1]   40/5
Anders [2]   1/13 2/10
Angeles [1]   1/18
angle [2]   49/7 63/22
animated [1]   68/12
another [1]   66/2
answer [8]   27/24 40/20 48/16
48/23 49/2 50/19 51/5 54/3
answering [1]   43/17
anti [2]   10/10 40/16
anti-American [1]   10/10
anti-discrimination [1]   40/16
anticipate [1]   57/11
antidiscrimination [1]   40/12
any [58]   2/22 3/11 3/21 4/9 6/1
6/10 6/14 8/11 11/14 11/15 11/15

**A**

**any... [47]** 11/16 11/21 13/4 14/17 21/18 21/25 23/5 24/18 25/11 27/12 27/24 28/25 29/9 29/10 29/25 30/2 33/10 33/12 33/20 33/23 33/25 34/5 34/24 36/12 44/21 45/21 50/5 51/9 52/19 52/19 53/24 55/13 59/6 59/7 61/2 62/2 62/7 62/9 62/16 62/22 63/5 65/25 68/17 69/10 70/16 70/16 74/1
**anybody [1]** 36/13
**anyone [4]** 14/17 53/23 60/25 70/19
**anything [14]** 3/25 16/11 22/25 25/4 34/14 36/13 38/2 51/21 60/6 60/9 63/7 65/18 66/9 68/9
**apologize [2]** 6/7 33/3
**apparent [1]** 68/16
**appearance [1]** 2/6
**APPEARANCES [1]** 1/12
**appears [1]** 21/4
**applicable [9]** 39/4 57/12 57/16 57/17 58/6 58/7 59/3 59/9 60/15
**applicants [1]** 13/23
**application [3]** 29/6 48/20 49/1
**applied [2]** 13/20 44/3
**applies [1]** 26/5
**apply [12]** 19/9 25/10 26/6 26/20 30/23 30/24 36/4 39/25 40/9 40/13 41/7 45/20
**applying [1]** 36/20
**appreciate [2]** 34/10 74/11
**approach [7]** 19/22 21/12 32/14 38/19 58/2 58/4 58/6
**approached [1]** 30/12
**appropriate [8]** 41/21 50/16 51/8 54/1 58/20 59/12 60/1 64/21
**appropriately [1]** 20/8
**arbitrary [1]** 7/18
**are [147]**
**areas [1]** 31/7
**aren't [2]** 13/17 73/16
**argue [3]** 17/9 24/23 57/2
**argues [1]** 64/10
**argument [20]** 8/12 9/14 11/25 14/19 15/16 19/1 25/18 27/19 28/4 28/5 28/14 28/16 28/19 34/16 45/19 51/8 59/25 60/20 62/25 71/16
**arguments [5]** 4/10 8/8 10/25 25/10 30/4
**arise [1]** 71/21
**Arizona [1]** 72/16
**around [2]** 10/3 37/4
**art [4]** 31/9 62/3 62/3 62/16
**as [145]**
**ascend [2]** 66/23 72/5
**aside [1]** 68/21
**ask [5]** 18/21 20/17 21/20 23/1 32/19
**asked [1]** 20/7
**asking [13]** 11/14 11/18 11/18 11/21 11/22 17/15 22/20 24/13 41/13 55/18 69/3 69/4 69/9
**aspect [2]** 32/8 54/23
**assess [2]** 13/18 41/23
**associated [1]** 18/18
**association [2]** 5/3 45/11
**assume [5]** 5/22 40/11 50/1
**assuming [2]** 46/19 49/9
**astounding [2]** 10/4 21/2
**attached [1]** 33/20
**attainder [1]** 35/23
**attempted [3]** 11/20 19/25 20/1
**attempts [1]** 13/18
**attention [3]** 16/21 66/10 67/11
**attorney [1]** 9/24
**attorneys [1]** 57/14
**attract [1]** 10/20
**audience [1]** 2/12

**authority [4]** 10/15 18/6 24/17 57/11
**available [1]** 33/18
**Ave [2]** 1/17 1/20
**Avenue [1]** 1/23
**avoid [1]** 3/17 3/18
**award [5]** 6/21 42/17 47/17 53/8 71/6
**awarded [1]** 44/16
**aware [3]** 13/7 13/8 35/19

**B**

**back [9]** 22/22 29/1 43/14 44/11 45/23 51/4 56/7 58/20 72/6
**backgrounds [2]** 40/22 44/21
**bad [1]** 17/10
**Bakke [2]** 38/13 38/24
**balancing [1]** 37/20 38/15 39/1
**Bankruptcy [1]** 1/23
**Bantam [2]** 30/17 54/22
**bar [4]** 8/15 36/2 45/10 54/16
**barring [1]** 35/24 36/13
**based [22]** 11/16 14/17 15/2 18/23 19/6 21/5 23/19 27/9 27/16 38/15 38/20 39/3 39/16 40/4 41/3 41/20 48/3 50/7 57/9 59/7 68/21 71/6
**baseless [4]** 10/22 12/13 13/8 73/5
**baselessly [1]** 12/15
**basic [1]** 8/17
**basically [2]** 20/11 22/4
**basis [31]** 8/24 9/11 10/6 14/15 19/19 20/3 21/10 22/17 22/24 23/18 23/22 42/9 42/13 42/16 43/2 44/16 44/19 44/24 46/23 46/25 47/2 47/5 49/11 51/8 55/5 58/8 62/23 67/3 72/1 73/3 73/11
**be [120]**
**bearing [1]** 26/25
**bears [1]** 18/24
**because [48]** 3/6 6/24 6/25 10/4 11/25 12/5 14/15 16/9 19/10 19/16 20/2 21/1 21/22 22/2 22/5 22/17 23/11 25/22 28/20 29/5 31/22 35/8 37/16 38/1 39/14 40/9 47/5 50/1 50/19 50/24 51/15 52/9 54/16 55/2 55/14 55/20 60/14 60/20 63/15 64/12 64/14 67/16 68/10 69/15 70/14 70/24 71/14 73/17
**become [1]** 57/5
**been [25]** 10/20 14/14 15/14 19/10 23/25 24/8 31/9 32/3 33/14 33/19 34/1 35/22 44/3 44/3 50/2 50/12 51/20 52/19 56/20 58/4 62/7 62/13 63/17 65/12 68/20
**before [14]** 1/10 2/21 3/3 8/21 32/19 32/24 39/6 40/20 48/16 56/6 57/13 58/9 59/9 59/14
**begin [2]** 2/21 3/3
**beginning [1]** 2/6
**begun [1]** 25/20
**behalf [5]** 4/20 7/25 70/3 72/14 72/15
**being [14]** 15/7 24/11 35/11 35/19 36/1 39/18 44/15 46/10 56/12 59/6 60/17 63/18 64/19 64/22
**believe [14]** 5/16 6/14 10/21 16/16 21/21 30/11 30/13 39/22 44/14 46/11 50/13 62/1 64/8 74/4
**belong [1]** 34/1
**benefit [3]** 29/12 71/25 72/2
**benefits [1]** 21/10
**best [7]** 5/23 8/8 8/8 18/14 19/23 50/1 51/7
**better [3]** 21/19 46/9 64/25
**between [8]** 11/4 12/14 16/9 23/12 25/24 31/22 53/11 70/21
**beyond [9]** 10/16 21/5 21/8 21/11 33/17 60/6 60/9 65/14 70/12
**Bhatia [1]** 2/12
**bifurcation [1]** 51/23
**big [3]** 59/5 70/21 73/7

**biggest [2]** 30/15 63/24
**bills [2]** 72/7 72/9
**bit [6]** 6/16 15/22 30/5 31/9 32/17 62/16
**blanket [1]** 63/6
**blatant [3]** 18/10 25/3 25/5
**blatantly [1]** 71/2
**blind [1]** 42/6
**Block [6]** 9/19 10/1 10/5 11/21 12/7 12/10
**body [1]** 39/3
**Bonta [2]** 6/13 72/25
**Books [1]** 30/18
**boost [1]** 46/13
**both [4]** 13/11 19/17 57/3 65/15
**bounds [1]** 55/21
**Brad [2]** 1/16 2/9
**Branch [8]** 3/14 3/15 9/22 11/14 12/10 23/22 36/19 36/19
**Branches [1]** 31/6
**brazen [1]** 9/3
**Brian [2]** 1/16 2/9
**brief [5]** 21/13 51/14 52/9 58/18 58/22
**briefing [2]** 3/5 74/10
**briefly [1]** 3/2
**briefs [2]** 16/22 35/22
**bring [2]** 29/3 66/9
**bringing [1]** 6/1
**broad [3]** 49/21 52/22 61/11
**broadcast [1]** 2/23
**broader [2]** 24/24 25/1
**broadly [4]** 9/23 11/20 64/8 65/9
**brought [1]** 5/19
**browbeat [1]** 55/19
**Budget [1]** 9/25
**building [1]** 32/1
**buildings [8]** 25/15 26/25 28/12 31/13 31/22 64/3 69/25 70/18
**burden [5]** 18/24 50/11 50/12 50/13 68/18
**burdens [2]** 5/3 18/7
**business [2]** 10/14 44/7
**businesses [2]** 27/8 27/10

**C**

**CA [1]** 1/18
**cabined [1]** 61/6
**cabinet [1]** 62/11
**calling [1]** 59/4
**calls [1]** 5/7
**came [2]** 31/23 71/3
**can [39]** 5/23 6/7 7/13 7/14 9/6 9/18 12/2 12/25 15/1 19/17 22/10 22/11 27/2 27/12 27/16 28/15 31/5 31/8 32/16 32/19 33/8 34/8 36/4 37/8 42/2 43/2 48/23 50/5 50/8 50/18 51/15 51/21 52/18 59/14 60/5 63/20 65/15 70/23 73/20
**can't [29]** 9/4 9/6 20/9 22/16 23/17 23/18 23/21 23/22 26/11 26/12 26/24 27/13 27/15 29/3 29/8 33/2 34/19 35/5 36/25 47/24 48/9 48/9 49/25 50/7 64/14 65/6 66/1 67/23 70/22
**canceled [1]** 56/5
**candidates [2]** 54/10 54/10
**cannot [5]** 6/24 28/11 28/13 33/19 61/17
**care [2]** 62/8 62/17
**careful [1]** 70/13
**carries [1]** 10/15
**carry [2]** 10/14 15/9
**carryover [1]** 18/2
**Carta [1]** 7/16
**case [34]** 3/11 3/16 9/9 10/1 17/11 18/14 18/21 19/3 19/4 19/5 19/5 19/11 19/14 19/17 19/21 19/23 25/21 26/7 26/8 26/9 26/11 27/14 33/3 36/17 37/4 37/14 38/12 38/22 43/10 43/22 46/3 51/24 63/16 71/12

**C**

cases [16] 13/13 26/18 26/22 30/17 34/16 34/17 35/12 35/21 36/25 37/2 50/10 53/1 54/21 56/25 66/6 69/2
cash [1] 6/21
categorical [3] 14/9 15/2 15/4
categories [2] 39/3 48/4
category [2] 39/20 57/1
certain [4] 28/10 33/11 39/17 52/23
certainly [15] 5/10 21/22 30/23 30/24 32/16 33/9 34/19 37/1 48/1 50/18 53/4 55/10 59/2 61/20 63/12
certify [1] 75/3
cetera [9] 11/15 18/11 25/15 26/7 28/12 44/1 50/23 69/25 71/2
chair [2] 2/9 61/25
challenge [5] 29/3 29/4 54/5 57/3 62/5
challenges [1] 8/10
challenging [2] 8/9 29/6
chambers [1] 47/1
chance [2] 14/4 25/11
change [1] 16/7
channel [1] 37/1
Chao [3] 43/22 46/9 50/9
charitable [5] 4/23 5/6 6/2 6/5 72/23
chatting [1] 45/24
check [2] 7/13 7/17
checked [1] 49/3
Chen [1] 2/13
Chief [2] 67/12 67/21
chilling [1] 71/22
choice [1] 37/12
chose [1] 61/17
circle [1] 47/11
circuit [6] 13/12 14/4 43/23 46/3 46/5 46/17
Circuit's [1] 16/22
circumstance [1] 59/15
circumstances [4] 13/19 16/8 36/18 60/7
circumvention [1] 12/7
cite [11] 16/22 19/11 19/16 19/23 36/25 37/1 37/2 43/22 45/9 59/20 59/25
cited [1] 48/9
citing [1] 51/14
citizen [1] 29/7
citizens [1] 7/13
civil [3] 1/3 2/4 21/3
claim [4] 10/19 10/23 14/13 21/24
claims [1] 13/11
class [1] 14/9
clause [2] 22/2 31/19
clean [1] 63/6
clear [3] 17/18 65/10 68/15
clearance [15] 14/2 14/3 14/20 15/2 15/12 15/13 15/17 16/25 57/18 57/18 57/22 57/25 60/2 60/23 61/5
clearances [19] 13/3 13/5 13/24 14/9 15/7 15/9 15/15 16/2 16/5 31/4 33/25 51/13 56/23 57/8 57/15 57/16 58/14 61/10 61/13
clearest [1] 64/6
clerk [2] 36/20 37/13
clerks [2] 55/7 74/10
clients [12] 5/4 7/25 10/20 52/3 52/16 52/17 60/24 64/11 64/12 70/3 73/11 73/16
close [2] 27/22 43/16
Coie [7] 3/10 9/8 17/6 23/24 24/5 29/12 65/24
coin [1] 4/5
collective [1] 14/16
color [1] 40/4
COLUMBIA [2] 1/1 59/20
comanaging [1] 2/13

combat [1] 44/10
come [12] 16/16 18/3 19/4 27/22 31/24 47/8 57/10 57/11 58/3
comes [3] 43/16 46/17 57/8
coming [4] 32/9 38/24 54/7 63/13
commands [1] 9/11
commend [2] 16/21 67/10
commendable [3] 67/14 67/19 67/22
commentary [1] 34/16
commit [1] 45/1
commitment [2] 8/17 20/25
commits [1] 20/13
committed [2] 10/5 20/12
committee [1] 40/18
compelling [1] 67/15
complaint [2] 3/4 3/17
complete [1] 71/15
completely [4] 6/12 10/22 38/22 73/4
complicated [1] 63/16
comprehensively [1] 11/23
compromise [1] 13/20
compulsion [1] 13/19
concede [4] 31/24 35/9 36/24 64/4
conceded [2] 18/6 19/2
conceivable [2] 31/16 32/2
concern [17] 18/16 18/16 38/19 41/15 41/19 41/19 42/24 47/20 48/2 48/19 52/22 54/4 56/8 58/3 59/5 69/10 69/18
concerned [3] 43/8 43/13 49/3
concerning [2] 67/9 68/9
concerns [5] 23/3 51/19 52/12 68/3 68/12
concluded [1] 74/13
conclusion [1] 70/5
conclusively [1] 43/11
concurrence [1] 38/23
condemned [1] 21/6
condition [1] 6/24
conditions [1] 49/12
conditions' [1] 71/24
conduct [1] 58/16
conference [1] 34/25
confess [1] 23/3
confidence [1] 61/10
confirm [2] 4/18 35/7
congressional [1] 36/10
connected [2] 15/19 23/15
connection [4] 6/10 6/14 12/14 23/12
conscious [1] 21/9
consequence [1] 10/16
consequences [1] 36/12
considerably [3] 21/8 36/2 56/16
consideration [3] 14/11 14/13 21/6
considerations [1] 21/3
consistent [6] 57/12 58/5 58/7 59/9 60/15 60/17
consists [1] 67/3
constitutes [3] 20/16 38/3 75/4
constitution [10] 1/23 7/20 8/16 12/6 13/11 18/24 26/5 26/6 71/3 71/9
constitutional [8] 18/18 19/18 25/13 32/9 54/17 71/19 71/20 71/21
constitutionally [7] 68/22 70/1 70/2 70/4 72/1 72/14 73/1
constrain [1] 7/13 7/17
constraining [1] 23/7
constraints [1] 27/7
construed [1] 23/10
contact [1] 33/8
contains [1] 23/12
contempt [1] 2/24
context [4] 36/7 40/7 43/21 45/8
contract [15] 7/1 19/8 26/12 26/21 27/16 37/7 43/11 54/6 54/7 56/4 56/5 56/12 56/14 56/18 71/7
contracting [6] 26/23 43/6 44/12

53/18 71/5 71/8
contractor [6] 24/25 25/3 25/9 25/25 26/4 26/7 26/9 31/5 36/1 36/3 43/7 71/1
contractor's [1] 26/10
contracts [13] 12/17 12/19 19/6 27/1 27/5 27/9 27/11 44/15 52/20 53/22 54/11 54/25 55/3
contradict [2] 33/6 34/7
contrast [1] 13/14
contribution [6] 4/23 5/6 5/14 6/3 6/5 72/24
controlling [1] 9/5
conversations [1] 33/13
core [3] 50/21 65/13 71/15
corners [1] 11/19
correct [13] 6/2 12/11 16/14 16/16 40/23 40/24 43/2 49/15 51/18 52/25 57/19 68/13 75/4
could [44] 2/5 4/4 4/9 5/5 9/22 12/22 14/2 14/3 15/25 16/20 19/13 20/17 21/18 22/24 28/25 29/7 29/7 29/10 31/23 31/25 32/7 40/20 43/4 43/20 52/6 52/22 52/23 54/10 55/5 56/4 56/6 58/9 58/10 58/14 58/16 61/11 64/5 64/5 69/23 70/1 70/4 70/16 70/19 72/6
couldn't [4] 20/2 25/22 27/7 27/11
counsel [6] 2/5 2/9 4/6 30/12 47/16 58/3
counter [5] 36/16 52/13 53/20 53/25 55/4
counter-parties [1] 55/4
counter-party [4] 36/16 52/13 53/20 53/25
counteract [1] 53/6
country [2] 73/9 73/19
couple [3] 8/20 9/17 15/25
course [26] 5/11 6/12 9/23 10/13 10/14 10/18 11/1 11/10 15/11 25/22 27/4 27/24 30/19 31/20 37/6 37/16 38/24 49/5 51/22 57/20 63/2 63/21 67/25 69/18 70/22 74/4
court [70] 1/1 1/22 1/22 2/8 3/9 3/12 4/14 4/15 7/15 10/13 11/6 11/13 11/14 13/12 14/4 16/23 16/24 17/7 18/20 19/5 19/21 21/6 24/13 26/11 29/23 30/16 30/17 32/5 32/7 32/14 32/17 35/19 36/9 37/25 39/4 41/13 42/14 46/3 46/5 46/11 46/14 48/18 48/22 50/11 50/20 51/24 53/3 54/20 56/24 59/18 61/23 62/17 63/4 63/14 64/24 65/20 66/2 67/10 67/11 68/10 69/4 69/4 70/5 72/25 73/8 73/20 73/20 74/1 75/3 75/13
Court's [14] 6/13 34/10 34/12 37/12 43/17 43/18 46/15 60/8 61/14 62/8 65/4 65/25 66/10 71/17
courthouses [1] 31/19
courtroom [1] 48/17
courts [7] 1/23 8/8 19/10 49/21 49/21 56/24 58/4
crediting [1] 48/6
creed [1] 40/4
crime [1] 37/17
criminal [8] 28/20 28/22 30/24 36/7 36/10 37/17 53/17 53/23
criterion [2] 15/3 21/5
criticism [2] 26/10
cross [1] 66/12
cross-motions [1] 66/12
crosswise [1] 54/8
cry [1] 54/12
cure [1] 12/6
custodian [2] 61/8 61/9
cut [1] 17/18
cutting [1] 26/21

**D**

D.C [3] 13/12 14/4 16/21

**D**

**damaged [1]** 10/21
**dangerous [2]** 67/17 72/20
**data [3]** 42/12 44/2 44/24
**date [1]** 62/2
**Dated [1]** 75/10
**dating [1]** 44/11
**day [1]** 75/10
**days [4]** 7/11 16/6 16/10 64/23
**DC [6]** 1/5 1/15 1/20 1/24 40/12 46/5
**DCHRA [1]** 40/11
**deal [6]** 19/4 19/21 34/20 49/6 65/14 73/7
**dealing [3]** 18/19 46/4 67/13
**deals [1]** 38/14
**debate [1]** 46/20
**decades [1]** 43/14
**decide [4]** 4/5 10/15 27/2 50/4
**decided [1]** 56/17
**decides [1]** 32/14
**deciding [1]** 12/19
**decision [18]** 6/13 16/22 16/23 17/14 21/9 32/15 38/11 38/13 40/15 41/5 41/22 44/23 64/25 67/10 67/12 71/8 71/11 71/14
**decisions [7]** 13/22 35/8 39/16 41/3 41/19 47/17 48/2
**declaration [3]** 6/20 8/3 38/9
**declarations [1]** 33/21
**dedicating [1]** 40/25
**deemed [2]** 39/20 41/21
**defamation [2]** 15/18 53/8
**defamatory [2]** 12/12 15/14 44/18
**defeats [1]** 19/12
**defect [1]** 15/1
**defend [3]** 19/2 20/5 50/15
**Defendant [1]** 1/19
**defendant's [1]** 20/18
**defendants [2]** 1/7 53/23
**defended [1]** 9/4
**defending [1]** 15/3
**defends [1]** 53/23
**defense [5]** 37/8 50/22 53/24 55/15 72/16
**defer [1]** 49/24
**deference [10]** 36/9 43/23 44/24 47/10 49/20 50/5 50/10 51/9 58/1 61/8
**deferred [1]** 56/24
**deferring [1]** 46/8
**defined [2]** 14/10 61/6
**definitely [2]** 61/6 61/16
**definitively [1]** 73/21
**deflate [1]** 46/13
**degrade [1]** 71/22
**degree [3]** 37/23 48/21 58/2
**DEI [1]** 24/4
**demonstrated [2]** 15/10 23/13
**denial [4]** 54/5 54/11 56/4 56/11
**denied [1]** 56/5
**denies [2]** 32/6 32/6
**deny [7]** 25/7 25/8 35/5 56/17 63/14 65/15 71/25
**Department [1]** 2/17
**deprivation [11]** 14/19 58/19 58/23 58/25 59/1 59/11 59/12 59/14 59/23 59/23 60/4
**described [2]** 19/9 29/18
**describes [1]** 13/15
**describing [1]** 9/1
**designed [1]** 73/9
**detailed [1]** 38/6
**details [1]** 33/19
**determination [1]** 14/17
**determinations [1]** 13/16
**determine [5]** 11/3 43/1 46/1 50/6 60/21
**determined [3]** 35/20 41/20 69/11
**determining [1]** 43/24
**deterrent [1]** 71/21

**develop [1]** 65/8
**developing [1]** 67/8
**developments [1]** 4/9
**dialogue [1]** 33/11
**dichotomy [1]** 25/24
**dictum [1]** 71/18
**did [5]** 8/19 54/15 61/22 65/18 68/18
**didn't [8]** 16/15 18/25 33/6 46/11 54/7 61/16 67/17 67/18
**didn't contradict [1]** 33/6
**difference [5]** 14/1 26/3 30/15 38/10 70/21
**different [3]** 30/5 32/25 36/3
**differs [1]** 14/6
**direct [3]** 12/14 62/7 71/23
**directed [2]** 23/7 61/25
**directing [1]** 72/9
**direction [5]** 34/24 53/15 57/12 62/10 69/13
**directly [2]** 10/23 24/7
**Director [1]** 9/24
**directs [1]** 27/4
**disabilities [1]** 18/7
**disability [1]** 40/5
**disagreement [1]** 27/17
**discretion [33]** 30/19 31/5 31/6 31/11 35/17 35/19 36/16 36/20 36/21 36/22 43/5 43/8 44/4 44/8 44/9 44/25 45/2 45/6 50/6 51/3 51/9 52/14 55/22 56/23 63/1 70/21 70/23 71/2 71/5 71/6 71/9 71/10 72/3
**discretionary [6]** 30/18 31/3 31/14 35/8 44/23 53/18
**discriminate [3]** 40/4 50/16 73/2
**discrimination [53]** 5/2 10/6 18/5 18/9 18/11 18/12 18/17 19/7 20/4 20/16 21/15 23/14 25/3 25/5 38/2 38/4 40/16 42/3 42/8 42/8 42/16 42/16 43/3 44/11 44/19 44/19 46/22 46/22 46/25 47/2 47/2 47/5 47/9 47/14 47/21 48/7 48/11 48/12 52/3 53/12 61/3 66/24 67/3 68/16 69/12 69/17 70/8 73/4
**discuss [3]** 4/12 8/19 46/23
**discussed [6]** 5/1 22/23 36/25 71/1 71/13 73/4
**discussing [3]** 23/17 71/11 71/16
**discussion [2]** 3/10 68/17
**disembodied [1]** 9/10
**dismiss [7]** 2/20 3/1 17/19 32/5 56/8 59/19 66/13
**dismissal [1]** 32/6
**dispute [4]** 34/19 53/7 53/9 54/20
**disregarded [1]** 51/25
**disrupts [1]** 5/3
**dissent [1]** 38/23
**distance [1]** 68/9
**DISTRICT [5]** 1/1 1/1 1/10 1/23 59/20
**diversions [1]** 30/6
**diversity [12]** 20/12 38/12 38/12 38/17 40/17 40/25 42/6 43/25 45/9 50/22 62/1 67/13
**do [60]** 3/2 3/25 5/6 5/10 5/24 6/4 7/5 7/14 8/19 9/6 10/2 11/3 13/4 14/18 15/7 19/10 20/17 21/20 21/24 23/21 24/22 25/24 26/15 26/21 27/6 27/11 27/13 27/23 33/10 33/15 33/25 34/2 34/3 34/5 36/13 36/14 36/15 36/16 36/21 44/4 44/9 45/13 47/18 49/13 53/7 60/16 61/2 61/19 62/15 62/21 65/22 65/24 68/23 69/4 69/23 70/1 70/4 70/22 70/23 73/21
**doctrine [1]** 71/24
**document [3]** 12/22 28/9 72/8
**documented [1]** 44/14
**documents [1]** 33/22
**does [18]** 5/21 6/21 11/24 15/11

24/4 26/20 29/13 37/25 40/3 43/9 52/17 52/18 56/12 62/14 64/14 62/14
63/23 72/13 72/23
**doesn't [19]** 14/23 15/23 18/23 23/1 24/7 26/6 26/14 27/16 27/22 28/19 35/6 38/2 42/17 49/17 55/21 56/6 68/18 71/4 73/12
**doing [6]** 9/1 22/5 22/6 23/8 29/2 62/6
**DOJ [1]** 1/19
**DOJ-USAO [1]** 1/19
**Dominion [3]** 4/21 53/8 72/15
**Dominion's [1]** 72/17
**Don [1]** 2/8
**don't [85]**
**Donald [1]** 1/13
**done [10]** 19/11 20/2 27/22 29/9 32/2 34/6 38/25 51/20 58/5 60/15
**door [2]** 56/11 56/16
**down [4]** 10/8 23/20 31/20 51/4
**Draconian [2]** 22/6 29/8
**drafting [1]** 62/17
**draw [1]** 42/10
**drawn [1]** 64/5
**driven [2]** 53/14 61/16
**drives [1]** 32/2
**driving [1]** 66/1
**drop [1]** 3/21
**dual [1]** 16/25
**due [13]** 7/17 10/18 10/23 12/12 14/21 25/7 25/8 28/19 29/4 30/21 30/23 50/10 74/4
**dueling [1]** 4/4
**duty [1]** 17/1

**E**

**each [2]** 35/18 57/18
**earlier [13]** 3/3 18/21 23/10 23/17 24/3 36/25 40/7 50/9 64/4 68/11 68/14 71/1 71/12
**early [2]** 7/11 64/2
**easiest [1]** 64/6
**ECF [2]** 39/22 39/22
**economic [1]** 46/5
**education [1]** 49/6
**EEOC [19]** 22/14 22/15 22/19 22/21 22/24 23/5 23/8 23/18 23/20 24/5 24/9 24/16 31/8 61/25 62/3 62/12 63/18 69/13 69/14
**effect [3]** 11/23 24/7 71/22
**effectiveness [1]** 72/20
**effects [2]** 15/6 65/25
**efficiencies [1]** 43/24
**efficiency [1]** 44/2
**effort [2]** 8/1 9/2
**efforts [8]** 9/3 44/10 62/11 63/19 71/22 72/11 72/20 73/2
**Egan [2]** 13/11 13/14 13/15 14/6 17/1 56/25 60/20
**either [3]** 33/7 43/19 51/16
**Elaine [1]** 2/10
**election [13]** 4/21 8/11 18/5 18/8 50/15 50/16 50/24 51/7 51/10 51/17 52/2 53/2 70/7
**elections [1]** 72/12
**electoral [1]** 72/17
**element [2]** 15/14 43/5
**elements [1]** 20/6
**eliminating [1]** 36/1
**else [6]** 22/25 25/5 37/12 48/9 65/18 66/5
**elsewhere [1]** 57/10
**emphasis [1]** 30/5
**emphasize [1]** 30/3
**employee [1]** 11/14
**employees [2]** 2/14 13/5 34/1
**employer [1]** 26/4
**employment [11]** 6/22 6/23 6/24 47/17 47/22 47/23 48/22 48/23 48/25 49/4 49/13
**encourage [3]** 40/9 40/13 40/22
**encourages [1]** 39/23

**E**

encouraging [1] 41/7
end [2] 43/25 65/20
endeavor [1] 74/3
endorse [1] 29/21
enforce [1] 65/8
engage [4] 25/3 25/5 55/15 72/20
engaged [5] 23/14 63/20 67/2 69/11 69/17
engages [6] 42/8 44/18 46/21 47/1 49/10 73/3
engaging [2] 42/3 44/22
enjoin [2] 11/14 12/2
enjoined [8] 8/18 10/3 10/25 11/22 11/23 23/25 64/19 64/22
enjoining [6] 12/5 17/5 29/17 34/14 64/9 73/22
enough [2] 15/17 36/23
ensure [3] 7/13 28/11 28/12
enter [1] 24/13
entered [1] 33/16
enthusiasm [1] 34/10
entire [1] 62/15
entirety [1] 9/13
entities [1] 62/12
entitled [9] 33/11 44/23 45/5 47/9 53/24 55/14 60/22 60/22 75/5
entitlement [1] 72/2
entity [3] 22/2 29/8 52/14
entry [1] 29/17
EO [3] 14/8 22/25 24/4
EOs [1] 56/13
equal [5] 5/15 5/17 20/14 22/2 55/10
equality [3] 4/24 20/25 70/6
equally [4] 18/4 18/8 18/15 51/16
equation [1] 49/18
equities [1] 7/22
equivalent [1] 17/5
erroneous [1] 45/5
error [1] 45/1
especially [1] 40/14
essentially [2] 39/21 66/15
establish [3] 4/19 6/20 37/5
established [1] 66/25
establishes [1] 19/11
et [11] 1/6 2/4 11/15 18/11 25/15 26/7 28/12 44/1 50/23 69/25 71/1
et cetera [4] 11/15 28/12 44/1 69/25
ethnicity [1] 38/21
evaluate [1] 19/18
even [20] 6/11 15/23 18/25 21/15 21/17 24/3 25/17 25/20 35/9 35/22 37/2 48/6 60/25 61/1 61/16 64/22 68/17 68/18 72/2 72/3
event [1] 15/8
ever [1] 9/4 33/4 52/19
every [9] 3/14 3/17 8/17 12/16 22/15 23/21 29/20 54/5 56/11
everyone [3] 40/13 54/6 73/8
everything [2] 66/13 66/15
evidence [13] 20/10 33/7 37/8 42/15 43/11 43/19 44/21 45/22 47/8 47/13 48/6 49/17 53/6
evolved [2] 19/21 38/13
exact [5] 16/1 16/3 24/21 25/16 53/16
exactly [9] 9/24 16/23 19/24 25/10 26/8 47/6 64/9 67/8 68/11
examined [1] 48/19
example [13] 30/20 39/8 40/1 46/23 47/3 47/4 48/5 48/10 49/13 50/1 50/1 60/6 71/3
exclusion [1] 25/14
exclusively [1] 39/2
excuse [1] 29/4
executive [62] 1/6 2/3 3/13 3/14 3/15 3/17 3/21 4/8 4/16 7/18 7/24 8/9 9/14 9/22 11/14 11/17 11/20 12/9 13/15 14/1 14/5 16/2 16/9

**F**

F.3d [1] 17/3
facilities [2] 25/15 70/17
fact [8] 12/18 27/9 29/9 36/22 60/16 63/16 67/4 68/3
factor [1] 37/20
factors [1] 51/2
facts [4] 4/19 6/19 8/2 28/8
factual [4] 15/10 32/21 39/12 68/6
factually [2] 42/25 43/1
fair [3] 4/1 65/17 65/21
fall [3] 49/17 55/24 71/22
fallen [1] 21/4
falling [2] 51/1 57/1
falls [1] 55/23
familiar [1] 42/14
famous [1] 71/18
far [9] 26/14 30/13 36/12 37/15 50/18 54/12 58/12 60/7 64/2
fashion [1] 66/2
fashioned [2] 8/23 8/24
favor [2] 26/19 36/10
feathered [1] 61/1
federal [5] 12/17 31/19 52/17 56/12 69/24 69/25 72/9
feet [2] 66/23 72/5
few [6] 16/6 16/10 28/2 45/9 54/9 57/11
fighting [3] 8/1 73/13 73/14
figure [3] 6/8 53/11 55/19
fill [1] 39/19
final [4] 29/16 29/24 65/14 66/11
find [1] 14/5
finding [3] 66/8 67/1 68/7
findings [10] 9/10 9/10 9/20 9/20 9/21 10/22 11/3 22/25 23/19 23/23
finds [1] 8/12
fines [1] 53/16
fingerprints [2] 6/6 6/8
firm [24] 2/9 2/14 4/20 5/25 10/5 14/16 15/8 15/10 15/13 24/7 32/24 39/11 39/23 40/8 41/1 50/17 52/3 52/12 52/16 52/19 53/24 53/25 60/25 67/5
firms [11] 7/25 8/3 24/9 33/1 33/11 33/16 55/15 64/11 73/10 73/14 73/15
firms' [1] 62/1

**F** (continued)

20/4 22/17 22/17 22/19 23/15 26/24 28/17 28/18 28/23 30/19 31/6 36/11 36/19 43/24 44/5 44/8 45/8 46/1 49/21 51/2 51/19 52/12 52/15 54/13 54/24 60/21 61/8 62/10 67/1 67/24 67/25 68/4 68/20 69/5 72/7 73/7 73/9 73/19
exercise [6] 14/10 14/16 14/25 45/5 51/9 71/23
exercising [4] 36/22 50/6 70/2 72/3
exhibit [2] 38/16 42/11
exist [1] 46/1
existed [1] 7/17
existent [1] 43/12
expand [1] 60/10
expedited [1] 42/13
expeditiously [1] 29/24
experience [1] 9/19
explain [1] 51/7
explained [1] 20/8
explanation [2] 7/11 33/10
explicit [1] 21/5
express [1] 21/9
extend [1] 26/14
extension [1] 38/25
extensional [2] 8/14 8/15
extensive [1] 4/7
extent [2] 17/2 60/19
extraneous [1] 27/7
extraordinary [5] 43/22 58/1 59/13 59/21 60/7

**first** [30] 3/6 4/5 4/5 4/25 8/25 5/17 Page 80 of 88 14/22 14/23 14/25 15/4 18/10 18/13 18/15 20/6 20/23 22/18 24/21 25/17 29/3 40/19 47/11 49/10 51/1 59/8 60/15 70/2 71/23
five [1] 38/22
flag [1] 31/8
flip [1] 4/4
Floor [2] 1/15 1/17
flow [1] 32/15
focus [1] 7/5
focused [2] 4/8 58/1
focuses [1] 67/5
follow [5] 9/12 14/13 17/1 40/23 45/19
followed [1] 58/14
foot [5] 30/14 32/13 51/4 63/1 63/11
forbid [1] 20/14
foregoing [1] 75/4
forest [3] 7/10 7/22 29/2
forgive [3] 2/1 37/3 58/11
forgotten [1] 30/20
form [3] 6/20 22/20 35/19
formally [1] 64/20
formulated [1] 38/13
forth [1] 31/1
fortunately [1] 28/22
forward [2] 2/5 18/22
found [4] 4/16 4/25 9/8 69/16
four [1] 11/19
framed [1] 62/22
framers [2] 4/16 7/19
framing [1] 61/21
frankly [1] 21/14
free [1] 7/12
freedom [1] 72/1
freedoms [1] 14/16
friend [15] 14/18 21/19 26/17 28/18 33/5 44/17 62/21 64/10 67/7 67/19 67/23 68/5 68/25 69/20 70/20
full [3] 8/5 20/23 53/19
fully [1] 72/25
fulsome [2] 58/16 59/4
functioning [1] 56/18
fundamental [7] 13/25 26/16 30/6 34/13 38/10 48/21 69/22
fundamentally [1] 14/6
funds [1] 72/19
further [3] 17/7 46/2 55/13
furthermore [1] 18/2
future [1] 13/18

**G**

game [2] 19/1 25/20
gave [2] 31/23 54/8
gay [2] 4/24 5/16
gender [10] 10/7 10/10 20/13 20/25 21/3 38/21 40/6 55/13 67/5 70/15
general [2] 9/24 30/22
generally [2] 33/18 43/13
gesture [1] 22/7
get [14] 7/8 11/9 17/21 32/19 36/2 38/11 39/5 39/6 39/17 40/20 54/7 55/20 63/23 74/3
gets [3] 40/21 54/5 73/18
getting [5] 39/21 43/16 51/6 64/11 73/16
ghosts [1] 54/14
gift [1] 7/1
Ginger [2] 1/13 2/9
give [13] 4/9 11/9 17/21 28/1 33/8 39/8 48/23 49/2 50/19 51/21 59/14 62/10 66/18
given [14] 24/10 31/6 35/6 39/11 43/21 43/23 44/8 49/16 49/20 49/20 52/14 63/16 66/11 74/10
giving [2] 36/9 55/3
GLAAD [2] 5/13 72/24

**G**

go [13]   19/24 21/7 21/11 31/20
32/16 42/7 42/17 46/23 51/4 54/25
56/21 62/6 67/8
goal [1]   8/6
goals [3]   48/3 67/13 67/15
God [1]   20/14
GODFREY [24]   1/3 2/3 2/8 2/11
4/23 6/16 6/20 7/23 8/1 9/23
12/15 13/4 15/16 20/14 21/23
22/14 28/11 38/17 40/3 67/2 67/20
69/15 69/17 70/14
goes [12]   4/5 5/13 6/17 10/23
19/8 21/5 22/22 40/3 45/23 49/12
51/3 56/7
going [20]   10/3 10/16 18/12 21/1
22/6 34/20 40/15 45/24 46/7 46/15
47/20 51/12 52/22 54/6 54/10
54/16 58/10 61/6 65/20 71/13
Goldenberg [1]   2/10
gone [2]   18/22 35/13
good [8]   2/2 2/7 2/15 2/16 2/18
8/22 8/24 20/1 30/10 46/6 50/2
55/8 55/14 71/3
got [5]   15/11 18/14 22/3 48/19
53/7
government [75]   5/20 5/22 7/13
7/14 8/23 8/24 9/5 9/9 9/15 9/22
10/1 11/4 11/4 12/17 12/17 18/6
18/14 18/22 18/24 19/6 19/7 22/15
24/22 25/6 25/14 25/25 25/25 26/2
26/3 26/5 26/6 26/10 26/11 26/15
26/18 26/24 27/1 27/2 27/4 27/9
27/10 27/11 27/12 27/16 28/11
28/12 28/23 31/5 36/3 36/17 37/7
43/7 44/11 52/13 52/18 52/20
53/22 56/19 59/13 62/12 64/23
68/19 69/1 69/23 70/17 70/18
70/22 70/25 71/4 71/5 71/12 71/22
71/25 72/3 73/6
government's [5]   8/21 12/2 17/19
27/3 71/16
governmental [1]   59/21
graduates [1]   39/10
Grand [1]   1/17
grant [3]   6/25 43/10 64/17
granted [1]   21/10
granting [2]   4/15 58/13
granular [3]   32/11 35/14 66/23
granularity [2]   64/2 64/22
great [5]   19/4 19/21 35/10 43/23
62/8
ground [2]   25/13 70/12
grounded [1]   39/9
grounds [2]   32/5 39/24
group [4]   39/17 45/16 58/2 59/6
groups [4]   40/14 42/22 70/15
72/19
Grutter [1]   38/25
guarantee [2]   7/12 7/16
guarantees [1]   7/19
guess [11]   6/17 39/6 40/11 49/23
50/8 53/10 60/4 61/14 68/2 68/7
68/12
guesses [1]   21/25
guidance [12]   31/6 31/21 31/23
31/25 32/8 64/3 64/13 64/14 64/15
65/3 69/21 70/4

**H**

had [18]   4/7 4/11 13/5 16/3 21/16
21/17 23/17 32/23 37/6 39/4 47/7
47/8 51/20 58/18 64/12 66/5 68/17
70/14
hadn't [1]   19/10
Hailyn [1]   2/13
handed [1]   28/9
handling [1]   33/14
happen [1]   29/16 58/24
happened [2]   32/25 73/19
happening [2]   24/12 27/5

happens [1]   15/15
happy [2]   70/23 71/7
hard [5]   42/12 44/2 46/20 69/2
73/6
harm [4]   12/6 12/6 64/13 64/17
harmful [1]   64/15
harps [1]   57/25
has [61]   5/20 7/17 10/20 12/4
12/24 14/14 14/25 15/5 15/14
16/24 17/7 18/6 19/21 20/7 23/25
24/1 24/21 26/3 26/25 27/25 30/17
31/4 35/11 35/22 36/16 36/19
38/21 39/22 43/10 44/3 44/3 44/3
44/7 47/3 47/16 50/12 52/16 52/19
57/10 58/3 58/4 58/5 60/21 62/2
62/7 62/13 63/17 66/1 66/3 67/2
67/5 69/16 69/20 70/20 70/23
70/21 72/2 72/25 73/8 73/19 74/1
hasn't [1]   24/8
have [188]
haven't [15]   4/11 7/6 19/2 19/25
20/1 21/17 24/8 25/18 25/20 34/3
48/19 64/8 64/19 68/23 70/11
he [16]   8/12 8/13 9/6 54/8 54/8
9/9 61/9 61/3 63/2 63/4 63/6 67/14
67/17 67/17 67/18 71/20 72/2
head [1]   23/5
Healthy [11]   18/20 19/3 19/9
19/22 21/17 25/19 37/1 37/15
54/23 68/19 70/9
hear [3]   3/2 3/6 4/5
heard [4]   29/10 59/23 63/2 68/5
hearing [11]   1/9 2/19 2/22 2/25
4/7 8/8 9/20 28/6 30/11 30/14
59/22
hearings [1]   32/18
heart [1]   67/9
heavily [1]   44/10
held [1]   26/11
help [2]   61/23 67/23
helpful [3]   8/21 12/20 71/13
her [1]   17/5
here [50]   2/11 2/19 2/25 3/18
5/11 7/8 9/1 9/5 11/11 13/2 13/10
15/6 15/15 16/24 17/2 18/3 18/13
20/2 26/15 27/6 27/22 29/2 29/24
35/7 36/11 37/19 37/19 38/10
43/17 44/16 46/5 47/6 47/8 47/22
47/25 49/9 50/3 50/14 56/8 58/5
59/15 60/23 61/17 68/19 69/1
69/22 70/13 71/16 72/5 73/6
hey [3]   39/17 45/15 54/7
hidden [1]   21/5
highest [1]   53/8
him [4]   21/20 28/9 54/9 63/3
hire [1]   40/15
hired [6]   39/18 39/20 42/6 44/3
44/3 47/3
hiring [15]   31/13 39/16 41/3
41/10 41/11 41/16 41/17 41/19
42/5 42/13 42/17 43/9 43/12 48/2
48/22
his [4]   33/8 50/1 62/25 72/1
history [1]   73/19
hit [1]   41/20
hits [1]   35/16
hold [3]   15/1 28/19 61/13
holder's [1]   57/18
holders [1]   13/23
holding [2]   19/5 19/5
holds [2]   27/14 71/24
Holmes' [1]   71/18
home [1]   32/2
Honor [33]   2/2 2/7 2/16 3/8 4/1
4/25 5/10 6/7 7/6 11/5 12/24 13/8
14/23 15/22 16/16 17/15 20/7
20/18 22/11 22/23 23/17 27/23
27/25 30/8 30/10 31/17 48/9 48/15
66/22 68/11 71/1 74/7 74/8
Honor's [6]   4/14 16/21 66/25
67/11 69/8 71/4
HONORABLE [1]   1/10

hope [2]   23/13 29/23
hopefully [2]   14/23 63/21
hoping [1]   29/16
horribles [1]   32/11
House [1]   33/13
Houston [1]   45/10
how [27]   5/6 11/24 19/24 26/21
28/24 29/6 29/17 29/10 29/13 32/16
34/18 34/20 35/20 37/25 39/7 43/2
45/4 47/10 50/4 50/5 62/14 62/21
63/8 63/23 64/13 66/6 70/19
Howell [4]   9/8 17/4 29/13 30/1
Howell's [3]   29/19 29/21 30/5
however [2]   32/14 41/20
hypothetical [6]   31/21 31/23
32/10 39/8 40/8 54/3
hypotheticals [1]   55/24

**I**

I don't [1]   28/24
I'm [5]   10/9 11/11 30/20 31/17
58/21
idea [6]   21/12 28/13 28/25 39/17
69/9 70/20
ideal [1]   48/3
idealogy [2]   10/7 10/10
identified [1]   17/13
identify [1]   42/21
identity [2]   39/19 40/6
ideology [1]   72/22
ill [1]   37/13
ill-motivated [1]   37/13
illustrate [1]   13/25
illustrated [1]   9/18
illustrating [1]   12/21
image [1]   8/12
immunity [3]   22/20 23/1 63/6
immunize [1]   36/23
immunizing [1]   62/15
impact [3]   62/7 62/9 64/5
impairing [1]   62/9
impede [1]   56/18
impermissible [2]   15/3 37/24
impermissibly [1]   22/18
implement [2]   50/5 59/8 65/8
implications [1]   32/10
import [1]   3/3
important [2]   10/18 13/13 20/17
23/20 27/21
impose [2]   22/6 27/6
imposed [3]   14/24 18/7 18/7
imposition [1]   16/9
improving [2]   40/25 67/13
inadequate [1]   38/20
inadvertently [1]   62/15
inclined [1]   4/5
include [2]   6/22 50/3
included [3]   33/21 48/6 60/9
includes [1]   6/21
including [9]   2/23 6/23 7/14 42/8
42/16 44/19 46/22 47/2 49/11
incorrect [3]   42/25 43/2 44/24
increases [1]   44/2
increasing [2]   45/10 45/12
independence [2]   8/15 8/16
individual [6]   13/20 39/16 39/18
58/15 58/17 59/5
individual's [1]   13/18
individualized [7]   13/22 14/11
14/13 14/17 57/23 58/8 61/11
individually [2]   57/18 58/1
individuals [4]   17/3 42/5 44/20
53/2
industry [2]   62/6 62/15
inflation [1]   46/4
information [7]   13/20 33/12 33/18
34/5 34/21 35/5 42/12
informative [1]   34/17
informed [2]   35/15 61/20
informs [1]   35/2
infringes [1]   72/1
inherent [5]   30/25 31/3 31/12

**I**

inherent... [2]  31/18 56/23
inherently [1]  53/18
initial [1]  57/19
injection [1]  72/21
injunction [4]  22/13 22/15 29/17
62/22
injury [1]  56/10
inquire [1]  31/7
inquiry [7]  37/11 37/20 41/14
56/12 61/12 62/2 63/5
instruct [1]  36/20
instructed [1]  19/10
instructing [1]  28/23
instruction [1]  37/12
insubstantial [1]  28/14
insulated [1]  13/16
integrity [2]  72/16 72/17
intending [1]  3/20
intent [5]  35/15 36/10 36/10
36/22 36/23
interest [13]  7/23 12/16 12/19
16/4 59/13 59/21 60/18 60/23 61/5
61/7 61/15 61/18 62/18
interested [1]  38/14
interesting [1]  61/24
interests [2]  5/19 73/11
interference [4]  5/7 5/23 50/15
53/2
interpretation [1]  41/3
interviewing [1]  41/18
interviews [1]  41/15
interwoven [1]  12/21
intimidate [2]  7/24 73/10
intimidation [5]  8/2 8/4 8/6
73/16 73/17
investigate [1]  22/14
investigation [7]  12/16 22/19
23/5 23/19 31/9 62/2 69/15
investigations [3]  23/8 24/5
24/10
invoking [1]  25/14
involve [1]  54/23
involved [2]  6/1 46/9
involving [1]  37/16
irony [1]  8/25
irredeemably [1]  37/13
irrespective [1]  70/10
is [545]
isn't [8]  22/9 22/9 24/3 28/14
31/15 31/18 33/23 54/14
issue [57]  3/10 3/11 3/12 8/7 9/3
13/3 14/1 17/14 17/15 19/12 21/8
21/9 21/11 21/12 27/6 30/1 30/3
30/25 32/7 32/9 34/13 35/23 35/23
37/14 41/4 41/15 41/17 41/17
45/25 46/4 46/5 46/6 46/18 48/1
48/21 50/23 51/10 51/21 51/23
53/17 54/6 57/7 57/10 57/25 58/4
62/4 62/21 62/24 63/14 65/13
65/14 66/3 66/8 68/25 69/14 69/21
73/21
issued [3]  3/3 10/1 16/14
issues [7]  7/6 36/9 37/6 50/24
52/23 55/11 56/7
issuing [3]  12/10 32/24 43/12
it [304]
its [15]  13/4 4/20 11/2 14/10
16/9 16/25 18/5 18/6 23/9 27/12
27/17 68/20 70/2 70/3 70/14
itself [6]  11/3 20/14 42/7 46/21
48/11 73/3

**J**

jail [1]  36/12
James [1]  7/10
Jenner [6]  9/19 10/1 10/5 11/21
12/7 12/10
Jeremy [1]  1/14
Jerry [1]  2/10
jibe [1]  47/5

**J** (continued, center column)

Johnson's [1]  67/24
Jones [2]  1/14 1/14
Jr [1]  1/13
JUDGE [10]  1/10 9/8 17/4 29/13
29/19 29/19 29/21 29/25 30/5 47/1
judgment [14]  2/20 3/1 4/17 15/3
15/4 20/5 20/9 29/16 29/24 32/7
38/8 64/18 65/14 73/21
judgments [1]  13/17
judicial [2]  13/16 36/19
judiciary [1]  8/16
jump [2]  44/7 57/9
jumping [2]  36/8 57/24
just [75]  3/2 3/18 8/22 8/23 9/8
9/9 10/3 11/2 11/3 12/20 12/21
15/17 17/15 17/18 17/25 18/20
19/1 19/9 19/12 19/18 21/1 21/1
21/14 22/8 22/9 22/21 23/9 23/21
24/4 25/2 25/8 25/10 25/19 27/19
28/6 28/13 28/24 29/1 31/8 32/19
34/15 36/4 38/9 39/14 41/23 42/10
42/20 45/21 45/24 47/10 47/19
48/19 49/8 49/24 50/23 51/2 51/19
53/10 53/19 55/22 56/11 56/18
57/9 58/6 62/22 63/22 64/2 64/20
64/21 68/12 68/15 68/23 68/24
70/24 72/4
justice [5]  2/17 10/6 67/12 67/21
71/18
Justices [1]  38/22
justiciability [2]  13/13 57/7
justiciable [5]  13/11 13/17 54/6
57/7 57/8
justification [4]  16/3 19/18
21/15 67/16
justified [5]  16/5 18/15
justifies [1]  59/22
justify [6]  20/2 20/9 25/14 26/24
27/8 70/16
justifying [1]  27/22

**K**

Kahn [2]  46/2 50/9
Kalpana [1]  2/11
keep [2]  66/17 74/5
keeping [1]  26/24
key [7]  10/12 11/5 13/2 18/3
42/23 43/17 48/1
kind [8]  6/14 12/7 15/11 17/14
19/9 31/11 45/8 50/8
kinds [2]  67/8 68/12
knew [1]  54/8
know [69]  4/4 4/22 5/9 5/20 6/7
7/5 13/4 13/5 15/25 16/1 16/11
16/19 19/25 22/1 22/4 24/10 24/23
25/11 27/2 27/20 29/1 29/15
30/3 31/13 33/15 33/17 33/22
33/23 33/25 34/2 34/4 35/25 40/9
41/16 44/6 45/4 46/12 47/10 50/4
51/14 53/16 54/8 55/23 56/10
56/20 57/21 58/10 59/7 61/4 61/7
61/8 61/11 61/14 64/9 64/19 64/22
64/23 66/2 67/8 68/15 69/7 69/14
69/21 70/12 71/4 72/5 73/13 73/16
knowledge [4]  5/12 16/15 33/22
37/9
known [1]  33/4
knows [4]  48/19 50/20 56/25 73/9
Kreisberg [2]  1/14 2/10

**L**

labeled [1]  61/5
laid [1]  11/17
landlord [6]  24/25 25/4 25/7 26/1
26/4 26/6
language [4]  12/22 22/7 22/22
23/16 24/14 35/8
large [2]  53/13 62/1
larger [1]  62/18
largest [1]  73/14
last [5]  10/4 18/1 29/11 31/12
49/3

**L** (continued, right column)

later [2]  16/6 16/10
latitude... [2]  66/3 26/13
70/25
launching [1]  69/15
law [27]  7/24 8/17 10/5 17/10
19/21 21/20 32/25 35/25 36/20
39/10 39/11 40/8 40/23 43/14
43/25 47/24 57/13 57/16 57/17
58/6 58/7 59/3 59/9 60/15 62/1
73/10 73/15
lawful [1]  20/9
laws [2]  21/3 40/16
Lawson [8]  1/19 2/17 3/25 30/9
66/20 67/7 71/13 73/24
lawyers [10]  2/14 8/9 16/9 39/12
41/1 41/7 41/8 42/21 55/8 69/24
LBJ [1]  43/15
learning [1]  31/10
least [3]  16/15 32/1 32/8
leave [1]  48/16
leaving [1]  24/16
Lee [6]  13/12 14/6 17/9 17/14
56/25 60/19
legal [7]  17/2 38/10 45/1 53/21
55/9 72/8 72/11
legally [1]  45/5
legitimate [1]  16/11
lesbian [2]  4/24 5/16
let [3]  39/8 56/21 64/16
let's [1]  29/1
letter [1]  40/16
level [11]  21/24 30/14 39/18
41/21 44/8 45/17 48/3 51/4 63/1
63/11 66/23
liberty [1]  7/18
license [1]  36/2
licensing [1]  30/25
life [1]  7/18
light [3]  24/12 37/9 41/22
lightning [1]  65/13
like [41]  3/21 5/13 5/24 7/4 7/7
7/20 7/24 12/10 14/19 18/19 21/13
22/4 22/5 23/21 25/8 29/5 29/8
30/17 36/13 38/2 39/19 44/6 48/14
48/16 52/5 54/14 54/15 54/25 55/7
55/11 55/20 58/25 62/5 62/12
65/18 66/12 66/14 66/16 72/6 73/7
73/12
limit [1]  53/21
limited [5]  27/20 27/21 39/2
56/13 66/17
limiting [2]  23/9 31/25
limits [1]  71/9
Lindsay [3]  1/22 75/3 75/12
line [10]  2/22 11/4 23/5 26/18
37/2 37/15 37/16 38/24 53/11
55/23
lines [4]  17/5 26/22 55/19 64/25
list [3]  24/9 24/11 24/12
litigating [1]  54/11
litigation [17]  5/19 5/20 5/21
5/22 6/1 6/10 18/5 18/8 24/3
33/14 43/20 50/16 51/17 52/20
56/16 61/2 70/7
little [4]  15/22 30/5 34/25 46/9
LLP [4]  1/3 1/14 1/17 2/3
local [1]  26/10
logically [1]  39/1
long [1]  71/18
look [9]  13/14 20/18 29/2 34/21
37/25 44/5 45/8 46/5 47/25
looked [3]  30/17 35/11 54/8
looking [7]  5/8 34/20 35/7 41/18
46/21 52/9 70/6
looks [1]  17/19
LOREN [1]  1/10
Los [1]  1/18
lose [5]  29/1 60/12 60/14 68/24
70/11
lost [1]  7/8
lot [5]  11/11 24/11 32/25 36/18
74/11

**L**

loud [1]   21/1
low [5]   46/17 46/19 50/11 50/12
50/13
lower [1]   19/10

**M**

machines [1]   72/17
made [16]   3/9 3/11 5/14 6/5 6/9
20/4 25/20 30/4 33/8 34/16 34/17
46/11 47/16 65/23 68/4 68/14
Madison [1]   7/10
Magna [1]   7/16
mainly [1]   51/12
maintain [1]   31/4
maintaining [1]   60/1
maintains [1]   28/19
majority [4]   38/24 39/10 51/22
67/9
make [29]   7/7 7/8 7/9 8/21 14/18
14/23 16/1 16/20 18/25 19/4 25/18
25/20 25/21 25/21 27/24 28/4
35/18 39/10 39/15 41/13 44/16
45/16 49/8 57/19 60/4 60/16 66/17
68/15 73/6
makes [2]   8/6 34/22
making [4]   18/25 21/9 32/3 40/14
male [1]   27/10
male-owned [1]   27/10
malfeasance [4]   18/5 51/7 51/16
52/2
malfeasances [1]   50/15
Management [1]   9/25
manifests [1]   27/19
manner [1]   29/18
map [1]   29/22
marital [1]   40/5
massive [1]   56/16
massively [1]   56/18
material [2]   8/2 66/16
matter [4]   8/5 55/22 74/12 75/5
maximum [1]   17/2
may [25]   1/5 2/7 3/9 4/14 11/6
19/6 22/14 26/20 32/17 35/3 35/14
35/15 36/15 38/9 46/12 49/6 54/20
64/15 64/15 64/20 70/25 71/19
71/21 71/25 75/10
maybe [11]   6/18 13/25 22/3 22/8
30/4 31/23 33/5 35/22 63/24 66/16
69/2
McGowan [6]   19/16 19/20 36/8
37/22 41/24 51/15
me [26]   2/9 2/21 2/21 2/21 4/9
4/10 6/16 7/7 11/9 12/20 17/21
28/1 29/4 37/3 39/8 44/22 47/13
51/7 52/19 54/8 54/12 57/5 58/11
64/16 70/13 74/10
mean [12]   20/13 21/13 24/22 27/7
27/16 29/6 40/21 43/9 51/23 66/16
63/14 64/20
means [3]   41/11 44/6 58/8
meant [1]   45/9
measures [1]   28/10
meet [1]   70/18
meets [1]   56/5
members [5]   5/16 5/18 39/24 42/21
45/20
membership [1]   46/13
memo [1]   10/3
memorandum [2]   9/25 12/10
men [2]   20/15 27/10
mentioned [2]   30/11 64/4
mentoring [1]   6/21
mere [2]   21/23 36/22
merit [1]   39/16
merits [5]   7/9 24/22 39/18 59/7
74/5
merits-based [1]   59/7
met [1]   50/12
methodology [2]   18/19 18/20
middle [1]   17/25

might [12]   3/12 13/20 26/13 27/15
45/1 45/1 45/1 48/18 48/19 53/9
64/17 66/22
military [3]   5/8 5/23 72/21
mind [4]   5/21 5/21 22/3 56/17
mindful [1]   56/11
minorities [1]   45/20
minority [1]   39/11
minute [3]   11/9 26/24 70/24
minutes [1]   57/11
misconceived [1]   72/4
mispronouncing [1]   37/3
miss [2]   7/10 7/21
mistaken [1]   63/7
misunderstanding [2]   59/16 59/18
mixing [1]   36/8
modern [1]   71/24
moment [4]   17/21 18/3 30/21 42/11
moments [1]   7/20
money [3]   27/3 27/12 54/8
monies [1]   53/7
more [17]   9/22 11/20 12/24 15/25
16/19 24/2 27/23 30/18 31/10
34/25 37/15 37/18 51/21 52/23
58/16 59/4 65/22
most [4]   9/3 47/20 52/25 73/15
motion [11]   1/9 2/25 3/1 3/7 3/9
17/19 20/19 32/6 56/7 59/19 66/13
motions [7]   2/19 2/20 4/4 35/13
65/15 66/12 74/3
motivated [1]   37/13
motivation [1]   8/5
motive [3]   25/18 41/25 70/11
motives [1]   69/1
Mount [11]   18/20 19/3 19/9 19/22
21/16 25/19 37/1 37/15 54/22
68/19 70/9
move [7]   12/25 17/18 22/10 22/11
29/23 42/13 61/22
moves [1]   65/13
moving [2]   8/21 65/12
Mr [10]   3/25 30/9 30/21 34/6 63/8
66/20 66/21 67/7 71/13 73/24
Mr. [1]   3/6
Mr. Verrilli [1]   3/6
Ms. [1]   2/21
Ms. Pham [1]   2/21
much [13]   4/3 7/3 7/6 17/4 30/7
32/15 39/7 46/13 59/4 64/25 73/23
74/2 74/11
multiple [1]   40/1
Munger [3]   1/14 1/17 2/13
must [3]   5/24 43/19 45/25
muzzle [2]   9/2 9/4
my [29]   5/12 6/6 6/8 6/11 33/22
36/20 39/9 40/7 40/21 45/2 48/17
54/3 54/25 55/7 55/8 55/24 57/4
59/11 62/6 66/11 67/7 67/19 67/23
68/5 68/25 69/20 70/20 74/5 74/10
myth [1]   8/10

**N**

name [1]   3/17
named [1]   3/16
narrow [1]   52/23
nation's [1]   73/14
national [17]   12/16 12/18 13/21
15/23 16/4 40/4 60/17 60/18 60/22
60/23 60/24 61/5 61/9 61/15 61/16
61/18 61/18
nature [2]   33/13 53/14
necessarily [7]   31/22 38/14 41/16
44/25 45/1 58/8 60/12
necessary [2]   12/1 70/5
need [15]   10/8 16/11 17/10 17/12
17/12 32/11 39/17 39/20 45/15
55/25 64/2 64/22 66/9 69/3 73/17
needed [1]   3/15
needs [4]   8/18 15/12 56/4 56/10
negative [2]   49/2 67/18
neither [1]   28/20
neutral [3]   25/13 25/13 44/16

never [2]   22/14 57/5
next [3]   54/1 72/11 72/19
no [63]   1/4 3/23 4/1 8/5 12/4
12/22 12/24 14/2 14/12 14/11 15/1
15/1 15/16 15/18 16/7 17/11 21/14
21/17 26/25 27/8 28/1 30/6 31/3
31/11 32/24 33/7 33/8 33/12 33/22
33/24 34/2 34/3 34/3 34/15 36/24
39/14 41/17 41/17 43/25 48/9
48/12 48/13 50/18 50/19 53/6 53/9
53/18 53/21 54/3 54/17 54/19
60/14 63/5 63/18 63/19 66/3 66/7
69/3 70/4 71/20 72/2 73/7 73/25
nodding [1]   46/4
non [1]   25/13
none [3]   15/21 34/6 68/3
nonetheless [1]   37/18
nonjusticiable [3]   14/5 57/3 57/4
not [123]
notation [1]   34/17
note [3]   2/5 4/6 10/12
noted [1]   10/13
nothing [12]   7/1 7/2 17/7 23/6
33/9 33/17 34/7 61/2 66/7 69/23
69/23 69/25
notice [2]   29/9 69/14
Noting [1]   63/21
notion [1]   19/17
now [32]   2/3 4/19 4/22 4/24 7/4
8/1 8/22 15/6 15/16 19/24 23/3
24/12 32/10 35/19 47/19 47/22
54/6 54/20 58/20 58/25 64/14 65/1
65/3 66/25 67/7 67/23 68/14 68/25
70/20 71/8 72/13 72/23
nudge [1]   54/14
number [2]   42/5 45/15
NW [3]   1/15 1/20 1/23

**O**

O'Brien [1]   36/9
object [1]   29/9
objecting [1]   63/12
objection [2]   12/12 63/10
objectionable [2]   45/14 45/15
objective [2]   39/12 44/15
objectively [1]   40/9
observation [2]   4/18 14/22
observed [2]   4/16 73/8
obviously [14]   28/6 28/23 29/12
32/4 36/6 38/5 43/24 47/4 50/21
51/24 56/23 56/24 65/12 66/8
occurred [2]   14/15 15/18
odious [1]   5/2
off [4]   20/11 26/21 42/12 48/3
offer [2]   6/22 6/23
offering [1]   47/12
offhand [2]   48/1 66/1
office [6]   1/6 2/4 3/13 3/21 9/25
40/12
official [1]   1/22 28/9 75/3 75/13
officials [3]   4/21 26/10 69/25
officials' [1]   19/7
Oh [1]   2/21
okay [11]   19/16 28/3 28/13 30/8
41/23 42/1 42/25 51/10 53/10
56/22 70/19
old [5]   8/23 8/24 19/20 43/15
71/8
old-fashioned [2]   8/23 8/24
Olson [2]   1/14 1/17
once [1]   18/11
one [40]   5/15 7/20 9/3 9/17 15/16
16/19 17/18 18/9 18/11 23/4 27/21
27/21 27/23 28/6 30/19 32/24 33/4
35/18 36/1 37/13 38/9 38/15 40/1
41/25 43/13 44/17 44/20 46/7 50/2
51/5 55/24 61/7 61/24 64/6 64/20
65/22 66/2 66/16 66/19 68/8
only [17]   16/13 20/9 20/10 27/10
27/10 45/19 47/11 48/10 49/17
50/8 54/24 54/25 55/13 55/15
62/24 63/24 68/8

## O

open [2] 22/16 23/18
opening [1] 56/11
opens [1] 56/15
operationalize [1] 9/20
operationalized [1] 11/19
operations [2] 5/8 5/23
operative [6] 9/11 11/22 34/18
34/22 35/17 72/8
opinion [9] 9/10 17/5 29/12 29/19
30/1 55/25 56/2 65/25 71/16
opponent [1] 54/9
opportunity [4] 4/12 29/10 59/23
66/18
opposed [5] 23/9 35/8 50/6 51/9
60/18
opposition [1] 20/19
order [94]
orders [3] 8/7 49/21 73/9
ordinary [1] 10/14
organization [5] 4/23 5/13 5/15
6/3 72/24
orientation [1] 40/6
origin [1] 40/5
Ostensibly [1] 52/16
other [44] 2/14 8/3 10/10 13/19
13/22 14/19 16/14 16/19 20/10
21/20 21/25 22/15 23/21 26/17
28/3 28/18 28/25 32/25 33/4 33/6
33/22 34/16 34/17 35/21 36/5
40/11 40/12 44/17 44/20 45/9 46/7
50/2 54/9 55/24 58/4 62/11 62/22
64/10 64/11 67/19 67/24 68/6 72/3
73/13
others [2] 7/24 33/24
otherwise [3] 11/16 22/16 42/6
ought [1] 10/25
our [38] 2/13 5/3 5/4 7/19 8/2
8/2 8/16 8/16 10/18 10/19 10/19
10/21 10/23 11/6 11/8 12/12 12/13
13/11 15/10 16/22 18/8 20/19
20/25 23/15 24/14 28/7 29/18
30/18 30/22 31/2 35/1 38/8 38/10
38/16 47/8 56/7 58/4 71/24
out [21] 6/8 8/25 11/17 15/9 19/3
21/1 21/22 26/24 31/11 31/23
32/24 49/17 50/2 50/23 53/11
55/19 59/6 63/23 65/23 67/23 74/4
outer [1] 55/21
outreach [1] 63/18
outset [1] 7/8
outside [1] 36/7
over [8] 19/1 25/20 38/24 52/6
54/11 56/16 62/5 69/18
overarching [2] 7/7 30/22
overbroad [1] 63/23
overlooking [2] 47/24 49/7
own [3] 3/14 11/2 27/12
owned [2] 27/8 27/10

## P

p.m [1] 74/13
pace [1] 65/13
page [20] 11/7 11/10 17/3 17/5
17/19 17/25 20/18 20/20 22/23
24/14 37/4 39/22 39/23 40/2 49/9
49/16 59/20 67/11 71/14 71/17
pages [2] 11/11 13/21
painfully [1] 35/19
papers [1] 68/10
parades [1] 32/10
paragraph [6] 11/10 18/2 20/24
24/14 40/25 72/10
parcel [2] 12/3 12/5
parity [4] 20/13 45/10 45/12 67/5
part [9] 10/18 12/3 12/4 12/5
21/18 35/4 46/21 51/2 53/13
particular [11] 8/14 11/7 13/23
16/21 26/19 27/18 29/20 43/23
52/22 60/6 60/19
particularly [1] 47/23

parties [6] 3/2 3/21 55/4 74/4
partner [2] 2/13 39/13
partners [2] 39/11 40/8
party [4] 36/16 52/13 53/20 53/25
passing [1] 46/12
path [1] 51/4
patterns [1] 43/12
Paul [6] 16/2 16/3 16/5 16/7 16/8
16/13
pay [1] 45/12
penalize [1] 50/17
penalty [2] 50/20 51/9
Pending [1] 57/21
Pennsylvania [1] 1/20
penultimate [1] 18/1
people [7] 40/22 45/13 45/15 55/4
55/13 61/10 61/12
perceive [2] 21/21 25/24
percent [1] 20/8
perhaps [2] 32/7 50/11
period [1] 25/6
Perkins [9] 3/10 3/16 9/8 17/6
23/24 24/5 29/12 61/25 65/24
Perkins' [1] 62/19
permanent [1] 29/17
permanently [2] 23/21 73/22
permissible [2] 37/24 37/25
permit [1] 7/7
permitted [1] 10/14
pernicious [1] 8/7
person [2] 39/18 44/7 71/25
person's [1] 15/13
personnel [1] 70/18
pertains [1] 44/11
petition [4] 5/3 31/19 32/1 64/6
Pham [1] 2/21
philosophical [1] 38/10
phrase [4] 38/17 57/21 60/5 61/17
phrasing [1] 5/9
picture [1] 21/22
pipeline [1] 45/21
pitch [2] 8/22 8/22
place [2] 10/2 74/5
places [1] 30/4
plain [1] 19/12
plaintiff [9] 1/4 1/13 2/6 3/16
4/6 33/21 37/5 53/5 56/9
plaintiff's [2] 18/4 58/3
plaintiffs [2] 30/12 33/20
plausible [1] 55/5
play [4] 37/17 46/8 55/11 56/8
pleadings [2] 38/8 53/5
please [7] 2/5 2/8 3/9 4/14 32/22
47/13 54/3
pledge [3] 20/13 20/14 67/5
plenty [1] 46/6
plus [1] 71/8
point [40] 7/23 8/7 8/25 11/6
15/22 16/20 19/3 20/7 22/12 27/23
28/1 30/15 30/22 31/12 32/3 32/12
32/14 34/6 34/11 35/18 36/24 37/4
37/5 37/15 45/24 47/15 48/21
51/22 60/3 62/17 62/18 63/24
63/24 64/11 65/17 65/21 66/17
67/23 68/14 69/7
pointed [2] 20/24 48/22
pointing [1] 28/7
points [11] 7/7 8/20 15/25 24/20
31/2 35/13 38/9 38/16 45/9 61/7
73/25
policeman [2] 71/19 71/20
policies [2] 8/13 37/9
policy [5] 43/15 43/18 43/21 44/1
46/1
political [2] 27/18 72/21
politics [1] 71/19
pool [3] 40/10 57/14 57/15
portion [3] 29/25 30/2 50/22
position [2] 19/12 30/18 30/23
31/2 35/1 49/2 59/17 61/19
positions [2] 5/17 52/17

possible [4] 17/2 21/15 31/25
54/5 71/5
possibly [6] 20/2 20/9 26/24 27/7
27/11 70/19
post [8] 14/19 58/19 58/23 59/4
59/11 59/12 59/23 60/4
post-deprivation [4] 58/19 59/11
59/12 59/23
post-suspension [1] 59/4
posters [1] 46/10
postponing [1] 59/22
potential [2] 3/19 23/9
potentially [1] 44/18
power [5] 4/17 7/18 46/2 50/10
73/19
powerful [2] 10/25 73/15
practical [1] 12/6
practically [1] 64/21
practice [2] 35/25 38/1
practices [2] 43/9 62/1
practicing [1] 53/16
pre [2] 58/25 59/1 59/14
pre-deprivation [3] 58/25 59/1
59/14
preceded [1] 14/12
precedence [2] 46/17 71/17
precedents [1] 71/17
precise [1] 5/8
precisely [3] 7/20 12/11 21/2
preferences [3] 53/11 67/16 71/5
premise [2] 71/15 72/4
prepared [1] 50/23
preponderance [2] 37/8 43/11
presence [1] 66/12
present [4] 10/12 34/14 38/19
43/19
preserve [1] 17/2
preserving [2] 17/11 17/15
PRESIDENT [23] 1/6 2/4 3/13 3/21
8/12 9/1 9/2 9/3 9/6 9/6 14/1
16/6 25/15 28/8 49/25 52/18 53/22
67/24 68/7 69/11 69/16 72/8 73/11
President's [2] 67/1 69/5
presidential [1] 53/11
press [3] 5/5 33/19 34/25
presumably [1] 5/12
presume [1] 5/18
presuming [1] 38/20
presumption [1] 42/3
pretty [3] 17/17 22/11 23/1
prevailed [1] 53/3
prevailing [1] 25/12
prevent [5] 8/8 12/9 15/7 53/16
65/2
previously [2] 5/1 34/9
primarily [1] 7/12
principally [2] 7/12 7/17
principle [1] 19/11
principles [1] 21/4
prior [2] 23/7 32/16
prioritization [1] 62/11
private [4] 9/4 22/2 29/7 29/8
prize [10] 6/16 6/20 6/21 20/7
21/23 46/24 47/16 47/19 47/22
49/13
probably [2] 20/1 34/21
problem [8] 3/17 14/24 15/4 15/5
26/16 64/18 69/22 70/9
problematic [1] 55/21
problems [4] 15/20 24/21 55/1
55/2
procedure [1] 42/6
procedures [1] 58/13
proceed [2] 24/17 29/14
proceeding [4] 29/13 29/16 32/3
66/5
proceedings [5] 20/5 22/21 65/25
74/13 75/5
process [26] 7/17 10/19 10/23
12/12 14/19 14/21 15/18 25/7 25/8
28/19 29/4 30/22 30/23 41/18 57/9
58/15 58/19 58/23 58/25 59/1

**P**

process... **[6]**  59/11 59/12 59/14 59/18 60/1 64/6
process-based **[1]**  57/9
procurement **[3]**  46/2 46/6 50/10
profession **[1]**  39/24
prohibit **[2]**  22/24 24/15
prohibited **[1]**  21/3
prohibition **[1]**  71/23
project **[1]**  8/13
prompted **[1]**  22/19
promptly **[1]**  73/20
proof **[8]**  18/25 19/23 45/25 46/16 47/7 47/11 50/11 50/12
proper **[1]**  24/17
properly **[1]**  45/16
property **[1]**  7/19
propose **[3]**  23/16 24/14 64/24
proposed **[5]**  11/6 11/8 22/23 24/15 29/18
proposition **[1]**  27/21
proprietor **[3]**  24/25 25/4 25/7
prosecution **[2]**  30/24 53/17
protected **[7]**  6/13 9/7 68/22 70/2 72/1 72/14 73/1
protection **[2]**  22/2 55/11
protections **[1]**  17/3
protective **[1]**  13/17
prove **[5]**  21/16 21/16 64/15 68/19 70/10
provide **[1]**  67/15
provides **[1]**  29/22
provision **[4]**  57/20 59/3 60/8 60/14
provisional **[1]**  4/14
provisionally **[1]**  5/1
provisions **[1]**  17/6
public **[3]**  2/22 7/23 16/15
publicly **[1]**  33/18
pulled **[1]**  20/11
punishment **[17]**  29/8 35/11 35/17 35/21 35/24 36/11 50/25 51/5 53/15 54/19 54/20 54/21 55/22 63/3 63/12 70/21 70/23
punishments **[3]**  22/7 30/16 35/7
punitive **[5]**  35/9 54/23 55/3 63/1 63/3
pure **[1]**  15/18
purely **[3]**  9/15 33/14 60/24
purported **[3]**  18/16 48/11 61/3
purpose **[1]**  11/16
purposes **[4]**  10/12 14/21 31/19 60/21
pursuant **[2]**  63/5 63/19
pursue **[1]**  8/14
pursuits **[1]**  10/11
put **[9]**  7/19 23/4 24/12 27/3 27/4 38/5 47/20 51/24 64/16
putative **[2]**  50/7 54/17
putting **[4]**  39/7 41/24 46/12 68/21

**Q**

quality **[2]**  39/19 72/12
quantum **[6]**  43/19 45/25 46/16 47/7 47/11 49/17
question **[16]**  13/2 13/10 18/22 21/19 29/11 35/10 39/4 40/21 43/17 43/18 46/15 60/8 61/14 65/22 66/11 66/16
questioning **[3]**  66/25 69/8 71/4
questions **[6]**  12/24 27/25 28/2 32/21 34/13 55/18
quickly **[1]**  22/11
quite **[11]**  13/13 23/20 29/22 35/9 41/4 41/22 48/4 49/21 62/19 65/9 68/8
quota **[3]**  39/22 41/12 45/21
quote **[1]**  5/8
quoted **[1]**  68/10
quoting **[2]**  17/1 59/19

**R**

race **[24]**  10/6 18/17 21/5 21/6 21/9 21/10 21/15 23/14 38/15 38/21 40/4 42/3 42/9 42/16 44/16 44/19 46/23 46/25 47/3 47/5 49/11 67/3 71/6 73/3
race-based **[1]**  21/5 38/15
race-neutral **[1]**  44/16
racial **[16]**  18/4 18/9 20/3 21/2 38/1 38/3 43/3 44/10 47/14 47/21 49/14 51/16 67/16 69/12 69/17 70/7
radical **[3]**  10/7 10/10 72/22
raised **[3]**  56/7 68/25 69/21
raises **[1]**  32/9
ran **[1]**  54/9
ranks **[1]**  39/13
rather **[1]**  58/6
rationale **[3]**  18/23 68/16 68/21
Rattigan **[1]**  16/22
reach **[2]**  17/10 70/5
reached **[1]**  32/24
read **[9]**  21/1 22/7 35/15 43/10 49/25 50/7 65/4 69/4 71/14
reading **[7]**  34/25 36/10 40/6 49/9 49/15 50/4 53/5
ready **[2]**  20/22 58/11
real **[4]**  30/6 37/16 48/2 53/14
reality **[1]**  39/9
really **[16]**  8/11 9/5 20/6 24/4 25/10 26/15 34/15 42/10 42/20 43/9 43/15 43/18 55/7 57/25 63/24 68/13
realm **[1]**  45/8
reason **[7]**  20/1 31/24 50/16 57/24 64/7 67/20 68/24
reasonably **[1]**  73/21
reasoning **[1]**  24/1
reasons **[13]**  4/25 9/17 12/7 12/23 13/19 17/12 24/11 25/22 30/20 42/13 46/6 61/19 69/6
rebuttal **[1]**  66/12
recall **[1]**  58/12
receive **[5]**  14/2 14/3 27/9 27/11 52/20
received **[1]**  62/2
recently **[1]**  72/25
recision **[1]**  16/10
recognizes **[1]**  18/11
Recognizing **[1]**  71/20
record **[3]**  2/3 2/6 75/5
recruit **[1]**  44/20
recruiting **[5]**  41/1 41/6 41/9 41/11 42/20
reference **[1]**  46/12
referenced **[5]**  30/14 38/7 51/11 51/22 67/24
referencing **[1]**  30/21
refers **[1]**  72/18
refutation **[1]**  71/15
refute **[1]**  33/9
regard **[2]**  11/24 60/1
regarding **[12]**  3/11 31/21 38/16 43/25 47/16 47/21 47/21 50/9 51/12 51/20 56/8 58/13
regardless **[1]**  37/10
regular **[1]**  24/17
regulation **[1]**  29/6
regulations **[1]**  58/11
regulatory **[4]**  28/20 28/23 28/24 37/18
reinstated **[1]**  14/20
reiterate **[2]**  10/4 68/14
rejected **[1]**  71/18
related **[3]**  5/7 60/24 64/1
relates **[1]**  50/21
relating **[1]**  47/23
releases **[2]**  33/19 33/20
relief **[5]**  11/7 25/21 63/4 63/15 64/18
relies **[1]**  18/4 26/17 51/15 71/12

religion **[1]**  40/4
rely **[3]**  18/1 18/4 54/10
relying **[4]**  11/15 19/14 37/21 45/4
remarkably **[1]**  4/22
remarks **[1]**  34/9
remedied **[1]**  64/14
remedy **[1]**  23/16
remember **[2]**  33/20 37/1
remembering **[1]**  46/9
reminds **[1]**  2/21
remotely **[1]**  21/12
repeat **[2]**  32/17 50/8
Reporter **[4]**  1/22 1/22 75/3 75/13
represent **[2]**  60/25 60/25
representation **[7]**  16/4 33/8 38/15 38/20 39/3 48/3 73/17
representative **[1]**  41/20
represented **[5]**  39/20 45/16 55/14 55/16 69/8
representing **[2]**  2/11 53/1
republic **[1]**  7/11
republican **[2]**  14/3 15/1
reputation **[2]**  10/19 12/13
require **[1]**  57/17
required **[3]**  46/10 46/16 49/20
requires **[1]**  15/9
requiring **[1]**  57/21
rescinded **[3]**  16/7 16/14 67/25
reserves **[1]**  15/12
resources **[1]**  28/12
respect **[21]**  5/17 8/19 11/21 16/8 17/17 22/10 22/12 24/20 24/23 25/23 27/1 27/1 27/5 28/3 28/4 29/21 66/24 69/1 69/2 69/20 71/1
respectfully **[1]**  8/18
response **[1]**  28/21
responsibilities **[1]**  16/25
rest **[2]**  18/7 32/15
restore **[1]**  14/14
restoring **[1]**  60/2
restraining **[3]**  4/7 4/15 13/6
restricting **[1]**  69/24
restriction **[3]**  25/17 70/16 70/17
result **[3]**  6/22 29/20 66/24
results **[1]**  72/18
retain **[2]**  10/20 61/12
retained **[1]**  15/8
retaining **[1]**  52/4
retaliate **[2]**  9/7 26/12
retaliates **[2]**  4/20 4/22
retaliating **[1]**  26/21
retaliation **[13]**  14/15 14/24 18/10 18/12 19/2 19/7 22/20 26/9 26/12 27/17 50/25 68/22 70/1
retaliatory **[10]**  5/2 22/18 25/17 36/21 36/23 41/24 63/19 63/22 70/7 70/11
return **[1]**  34/8
returning **[1]**  62/25
review **[12]**  13/16 14/20 31/10 57/22 57/23 58/17 58/23 59/4 61/5 61/25 62/3 62/16
reviewable **[1]**  56/6
revisit **[1]**  32/7
revocation **[1]**  60/5
revoked **[2]**  13/5 34/1
Richard **[2]**  1/19 2/16
ridiculous **[1]**  70/13
rigged **[1]**  8/11
right **[50]**  3/20 3/24 4/3 5/3 6/11 6/15 7/3 10/16 11/12 19/20 25/2 25/2 25/4 25/6 25/7 25/8 30/25 31/3 31/12 31/18 32/1 32/10 33/5 34/8 35/25 36/14 36/15 38/11 45/1 45/19 49/8 49/25 51/6 53/19 55/3 55/12 55/24 57/10 59/10 60/11 65/1 65/11 65/17 69/5 71/6 71/19 71/20 72/14 73/23 74/2
rights **[7]**  14/10 14/25 21/3 24/24 25/1 70/3 71/24
ripe **[5]**  28/6 28/14 32/4 57/3

**R**

ripe... [1]  57/5
ripeness [1]  28/4
rise [1]  21/24
risk [1]  68/25
road [2]  29/22 35/16
Roberts [1]  67/12
role [1]  37/6
room [2]  1/24 46/20
round [1]  31/11
routinely [1]  15/11
RPR [1]  75/12
rubber [1]  35/16
rule [4]  8/17 17/16 27/8 55/25
rules [2]  57/18 58/10
ruling [4]  4/15 41/14 73/8 74/5
run [2]  3/13 58/15
Rust [3]  26/18 27/15 27/20

**S**

said [33]  7/11 10/4 16/23 16/24
17/4 17/13 19/22 20/20 27/8 27/15
28/9 32/23 33/3 33/6 40/10 45/19
46/5 47/8 50/9 53/22 58/18 58/22
63/18 66/13 66/15 67/7 67/12
67/14 67/18 67/21 68/11 70/14
72/25
salaries [1]  45/13
same [14]  3/18 14/8 14/25 16/1
16/3 17/4 23/15 24/21 25/10 25/16
45/13 49/9 49/16 70/9
sanction [1]  53/15
sanctions [4]  2/23 37/16 37/17
37/18
satisfied [1]  50/11
saw [1]  45/18
say [29]  20/25 21/2 21/13 25/12
26/18 39/12 40/3 40/7 40/13 40/22
42/7 46/21 47/1 47/3 47/25 48/9
51/15 52/18 56/2 56/3 56/13 59/17
64/13 66/14 66/16 67/17 67/18
69/22 70/13
saying [21]  15/1 19/24 20/15 21/7
21/10 23/6 29/3 31/21 33/23 34/6
41/16 45/15 54/7 54/16 55/20
58/20 58/25 63/19 67/20 68/6
69/14
says [14]  10/13 12/15 18/3 19/24
20/12 26/8 27/2 43/10 44/17 54/24
71/17 72/7 72/7 72/10
scenario [1]  18/14
schedule [1]  3/4
scheduled [1]  34/9
scholarships [2]  48/20 49/1
school [1]  39/10
second [7]  7/21 15/5 40/18 47/8
47/12 57/20 72/10
Secretaries [1]  72/15
secrets [1]  61/9
section [110]
sections [16]  4/8 4/10 4/11 9/21
10/16 12/1 12/2 12/5 22/10 34/13
34/18 34/18 35/3 35/14 35/18 36/5
security [32]  13/3 13/5 13/21
13/23 14/2 14/3 14/9 15/2 15/7
15/9 15/12 15/13 15/15 15/17
15/24 16/2 16/5 16/25 31/4 33/25
51/13 56/23 57/8 60/2 60/18 60/22
60/22 60/24 61/5 61/10 61/16
61/18
see [11]  28/24 32/9 34/23 38/16
45/21 48/1 50/3 54/4 62/19 63/12
70/19
seeing [1]  54/14
seek [1]  11/7
seeking [5]  11/13 13/6 22/13
22/14 63/4
seem [2]  38/2 73/7
seems [7]  12/20 23/6 55/20 58/25
60/23 61/1 70/13
seen [3]  59/6 64/8 64/19

sense [6]  5/6 6/4 24/8 29/5 30/16
35/20 37/6 52/6 56/4 56/14 68/11
sensitive [2]  13/20 48/4
sentence [10]  17/20 18/1 18/1
40/18 44/20 47/8 47/11 47/12
49/10 72/19
serious [2]  73/18 73/18
seriously [1]  10/20
service [2]  5/16 5/18
set [2]  22/6 27/7
setting [3]  38/15 39/2 41/15
several [2]  2/14 73/13 73/14
sex [1]  40/5
sexual [1]  40/5
shall [2]  27/9 64/23
she [1]  47/3
sheepish [1]  64/11
Sherry [3]  1/22 75/3 75/12
shift [1]  52/6
shocking [1]  4/17
short [2]  21/4 71/22
should [6]  6/7 8/23 12/18 12/18
14/20 37/25 45/12 45/20 61/12
66/6 67/20
shouldn't [2]  54/15 69/10
show [3]  8/3 37/8 39/15
shutting [1]  23/20
side [13]  21/20 26/17 28/18 33/6
41/25 44/17 46/7 55/24 62/22
64/10 67/20 67/24 68/6
side's [1]  14/19
sign [2]  28/9 46/12
signed [1]  20/13
significant [2]  39/11 62/4
significantly [1]  62/14
signing [1]  28/8
silence [2]  8/10 8/11
similar [1]  45/13
simple [1]  50/19
simply [3]  63/13 63/19 64/23
since [4]  4/11 7/16 19/22 71/18
single [2]  56/11 70/4
singled [1]  59/6
sir [2]  10/8 48/13
sit [3]  47/22 47/25 61/17
situation [6]  16/25 18/19 54/13
55/11 58/19 59/13
situations [1]  59/21
slow [1]  10/8
Smith [1]  59/20
so [129]
social [5]  43/15 43/17 43/21 44/1
46/1
solely [1]  18/23 68/21
some [53]  9/9 16/10 20/10 21/23
22/3 22/7 22/8 23/3 25/13 25/13
26/2 26/3 26/13 29/5 30/4 31/24
31/25 32/18 32/21 33/19 33/19
34/21 35/21 35/22 36/9 37/6 38/8
39/19 42/5 44/4 44/8 44/9 46/20
47/9 47/23 49/6 50/2 51/19 51/20
52/11 52/14 54/23 55/10 56/7 58/2
58/3 59/12 59/21 62/5 62/10 66/12
69/2 70/25
somebody [2]  15/12 35/24
somebody's [2]  36/2 56/17
somehow [1]  8/11
someone [3]  34/20 35/15 50/4
something [24]  5/11 5/13 5/24
17/4 21/13 23/8 32/11 35/24 36/14
36/15 37/11 48/9 49/25 50/7 61/15
62/6 62/13 64/5 64/24 64/24 66/5
71/14 72/24 74/4
somewhat [1]  39/9
sorry [5]  10/9 11/11 30/20 31/17
58/21
sort [11]  12/7 21/2 26/21 30/14
32/13 38/12 41/7 44/24 59/6 61/2
63/5
sought [1]  20/5
South [1]  1/17
sovereign [8]  24/25 25/1 25/25

26/5 37/19 37/19 43/8 51/3
53/25 54/4 54/6
speak [2]  9/6 33/2
speaker [2]  27/18 27/19
speaking [2]  39/1 64/21
speaks [1]  60/17
spearheads [1]  72/10
specific [12]  6/14 8/6 8/7 9/11
15/20 32/12 45/21 51/21 57/22
66/3 67/16 73/25
specifically [3]  5/20 13/18 27/14
specifics [2]  7/5 7/9
speculate [2]  69/3 69/4
speculating [1]  5/11
speculation [2]  5/13 69/1
speech [17]  7/12 8/23 8/25 9/2
9/4 9/5 9/7 9/15 11/4 11/22 11/23
19/8 26/19 37/5 37/10 68/22 72/2
speechless [1]  21/14
spend [2]  27/12 70/24
spurious [2]  20/3 23/13
square [2]  26/22 47/10
Srinivasan [1]  2/12
SSFA [14]  21/7 21/8 21/9 21/12
38/11 38/21 41/5 41/22 67/10
67/12 67/21 68/3 68/10 68/12
staff [3]  31/13 57/14 64/3
stage [2]  8/22 32/23
stake [2]  59/14 59/22
stand [5]  12/3 12/22 42/2 50/14
51/15
standalone [1]  8/24
standard [1]  36/21
stands [1]  27/20
start [2]  39/15 66/23
starting [1]  68/2
starts [1]  18/2
state [4]  4/21 37/19 40/12 72/16
statement [8]  8/2 28/7 39/12
39/23 40/7 42/9 45/5 67/4
statements [9]  11/17 11/19 12/13
20/11 20/24 21/7 21/11 21/21
21/23
states [18]  1/1 1/10 3/11 3/12
3/22 5/12 12/1 21/13 38/6 38/6
59/2 59/9 69/11 69/16 72/8 72/18
72/21 73/12
stating [3]  63/4 63/13 65/21
statistics [1]  39/15
status [1]  40/5
statutes [1]  40/13
stay [2]  52/7 66/5
steer [1]  65/9
stemming [1]  24/6
step [5]  3/18 55/12 59/9 70/10
72/6
stepping [1]  29/1
steps [2]  24/2 57/12
still [9]  9/14 10/24 37/11 37/11
43/4 44/4 56/15 68/18 74/6
stop [2]  8/5 62/7
straight [1]  57/24
straightforward [3]  22/13 22/22
23/2
Street [1]  1/15
stressed [1]  70/20
strike [2]  36/14 41/17
strikes [2]  44/22 54/12
strongly [1]  39/23
student [1]  39/3
subject [4]  2/23 22/1 29/8 56/12
subjected [2]  24/8 24/9
submissions [2]  4/18 15/10
submit [10]  32/11 34/15 35/11
45/23 46/16 51/5 57/9 57/13 60/13
64/24
submitted [2]  6/19 32/5
subsections [1]  49/5
subsequent [2]  3/5 58/23
subset [1]  47/24
substance [1]  68/17
substantial [1]  68/9

**S**
substitute [1] 58/24
such [2] 8/14 21/4
suffered [1] 14/25
suffices [1] 59/24
sufficient [2] 14/21 64/17
sufficiently [1] 67/15
suggest [2] 68/8 68/13
suggesting [1] 63/21
suggests [1] 5/22
Sullivan [3] 26/18 27/15 27/20
sum [1] 67/6
summary [9] 2/20 3/1 4/2 4/17 20/5 20/19 32/6 38/8 64/18
supervising [1] 12/17
support [9] 17/25 17/20 20/10 42/9 43/20 59/25 67/1 68/6
supportable [1] 43/20
supporting [5] 8/3 41/1 41/7 42/21 43/14
supportive [1] 29/19
supports [2] 70/15 73/2
suppose [1] 4/4
supposed [2] 49/24 58/24
Supreme [12] 6/13 13/12 14/4 18/20 19/4 19/21 21/6 30/17 67/10 67/11 68/10 72/25
sure [11] 7/8 7/9 17/23 28/17 44/6 45/16 49/8 57/19 62/19 63/6 68/15
surprised [1] 68/2
surprising [1] 15/23
SUSMAN [51] 1/3 2/3 2/8 2/11 4/22 5/25 6/16 6/20 7/23 8/1 9/23 12/15 13/4 15/16 20/7 20/12 20/14 21/4 21/23 22/14 24/8 28/11 33/11 34/1 38/17 39/21 40/3 42/7 44/18 45/18 46/21 46/24 49/10 49/13 53/1 53/23 57/14 57/14 62/2 63/17 67/2 67/20 69/15 69/16 70/1 70/14 72/9 72/10 72/19 73/3 73/13
Susman hasn't [1] 24/8
Susman's [4] 62/18 68/22 69/24 72/13
suspect [5] 24/11 41/4 41/22 57/10 67/21
suspended [3] 14/14 15/14 57/17
suspension [15] 14/9 14/12 14/12 14/15 15/5 15/15 16/1 16/5 16/12 57/19 58/5 58/13 58/16 59/4 60/15
suspensions [1] 57/13
sustain [1] 43/2
synonymous [1] 41/10
system [2] 39/22 72/11
Systems [2] 4/21 72/15

**T**
table [1] 2/9
taint [1] 24/18
take [20] 9/23 12/18 12/18 20/18 28/24 30/1 30/3 34/24 41/6 55/12 57/12 58/10 58/15 59/8 62/21 66/8 70/10 72/6 72/9 74/3
taken [4] 35/3 35/12 53/5 53/14
takes [3] 5/17 28/10 53/24
taking [4] 3/18 11/2 11/16 63/2
talent [1] 40/21
talk [4] 40/25 56/20 63/25 71/19
talked [4] 7/6 9/19 25/22 64/1
talking [13] 7/22 12/8 14/7 16/24 38/1 39/14 41/2 42/11 43/5 47/7 52/10 59/10 69/25
talks [1] 13/14
tarred [1] 61/1
team [1] 55/9
technical [1] 29/5
tell [3] 6/16 47/13 61/17
tells [2] 12/16 16/10
temporary [3] 4/7 4/15 13/6
term [5] 6/24 31/9 57/15 62/3 62/3

terminate [3] 12/19 26/12 27/16
termination [1] 17/6
termination [2] 37/6 37/7
terms [7] 3/14 35/9 35/17 49/4 49/12 68/20 69/24
test [2] 54/18 59/16
than [12] 24/24 25/1 30/5 32/25 33/23 34/25 36/3 37/15 44/20 52/23 58/6 64/25
thank [19] 3/8 3/20 3/24 4/3 7/3 13/9 16/18 24/19 30/7 30/8 34/8 66/19 66/20 66/22 73/22 73/23 74/2 74/9 74/9
that [639]
their [17] 2/5 7/13 7/25 10/14 13/5 18/8 18/16 19/12 22/4 37/9 43/3 61/13 62/4 68/10 70/11 73/11 74/10
them [9] 15/8 20/13 22/11 33/22 53/16 54/23 55/8 58/11 69/3
theme [1] 64/1
then [32] 10/12 10/18 12/16 14/12 16/6 16/19 18/13 19/8 19/22 21/21 21/25 27/14 28/1 29/1 31/11 32/7 37/7 38/13 39/18 42/7 46/23 47/3 47/9 57/20 58/16 65/15 65/15 66/23 69/13 72/5 72/19 73/2
theory [3] 22/3 22/4 27/12
there [133]
therefore [1] 35/12
these [28] 8/7 20/24 21/4 21/7 23/7 24/5 30/15 31/2 35/12 35/13 35/13 36/12 39/3 43/8 43/12 44/15 48/3 49/25 53/1 55/18 65/13 66/6 66/12 67/8 68/11 70/22 70/23 73/9
they [106]
thing [7] 11/5 14/8 20/10 23/4 28/6 43/13 70/4
things [5] 5/15 18/9 26/14 54/15 65/13 66/2 67/8 67/19 67/21 70/22 70/23
think [164]
thinking [3] 16/14 52/25 65/2
third [1] 73/2
this [163]
thoroughly [2] 6/12 28/5
those [28] 4/10 4/12 5/19 7/19 9/10 9/20 11/19 12/23 15/7 18/9 21/10 23/22 26/22 33/13 33/20 35/18 36/9 40/14 41/7 52/16 54/21 57/16 58/14 64/25 67/15 68/3 71/17 72/18
thought [4] 22/8 65/6 65/23 66/4
threat [1] 8/15
threaten [2] 7/18 13/21
threatened [1] 53/16
threatening [1] 8/12
three [1] 38/23
through [14] 4/11 7/5 7/9 9/21 10/16 10/19 12/1 12/2 12/5 17/18 22/11 43/20 58/15 72/21
throughout [2] 32/3 40/2
thus [1] 51/23
TikTok [1] 18/21 19/22 68/19
time [7] 7/16 10/4 31/22 36/12 37/9 56/17 66/12
Title [16] 6/23 21/22 21/24 22/3 40/10 47/17 47/21 47/24 48/20 48/21 48/22 49/1 49/3 49/12 62/16 63/6
today [7] 2/19 3/14 30/4 42/4 50/14 68/17 71/13
together [1] 47/6
Tolles [3] 1/14 1/17 2/13
too [3] 20/17 63/16 67/17
total [1] 67/6
towards [5] 45/25 46/15 48/2 49/1 51/12
track [1] 43/14
traditional [1] 30/16
training [1] 49/6

transcript [2] 1/9 75/4
transcribe [1]
travel [1] 66/6
treat [1] 8/24
treatment [3] 5/16 5/17 20/15
trees [2] 7/10 7/22
tried [6] 19/2 21/16 21/17 25/18 68/23 70/11
tries [1] 22/7
TRO [13] 8/22 9/19 10/1 10/2 28/5 30/11 30/14 32/8 32/23 64/17 64/21 73/8 74/5
true [2] 41/16 75/4
trustworthiness [2] 13/23 16/8
trustworthy [1] 15/17
try [6] 5/19 6/7 18/25 46/1 53/15 57/11
trying [21] 11/3 15/20 24/22 26/15 27/6 41/3 41/20 41/23 44/20 49/24 50/4 50/15 53/10 55/19 59/8 60/4 63/22 68/7 68/13 70/13 73/6
turn [1] 28/15
two [7] 7/7 9/18 18/9 20/6 24/20 38/23 47/5
type [6] 6/10 23/7 30/24 30/25 35/23 52/20
types [3] 26/14 26/19 60/24

**U**
U.S [1] 1/23
U.S.C [1] 6/25
ultimate [1] 74/5
Umbehr [11] 19/4 19/15 19/23 26/7 27/14 37/2 37/2 37/15 54/22 56/5 71/11
unable [1] 43/1
unauthorized [1] 2/23
unconstitutional [6] 8/5 18/15 19/17 24/16 24/18 69/18
under [14] 6/13 13/19 19/17 35/3 46/17 50/9 50/22 51/1 57/15 57/16 57/17 68/19 70/9 74/3
underlying [1] 46/3
undermine [2] 60/19 72/20
undermined [1] 38/22
undermining [1] 23/10
underrepresentation [1] 67/14
underrepresented [17] 38/18 39/7 39/13 39/24 40/10 40/14 40/22 41/4 41/12 42/5 42/22 42/23 44/21 45/16 45/20 67/4 70/15
understand [8] 11/25 39/7 48/18 49/23 49/24 52/11 57/7 63/8
understanding [6] 6/11 39/9 44/15 46/15 47/15 59/11
understood [2] 62/25 63/3
undertaken [2] 16/3 60/5
undisputed [2] 4/19 6/19
Unfortunately [1] 32/17
union [2] 46/11 46/13
uniquely [1] 64/15
UNITED [12] 1/1 1/10 3/11 3/12 3/22 5/12 21/13 69/11 69/16 72/8 72/21 73/12
unlawful [25] 7/1 20/16 22/8 38/1 38/3 42/3 42/8 42/15 44/18 46/22 46/24 47/2 47/4 47/9 48/11 48/11 49/10 49/14 61/3 67/2 68/7 68/8 69/12 69/17 73/3
unless [1] 73/25
unreasonable [1] 41/2
unrelated [1] 15/13
until [3] 59/22 64/14 74/5
up [9] 31/24 39/10 39/17 41/15 57/10 57/11 63/7 65/2 71/3
uphold [1] 21/18
upon [1] 11/16
upper [1] 38/12
upstream [1] 17/13
urge [4] 62/8 62/17 63/14 73/20
urged [1] 10/1
urgent [1] 66/9

**U**

us [7]  7/21 37/7 12/6 22/16 26/24
28/24 39/25
USAO [1]  1/19
use [4]  7/18 15/8 46/2 61/16
used [3]  61/18 63/5 70/15
useful [1]  29/22
uses [2]  3/7 67/4
using [2]  11/15 62/23

**V**

vacuum [1]  34/23
vagueness [3]  28/15 28/19 29/4
valid [3]  37/7 37/12 59/21
validity [1]  43/20
variation [2]  32/13 54/2
various [2]  42/13 58/10
verbiage [1]  38/7
Verrilli [7]  1/13 2/8 3/6 30/21
34/6 63/8 66/21
version [1]  14/8
versus [5]  2/3 35/25 46/7 55/22
59/20
very [25]  3/10 4/3 7/3 10/25
10/25 17/4 17/25 19/20 19/21
22/12 22/21 30/7 32/1 44/10 50/11
50/19 57/22 61/24 64/2 66/17
67/19 73/6 73/23 74/2 74/11
vetted [1]  28/5
VI [1]  22/3
view [19]  6/9 9/13 12/2 26/19
32/16 38/10 47/23 50/19 51/1
51/11 51/19 52/11 52/18 54/17
55/3 56/25 57/4 57/16 63/2
viewed [4]  34/18 51/12 52/5 65/9
viewing [4]  50/24 50/25 51/1
62/25
viewpoint [9]  5/2 18/11 18/12
19/7 25/3 25/5 50/25 52/3 53/12
viewpoints [1]  27/18
views [1]  66/5
VII [15]  6/23 21/22 21/24 40/11
47/17 47/21 47/24 48/20 48/21
48/22 49/1 49/3 49/12 62/16 63/6
Vineet [1]  2/12
violate [3]  18/24 31/22 71/3
violates [1]  4/24
violating [1]  21/22
violation [5]  6/25 18/10 18/13
18/16 22/18
violations [1]  71/21
virtue [1]  41/6
vis [2]  58/22 58/22
vividly [1]  4/18
voiced [1]  51/20
voting [5]  4/21 53/8 61/2 72/15
72/17
vs [1]  1/5
Vullo [5]  9/5 30/17 37/15 37/16
54/22

**W**

wake [1]  9/25
walk [1]  4/10
walking [1]  58/20
want [28]  3/2 7/8 7/9 7/21 27/24
31/20 35/15 36/15 38/11 40/8 44/6
52/7 52/13 52/19 53/19 53/22
53/25 54/25 55/4 55/8 55/13 55/15
61/22 62/6 66/22 68/14 68/15
70/24
wanted [4]  51/24 54/7 65/9 66/4
wanting [1]  56/20
wants [5]  8/13 8/13 9/6 27/10
27/13
was [62]  3/7 5/14 6/2 6/5 6/9
6/14 7/12 8/11 9/14 10/2 10/3
12/8 14/24 16/2 16/6 16/7 16/13
19/5 21/8 21/8 21/9 21/11 21/12
26/9 26/11 28/5 28/6 28/8 29/9
30/21 33/3 33/8 33/11 37/13 38/12

39/2 43/25 44/14 46/4 46/8 49/3
50/22 61/1 61/1 61/10 61/12 61/13
53/15 56/17 57/19 58/19 58/19
58/24 59/4 61/18 65/7 67/7 67/8
67/9 67/14 67/25 68/9
Washington [4]  1/5 1/15 1/20 1/24
wasn't [2]  24/9 24/10
water [1]  28/20
way [16]  7/11 11/15 12/22 17/18
21/15 21/18 22/8 24/17 27/12
28/25 30/12 33/4 33/7 56/9 64/17
65/25
ways [1]  16/10
we [196]
weakness [1]  68/15
weaponization [1]  10/6
weaponize [1]  72/11
website [10]  20/11 20/25 21/7
21/11 21/21 38/17 42/12 45/19
67/3 70/14
weight [1]  39/7
Weiss [6]  2/12 16/3 16/5 16/7
16/8 16/13
well [86]  14/22 18/18 18/18 21/5
24/23 28/22 36/25 45/7 48/8 50/8
51/10 51/14 54/4 55/5 56/3 56/5
56/22 59/2 61/4 61/17 63/9 63/11
64/16 67/10 68/5 69/21
went [1]  10/3
were [86]  5/25 6/12 10/24 14/1
14/6 16/4 23/4 23/16 33/11 33/20
36/9 36/20 37/23 37/17 42/11
44/15 45/24 53/8 56/13 67/17
67/18 67/18 67/21 69/6 69/14
71/11
weren't [1]  13/6
what [117]
whatever [6]  27/15 35/14 35/15
40/11 58/12 64/13
whatever other [1]  40/11
whatsoever [2]  15/21 26/25
when [16]  6/4 7/14 7/22 9/2 20/22
24/25 26/20 28/8 36/25 37/2 46/17
47/6 55/20 56/18 57/7
whenever [1]  16/6
where [26]  11/3 12/14 30/25 36/6
36/8 36/11 37/5 37/21 43/16 46/3
53/1 53/11 54/6 54/13 54/14 54/14
55/19 55/23 56/9 58/2 58/19 59/12
59/13 59/21 63/12 67/11
whether [23]  3/15 13/11 13/19
14/14 14/20 16/11 18/22 30/15
35/16 40/15 41/14 41/14 42/2 43/1
46/7 54/20 54/22 54/22 57/22
61/12 62/2 66/5 71/6
which [40]  3/11 4/8 5/9 5/14 6/19
10/14 12/19 14/14 16/22 19/4
19/14 19/23 19/23 20/7 23/7 24/5
24/15 26/7 30/1 30/3 32/25 36/19
37/22 39/2 39/8 40/7 41/4 41/6
42/17 42/17 44/4 44/23 46/9 46/9
46/24 47/12 51/8 57/4 57/17 62/22
while [5]  6/15 18/4 24/16 26/13
73/13
White [1]  33/13
who [20]  4/5 15/7 15/12 28/9 31/4
31/5 36/16 38/23 40/8 42/21 44/3
44/3 44/3 50/4 53/23 54/5 55/13
57/14 60/21 61/10
whole [6]  3/13 6/18 7/23 12/21
29/17 72/4
wholesale [1]  58/6
whom [1]  10/15
why [15]  6/15 8/14 8/17 12/1 20/1
33/10 35/6 35/12 40/6 45/17 49/24
51/8 55/23 55/23 67/20
will [29]  2/23 3/6 4/6 7/5 14/13
15/6 15/22 17/7 17/21 21/20 26/23
27/3 32/15 38/16 39/4 40/23 56/18
56/21 57/9 57/11 57/11 60/1 61/6
63/6 64/4 66/18 73/10 74/2 74/3
wink [1]  54/14

wipe [1]  50/23
Wisconsin [1]  5/18
wish [1]  29/13
withdraw [1]  64/12
within [6]  5/12 6/23 11/19 57/1
61/7 61/20
without [5]  24/17 29/9 29/9 43/11
59/6
woman [3]  14/2 15/1 20/15
women [12]  27/8 39/9 39/12 40/8
47/3 54/25 54/25 55/7 55/8 55/14
55/14 55/16
women-owned [1]  27/8
wondering [2]  60/18 66/4
word [6]  18/2 38/17 42/20 61/18
67/4 70/15
words [4]  13/22 15/23 50/1 72/3
work [14]  7/5 7/9 10/15 11/24
15/9 15/11 15/13 36/3 37/25 45/13
46/8 51/20 52/13 63/22
workable [1]  63/20
workers [1]  46/10
world [7]  8/13 14/4 41/24 43/5
43/6 51/7 63/9
worried [1]  64/12
worth [2]  28/7 34/14
would [116]
wouldn't [3]  12/9 21/24 45/14
wrestled [1]  62/13
write [1]  55/25
written [5]  33/16 56/9 57/6 63/23
64/8
wrong [3]  7/14 47/13 70/25
wrote [1]  49/25

**Y**

yeah [3]  6/17 53/17 64/16
year [2]  18/21 38/25
years [2]  54/9 71/8
yes [22]  13/1 16/17 20/21 20/23
23/11 32/20 33/7 37/23 42/19
42/23 44/13 45/3 47/19 48/12
48/13 48/23 52/1 56/1 58/9 60/3
74/7 74/8
yet [2]  4/11 19/11
you [218]
you're [1]  39/21
your [81]