# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002

    *Plaintiff*,

    v.

EXECUTIVE OFFICE OF THE
PRESIDENT
1600 Pennsylvania Avenue NW
Washington, DC 20500

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530

OFFICE OF MANAGEMENT AND
BUDGET
725 17th Street NW
Washington, DC 20503

SECURITIES AND EXCHANGE
COMMISSION
100 F Street NE
Washington, DC 20549

U.S. INTERNATIONAL TRADE
COMMISSION
500 E St SW
Washington, DC 20436

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW
Washington, DC 20580

U.S. PATENT AND TRADEMARK
OFFICE
600 Dulany Street
Alexandria, VA 22314

Civil Case No.: 1:25-cv-01107
Judge Loren L. AliKhan

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street NE
Washington, DC 20507

DEPARTMENT OF THE TREASURY
1500 Pennsylvania Avenue NW
Washington, DC 20220

U.S. DEPARTMENT OF DEFENSE
1000 Defense Pentagon
Washington, DC 20301

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES
200 Independence Avenue SW
Washington, DC 20201

U.S. DEPARTMENT OF EDUCATION
400 Maryland Avenue SW
Washington, DC 20202

U.S. DEPARTMENT OF VETERANS
AFFAIRS
810 Vermont Avenue NW
Washington, DC 20420

OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE
Office of General Counsel
Washington, DC 20511

CENTRAL INTELLIGENCE AGENCY
Litigation Division, Office of General
Counsel
Washington, DC 20505

ENVIRONMENTAL PROTECTION
AGENCY
1200 Pennsylvania Avenue NW
Washington, DC 20460

DEPARTMENT OF HOMELAND
SECURITY
2707 Martin Luther King Jr. Avenue SW
Mail Stop 0485
Washington, DC 20528

DEPARTMENT OF STATE
Suite 5.600, 600 19th Street NW
Washington, DC 20522

DEPARTMENT OF ENERGY
1000 Independence Avenue SW
Washington, DC 20585

DEPARTMENT OF LABOR
200 Constitution Avenue NW
Washington, DC 20210

DEPARTMENT OF AGRICULTURE
1400 Independence Avenue SW
Washington, DC 20250

DEPARTMENT OF COMMERCE
1401 Constitution Avenue NW
Washington, DC 20230

DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT
451 Seventh Street NW
Washington, DC 20410

SMALL BUSINESS ADMINISTRATION
409 Third Street SW
Washington, DC 20416

OFFICE OF THE U.S. TRADE
REPRESENTATIVE
600 17th Street NW
Washington, DC 20508

DEPARTMENT OF THE INTERIOR
1849 C Street NW
Washington, DC 20240

DEPARTMENT OF TRANSPORTATION
1200 New Jersey Avenue SE
Washington, DC 20590

THE UNITED STATES OF AMERICA
U.S. Attorney's Office for the District of
Columbia
601 D Street NW
Washington, DC 20530

PAMELA J. BONDI, in her official capacity
as Attorney General of the United States
950 Pennsylvania Avenue NW
Washington, DC 20530

RUSSELL T. VOUGHT, in his official
capacity as Director of the U.S. Office of
Management and Budget
725 17th Street NW
Washington, DC 20503

PAUL S. ATKINS, in his official capacity as
Acting Chairman of the Securities and
Exchange Commission
100 F Street NE
Washington, DC 20549

HESTER M. PIERCE, in her official capacity
as Commissioner of the Securities and
Exchange Commission
100 F Street NE
Washington, DC 20549

CAROLINE A. CRENSHAW, in her official
capacity as Commissioner of the Securities and
Exchange Commission
100 F Street NE
Washington, DC 20549

MARK T. UYEDA, in his official capacity as
Commissioner of the Securities and Exchange
Commission
100 F Street NE
Washington, DC 20549

AMY A. KARPEL, in her official capacity as
Chair of the U.S. International Trade
Commission
500 E Street SW
Washington, DC 20436

DAVID S. JOHNSON, in his official capacity
as Commissioner of the U.S. International
Trade Commission
500 E Street SW
Washington, DC 20436

JASON E. KEARNS, in his official capacity as
Commissioner of the U.S. International Trade
Commission
500 E Street SW
Washington, DC 20436

ANDREW N. FERGUSON, in his official
capacity as Chairman of the Federal Trade
Commission
600 Pennsylvania Avenue NW
Washington, DC 20580

MELISSA HOLYOAK, in her official capacity
as Commissioner of the Federal Trade
Commission
600 Pennsylvania Avenue NW
Washington, DC 20580

MARK M. MEADOR, in his official capacity
as Commissioner of the Federal Trade
Commission
600 Pennsylvania Avenue NW
Washington, DC 20580

COKE MORGAN STEWART, in her official
capacity as Acting Under Secretary of
Commerce for Intellectual Property and
Acting Director of the U.S. Patent and
Trademark Office
600 Dulany Street
Alexandria, VA 22314

ANDREA R. LUCAS, in her official
capacity as Acting Chair of the Equal
Employment Opportunity Commission
131 M Street NE
Washington, DC 20507

SCOTT BESSENT, in his official capacity as
Secretary of the Treasury
1500 Pennsylvania Avenue NW
Washington, DC 20220

PETER B. HEGSETH, in his official
capacity as the Secretary of Defense
U.S. Department of Defense
1000 Defense Pentagon
Washington, DC 20301

ROBERT F. KENNEDY, JR., in his official
capacity as Secretary of Health and Human
Services
U.S. Department of Health and Human
Services
200 Independence Avenue SW
Washington, DC 20201

LINDA M. MCMAHON, in her official
capacity as Secretary of Education
U.S. Department of Education
400 Maryland Avenue SW
Washington, DC 20202

DOUGLAS A. COLLINS, in his official
capacity as Secretary of Veterans Affairs
Department of Veterans Affairs
810 Vermont Avenue NW
Washington, DC 20420

TULSI GABBARD, in her official capacity as
U.S. Director of National Intelligence
Office of the Director of National Intelligence
Office of General Counsel
Washington, DC 20511

JOHN L. RATCLIFFE, in his official capacity
as Director of the Central Intelligence Agency
Litigation Division, Office of General Counsel
Central Intelligence Agency
Washington, DC 20505

LEE M. ZELDIN, in his official capacity as
Administrator of the Environmental Protection
Agency
1200 Pennsylvania Avenue NW
Washington, DC 20460

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security
2707 Martin Luther King Jr. Avenue SW
Mail Stop 0485
Washington, DC 20528

MARCO RUBIO, in his official capacity as
Secretary of State
Suite 5.600, 600 19th Street NW
Washington DC 20522

CHRIS WRIGHT, in his official capacity as
Secretary of Energy
1000 Independence Avenue SW
Washington, DC 20585

LORI CHAVEZ-DEREMER, in her official
capacity as Secretary of Labor
200 Constitution Avenue NW
Washington, DC 20210

BROOKE L. ROLLINS, in her official
capacity as Secretary of Agriculture
1400 Independence Avenue SW
Washington, DC 20250

HOWARD LUTNICK, in his official capacity
as Secretary of Commerce
1401 Constitution Avenue NW
Washington, DC 20230

SCOTT TURNER, in his official capacity as
Secretary of Housing and Urban Development
451 Seventh Street SW
Washington, DC 20410

KELLY LOEFFLER, in her official capacity
as Administrator of the U.S. Small Business
Administration
409 Third Street SW
Washington, DC 20416

JAMIESON GREER, in his official capacity as
U.S. Trade Representative
600 17th Street NW
Washington, DC 20508

DOUG BURGUM, in his official capacity as
Secretary of the Interior
1849 C Street NW
Washington, DC 20240

SEAN DUFFY, in his official capacity as
Secretary of Transportation
1200 New Jersey Avenue SE
Washington, DC 20590

U.S. DEPARTMENT OF THE AIR FORCE
1670 Air Force Pentagon
Washington, DC 20330

GARY A. ASHWORTH, in his official
capacity as Acting Secretary of the Air Force
1670 Air Force Pentagon
Washington, DC 20330

U.S. DEPARTMENT OF THE ARMY
1500 Army Pentagon
Washington, DC 20310

DANIEL P. DRISCOLL, in his official
capacity as Acting Secretary of the Army
1500 Army Pentagon
Washington, DC 20310

U.S. DEPARTMENT OF THE NAVY
1000 Navy Pentagon
Washington, DC 20350

JOHN PHELAN, in his official capacity as
Acting Secretary of the Navy
1000 Navy Pentagon
Washington, DC 20350

ADMINISTRATION FOR CHILDREN AND
FAMILIES
330 C Street SW
Washington, DC 20201

ANDREW GRADISON, in his official
capacity as Acting Assistant Secretary for the
Administration for Children and Families
330 C Street SW
Washington, DC 20201

ADMINISTRATION FOR STRATEGIC
PREPAREDNESS AND RESPONSE
200 Independence Avenue SW
Washington, DC 20201

JOHN KNOX, in his official capacity as
Principal Deputy Assistant Secretary for
Preparedness and Response
200 Independence Avenue SW
Washington, DC 20201

ADVISORY COUNCIL ON HISTORIC
PRESERVATION
401 F Street NW, Suite 308
Washington, DC 20001

REID NELSON, in his official capacity as
Chairman of the Advisory Council on Historic
Preservation
401 F Street NW, Suite 308
Washington, DC 20001

AMERICORPS
250 E Street SW
Washington, DC 20525

JENNIFER BASTRESS TAHMASEBI, in her
official capacity as Interim Agency Head of
AmeriCorps
250 E Street SW
Washington, DC 20525

APPALACHIAN REGIONAL
COMMISSION
1666 Connecticut Avenue NW, Suite 700
Washington, DC 20009

GAYLE CONELLY MANCHIN, in her
official capacity as Co-Chair of the
Appalachian Regional Commission
1666 Connecticut Ave NW, Suite 700
Washington, DC 20009

BIOMEDICAL ADVANCED RESEARCH
AND DEVELOPMENT AUTHORITY
200 Independence Avenue SW
Washington, DC 20201

GARY DISBROW, in his official capacity as
Director of the Biomedical Advanced Research
and Development Authority
200 Independence Avenue SW
Washington, DC 20201

BONNEVILLE POWER ADMINISTRATION
905 NE 11th Avenue
Portland, OR 97232

JOHN HAIRSTON, in his official capacity as
Administrator and Chief Executive Officer of
the Bonneville Power Administration
905 NE 11th Avenue
Portland, OR 97232

BUREAU OF ECONOMIC ANALYSIS
4600 Silver Hill Road
Suitland, MD 20746

VIPIN ARORA, in his official capacity as
Director of the Bureau of Economic Analysis
4600 Silver Hill Road
Suitland, MD 20746

BUREAU OF INDIAN AFFAIRS
1849 C Street NW
Washington, DC 20240

BRYAN MERCIER, in his official capacity as
Director of the Bureau of Indian Affairs
1849 C Street NW
Washington, DC 20240

BUREAU OF INDUSTRY AND SECURITY
1401 Constitution Avenue NW
Washington, DC 20230

JEFFREY KESSLER, in his official capacity
as Under Secretary for Industry and Security
1401 Constitution Avenue NW, Room H-3839
Washington, DC 20230

BUREAU OF LAND MANAGEMENT
1849 C Street NW
Washington, DC 20240

MICHAEL D. NED, in his official capacity as
Director of the Bureau of Land Management
1849 C Street NW
Washington, DC 20240

BUREAU OF OCEAN ENERGY
MANAGEMENT
1849 C Street NW
Washington, DC 20240

WALTER CRUICKSHANK, in his
official capacity as Director of the Bureau of
Ocean Energy Management
1849 C Street NW
Washington, DC 20240

BUREAU OF RECLAMATION
1849 C Street NW
Washington, DC 20240

DAVID PALUMBO, in his official capacity as
Acting Commissioner of the Bureau of
Reclamation
1849 C Street NW
Washington, DC 20240

BUREAU OF SAFETY AND
ENVIRONMENTAL ENFORCEMENT
1849 C Street NW
Washington, DC 20240

PAUL HUANG, in his official capacity as
Acting Director of the Bureau of Safety and
Environmental Enforcement
1849 C Street NW
Washington, DC 20240

BUREAU OF THE CENSUS
4600 Silver Hill Road
Suitland, MD 20746

RON S. JARMIN, in his official capacity as
Acting Director of the Bureau of the Census
4600 Silver Hill Road
Suitland, MD 20746

CENTERS FOR DISEASE CONTROL AND
PREVENTION
1600 Clifton Road
Atlanta, GA 30329

SUSAN MONAREZ, in her official capacity
as Acting Director of the Centers for Disease
Control and Prevention
1600 Clifton Road, NW
Atlanta, GA 30333

CENTERS FOR MEDICARE AND
MEDICAID SERVICES
200 Independence Avenue SW
Washington, DC 20201

DR. MEHMET OZ, in his official capacity as
Administrator of the Centers for Medicare and
Medicaid Services
200 Independence Avenue SW
Washington, DC 20201

CHEMICAL SAFETY BOARD
1750 Pennsylvania Avenue NW, Suite 910
Washington, DC 20006

STEVE OWENS, in his official capacity as
Chairperson of the Chemical Safety Board
1750 Pennsylvania Avenue NW, Suite 910
Washington, DC 20006

NATIONAL INSTITUTE FOR STANDARDS
AND TECHNOLOGY
100 Bureau Drive
Gaithersburg, MD 20899

CRAIG BURKHARDT, in his official capacity
as Acting Director of the National Institute for
Standards and Technology
100 Bureau Drive
Gaithersburg, MD 20899

COMMISSION OF FINE ARTS
401 F Street NW, Suite 312
Washington, DC 20001

BILLIE TSIEN, in her official capacity as
Chairperson of the Commission of Fine Arts
401 F Street NW, Suite 312
Washington, DC 20001

COMMITTEE ON FOREIGN INVESTMENT
IN THE UNITED STATES
1500 Pennsylvania Avenue NW
Washington, DC 20220

SCOTT BESSENT, in his official capacity as
Chairperson of the Committee on Foreign
Investment in the United States
1500 Pennsylvania Avenue NW
Washington, DC 20220

COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street NW
Washington, DC 20581

CAROLINE D. PHAM, in her official capacity
as Acting Chairman of the Commodity Futures
Trading Commission
1155 21st Street NW
Washington, DC 20581

KRISTIN N. JOHNSON, in her official
capacity as Commissioner of the Commodity
Futures Trading Commission
1155 21st Street NW
Washington, DC 20581

CHRISTY GOLDSMITH ROMERO, in her
official capacity as Commissioner of the
Commodity Futures Trading Commission
1155 21st Street NW
Washington, DC 20581

SUMMER K. MERSINGER, in her official
capacity as Commissioner of the Commodity
Futures Trading Commission
1155 21st Street NW
Washington, DC 20581

CONSUMER FINANCIAL PROTECTION
BUREAU
1700 G Street NW
Washington, DC 20552

SCOTT BESSENT, in his official capacity as
Acting Director of the Consumer Financial
Protection Bureau
1500 Pennsylvania Avenue NW
Washington, DC 20220

COUNCIL OF INSPECTORS GENERAL ON
INTEGRITY AND EFFICIENCY
1717 H Street NW, Suite 825
Washington, DC 20006

DEIDRE HARRISON, in her official capacity
as Executive Chair of the Council of Inspectors
General on Integrity and Efficiency
1717 H Street NW, Suite 825
Washington, DC 20006

COUNCIL ON ENVIRONMENTAL
QUALITY
730 Jackson Place NW
Washington, DC 20503

KATHERINE SCARLETT, in her official
capacity as Acting Chair of the Council on
Environmental Quality
730 Jackson Place NW
Washington, DC 20503

DEFENSE CONTRACT AUDIT AGENCY
8725 John J. Kingman Road
Fort Belvoir, VA 22060

JENNIFER DESAUTEL, in her official
capacity as Director of the Defense Contract
Audit Agency
8725 John J. Kingman Road
Fort Belvoir, VA 22060

DEFENSE CONTRACT MANAGEMENT
AGENCY
3901 Adams Avenue
Fort Gregg-Adams, VA 23801

LIEUTENANT GENERAL GREGORY L.
MASIELLO, in his official capacity as
Director of the Defense Contract Management
Agency
3901 Adams Avenue
Fort Gregg-Adams, VA 23801

DEFENSE INTELLIGENCE AGENCY
7400 Pentagon
Washington, DC 20301

LIEUTENANT GENERAL JEFFREY A.
KRUSE, in his official capacity as Director of
the Defense Intelligence Agency
7400 Pentagon
Washington, DC 20301

DEFENSE LOGISTICS AGENCY
8725 John J. Kingman Road
Fort Belvoir, VA 22060

LIEUTENANT GENERAL MARK T.
SIMERLY, in his official capacity as Director
of the Defense Logistics Agency
8725 John J. Kingman Road
Fort Belvoir, VA 22060

DENALI COMMISSION
550 W 7th Avenue, Suite 1230
Anchorage, AK 99501

JULIE E. KITKA, in her official capacity as
Federal Co-Chair of the Denali Commission
550 W 7th Avenue, Suite 1230
Anchorage, AK 99501

DIRECTORATE OF DEFENSE TRADE
CONTROLS
2401 E Street NW
Washington, DC 20522

MICHAEL J. VACCARO, in his official
capacity as Deputy Assistant Secretary of State
for Defense Trade Controls
2401 E Street NW
Washington, DC 20522

DRUG ENFORCEMENT
ADMINISTRATION
8701 Morrisette Drive
Springfield, VA 22152

DEREK S. MALTZ, in his official capacity as
Acting Administrator of the Drug Enforcement
Administration
8701 Morrisette Drive
Springfield, VA 22152

16

EXPORT-IMPORT BANK OF THE UNITED
STATES
811 Vermont Avenue NW
Washington, DC 20571

JAMES C. CRUSE, in his official capacity as
Acting President and Chairman of the Export-
Import Bank of the United States
811 Vermont Avenue NW
Washington, DC 20571

FARM CREDIT SYSTEM INSURANCE
CORPORATION
1501 Farm Credit Drive
McLean, VA 22102

GLEN R. SMITH, in his official capacity as
Chairman of the Farm Credit System Insurance
Corporation
1501 Farm Credit Drive
McLean, VA 22102

FEDERAL AVIATION ADMINISTRATION
800 Independence Avenue SW
Washington, DC 20591

CHRIS ROCHELEAU, in his official capacity
as Acting Administrator of the Federal
Aviation Administration
800 Independence Avenue SW
Washington, DC 20591

FEDERAL BUREAU OF INVESTIGATION
935 Pennsylvania Avenue NW
Washington, DC 20535

KASH PATEL, in his official capacity as
Director of the Federal Bureau of Investigation
935 Pennsylvania Avenue NW
Washington, DC 20535

FEDERAL BUREAU OF PRISONS
320 First Street NW
Washington, DC 20534

WILLIAM K. MARSHALL III, in his official
capacity as Director of the Federal Bureau of
Prisons
320 First Street NW
Washington, DC 20534

FEDERAL COMMUNICATIONS
COMMISSION
45 L Street NE
Washington, DC 20554

BRENDAN CARR, in his official capacity as
Chairman of the Federal Communications
Commission
45 L Street NE
Washington, DC 20554

GEOFFREY STARKS, in his official capacity
as Commissioner of the Federal
Communications Commission
45 L Street NE
Washington, DC 20554

NATHAN SIMINGTON, in his official
capacity as Commissioner of the Federal
Communications Commission
45 L Street NE
Washington, DC 20554

ANNA M. GOMEZ, in her official capacity as
Commissioner of the Federal Communications
Commission
45 L Street NE
Washington, DC 20554

FEDERAL DEPOSIT INSURANCE
CORPORATION
550 17th Street NW
Washington, DC 20429

TRAVIS HILL, in his official capacity as
Acting Chairman of the Federal Deposit
Insurance Corporation
550 17th Street NW
Washington, DC 20429

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463

JAMES E. TRAINOR III, in his official
capacity as Vice Chairman and Acting
Chairman of the Federal Election Commission
1050 First Street NE
Washington, DC 20463

SHANA M. BROUSSARD, in her official
capacity as Commissioner of the Federal
Election Commission
1050 First Street NE
Washington, DC 20463

DARA LINDENBAUM, in her official
capacity as Commissioner of the Federal
Election Commission
1050 First Street NE
Washington, DC 20463

FEDERAL EMERGENCY MANAGEMENT
AGENCY
500 C Street SW
Washington, DC 20472

CAMERON HAMILTON, in his official
capacity as Administrator of the Federal
Emergency Management Agency
500 C Street SW
Washington, DC 20472

FEDERAL ENERGY REGULATORY
COMMISSION
888 First Street NE
Washington, DC 20426

MARK C. CHRISTIE, in his official capacity
as Chairman of the Federal Energy Regulatory
Commission
888 First Street NE
Washington, DC 20426

DAVID ROSNER, in his official capacity as
Commissioner of the Federal Energy
Regulatory Commission
888 First Street NE
Washington, DC 20426

LINSAY S. SEE, in her official capacity as
Commissioner of the Federal Energy
Regulatory Commission
888 First Street NE
Washington, DC 20426

JUDY W. CHANG, in her official capacity as
Commissioner of the Federal Energy
Regulatory Commission
888 First Street NE
Washington, DC 20426

FEDERAL HIGHWAY ADMINISTRATION
1200 New Jersey Avenue SE
Washington, DC 20590

GLORIA M. SHEPHERD, in her official
capacity as Executive Director and Acting
Administrator of the Federal Highway
Administration
1200 New Jersey Avenue SE
Washington, DC 20590

FEDERAL HOUSING FINANCE AGENCY
400 7th Street SW
Washington, DC 20219

WILLIAM J. PULTE, in his official capacity
as Director of the Federal Housing Finance
Agency
400 Seventh Street SW
Washington, DC 20219

FEDERAL LABOR RELATIONS
AUTHORITY
1400 K Street NW
Washington, DC 20424

COLLEEN DUFFY KIKO, in her official
capacity as Chairman of the Federal Labor
Relations Authority
1400 K Street NW
Washington, DC 20424

SUSAN TSUI GRUNDMANN, in her official
capacity as Member of the Federal Labor
Relations Authority
1400 K Street NW
Washington, DC 20424

ANNE M. WAGNER, in her official capacity
as Member of the Federal Labor Relations
Authority
1400 K Street NW
Washington, DC 20424

FEDERAL MARITIME COMMISSION
800 North Capitol Street NW
Washington, DC 20573

LOUIS E. SOLA, in his official capacity as
Chairman of the Federal Maritime
Commission
800 North Capitol Street NW
Washington, DC 20573

REBECCA F. DYE, in her official capacity as
Commissioner of the Federal Maritime
Commission
800 North Capitol Street NW
Washington, DC 20573

DANIEL B. MAFFEI, in his official capacity
as Commissioner of the Federal Maritime
Commission
800 North Capitol Street NW
Washington, DC 20573

MAX VEKICH, in his official capacity as
Commissioner of the Federal Maritime
Commission
800 North Capitol Street NW
Washington, DC 20573

FEDERAL MEDIATION AND
CONCILIATION SERVICE
250 E Street SW
Washington, DC 20427

GREGORY GOLDSTEIN, in his official
capacity as Acting Director of the Federal
Mediation and Conciliation Service
250 E Street SW
Washington, DC 20427

FEDERAL MINE SAFETY AND HEALTH
REVIEW COMMISSION
1331 Pennsylvania Avenue NW, Suite 520N
Washington, DC 20004

MARY LU JORDAN, in her official capacity
as Chair of the Federal Mine Safety and Health
Review Commission
1331 Pennsylvania Avenue NW, Suite 520N
Washington, DC 20004

TIMOTHY J. BAKER, in her official capacity
as Commissioner of the Federal Mine Safety
and Health Review Commission
1331 Pennsylvania Avenue NW, Suite 520N
Washington, DC 20004

MOSHE Z. MARVIT, in her official capacity
as Commissioner of the Federal Mine Safety
and Health Review Commission
1331 Pennsylvania Avenue NW, Suite 520N
Washington, DC 20004

FEDERAL PERMITTING IMPROVEMENT
STEERING COUNCIL
1800 M Street NW, Suite 6006
Washington, DC 20036

MANISHA PATEL, in her official capacity as
Executive Director of the Federal Permitting
Improvement Steering Council
1800 M Street NW, Suite 6006
Washington, DC 20036

FEDERAL RAILROAD ADMINISTRATION
1200 New Jersey Avenue SE
Washington, DC 20590

MICHAEL LESTINGI, in his official capacity
as Executive Director of the Federal Railroad
Administration
1200 New Jersey Avenue SE
Washington, DC 20590

THOMAS R. JAYNE, in his official capacity
as a Management Member of the Federal
Railroad Administration
1200 New Jersey Avenue SE
Washington, DC 20590

JOHN BRAGG, in his official capacity as a
Labor Member of the Federal Railroad
Administration
1200 New Jersey Avenue SE
Washington, DC 20590

FEDERAL RETIREMENT THRIFT
INVESTMENT BOARD
77 K Street NE, Suite 1000
Washington, DC 20002

DANA BILYEU, in her official capacity as
Acting Chair of the Federal Retirement Thrift
Investment Board
77 K Street NE, Suite 1000
Washington, DC 20002

FEDERAL TRANSIT ADMINISTRATION
1200 New Jersey Avenue SE
Washington, DC 20590

MATTHEW WELBES, in his official capacity
as Executive Director of the Federal Transit
Administration
1200 New Jersey Avenue SE
Washington, DC 20590

FINANCIAL CRIMES ENFORCEMENT
NETWORK
P.O. Box 39
Vienna, VA 22183

ANDREA GACKI, in her official capacity as
Director of the Financial Crimes Enforcement
Network
P.O. Box 39
Vienna, VA 22183

FOOD & DRUG ADMINISTRATION
10903 New Hampshire Avenue
Silver Spring, MD 20993

MARTIN A. MAKARY, in his official
capacity as Commissioner of Food and Drugs
10903 New Hampshire Avenue
Silver Spring, MD 20993

GENERAL SERVICES ADMINISTRATION
1800 F Street NW
Washington, DC 20405

STEPHEN EHEKIAN, in his official capacity
as Acting Administrator of the General
Services Administration
1800 F Street NW
Washington, D.C. 20405

GRID DEPLOYMENT OFFICE
1000 Independence Avenue SW
Washington, DC 20585

NICK ELLIOT, in his official capacity as
Director of the Grid Deployment Office
1000 Independence Avenue SW
Washington, DC 20585

GULF COAST ECOSYSTEM
RESTORATION COUNCIL (RESTORE THE
GULF)
500 Poydras Street, Suite 1117
New Orleans, LA 70130

LEE M. ZELDIN, in his official capacity as
Member of the RESTORE Council
1200 Pennsylvania Avenue NW
Washington, DC 20460

HEALTH RESOURCES AND SERVICES
ADMINISTRATION
5600 Fishers Lane
Rockville, MD 20857

THOMAS J. ENGELS, in his official capacity
as Administrator of the Health Resources and
Services Administration
5600 Fishers Lane
Rockville, MD 20857

INSTITUTE OF MUSEUM AND LIBRARY
SERVICES
955 L'Enfant Plaza North SW, Suite 4000
Washington, DC 20024

KEITH SONDERLING, in his official
capacity as Chairperson of the Institute of
Museum and Library Services
955 L'Enfant Plaza North SW, Suite 4000
Washington, DC 20024

INTERNAL REVENUE SERVICE
1111 Constitution Avenue NW
Washington, DC 20224

MICHAEL FAULKENDER, in his official
capacity as Acting Commissioner of the
Internal Revenue Service
1111 Constitution Avenue NW
Washington, DC 20224

INTERNATIONAL TRADE
ADMINISTRATION
1401 Constitution Ave NW
Washington, DC 20230

DIANE FARRELL, in her official capacity as
Deputy Under Secretary for International
Trade and Acting Chair of the International
Trade Administration
1401 Constitution Avenue NW
Washington, DC 20230

JOINT CHIEFS OF STAFF
9999 Joint Staff Pentagon
Washington, DC 20318

GENERAL DAN CAINE, in his official
capacity as Chairman of the Joint Chiefs of
Staff
9999 Joint Staff Pentagon
Washington, DC 20318

KENNEDY CENTER
2700 F Street NW
Washington, DC 20566

RICHARD GRENELL, in his official capacity
as President of the Kennedy Center
2700 F Street NW
Washington, DC 20566

LOAN PROGRAMS OFFICE
1000 Independence Avenue SW
Washington, DC 20585

LANE GENATOWSKI, in his official capacity
as Director of the Loan Programs Office
1000 Independence Avenue SW
Washington, DC 20585

NATIONAL AERONAUTICS AND SPACE
ADMINISTRATION
300 E Street SW, Suite 5R30
Washington, DC 20546

JANET PETRO, in her official capacity as
Administrator of the National Aeronautics and
Space Administration
300 E Street SW, Suite 5R30
Washington, DC 20546

NATIONAL ARCHIVES AND RECORDS
ADMINISTRATION
700 Pennsylvania Avenue NW
Washington, DC 20408

MARCO RUBIO, in his official capacity as
Acting Archivist of the National Archives and
Records Administration
700 Pennsylvania Avenue NW
Washington, DC 20408

NATIONAL COUNTERTERRORISM
CENTER
1500 Tysons McLean Drive
McLean, VA 22102

DON M. HOLSTEAD, in his official capacity
as Acting Director of the National
Counterterrorism Center
1500 Tysons McLean Drive
McLean, VA 22102

NATIONAL ENDOWMENT FOR THE
ARTS
400 7th Street SW
Washington, DC 20506

MARY ANNE CARTER, in her official
capacity as Acting Chair of the National
Endowment for the Arts
400 7th Street SW
Washington, DC 20506

NATIONAL ENDOWMENT FOR THE
HUMANITIES
400 7th Street SW
Washington, DC 20506

MICHAEL MCDONALD, in his official
capacity as Acting Chairman of the National
Endowment for the Humanities
400 7th Street SW
Washington, DC 20506

NATIONAL GEOSPATIAL-
INTELLIGENCE AGENCY
MS N73
7500 GEOINT Drive
Springfield, VA 22150

FRANK WHITWORTH, in his official
capacity as Director of the National
Geospatial-Intelligence Agency
MS N73
7500 GEOINT Drive
Springfield, VA 22150

NATIONAL INDIAN GAMING
COMMISSION
1849 C Street NW
Mail Stop #1621
Washington, DC 20240

SHARON AVERY, in her official capacity as
Acting Chairwoman of the National Indian
Gaming Commission
1849 C Street NW
Mail Stop #1621
Washington, DC 20240

NATIONAL INSTITUTES OF HEALTH
9000 Rockville Pike
Bethesda, MD 20892

JAY BHATTACHARYA, in his official
capacity as Director of the National Institutes
of Health
9000 Rockville Pike
Bethesda, MD 20892

NATIONAL LABOR RELATIONS BOARD
1015 Half Street SE
Washington, DC 20570

MARVIN E. KAPLAN, in his official capacity
as Chairman of the National Labor Relations
Board
1015 Half Street SE
Washington, DC 20570

DAVID M. PROUTY, in his official capacity
as Member of the National Labor Relations
Board
1015 Half Street SE
Washington, DC 20570

NATIONAL MARINE FISHERIES SERVICE
1315 East-West Highway
Silver Spring, MD 20910

EUGENIO PIÑEIRO SOLER, in his official
capacity as Director of the National Marine
Fisheries Service
1315 East-West Highway
Silver Spring, MD 20910

NATIONAL MEDIATION BOARD
1301 K Street NW, Suite 250 East
Washington, DC 20005

LOREN E. SWEATT, in her official capacity
as Chair of the National Mediation Board
1301 K Street NW, Suite 250 East
Washington, DC 20005

LINDA A. PUCHALA, in her official capacity
as Member of the National Mediation Board
1301 K Street NW, Suite 250 East
Washington, DC 20005

DEIRDRE HAMILTON, in her official
capacity as Member of the National Mediation
Board
1301 K Street NW, Suite 250 East
Washington, DC 20005

NATIONAL NUCLEAR SECURITY
ADMINISTRATION
1000 Independence Avenue SW
Washington, DC 20585

TERESA M. ROBBINS, in her official
capacity as Acting Administrator of the
National Nuclear Security Administration
1000 Independence Avenue SW
Washington, DC 20585

NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION
1401 Constitution Avenue NW
Washington, DC 20230

LAURA GRIMM, in her official capacity as
Administrator of the National Oceanic and
Atmospheric Administration
1401 Constitution Avenue NW
Washington, DC 20230

NATIONAL PARK SERVICE
1849 C Street NW
Washington, DC 20240

JESSICA BOWRON, in her official capacity
as Acting Director of the National Park Service
1849 C Street NW
Washington, DC 20240

NATIONAL RENEWABLE ENERGY
LABORATORY
901 D Street SW, Suite 930
Washington, DC 20024

MARTIN KELLER, in his official capacity as
Laboratory Director of the National Renewable
Energy Laboratory
901 D Street SW, Suite 930
Washington, DC 20024

NATIONAL SCIENCE FOUNDATION
2415 Eisenhower Avenue
Alexandria, VA 22314

VICTOR MCCRARY, in his official capacity
as Acting Director of the National Science
Foundation
2415 Eisenhower Avenue
Alexandria, VA 22314

NATIONAL SECURITY AGENCY
9800 Savage Road, Suite 6272
Fort Meade, MD 20755

LIEUTENANT GENERAL WILLIAM J.
HARTMAN, in his official capacity as Acting
Director of the National Security Agency
9800 Savage Road, Suite 6272
Fort Meade, MD 20755

NATIONAL SECURITY COUNCIL
1600 Pennsylvania Avenue NW
Washington, DC 20500

MARCO RUBIO, in his official capacity as
Acting National Security Advisor
1600 Pennsylvania Avenue NW
Washington, DC 20500

NATIONAL TRANSPORTATION SAFETY
BOARD
490 L'Enfant Plaza SW
Washington, DC 20594

JENNIFER HOMENDY, in her official
capacity as Chair of the National
Transportation Safety Board
490 L'Enfant Plaza East SW
Washington, DC 20594

ALVIN BROWN, in his official capacity as
Vice Chairman of the National Transportation
Safety Board
490 L'Enfant Plaza East SW
Washington, DC 20594

MICHAEL E. GRAHAM, in his official
capacity as Member of the National
Transportation Safety Board
490 L'Enfant Plaza East SW
Washington, DC 20594

THOMAS B. CHAPMAN, in his official
capacity as Member of the National
Transportation Safety Board
490 L'Enfant Plaza East SW
Washington, DC 20594

J. TODD IMAN, in his official capacity as
Member of the National Transportation Safety
Board
490 L'Enfant Plaza East SW
Washington, DC 20594

OCCUPATIONAL SAFETY AND HEALTH
ADMINISTRATION
200 Constitution Avenue NW
Washington, DC 20210

AMANDA WOOD LAIHOW, in her official
capacity as Acting Assistant Secretary of
Labor for Occupational Safety and Health
200 Constitution Avenue NW
Washington, DC 20210

OCCUPATIONAL SAFETY AND HEALTH
REVIEW COMMISSION
1120 20th Street NW, 9th Floor
Washington, DC 20036

CHAIR of the Occupational Safety and Health
Review Commission, in his or her official
capacity
1120 20th Street NW, 9th Floor
Washington, DC 20036

OFFICE OF CLEAN ENERGY
DEMONSTRATIONS
1000 Independence Avenue SW
Washington, DC 20585

CATHY TRIPODI, in her official capacity as
Executive Director of the Office of Clean
Energy Demonstrations
1000 Independence Avenue SW
Washington, DC 20585

OFFICE OF FEDERAL CONTRACT
COMPLIANCE PROGRAMS
200 Constitution Avenue NW
Washington, DC 20210

CATHERINE ESCHBACH, in her official
capacity as Director of the Office of Federal
Contract Compliance Programs
200 Constitution Avenue NW
Washington, DC 20210

OFFICE OF FOREIGN ASSETS CONTROL
1500 Pennsylvania Avenue NW
Washington, DC 20220

BRADLEY T. SMITH, in his official capacity
as Director of the Office of Foreign Assets
Control
1500 Pennsylvania Avenue NW
Washington, DC 20220

OFFICE OF GOVERNMENT ETHICS
250 E Street SW, Suite 750
Washington, DC 20024

JAMIESON GREER, in his official capacity as
Acting Director of the Office of Government
Ethics
250 E Street SW, Suite 750
Washington, DC 20024

OFFICE OF HOMELAND SECURITY
SITUATIONAL AWARENESS
300 7th Street SW
Washington, DC 20024

CHRISTOPHER TOMNEY, in his official
capacity as Director of the Office of Homeland
Security Situational Awareness
300 7th Street SW
Washington, DC 20024

OFFICE OF NATIONAL DRUG CONTROL
POLICY
1600 Pennsylvania Avenue NW
Washington, DC 20500

JON RICE, in his official capacity as Acting
Director of the Office of National Drug
Control Policy
1600 Pennsylvania Avenue NW
Washington, DC 20500

OFFICE OF PERSONNEL MANAGEMENT
1900 E Street NW
Washington, DC 20415

CHARLES EZELL, in his official capacity as
Acting Director of the Office of Personnel
Management
1900 E Street NW
Washington, DC 20415

OFFICE OF SCIENCE AND TECHNOLOGY
POLICY
1650 Pennsylvania Avenue NW
Washington, DC 20504

MICHAEL KRATSIOS, in his official
capacity as Director of the Office of Science
and Technology Policy
1650 Pennsylvania Avenue NW
Washington, DC 20504

OFFICE OF SPECIAL COUNSEL
1730 M Street NW, Suite 218
Washington, DC 20036

DOUGLAS A. COLLINS, in his official
capacity as Acting Special Counsel
1730 M Street NW, Suite 218
Washington, DC 20036

OFFICE OF THE COMPTROLLER OF THE
CURRENCY
400 7th Street SW
Washington, DC 20219

RODNEY E. HOOD, in his official capacity as
Acting Comptroller of the Currency
400 7th Street SW
Washington, DC 20219

OFFICE OF THE INSPECTOR GENERAL
950 Pennsylvania Avenue NW
Washington, DC 20530

MICHAEL E. HOROWITZ, in his official
capacity as Inspector General
950 Pennsylvania Avenue NW
Washington, DC 20530

PATENT TRIAL & APPEAL BOARD
600 Dulany Street
Alexandria, VA 22314

COKE MORGAN STEWART, in her official
capacity as Acting Director of the Patent Trial
& Appeal Board
600 Dulany Street
Alexandria, VA 22314

PEACE CORPS
1275 First Street NE
Washington, DC 20526

ALLISON GREEN, in her official capacity as
Chief Executive Officer of the Peace Corps
1275 First Street NE
Washington, DC 20526

PENSION BENEFIT GUARANTY
CORPORATION
445 12th Street SW
Washington, DC 20024

ALICE MARONI, in her official capacity as
Acting Director of the Pension Benefit
Guaranty Corporation
445 12th Street SW
Washington, DC 20024

PRESIDIO TRUST
1750 Lincoln Boulevard
San Francisco, CA 94129

MARK W. BUELL, in his official capacity as
Chair of the Presidio Trust
1750 Lincoln Boulevard
San Francisco, CA 94129

RURAL UTILITIES SERVICE
1400 Independence Avenue SW
Stop 1560, Room 4121-S
Washington, DC 20250

CHRISTOPHER A. MCLEAN, in his official
capacity as Acting Administrator of the Rural
Utilities Service
1400 Independence Avenue SW
Stop 1560, Room 4121-S
Washington, DC 20250

SELECTIVE SERVICE SYSTEM
1515 Wilson Boulevard, Suite 600
Arlington, VA 22209

CRAIG T. BROWN, in his official capacity as
Acting Director of the Selective Service
System
1515 Wilson Boulevard, Suite 600
Arlington, VA 22209

SMITHSONIAN INSTITUTION
P.O. Box 37012, MRC 012
Washington, DC 20013

LONNIE G. BUNCH III, in his official
capacity as Secretary of the Smithsonian
Institution
P.O. Box 37012, MRC 012
Washington, DC 20013

SURFACE TRANSPORTATION BOARD
395 E Street SW
Washington, DC 20423

PATRICK J. FUCHS, in his official capacity
as Chairman of the Surface Transportation
Board
395 E Street SW
Washington, DC 20423

ROBERT E. PRIMUS, in his official capacity
as a Member of the Surface Transportation
Board
395 E Street SW
Washington, DC 20423

MICHELLE A. SCHULTZ, in her official
capacity as Member of the Surface
Transportation Board
395 E Street SW
Washington, DC 20423

KAREN J. HEDLUND, in her official capacity
as Member of the Surface Transportation
Board
395 E Street SW
Washington, DC 20423

TENNESSEE VALLEY AUTHORITY
400 West Summit Hill Drive
Knoxville, TN 37902

BILL RENICK, in his official capacity as
Chair of the Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902

TRADEMARK TRIAL AND APPEAL
BOARD
Madison East, Concourse Level Room C 55
600 Dulany Street
Alexandria, VA 22314

COKE MORGAN STEWART, in her official
capacity as Acting Director of the Trademark
Trial and Appeal Board
Madison East, Concourse Level Room C 55
600 Dulany Street
Alexandria, VA 22314

U.S. AGENCY FOR GLOBAL MEDIA
330 Independence Avenue SW
Washington, DC 20237

VICTOR MORALES, in his official capacity
as Acting Chief Executive Officer of the U.S.
Agency for Global Media
330 Independence Avenue SW
Washington, DC 20237

U.S. AGENCY FOR INTERNATIONAL
DEVELOPMENT
1300 Pennsylvania Avenue NW
Washington, DC 20523

MARCO RUBIO, in his official capacity as
Acting Administrator of the U.S. Agency for
International Development
1300 Pennsylvania Avenue NW
Washington, DC 20523

U.S. ARMY CORPS OF ENGINEERS
441 G Street NW
Washington, DC 20314

LIEUTENANT GENERAL WILLIAM H.
GRAHAM, JR., in his official capacity as
Commanding General of the U.S. Army Corps
of Engineers
441 G Street NW
Washington, DC 20314

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES
20 Massachusetts Avenue NW
Washington, DC 20529

KIKA SCOTT, in her official capacity as
Senior Official Performing the Duties of the
Director of U.S. Citizenship and Immigration
Services
20 Massachusetts Avenue NW
Washington, DC 20529

U.S. COAST GUARD
Commandant CG–LCL
US Coast Guard HQ
2703 Martin Luther King Jr. Avenue SE
Stop 7213
Washington, DC 20593

KEVIN E. LUNDAY, in his official capacity
as Commandant of the U.S. Coast Guard
Commandant CG–LCL
US Coast Guard HQ
2703 Martin Luther King Jr. Avenue SE
Stop 7213
Washington, DC 20593

U.S. COMMISSION ON CIVIL RIGHTS
1331 Pennsylvania Avenue NW, Suite 1150
Washington, DC 20425

ROCHELLE GARZA, in her official capacity
as Chair of the U.S. Commission on Civil
Rights
1331 Pennsylvania Avenue NW, Suite 1150
Washington, DC 20425

U.S. CONSUMER PRODUCT SAFETY
COMMISSION
4330 East West Highway
Bethesda, MD 20814

PETER A. FELDMAN, in his official capacity
as Acting Chairman of the U.S. Consumer
Product Safety Commission
4330 East-West Highway
Bethesda, MD 20814

U.S. CUSTOMS AND BORDER
PROTECTION
1300 Pennsylvania Avenue NW, Suite 4.4-B
Washington, DC 20229

PETE R. FLORES, in his official capacity as
Acting Commissioner of U.S. Customs and
Border Protection
1300 Pennsylvania Avenue NW, Suite 4.4-B
Washington, DC 20229

U.S. ELECTION ASSISTANCE
COMMISSION
633 3rd Street NW, Suite 200
Washington, DC 20001

DONALD L. PALMER, in his official
capacity as Chairman of the U.S. Election
Assistance Commission
633 3rd Street NW, Suite 200
Washington, DC 20001

U.S. FISH & WILDLIFE SERVICE
1849 C Street NW
Washington, DC 20240

PAUL SOUZA, in his official capacity as
Regional Director, Pacific Southwest Region,
exercising the delegated authority of the
Director of the U.S. Fish and Wildlife Service
1849 C Street NW
Washington, DC 20240

U.S. FOREST SERVICE
1400 Independence Avenue SW
Washington, DC 20250

TOM SCHULTZ, in his official capacity as
Chief of the U.S. Forest Service
1400 Independence Avenue SW
Washington, D.C. 20250

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT
500 12th Street SW
Washington, DC 20536

TODD M. LYONS, in his official capacity as
Acting Director of U.S. Immigration and
Customs Enforcement
500 12th Street SW
Washington, DC 20536

U.S. MERIT SYSTEMS PROTECTION
BOARD
1615 M Street NW
Washington, DC 20419

HENRY KERNER, in his official capacity as
Acting Chairman of the U.S. Merit Systems
Protection Board
1615 M Street NW
Washington, DC 20419

U.S. NUCLEAR WASTE TECHNICAL
REVIEW BOARD
2300 Clarendon Boulevard, Suite 1300
Arlington, VA 22201

PETER SWIFT, in his official capacity as
Chair of the U.S. Nuclear Waste Technical
Review Board
2300 Clarendon Boulevard, Suite 1300
Arlington, VA 22201

U.S. POST OFFICE
475 L'Enfant Plaza SW, Room 4012
Washington, DC 20260

DOUG TULINO, in his official capacity as
Acting Postmaster General
475 L'Enfant Plaza SW, Room 4012
Washington, DC 20260

U.S. POSTAL INSPECTION SERVICE
475 L'Enfant Plaza SW
Washington, DC 20260

GARY R. BARKSDALE, in his official
capacity as Chief Postal Inspector
475 L'Enfant Plaza SW
Washington, DC 20260

U.S. PRIVACY AND CIVIL LIBERTIES
OVERSIGHT BOARD
800 N. Capitol Street NW
Washington, DC 20002

BETH ANN WILLIAMS, in her official
capacity as Chair of the U.S. Privacy and Civil
Liberties Oversight Board
800 N. Capitol Street NW
Washington, DC 20002

U.S. RAILROAD RETIREMENT BOARD
844 North Rush Street
Chicago, IL 60611

ERHARD R. CHORLÉ, in his official capacity
as Chairman of the U.S. Railroad Retirement
Board
844 North Rush Street
Chicago, IL 60611

THOMAS R. JAYNE, in his official capacity
as Management Member of the U.S. Railroad
Retirement Board
844 North Rush Street
Chicago, IL 60611

JOHN BRAGG, in his official capacity as
Labor Member of the U.S. Railroad Retirement
Board
844 North Rush Street
Chicago, IL 60611

U.S. SECRET SERVICE
245 Murray Lane SW
Building T5
Washington, DC 20223

SEAN M. CURRAN, in his official capacity as
Director of the U.S. Secret Service
245 Murray Lane SW
Building T5
Washington, DC 20223

U.S. SOCIAL SECURITY
ADMINISTRATION
6401 Security Boulevard
Baltimore, MD 21235

LELAND C. DUDEK, in his official capacity
as Acting Commissioner of the U.S. Social
Security Administration
6401 Security Boulevard
Baltimore, MD 21235

U.S. SPACE FORCE
2020 U.S. Space Force Pentagon, Suite 4E858
Washington, DC 20330

B. CHANCE SALTZMAN, in his official
capacity as Chief of Space Operations
2020 U.S. Space Force Pentagon, Suite 4E858
Washington, DC 20330

U.S. TRADE AND DEVELOPMENT
AGENCY
1101 Wilson Boulevard, Suite 1100
Arlington, VA 22209

THOMAS R. HARDY, in his official capacity
as Director of Policy and Program
Management for the U.S. Trade and
Development Agency
1101 Wilson Boulevard, Suite 1100
Arlington, VA 22209

U.S. TRANSPORTATION SECURITY
ADMINISTRATION
601 South 12th Street
Arlington, VA 20598

HA NGUYEN MCNEILL, in his official
capacity as Acting Administrator of the U.S.
Transportation Security Administration
601 South 12th Street
Arlington, VA 20598

     *Defendants*.

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.      In America we have, in the words of John Adams, a government of laws and not men.  President Trump's campaign of Executive Orders against law firms and others, including the Executive Order he signed on April 9, 2025 against Susman Godfrey, is a grave threat to this foundational premise of our Republic.  The President is abusing the powers of his office to wield the might of the Executive Branch in retaliation against organizations and people that he dislikes. Nothing in our Constitution or laws grants a President such power; to the contrary, the specific provisions and overall design of our Constitution were adopted in large measure to ensure that presidents cannot exercise arbitrary, absolute power in the way that the President seeks to do in these Executive Orders.

2.      Unless the Judiciary acts with resolve—now—to repudiate this blatantly unconstitutional Executive Order and the others like it, a dangerous and perhaps irreversible precedent will be set.  Whatever opinions one may hold about President Trump, or about Susman Godfrey's litigation on behalf of its clients, someday a different president with an entirely different set of policy priorities and personal grievances will sit behind the Resolute Desk.  That future president may genuinely believe that an entirely different set of organizations or people have "engage[d] in activities detrimental to critical American interests," to quote the accusation President Trump has leveled at Susman Godfrey.  If President Trump's Executive Orders are allowed to stand, future presidents will face no constraint when they seek to retaliate against a different set of perceived foes.  What for two centuries has been beyond the pale will become the new normal.

3.      Put simply, this could be any of us.

4.      The Executive Order makes no secret of its unconstitutional retaliatory and discriminatory intent to punish Susman Godfrey for its work defending the integrity of the 2020

presidential election. Susman Godfrey lawyers, standing shoulder-to-shoulder with other lawyers, law firms, and legal organizations and representing a group of public officials in their official capacities, worked in court to ensure that every vote legally cast in that election was counted, turning back numerous efforts to overturn the legitimate results of that election. Susman Godfrey lawyers have continued to defend in court the legitimacy of that election in civil cases—standing up for a company that was subjected to a flood of falsehoods wrongly accusing it of having stolen that election. Similarly, the Executive Order targets Susman Godfrey because of its commitment to equal opportunity in the legal profession.

5.      Susman Godfrey lawyers recognize that the highest calling of a lawyer is our duty to our Constitution and to the rule of law. We cannot do something on behalf of our clients that imperils the rule of law. That is why Susman Godfrey stands firm against this plainly unconstitutional order: because it is so dangerous to the rule of law. Though no president has the power to unilaterally impose these kinds of punishments directly on any organization or person, it is particularly significant that, in this case, President Trump is trying to exact revenge on a law firm. Because we are a government of laws, and not men, lawyers hold a special place in protecting our constitutional order. We lawyers, just like the President, swear an oath to support and protect the Constitution. If a president can with impunity seek to destroy a law firm because of the clients it represents, then the rule of law itself is in grave danger.

6.      An independent private bar is fundamental to the rule of law in this Nation and to the proper functioning of the independent Judiciary. Since before the Nation's founding, private attorneys have represented clients disfavored by the government, whether because they are accused of a crime, because they assert civil or other rights that the government would rather not recognize, or because they are simply unpopular. Those representations are vital to our constitutional

system. They ensure that the Executive and Legislative branches do not overstep their constitutional and legal bounds, thereby reining in official abuses of power. They fortify the separation of powers by enabling Article III judicial review of the political branches. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 546 (2001). They effectuate the bedrock right to counsel enjoyed by all persons, and more broadly ensure that the protections of the Bill of Rights are upheld in all cases and in all aspects of private parties' interactions with the government. *See Martinez v. Ryan*, 566 U.S. 1, 12 (2012). They ensure that the promise that all are equal under the law is a foundational truth undergirding every aspect of our legal system, rather than merely an empty motto.

7.      In undertaking those critically important representations, attorneys themselves enjoy the protections of the Bill of Rights—most obviously the First Amendment rights to engage in protected speech, associate with persons of one's choosing, and petition the courts, but also the rights to due process and equal protection of the law. *See Velazquez*, 531 U.S. at 546. It is thus a bedrock constitutional principle that lawyers must "not be penalized for merely defending or prosecuting a lawsuit." *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974).

8.      The President is engaged in an unprecedented and unconstitutional assault on those bedrock principles and on the independent bar. In recent weeks, the President has issued multiple executive orders targeting law firms and their employees in an express campaign of retaliation for representing clients and causes he disfavors or employing lawyers he dislikes.[1] Those orders are

---

[1] *See* Addressing Risks from WilmerHale, The White House (Mar. 27, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-wilmerhale/ ("WilmerHale Order"); Addressing Risks from Jenner & Block, The White House (Mar. 25, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-jenner-block/

so obviously unconstitutional that the firms that have challenged them have immediately and uniformly received judicial orders acknowledging their probable unconstitutionality and barring their enforcement.[2]

9.      Susman Godfrey is the Nation's foremost trial firm—a firm that specializes in shepherding the country's highest-stakes cases through trial.  What began as a one-office, seven-attorney firm has now grown into a powerhouse of 235 trial attorneys based in Houston, Los Angeles, New York, and Seattle.  Susman Godfrey is consistently recognized by leading legal publications as the Nation's premier trial firm.  Nearly every partner and associate at the Firm has completed at least one clerkship for federal Article III judges, including for Justices of the United States Supreme Court—and those Article III judges were appointed by both Republican and Democratic presidents.  The Firm represents clients of all stripes and sizes:  individuals and classes of individuals; small businesses and gigantic corporations; plaintiffs and defendants; the powerful and the powerless; and people of all political persuasions.

10.     Susman Godfrey is the latest target of the President's retaliatory campaign.  On April 9, 2025, the President of the United States issued an Executive Order titled *Addressing Risks from Susman Godfrey* (the "Order") (attached as Exhibit A), which is unsparing in its attempt to

---

("Jenner Order"); Addressing Risks from Paul Weiss, The White House (Mar. 14, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-paul-weiss/ ("Paul Weiss Order"); Addressing Risks from Perkins Coie LLP, The White House (Mar. 6, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-perkins-coie-llp/ ("Perkins Order"); Suspension of Security Clearances and Evaluation of Government Contracts, The White House (Feb. 25, 2025), https://www.whitehouse.gov/presidential-actions/2025/02/suspension-of-security-clearances-and-evaluation-of-government-contracts/ ("Covington Mem.").

[2] *See Perkins Coie LLP v. U.S. Department of Justice*, No. 25-cv-716 (D.D.C. Mar. 12, 2025), ECF No. 21; *Wilmer Cutler Pickering Hale and Dorr LLP v. Executive Office of the President*, No. 25-cv-917 (D.D.C. Mar. 28, 2025), ECF No. 10; *Jenner & Block LLP v. U.S. Department of Justice*, No. 25-cv-916 (D.D.C. Mar. 28, 2025), ECF No. 9.

punish Susman Godfrey and its attorneys simply for doing their jobs as lawyers and officers of the court. That Order, like the ones before it, is unconstitutional. It immediately, irreparably harms Susman Godfrey and the Firm's partners, employees, and clients. And it gravely threatens the independence of the bar and the rule of law.

11.    The Order's retaliatory intent is unmistakable. Its stated purpose is to punish Susman Godfrey and its clients for Susman Godfrey lawyers' constitutionally protected advocacy in matters that President Trump claims are adverse to his personal or political interests—even though *none* of those representations has ever given rise to any suggestion whatsoever that the Firm's conduct was anything other than entirely ethical and reflective of the highest standards of the profession.

12.    Section 1 of the Order purports to have determined that "action is necessary to address the significant risks, egregious conduct, and conflicts of interest associated with Susman Godfrey LLP," and it accuses Susman Godfrey of "subsidiz[ing] . . . activities that are not aligned with American interests"; "spearhead[ing] efforts to weaponize the American legal system and degrade the quality of American elections"; "fund[ing] groups that engage in dangerous efforts to undermine the effectiveness of the United States military through the injection of political and radical ideology"; and "support[ing] efforts to discriminate on the basis of race," such as by "administer[ing] a program where it offers financial awards and employment opportunities only to 'students of color.'" Order § 1.

13.    The Order's subsequent provisions take a wide range of punitive steps against Susman Godfrey that are self-evidently designed to severely harm its ability to practice law and its business. Section 2 of the Order directs "[t]he Attorney General, the Director of National Intelligence, and all other relevant heads of executive departments and agencies" to immediately

"suspend any active security clearances held by individuals at Susman" and to review whether to revoke them permanently.  *Id.* § 2.  It also directs the Office of Management and Budget to "identify all Government goods, property, material, and services, including Sensitive Compartmented Information Facilities, provided for the benefit of Susman," and "expeditiously cease such provision."  *Id.*

14.    Section 3 of the Order directs federal agencies to (1) "require Government contractors to disclose any business they do with Susman and whether that business is related to the subject of the Government contract"; (2) take steps to "terminate any contract . . . for which Susman has been hired to perform any service"; (3) reassess all "contracts with Susman or with entities that do business with Susman"; and (4) more generally "align" any "agency funding decisions" with those other directives.  *Id.* § 3.  The Order suggests that government-contractor relationships with Susman do not "align[] with American interests."  *Id.* §§ 1, 3.

15.    Section 4 of the Order references a portion of the Perkins Order (*see supra* n.1) that instructs federal officials to "investigate" diversity, equity, and inclusion policies at "large, influential, or industry leading law firms."  Order § 4.

16.    Section 5 of the Order directs federal agencies to "provide guidance limiting official access from Federal Government buildings to employees of Susman when such access would threaten the national security of or otherwise be inconsistent with the interests of the United States," while also barring "Government employees acting in their official capacity from engaging with Susman employees."  *Id.* § 5; *see id.* § 1 (asserting that Susman "engage[s] in activities detrimental to critical American interests").  Section 5 also instructs agency officials to "refrain from hiring employees of Susman, absent a waiver from the head of the agency, made in consultation with the Director of the Office of Personnel Management."  *Id.*

17.     Together and separately, these provisions aim to vitiate Susman Godfrey's ability to represent a wide range of clients, including those with government contracts or other business before the government, and to prevent the Firm from advocating in front of—or against—the government in a broad swath of matters.  And through its defamatory allegations against the Firm, the Order seeks to warn or drive clients away from engaging the Firm's services.  Simply put, the Order endeavors to foreclose the Firm from practicing law—for the perceived transgression of undertaking representations with which the President disagrees.

18.     The Order is unconstitutional many times over—and obviously so.  "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts.  One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections."  *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).  The Order runs roughshod over those fundamental rights.

19.     The Order violates the First Amendment by retaliating against Susman Godfrey for its speech; by discriminating against Susman Godfrey for views or perspectives it or its clients have expressed; by interfering with the right to petition the government; by interfering with the Firm's associations with its clients; and by placing unconstitutional conditions on the Firm's exercise of its First Amendment rights.  The Executive cannot "use the power of the State to punish or suppress disfavored expression" or "attempt to coerce private parties in order to" accomplish those forbidden ends.  *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 180, 188 (2024).

20.     The Order violates the Due Process Clause of the Fifth Amendment by depriving Susman Godfrey of protected liberty and property interests without any procedural protections at

all; by purporting to prohibit the Firm from taking actions that may violate a set of rules with boundaries that are, at best, vague and undefined; by purporting to deprive the Firm's clients of their right to counsel (a right that the Firm has standing to assert); and by discriminating against the Firm in violation of its right to equal protection.

21.     The Order violates the Constitution's foundational structure—its separation of powers—by taking action for which the Executive Branch has no constitutional or statutory authority whatsoever.  In doing so, the Order intrudes on the judicial branch's sanctioning authority and the legislature's power of the purse.  The President cannot take *ultra vires* action by purporting to exercise power he has not been granted by statute or the Constitution.  *See Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 188-89 (1999); *accord Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).  And the President cannot usurp congressional spending power by terminating contracts of Susman Godfrey's clients in retaliation for Susman Godfrey's exercise of its constitutionally protected rights.  *See USAID v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214-15 (2013).

22.     Each one of those constitutional violations warrants immediate action to declare the Order unconstitutional, enjoin its implementation, and take all actions necessary to halt and remedy its effects.  The Order represents a clear and harmful attempt to discourage law firms and their clients from challenging abuses of government power.  "When the Constitution was adopted, it was well known that courts could not properly discharge their functions without the aid of counsel; and it was equally well known that such a class of men, in a free government, was absolutely necessary to the protection of the citizen and the defence of constitutional liberty."  *Ex parte Garland*, 71 U.S. 333, 370 (1866).  "Lawyers [thus] . . . occupy professional positions of

responsibility and influence that impose on them duties correlative with their vital right of access to the courts." *Application of Griffiths*, 413 U.S. 717, 729 (1973).

23.    That lawyers are "engaged in a private profession" makes them no less "important . . . to our system of justice." *Cammer v. United States*, 350 U.S. 399, 405 (1956). Through their advocacy, lawyers have shaped and defined the Constitution's central guarantees. And because every Susman Godfrey attorney is an "'officer of the court,'" it is the duty of each "to further the interests of [their] clients by all lawful means, even when those interests are in conflict with the interests of the United States or of a State." *Griffiths*, 413 U.S. at 724 n.14.  The Order retaliates against and restricts the proper and honorable exercise of that duty and, in doing so, not only irreparably harms Susman itself but also casts a chilling pall over lawyers and law firms across the country.

## **PARTIES**

24.    Plaintiff Susman Godfrey LLP is a Texas limited liability partnership, founded in Houston, Texas in 1980.[3]  It has offices in Houston, Los Angeles, New York, and Seattle.

25.    The named defendants include the United States as well as (1) federal departments and agencies that are directed to implement the Order, took steps to implement the Order, and/or were contacted by the Department of Justice when the Department of Justice took steps to ensure that all Executive Branch entities complied with the Court's temporary restraining order; and (2) the heads of those departments and agencies.  The Order expressly directs certain defendants to obstruct the ability of Susman Godfrey lawyers to practice law and serve the Firm's clients.  Other named defendants have contracts with Susman Godfrey clients and are directed by the Order to

---

[3] This complaint will refer to Plaintiff Susman Godfrey LLP as "Susman Godfrey," "Susman," or "the Firm."

take actions (*e.g.*, canceling or threatening cancellation of those contracts) that are aimed at harming those clients' relationships with the Firm.

26.     The Executive Office of the President is a federal agency or department headquartered in Washington, D.C.

27.     The U.S. Department of Justice is a federal agency or department headquartered in Washington, D.C.

28.     The Office of Management and Budget is a federal agency or department headquartered in Washington, D.C.

29.     The Securities and Exchange Commission is a federal agency or department headquartered in Washington, D.C.

30.     The U.S. International Trade Commission is a federal agency or department headquartered in Washington, D.C.

31.     The Federal Trade Commission is a federal agency or department headquartered in Washington, D.C.

32.     The U.S. Patent and Trademark Office is a federal agency or department headquartered in Alexandria, Virginia.

33.     The Equal Employment Opportunity Commission is a federal agency or department headquartered in Washington, D.C.

34.     The Department of the Treasury is a federal agency or department headquartered in Washington, D.C.

35.     The Department of Defense is a federal agency or department headquartered in Washington, D.C.

36.     The Department of Health and Human Services is a federal agency or department headquartered in Washington, D.C.

37.     The Department of Education is a federal agency or department headquartered in Washington, D.C.

38.     The Department of Veterans Affairs is a federal agency or department headquartered in Washington, D.C.

39.     The Office of the Director of National Intelligence is a federal agency or department headquartered in McLean, Virginia.

40.     The Central Intelligence Agency is a federal agency or department headquartered in McLean, Virginia.

41.     The Environmental Protection Agency is a federal agency or department headquartered in Washington, D.C.

42.     The Department of Homeland Security is a federal agency or department headquartered in Washington, D.C.

43.     The Department of State is a federal agency or department headquartered in Washington, D.C.

44.     The Department of Energy is a federal agency or department headquartered in Washington, D.C.

45.     The Department of Labor is a federal agency or department headquartered in Washington, D.C.

46.     The Department of Agriculture is a federal agency or department headquartered in Washington, D.C.

47.    The Department of Commerce is a federal agency or department headquartered in Washington, D.C.

48.    The Department of Housing and Urban Development is a federal agency or department headquartered in Washington, D.C.

49.    The Small Business Administration is a federal agency or department headquartered in Washington, D.C.

50.    The Office of the U.S. Trade Representative is a federal agency or department headquartered in Washington, D.C.

51.    The Department of the Interior is a federal agency or department headquartered in Washington, D.C.

52.    The Department of Transportation is a federal agency or department headquartered in Washington, D.C.

53.    Pamela J. Bondi is the Attorney General of the United States and the head of Defendant U.S. Department of Justice. She is sued in her official capacity.

54.    Russell T. Vought is the Director of Defendant the Office of Management and Budget. He is sued in his official capacity.

55.    Paul S. Atkins is the Acting Chairman of Defendant Securities and Exchange Commission. He is sued in his official capacity. Commissioners Hester M. Pierce, Caroline A. Crenshaw, and Mark T. Uyeda are sued in their official capacities.

56.    Andrew N. Ferguson is the Chairman of Defendant Federal Trade Commission. He is sued in his official capacity. Commissioners Melissa Holyoak and Mark M. Meador are sued in their official capacities.

57.     Coke Morgan Stewart is the Acting Under Secretary of Commerce for Intellectual Property and the Acting Director of Defendant U.S. Patent and Trademark Office.  She is sued in her official capacity.

58.     Scott Bessent is the Secretary of the Treasury and the head of Defendant Department of the Treasury.   He is sued in his official capacity.

59.     Amy A. Karpel is Chair of Defendant U.S. International Trade Commission.  She is sued in her official capacity.  Commissioners David S. Johnson and Jason E. Kearns are sued in their official capacities.

60.     Andrea R. Lucas is Acting Chair of Defendant Equal Employment Opportunity Commission.  She is sued in her official capacity.

61.     Peter B. Hegseth is the Secretary of Defense and the head of Defendant U.S. Department of Defense.  He is sued in his official capacity.

62.     Robert F. Kennedy, Jr. is the Secretary of Health and Human Services and the head of Defendant U.S. Department of Health and Human Services.  He is sued in his official capacity.

63.     Linda M. McMahon is the Secretary of Education and the head of Defendant U.S. Department of Education.  She is sued in her official capacity.

64.     Douglas A. Collins is the Secretary of Veterans Affairs and the head of Defendant U.S. Department of Veterans Affairs.  He is sued in his official capacity.

65.     Tulsi Gabbard is the Director of National Intelligence and the head of Defendant Office of the Director of National Intelligence.  She is sued in her official capacity.

66.     John L. Ratcliffe is the Director of the Central Intelligence Agency and the head of Defendant Central Intelligence Agency.  He is sued in his official capacity.

67.     Lee M. Zeldin is the Administrator of the Environmental Protection Agency and the head of Defendant Environmental Protection Agency.  He is sued in his official capacity.

68.     Kristi Noem is the Secretary of Homeland Security and the head of Defendant Department of Homeland Security.  She is sued in her official capacity.

69.     Marco Rubio is the Secretary of State and the head of Defendant Department of State.  He is sued in his official capacity.

70.     Chris Wright is the Secretary of Energy and the head of Defendant Department of Energy.  He is sued in his official capacity.

71.     Lori Chavez-DeRemer is the Secretary of Labor and the head of Defendant Department of Labor.  She is sued in her official capacity.

72.     Brooke L. Rollins is the Secretary of Agriculture and the head of Defendant Department of Agriculture.  She is sued in her official capacity.

73.     Howard Lutnick is the Secretary of Commerce and the head of Defendant Department of Commerce.  He is sued in his official capacity.

74.     Scott Turner is the Secretary of Housing and Urban Development and the head of Defendant Department of Housing and Urban Development.  He is sued in his official capacity.

75.     Kelly Loeffler is the Administrator of the Small Business Administration and head of Defendant U.S. Small Business Administration.  She is sued in her official capacity.

76.     Jamieson Greer is the U.S. Trade Representative and head of Defendant Office of the U.S. Trade Representative.  He is sued in his official capacity.

77.     Doug Burgum is Secretary of the Interior and head of Defendant Department of the Interior.  He is sued in his official capacity.

78.     Sean Duffy is Secretary of Transportation and head of Defendant Department of Transportation.  He is sued in his official capacity.

78.1.    The U.S. Department of the Air Force is a federal agency or department headquartered in Washington, D.C.  Gary A. Ashworth is Acting Secretary of the Air Force and head of Defendant U.S. Department of the Air Force.  He is sued in his official capacity.

78.2.    The U.S. Department of the Army is a federal agency or department headquartered in Washington, D.C.  Daniel P. Driscoll is Acting Secretary of the Army and head of Defendant U.S. Department of the Army.  He is sued in his official capacity.

78.3.    The U.S. Department of the Navy is a federal agency or department headquartered in Washington, D.C.  John Phelan is Acting Secretary of the Navy and head of Defendant U.S. Department of the Navy.  He is sued in his official capacity.

78.4.    The Administration for Children and Families is a federal agency or department headquartered in Washington, D.C.  Andrew Gradison is its Acting Assistant Secretary and is sued in his official capacity.

78.5.    The Administration for Strategic Preparedness and Response is a federal agency or department headquartered in Washington, D.C.  John Knox is its Principal Deputy Assistant Secretary for Preparedness and Response and is sued in his official capacity.

78.6.    The Advisory Council on Historic Preservation is a federal agency or department headquartered in Washington, D.C.  Reid Nelson is its Chairman and is sued in his official capacity.

78.7.    AmeriCorps is a federal agency or department headquartered in Washington, D.C. Jennifer Bastress Tahmasebi is its Interim Agency Head and is sued in her official capacity.

78.8.     The Appalachian Regional Commission is a federal agency or department headquartered in Washington, D.C.  Gayle Conelly Manchin is its Co-Chair and is sued in her official capacity.

78.9.     The Biomedical Advanced Research and Development Authority is a federal agency or department headquartered in Washington, D.C.  Gary Disbrow is its Director and is sued in his official capacity.

78.10.    The Bonneville Power Administration is a federal agency or department headquartered in Portland, Oregon.  John Hairston is its Administrator and Chief Executive Officer and is sued in his official capacity.

78.11.    The Bureau of Economic Analysis is a federal agency or department headquartered in Suitland, Maryland.  Vipin Arora is its Director and is sued in his official capacity.

78.12.    The Bureau of Indian Affairs is a federal agency or department headquartered in Washington, D.C.  Bryan Mercier is its Director and is sued in his official capacity.

78.13.    The Bureau of Industry and Security is a federal agency or department headquartered in Washington, D.C.  Jeffrey Kessler is its Under Secretary for Industry and Security and is sued in his official capacity.

78.14.    The Bureau of Land Management is a federal agency or department headquartered in Washington, D.C.  Michael D. Nedd is its Director and is sued in his official capacity.

78.15.    The Bureau of Ocean Energy Management is a federal agency or department headquartered in Washington, D.C.  Walter Cruickshank is its Director and is sued in his official capacity.

78.16.    The Bureau of Reclamation is a federal agency or department headquartered in Washington, D.C.  David Palumbo is its Acting Commissioner and is sued in his official capacity.

78.17.    The Bureau of Safety and Environmental Enforcement is a federal agency or department headquartered in Washington, D.C.  Paul Huang is its Acting Director and is sued in his official capacity.

78.18.    The Bureau of the Census is a federal agency or department headquartered in Washington, D.C.  Ron S. Jarmin is its Acting Director and sued in his official capacity.

78.19.    The Centers for Disease Control and Prevention is a federal agency or department headquartered in Atlanta, Georgia.  Susan Monarez is its Acting Director, First Assistant to the Director, and Principal Deputy Director and is sued in her official capacity.

78.20.    The Centers for Medicare and Medicaid Services is a federal agency or department headquartered in Washington, D.C.  Dr. Mehmet Oz is its Administrator and is sued in his official capacity.

78.21.    The Chemical Safety Board is a federal agency or department headquartered in Washington, D.C.  Steve Owens is its Chairperson and is sued in his official capacity.

78.22.    The Commission of Fine Arts is a federal agency or department headquartered in Washington, D.C.  Billie Tsien is its Chairperson and is sued in her official capacity.

78.23.    The Committee on Foreign Investment in the United States is a federal agency or department headquartered in Washington, D.C.  Scott Bessent is its Chairperson and is sued in his official capacity.

78.24.    The Commodity Futures Trading Commission is a federal agency or department headquartered in Washington, D.C.  Caroline D. Pham is its Acting Chairman and is sued in her

official capacity.  Commissioners Kristin N. Johnson, Christy Goldsmith Romero, and Summer K. Mersinger are sued in their official capacities.

78.25.    The Consumer Financial Protection Bureau is a federal agency or department headquartered in Washington, D.C.  Scott Bessent is its Acting Director and is sued in his official capacity.

78.26.    The Council of Inspectors General on Integrity and Efficiency is a federal agency or department headquartered in Washington, D.C.  Deidre Harrison is its Acting Deputy Director for Management and sued in her official capacity.

78.27.    The Council on Environmental Quality is a federal agency or department headquartered in Washington, D.C.  Katherine Scarlett is its Acting Chair and is sued in her official capacity.

78.28.    The Defense Contract Audit Agency is a federal agency or department headquartered in Fort Belvoir, Virginia.  Jennifer Desautel is its Director and is sued in her official capacity.

78.29.    The Defense Contract Management Agency is a federal agency or department headquartered in Fort Lee, Virginia.  Lieutenant General Gregory L. Masiello is its Director and is sued in his official capacity.

78.30.    The Defense Intelligence Agency is a federal agency or department headquartered in Washington, D.C.  Lieutenant General Jeffrey A. Kruse is its Director and is sued in his official capacity.

78.31.    The Defense Logistics Agency is a federal agency or department headquartered in Fort Belvoir, Virginia.  Lieutenant General Mark T. Simerly is its Director and is sued in his official capacity.

78.32.    The Denali Commission is a federal agency or department headquartered in Anchorage, Alaska.  Julie E. Kitka is its Federal Co-Chair and is sued in her official capacity.

78.33.    The Directorate of Defense Trade Controls is a federal agency or department headquartered in Washington, D.C.  Michael J. Vaccaro is the Deputy Assistant Secretary of State for Defense Trade Controls and is sued in his official capacity.

78.34.    The Drug Enforcement Administration is a federal agency or department headquartered in Springfield, Virginia.  Derek S. Maltz is its Acting Administrator and is sued in his official capacity.

78.35.    The Export-Import Bank of the United States is a federal agency or department headquartered in Washington, D.C.  James C. Cruse is its Acting President and Chairman and is sued in his official capacity.

78.36.    The Farm Credit System Insurance Corporation is a federal agency or department headquartered in McLean, Virginia.  Glen R. Smith is its Chairman and is sued in his official capacity.

78.37.    The Federal Aviation Administration is a federal agency or department headquartered in Washington, D.C.  Chris Rocheleau is its Acting Administrator and is sued in his official capacity.

78.38.    The Federal Bureau of Investigation is a federal agency or department headquartered in Washington, D.C.  Kash Patel is its Director and is sued in his official capacity.

78.39.    The Federal Bureau of Prisons is a federal agency or department headquartered in Washington, D.C.  William K. Marshall III is its Director and is sued in his official capacity.

78.40.    The Federal Communications Commission is a federal agency or department headquartered in Washington, D.C.  Brendan Carr is its Chairman and is sued in his official

capacity.  Commissioners Geoffrey Starks, Nathan Simington, and Anna M. Gomez are sued in their official capacities.

78.41.    The Federal Deposit Insurance Corporation is a federal agency or department headquartered in Washington, D.C.  Travis Hill is its Acting Chairman and is sued in his official capacity.

78.42.    The Federal Election Commission is a federal agency or department headquartered in Washington, D.C.  James E. Trainor III is its Vice Chairman and Acting Chairman and is sued in his official capacity.  Commissioners Shana M. Broussard and Dara Lindenbaum are sued in their official capacity.

78.43.    The Federal Emergency Management Agency is a federal agency or department headquartered in Washington, D.C.  Cameron Hamilton is its Administrator and is sued in his official capacity.

78.44.    The Federal Energy Regulatory Commission is a federal agency or department headquartered in Washington, D.C. Mark C. Christie is its Chairman and is sued in his official capacity.  Commissioners David Rosner, Lindsay S. See, and Judy W. Chang are sued in their official capacities.

78.45.    The Federal Highway Administration is a federal agency or department headquartered in Washington, D.C.  Gloria M. Shepherd is its Executive Director and Acting Administrator and is sued in her official capacity.

78.46.    The Federal Housing Finance Agency is a federal agency or department headquartered in Washington D.C.  William J. Pulte is its Director and is sued in his official capacity.

78.47.   The Federal Labor Relations Authority is a federal agency or department headquartered in Washington D.C.  Colleen Duffy Kiko is its Chairman and is sued in her official capacity.  Members Susan Tsui Grundmann and Anne M. Wagner are sued in their official capacities.

78.48.   The Federal Maritime Commission is a federal agency or department headquartered in Washington D.C. Louis E. Sola is its Chairman and is sued in his official capacity.  Commissioners Rebecca F. Dye, Daniel B. Maffei, and Max Vekich are sued in their official capacity.

78.49.   The Federal Mediation and Conciliation Service is a federal agency or department headquartered in Washington D.C.  Gregory Goldstein is its acting Director and is sued in his official capacity.

78.50.   The Federal Mine Safety and Health Review Commission is a federal agency or department headquartered in Washington D.C. Mary Lu Jordan is its Chair and is sued in her official capacity.  Commissioners Timothy J. Baker and Moshe Z. Marvit are sued in their official capacities.

78.51.   The Federal Permitting Improvement Steering Council is a federal agency or department headquartered in Washington D.C.  Manisha Patel is its Executive Director and is sued in her official capacity.

78.52.   The Federal Railroad Administration is a federal agency or department headquartered in Washington D.C.  Michael Lestingi is its Executive Director and is sued in his official capacity.  Members Thomas R. Jayne and John Bragg are sued in their official capacities.

78.53.    The Federal Retirement Thrift Investment Board is a federal agency or department  headquartered in Washington D.C.  Dana Bilyeu is its acting Chair and is sued in her official capacity.

78.54.    The Federal Transit Administration is a federal agency or department headquartered in Washington D.C.  Matthew Welbes is its Executive Director and is sued in his official capacity.

78.55.    The Financial Crimes Enforcement Network is a federal agency or department headquartered in Vienna, Virginia.  Andrea Gacki is its Director and is sued in her official capacity.

78.56.    The Food and Drug Administration is a federal agency or department headquartered in Rockville, Maryland.  Martin A. Makary, Ph.D. is its Commissioner of Food and Drugs and is sued in his official capacity.

78.57.    The General Services Administration is a federal agency or department headquartered in Washington, D.C.  Stephen Ehekian is its Acting Administrator and is sued in his official capacity.

78.58.    The Grid Deployment Office is a federal agency or department headquartered in Washington, D.C.  Nick Elliot is its Director and is sued in his official capacity.

78.59.    The Gulf Coast Ecosystem Restoration Council (RESTORE the Gulf) is a federal agency or department headquartered in New Orleans, Louisiana.  Lee M. Zeldin is one of the Members of the RESTORE Council and is sued in his official capacity.

78.60.    The Health Resources and Services Department is a federal agency or department headquartered in Rockville, Maryland.  Thomas J. Engels is Administrator of the Health Resources and Services Administration and is sued in his official capacity.

65

78.61.    The Institute of Museum and Library Services is a federal agency or department headquartered in Washington, D.C. Keith Sonderling is its Chairperson and is sued in his official capacity.

78.62.    The Internal Revenue Service is a federal agency or department headquartered in Washington, D.C.  Michael Faulkender is its Acting Commissioner and is sued in his official capacity.

78.63.    The International Trade Administration is a federal agency or department headquartered in Washington, D.C.  Diane Farrell is its Deputy Under Secretary for International Trade and Acting Chair and is sued in her official capacity.

78.64.    The Joint Chiefs of Staff is a  federal agency or department headquartered in Washington, D.C. General Dan Caine is its Chairman and is sued in his official capacity.

78.65.    The Kennedy Center is a federal agency or department headquartered in Washington, D.C. Richard Grenell is its President and is sued in his official capacity.

78.66.    The Loan Programs Office is a federal agency or department headquartered in Washington, D.C. Lane Genatowski is its Director and is sued in his official capacity.

78.67.    The National Aeronautics and Space Administration is a federal agency or department headquartered in Washington, D.C. Janet Petro is its Administrator and is sued in her official capacity.

78.68.    The National Archives and Records Administration is a federal agency or department headquartered in Washington, D.C. Marco Rubio is its Acting Archivist and is sued in his official capacity.

78.69.   The National Counterterrorism Center is a federal agency or department headquartered in McLean, Virginia.  Don M. Holstead is its Acting Director and is sued in his official capacity.

78.70.   The National Endowment for the Arts is a federal agency or department headquartered in Washington, D.C.  Mary Anne Carter is its Acting Chair and is sued in her official capacity.

78.71.   The National Endowment for the Humanities is a federal agency or department headquartered in Washington, D.C. Michael McDonald is its Acting Chairman and is sued in his official capacity.

78.72.   The National Geospatial-Intelligence Agency is a federal agency or department headquartered in Springfield, Virginia.  Frank Whitworth is its Director and is sued in his official capacity.

78.73.   The National Indian Gaming Commission is a federal agency or department headquartered in Washington, D.C.  Sharon Avery is its Acting Chairwoman and is sued in her official capacity.

78.74.   The National Institute for Standards and Technology is a federal agency or department headquartered in Gaithersburg, Maryland.  Craig Burkhardt is its Acting Director and is sued in his official capacity.

78.75.   The National Institutes of Health is a federal agency or department headquartered in Bethesda, Maryland.  Jay Bhattacharya is its Director and is sued in his official capacity.

78.76.   The National Labor Relations Board is a federal agency or department headquartered in Washington, D.C.  Marvin E. Kaplan is its Chairman and is sued in his official capacity.  Member David M. Prouty is sued in his official capacity.

67

78.77.    The National Marine Fisheries Service is a federal agency or department headquartered in Silver Spring, Maryland.  Eugenio Piñeiro Soler is its Director and is sued in his official capacity.

78.78.    The National Mediation Board is a federal agency or department headquartered in Washington, D.C.  Loren E. Sweatt is its Chair and is sued in her official capacity.  Members Linda A. Puchala and Deirdre Hamilton are sued in their official capacities.

78.79.    The National Nuclear Security Administration is a federal agency or department headquartered in Washington, D.C. Teresa M. Robbins is its Acting Administrator and is sued in her official capacity.

78.80.    The National Oceanic and Atmospheric Administration is a federal agency or department headquartered in Washington, D.C.  Laura Grimm is its Administrator and is sued in her official capacity.

78.81.    The National Park Service is a federal agency or department headquartered in Washington, D.C.  Jessica Bowron is its Acting Director and is sued in her official capacity.

78.82.    The National Renewable Energy Laboratory is a federal agency or department headquartered in Washington, D.C. Martin Keller is its Laboratory Director and is sued in his official capacity.

78.83.    The National Science Foundation is a federal agency or department headquartered in Fort Meade, Maryland.  Victor McCrary is its Acting Director is sued in his official capacity.

78.84.    The National Security Agency is a federal agency or department headquartered in Fort Meade, Maryland.  Lieutenant General William J. Hartman is its Acting Director and is sued in his official capacity.

78.85.   The National Security Council is a federal agency or department headquartered in Washington, D.C.  Marco Rubio is the Acting National Security Advisor, and he is sued in his official capacity.

78.86.   The National Transportation Safety Board is a federal agency or department headquartered in Washington, D.C.  Jennifer Homendy is its Chair and is sued in her official capacity.  Vice Chairman Alvin Brown and Members Michael E. Graham, Thomas B. Chapman, and J. Todd Iman are sued in their official capacities.

78.87.   The Occupational Safety and Health Administration is a federal agency or department headquartered in Washington, D.C.  Amanda Wood Laihow is Acting Assistant Secretary of Labor for Occupational Safety and Health and is sued in her official capacity.

78.88.   The Occupational Safety and Health Review Commission is a federal agency or department headquartered in Washington, D.C.  Its Chair is sued in his or her official capacity.

78.89.   The Office of Clean Energy Demonstrations is a federal agency or department headquartered in Washington, D.C.  Cathy Tripodi is its Executive Director and is sued in her official capacity.

78.90.   The Office of Federal Contract Compliance Programs is a federal agency or department headquartered in Washington, D.C.  Catherine Eschbach is its Director and is sued in her official capacity.

78.91.   The Office of Foreign Assets Control is a federal agency or department headquartered in Washington, D.C.  Bradley T. Smith is its Director and is sued in his official capacity.

69

78.92.   The Office of Government Ethics is a federal agency or department headquartered in Washington, D.C.  Jamieson Greer is its Acting Director and is sued in his official capacity.

78.93.   The Office of Homeland Security Situational Awareness is a federal agency or department headquartered in Washington, D.C.  Christopher Tomney is its Director and is sued in his official capacity.

78.94.   The Office of National Drug Control Policy is a federal agency or department headquartered in Washington, D.C.  Jon Rice is its Acting Director and is sued in his official capacity.

78.95.   The Office of Personnel Management is a federal agency or department headquartered in Washington, D.C.  Charles Ezell is its Acting Director and is sued in his official capacity.

78.96.   The Office of Science and Technology Policy is a federal agency or department headquartered in Washington, D.C.  Michael Kratsios is its Director and is sued in his official capacity.

78.97.    The Office of Special Counsel is a federal agency or department headquartered in Washington, D.C.  Douglas A. Collins is its Acting Special Counsel and is sued in his official capacity.

78.98.    The Office of the Comptroller of the Currency is a federal agency or department headquartered in Washington, D.C.  Rodney E. Hood is its acting Comptroller of the Currency and is sued in his official capacity.

78.99.    The Office of the Inspector General is a federal agency or department headquartered in Washington, D.C.  Michael E. Horowitz is its Inspector General and is sued in his official capacity.

78.100.    The Patent Trial and Appeal Board is a federal agency or department headquartered in Alexandria, Virginia.  Coke Morgan Stewart is its Acting Director and is sued in her official capacity.

78.101.    The Peace Corps is a federal agency or department headquartered in Washington, D.C.  Allison Greene is its Chief Executive Officer and is sued in her official capacity.

78.102.    The Pension Benefit Guaranty Corporation is a federal agency or department headquartered in Washington, D.C. Alice Maroni is its Acting Director and is sued in her official capacity.

78.103.    The Presidio Trust is a federal agency or department headquartered in San Francisco, California.  Mark W. Buell is its chair and is sued in his official capacity.

78.104.    The Rural Utilities Service is a federal agency or department headquartered in Washington, D.C. Christopher A. McLean is its Acting Administrator and is sued in his official capacity.

78.105.    The Selective Service System is a federal agency or department headquartered in Arlington, Virginia.  Craig T. Brown is its Acting Director and is sued in his official capacity.

78.106.    The Smithsonian Institution is a federal agency or department headquartered in Washington, D.C.  Lonnie G. Bunch III is its Secretary and is sued in his official capacity.

78.107.    The Surface Transportation Board is a federal agency or department headquartered in Washington, D.C.  Patrick J. Fuchs is its Chairman and is sued in his official

capacity.  Members Robert E. Primus, Michelle A. Schultz, and Karen J. Hedlund are sued in their official capacities.

78.108.    The Tennessee Valley Authority is a federal agency or department headquartered in Knoxville, Tennessee.  Bill Renick is its Chair and is sued in his official capacity.

78.109.    The Trademark Trial and Appeal Board is a federal agency or department headquartered in Alexandria, Virginia.  Coke Morgan Stewart is its Acting Director and is sued in her official capacity.

78.110.    The U.S. Agency for Global Media, formerly known as the Broadcasting Board of Governors, is a federal agency or department headquartered in Washington, D.C. Victor Morales is its Acting Chief Executive Officer and is sued in his official capacity.

78.111.    The U.S. Agency for International Development is a federal agency or department headquartered in Washington, D.C.  Marco Rubio is its Acting Administrator and is sued in his official capacity.

78.112.    The U.S. Army Corps of Engineers is a federal agency or department headquartered in Washington, D.C.  Lieutenant General William H. Graham, Jr. is its Commanding General and is sued in his official capacity.

78.113.    U.S. Citizenship and Immigration Services is a federal agency or department headquartered in Washington, D.C.  Kika Scott is its Senior Official Performing the Duties of the Director and is sued in her official capacity.

78.114.    The U.S. Coast Guard is a federal agency or department headquartered in Washington, D.C.  Kevin E. Lunday is its Commandant and is sued in his official capacity.

78.115.    The U.S. Commission on Civil Rights is a federal agency or department headquartered in Washington, D.C.  Rochelle Garza is its Commission Chair and is sued in her official capacity.

78.116.    The U.S. Consumer Product Safety Commission is a federal agency or department headquartered in Bethesda, Maryland.  Peter A. Feldman is its Acting Chairman and is sued in his official capacity.

78.117.    U.S. Customs and Border Protection is a federal agency or department headquartered in Washington, D.C. Pete R. Flores is its Acting Commissioner and is sued in his official capacity.

78.118.    The U.S. Election Assistance Commission is a federal agency or department headquartered in Washington, D.C.  Donald L. Palmer is its Chairman and is sued in his official capacity.

78.119.    The U.S. Fish and Wildlife Service is a federal agency or department headquartered in Washington, D.C.  Paul Souza is its Regional Director, Pacific Southwest Region, exercising the delegated authority of the Director, U.S. Fish and Wildlife Service and is sued in his official capacity.

78.120.    The U.S. Forest Service is a federal agency or department headquartered in Washington, D.C.  Tom Schultz is its Chief and is sued in his official capacity.

78.121.    U.S. Immigration and Customs Enforcement is a federal agency or department headquartered in Washington, D.C. Todd M. Lyons is its Acting Director and is sued in his official capacity.

78.122.    The U.S. Merit Systems Protection Board is a federal agency or department headquartered in Washington, D.C.  Henry Kerner is its Acting Chairman and is sued in his official capacity.

78.123.    The U.S. Nuclear Waste Technical Review Board is a federal agency or department headquartered in Arlington, VA.  Peter Swift is its Chair and is sued in his official capacity.

78.124.    The U.S. Patent and Trademark Office is a federal agency or department headquartered in Alexandria, Virginia.  Coke Morgan Stewart is its acting Director and is sued in her official capacity.

78.125.    The U.S. Post Office is a federal agency or department headquartered in Washington, D.C.  Doug Tulino is Acting Postmaster General and is sued in his official capacity.

78.126.    The U.S. Postal Inspection Service is a federal agency or department headquartered in Washington, D.C.  Gary R. Barksdale is Chief Postal Inspector and is sued in his official capacity.

78.127.    The U.S. Privacy and Civil Liberties Oversight Board is a federal agency or department headquartered in Washington, D.C.  Beth Ann Williams is its Chair and is sued in her official capacity.

78.128.    The U.S. Railroad Retirement Board is a federal agency or department headquartered in Chicago, IL.  Erhard R. Chorlé is its Chairman and is sued in his official capacity.  Members Thomas R. Jayne and John Bragg are sued in their official capacities.

78.129.    The U.S. Secret Service is a federal agency or department headquartered in Washington, D.C.  Sean M. Curran is its Director and is sued in his official capacity.

78.130.    The U.S. Social Security Administration is a federal agency or department headquartered in Baltimore, Maryland.  Leland C. Dudek is its Acting Commissioner and is sued in his official capacity.

78.131.    The U.S. Space Force is a federal agency or department headquartered in Washington, D.C.  B. Chance Saltzman is its Chief of Space Operations and is sued in his official capacity.

78.132.    The U.S. Trade and Development Agency is a federal agency or department headquartered in Arlington, Virginia.  Thomas R. Hardy is its Director of Policy and Program Management and is sued in his official capacity.

78.133.    The U.S. Transportation Security Administration is a federal agency or department headquartered in Arlington, Virginia.  Ha Nguyen McNeill is its Acting Administrator and is sued in her official capacity.

79.    The United States of America is responsible for the exercise of executive action by the named defendants and any other departments and agencies that are directed by the Order to take action respecting Susman Godfrey.  Because Susman Godfrey attorneys and employees interact with and appear before numerous federal departments, agencies, and officials, and the Order at issue is directed generally to "heads of executive departments and agencies," Order §§ 2-5, the United States of America is included as a Defendant to ensure that the relief ordered by the Court will apply on a government-wide basis, including to any federal agencies that are not specifically listed as defendants.

## JURISDICTION AND VENUE

80.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Susman Godfrey's causes of action arise under the Constitution and laws of the United States.  This Court

also has jurisdiction under 28 U.S.C. § 1346(a)(2) because the defendants are United States officials.

81.     The Court has authority to enter a declaratory judgment and to provide temporary, preliminary, and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; the All Writs Act, 28 U.S.C. § 1651; and the Court's inherent equitable powers.

82.     Susman Godfrey also has a right to non-statutory review of *ultra vires* executive action. *See, e.g.*, *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327-28 (D.C. Cir. 1996). Among other powers, this Court has inherent equitable power to enjoin executive conduct that violates the Constitution, *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010), and "the President's actions" therefore "may . . . be reviewed for constitutionality," *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992).

83.     This Court also possesses the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015). The Supreme Court has repeatedly allowed equitable relief against federal officials who act "beyond th[e] limitations" imposed by federal statute. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

84.     Venue lies in this District under 28 U.S.C. § 1391(e)(1) because at least one defendant is an agency of the United States or is an officer or employee of the United States or an agency thereof sued in his or her official capacity and resides in this District.

## FACTUAL ALLEGATIONS

I.     **Susman Godfrey represents an array of clients on a wide range of matters.**

85.     In 1976, Susman Godfrey's founding partner Stephen Susman—then an attorney at a small Houston-based personal-injury and admiralty law firm—was approached by a small-

business owner seeking representation against more powerful adversaries.  Mr. Susman and his fellow attorney Gary McGowan took on that representation and, in 1980, founded their own seven-lawyer firm—now Susman Godfrey.  That first representation resulted in Susman Godfrey recovering $550 million on behalf of plaintiffs through settlements and after a successful verdict in a three-month jury trial.

86.     What began as a one-office, seven-attorney firm is now made up of 235 trial attorneys spread across four offices in Houston, Los Angeles, New York, and Seattle.  For the past ten consecutive years, Susman Godfrey has had the largest number of lawyers of any firm in the Nation named to *Lawdragon's* annual list of 500 Leading Lawyers.  For the past fourteen consecutive years, Susman Godfrey has been named as the #1 Litigation Boutique in the Nation by the Vault survey—a distinction Susman Godfrey has held since the survey's inception in 2011.  And in 2023, the Firm received the award for Specialty/Boutique Litigation Department of the Year from *The American Lawyer*.

87.     The Firm's lawyers routinely appear in federal courts across the country.  Susman Godfrey attorneys have already made in-person appearances in federal court dozens of times in 2025, and they have numerous additional appearances in federal court scheduled.  Susman Godfrey attorneys currently have seven trials in federal court scheduled for the next six months.  And the Firm has many more federal-court matters presently awaiting trial dates.  Representation of clients in federal court is thus critical to the work of the Firm's litigators.

88.     The Firm's lawyers also represent clients in matters pending before federal agencies and their adjudicatory bodies.  Attorneys representing whistleblowers often meet with—and work closely in conjunction with—prosecutors in U.S. Attorneys' Offices in pursuing and litigating False Claims Act *qui tam* cases seeking recovery of money by the federal government.  The Firm's

large patent-litigation portfolio often necessitates attorneys' participation in post-grant patent adjudications at the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office. The Firm's lawyers pursue unfair import proceedings before the U.S. International Trade Commission. The Firm's lawyers also represent small-business owners in litigation involving the Internal Revenue Service, a bureau of the Treasury Department, and frequently meet with lawyers and officials at the U.S. Department of Justice and the Internal Revenue Service in conjunction with that litigation. And the Firm's lawyers represent both plaintiffs and defendants in litigation concerning the discharge of hazardous substances and interact in those matters with lawyers and officials at the Environmental Protection Agency and the U.S. Department of Justice.

89.    Susman Godfrey lawyers have several matters currently pending before federal agencies and numerous upcoming meetings scheduled with federal-government personnel across various cases in the next 90 days, including with officials from U.S. Customs and Border Protection, the Department of Health and Human Services, and the U.S. Department of Justice. That work before federal agencies, too, is critical to the Firm's lawyers, practices, and client representations.

90.    All told, at least a third of the Firm's current active matters require Susman Godfrey lawyers to appear before federal courts or interact with federal agencies in some capacity.

91.    Susman Godfrey's lawyers come from all backgrounds and hold diverse political views. Nearly every partner and associate at the firm has completed at least one clerkship for a federal Article III judge—and the judges for which those lawyers have clerked have been appointed by both Republican and Democratic presidents. For example, of the ten current Susman Godfrey lawyers who have clerked for the Supreme Court, five clerked for Justices appointed by Republican presidents, and five clerked for Justices appointed by Democratic presidents. Two

former Susman Godfrey lawyers have been nominated and confirmed to serve as federal judges: one was nominated by President Trump and one by President Biden. And Republican governors have appointed four former Susman Godfrey lawyers to state-court judgeships.

92.     Many of Susman Godfrey's successful representations have arisen from the Firm's willingness to represent individuals and small companies in disputes against some of the largest and most powerful companies in the world. In 2024, Susman Godfrey won a $266 million verdict on behalf of the City of Baltimore against McKesson and AmerisourceBergen in the City's nearly seven-year lawsuit against the opioid distributors and manufacturers that fueled the worst opioid epidemic in the Nation.

93.     In 2023, the Firm secured a $787 million settlement with Fox News for its client Dominion Voting Systems, to resolve Dominion's claim that Fox defamed Dominion by falsely broadcasting to its viewers that Dominion's voting machines were at the center of a vast conspiracy in the 2020 election to steal votes from President Donald Trump and swing them to his Democratic challenger Joe Biden. Susman Godfrey also will shortly be trying a case on behalf of Dominion against Newsmax Media on the same topic. On April 9, 2025, mere hours before the President's Order targeting Susman Godfrey issued, the court in that case ruled on summary judgment that Newsmax had made false and defamatory statements. *See US Dominion, Inc. et al. v. Newsmax Media, Inc. et al.*, No. N21C-08-063 (Del. Super. Ct. Apr. 9, 2025). Susman Godfrey also continues to serve as counsel for Dominion in related defamation lawsuits against Rudy Giuliani, Sidney Powell, Mike Lindell and MyPillow, Patrick Byrne, and One America News Network.

94.     Susman Godfrey has at times taken on unpopular clients and controversial causes in pro bono representations. It successfully challenged as unconstitutional Harris County, Texas's practice of holding in jail tens of thousands of people who were arrested for misdemeanors but

were financially unable to post bail. It secured the release of a man wrongfully convicted for the abduction and rape of a 14-year-old girl. And it defended Harris County, Texas Judge Lina Hidalgo and other county officials in election contests in 2023.

95.    The Firm also is no stranger to suing the U.S. government. The Firm is suing a federal agency for user fees that it collected in violation of the agency's statutory and regulatory mandates. The Firm also is suing a federal agency on behalf of property owners for an inverse condemnation action. And the Firm is currently pursuing Fifth Amendment takings claims against the U.S. Navy on behalf of dozens of property owners whose property values and quality of life have decreased on account of a vast expansion of the Navy's flight-training program.

96.    In addition to litigating against the government, Susman Godfrey represents clients in matters directly adverse to President Trump's personal and political interests. The day before the Order issued, Susman Godfrey filed an *amicus* brief on behalf of former government officials in support of Perkins Coie LLP in its litigation against the government for a materially similar (and similarly unconstitutional) executive order. *See Perkins Coie LLP v. U.S. Dep't of Justice*, *et al.*, No. 1:25-cv-00716 (D.D.C. Apr. 8, 2025), ECF No. 98. And during the 2020 presidential election, Susman Godfrey represented state officials in litigation defending the integrity of that election.

97.    Among Susman Godfrey's clients, including several of the Firm's biggest clients, are nearly twenty persons and entities that contract with or otherwise do business with the federal government, or have affiliates who are government contractors and subcontractors.

## II.    **The President targets his political opponents and so-called "lawfare."**

98.    Less than two weeks before the 2024 election, then-candidate Trump was unequivocal in his stated plan to retaliate against his political opponents. In an October 25, 2024 post on Truth Social, then-candidate Trump wrote:

CEASE & DESIST: I, together with many Attorneys and Legal Scholars, am

watching the Sanctity of the 2024 Presidential Election very closely because I know, better than most, the rampant Cheating and Skullduggery that has taken place by the Democrats in the 2020 Presidential Election. It was a Disgrace to our Nation! Therefore, the 2024 Election, where Votes have just started being cast, will be under the closest professional scrutiny and, WHEN I WIN, those people that CHEATED will be prosecuted to the fullest extent of the Law, which will include long term prison sentences so that this Depravity of Justice does not happen again. We cannot let our Country further devolve into a Third World Nation, AND WE WON'T! Please beware that this legal exposure extends to Lawyers, Political Operatives, Donors, Illegal Voters, & Corrupt Election Officials. Those involved in unscrupulous behavior will be sought out, caught, and prosecuted at levels, unfortunately, never seen before in our Country.[4]

99.    Once elected, President Trump reaffirmed his commitment "to end the Lawfare once and for all,"[5] which he defined as the "Weaponization of our Justice System against a Political Opponent."[6]

100.    On January 27, 2025—one week after swearing to preserve, protect, and defend the Constitution of the United States—President Trump posted on his Truth Social account a link to an article written by Victoria Toensing and John Yoo entitled *Prosecute The Architects Of Trump Lawfare For Election Interference* that advocated targeting the President's political opponents by, among other things, "[o]btaining phone records and emails, reviewing White House logs, and putting witnesses under oath before Congress or a grand jury" to decide whether there was a criminal "conspiracy" to inhibit President Trump's run for office.[7]

---

[4] Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 25, 2024, 10:32 AM), https://truthsocial.com/@realDonaldTrump/posts/113369255491639591.

[5] Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 17, 2024, 7:44 AM), https://truthsocial.com/@realDonaldTrump/posts/113668931527088240.

[6] Donald J. Trump (@realDonaldTrump), Truth Social (Jan. 9, 2025, 5:02 PM), https://truthsocial.com/@realDonaldTrump/posts/113801361784208511.

[7] Victoria Toensing & John Yoo, *Prosecute The Architects Of Trump Lawfare For Election Interference*, The Federalist (Jan. 27, 2025), https://thefederalist.com/2025/01/27/prosecute-the-architects-of-trump-lawfare-for-election-interference/; *see* Donald J. Trump (@realDonaldTrump), Truth Social (Jan. 27, 2025, 6:46 PM), https://truthsocial.com/@realDonaldTrump/posts/113903692672828515.

101.    Since his election, President Trump has told Fox News that "[w]e have a lot of law firms that we're going to be going after, because they were very dishonest people."[8]  On March 14, 2025, he delivered a speech at the Department of Justice denouncing "crooked law firms," "violent, vicious lawyers," and "fake lawyers."[9]  When asked in the Oval Office how he would respond to critics who argue that recently issued executive orders against law firms amount to coercion, the President responded:  "You mean the law firms that we're going after, that went after me for four years ruthlessly, violently, illegally?  Are those the law firms you're talking about?"[10] And at a March 24, 2025, meeting of the Cabinet, the President explained that executive orders targeting law firms were necessary in his view because "[t]he law firms have to behave themselves," and "[t]hey behave very badly, very wrongly."[11]

102.    Those closely associated with President Trump have made similar comments concerning the intent behind the President's executive orders targeting law firms.  Steve Bannon

---

[8] Alex Woodward, *Trump Confirms Retribution Campaign Against Law Firms that Clash with his Agenda*, The Independent (Mar. 9, 2025), https://www.the-independent.com/news/world/americas/us-politics/trump-law-firms-executive-order-interview-b2711843.html.

[9] *See Donald Trump Addresses the Staff at the Department of Justice*, Roll Call (Mar. 14, 2025), https://rollcall.com/factbase/trump/transcript/donald-trump-speech-department-of-justice-march-14-2025/.

[10] *Trump Suggests Law Firms 'Want to Make Deals' After Rescinding Paul, Weiss Order*, The Hill (Mar. 21, 2025), https://thehill.com/video/trump-suggests-law-firms-'want-to-make-deals'-after-rescinding-paul-weiss-order/10560109/.

[11] Michael Birnbaum, *Law firms refuse to represent Trump opponents in the wake of his attack*, Wash. Post (Mar. 25, 2025), https://www.washingtonpost.com/politics/2025/03/25/trump-law-firms/.

has stated that President Trump is "going after" law firms "to cut them off."[12]  According to Mr.

Bannon, "what we are trying to do is put you [law firms] out of business and bankrupt you."[13]

103.    Consistent with those statements, the President has taken a variety of retaliatory

actions over the last several months.  On February 25, 2025, the President took actions to revoke

security clearances held by his political enemies.  He issued a memorandum to intelligence

community agency heads directing them "to suspend any active security clearances held by Peter

Koski and all members, partners, and employees of Covington & Burling LLP who assisted former

Special Counsel Jack Smith during his time as Special Counsel" pending a review and to

"terminate any engagement of Covington."[14]  As Special Counsel, Jack Smith brought criminal

charges against then-former President Trump in two cases involving challenges to the 2020

election results and retention of sensitive government documents after leaving office.  When

signing the memorandum, President Trump told reporters:  "We're going to call it the deranged

Jack Smith signing, or bill," adding that "[t]he weaponization of our system by law firms, even

pro bono work they're doing in order to clog up government, stop government.  And nobody knows

about it better than me and, hopefully, that will never happen again."[15]

---

[12] *Steve Bannon: "There's Major Law Firms in Washington, D.C." and "What We Are Trying to Do Is Put You Out of Business and Bankrupt You,"* Media Matters (Mar. 13, 2025), https://www.mediamatters.org/steve-bannon/steve-bannon-theres-major-law-firms-washington-dc-and-what-we-are-trying-do-put-you.

[13] *Id.*

[14] Presidential Memorandum, *Suspension of Security Clearances and Evaluation of Government Contracts* (Feb. 25, 2025), https://www.whitehouse.gov/presidential-actions/2025/02/suspension-of-security-clearances-and-evaluation-of-government-contracts/.

[15] Josh Gerstein & Kyle Cheney, *Trump Targets Washington Law Firm That Aided Jack Smith*, Politico (Feb. 25, 2025), https://www.politico.com/news/2025/02/25/donald-trump-jack-smith-covington-lawyers-022770.

104.    On March 6, 2025, the President signed an Executive Order titled "Addressing Risks from Perkins Coie LLP" ("Perkins Order")[16] and issued an accompanying "Fact Sheet."[17] The stated premise of the Perkins Order was to impose punishment on that law firm for "representing failed Presidential candidate Hillary Clinton" and "work[ing] with activist donors including George Soros to judicially overturn popular, necessary, and democratically enacted election laws, including those requiring voter identification."  Perkins Order § 1.  The Perkins Order directed agency heads to terminate contracts with Perkins Coie; require all government contractors to disclose any business with Perkins Coie; review all contracts with Perkins Coie's clients; limit Perkins Coie personnel's access to federal government buildings; and limit government officials from engaging in their official capacity with Perkins Coie employees.  *Id.* §§ 3-5.

105.    President Trump and his leadership also explained the motivations for the Perkins Order.  The accompanying Fact Sheet stated that "Perkins Coie LLP has filed lawsuits against the Trump Administration, including one designed to reduce military readiness."  Perkins Fact Sheet. At the signing ceremony for the Perkins Order, President Trump declared that it was "an absolute honor to sign" and that "the weaponization against a political opponent . . .  should never be allowed to happen again."[18]  A White House official later "speaking on the condition of anonymity to talk frankly about the sensitive decision-making behind the order" told the Washington Post that

---

[16]  Executive Order, *Addressing Risks from Perkins Coie LLP* (Mar. 6, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-perkins-coie-llp/.

[17] *Fact Sheet: President Donald J. Trump Addresses Risks from Perkins Coie LLP* (Mar. 6, 2025), https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-adresses-risks-from-perkins-coie-llp/.

[18]  Megan Messerly, *Trump Targets Prominent Democratic-Linked Law Firm*, Politico (Mar. 6, 2025),     https://www.politico.com/news/2025/03/06/trump-security-clearance-steele-dossier-025203.

"[t]he president doesn't believe they should have the privileges afforded to companies of their stature to work and operate with the federal government, since they have made it very clear they are vehemently against the president of the United States, and their work proves that."[19]

106.    On March 12, 2025, a court in this District issued a temporary restraining order against the Perkins Order, holding that Perkins Coie is likely to prevail in establishing that the order violates "at least" the First, Fifth, and Sixth Amendments.  The court required the defendants to rescind any guidance implementing the order and to communicate with entities who had been asked to disclose any relationships with Perkins Coie that any such request was rescinded pending further order of the Court.  *See* Tr. of TRO Hrg. at 107:16-110:21, *Perkins Coie LLP v. U.S. Dep't of Just.*, No. 1:25-cv-716 (D.D.C. Mar. 12, 2025), ECF No. 22 ("*Perkins Coie* Tr.").  At the hearing on the motion to restrain the Perkins Order, the judge described the order as an "effort to intimidate" attorneys that "casts a chilling harm . . . of blizzard proportions across the entire legal profession."  Tr. at 95:22-96:2, *Perkins Coie LLP v. Department of Justice*, No. 25-cv-716 (D.D.C. Mar. 12, 2025), ECF No. 22.

107.    Two days later, on March 14, 2025, the President issued an Executive Order targeting Paul, Weiss, Rifkind, Wharton & Garrison LLP (the "Paul Weiss Order").[20]  The Paul Weiss Order sought retribution for the firm's association with a former Paul Weiss lawyer who later worked as a prosecutor for the Special Counsel and with former Paul Weiss partner Mark Pomerantz.  The Order accused Mr. Pomerantz of leaving the firm "to join the Manhattan District Attorney's office solely to manufacture a prosecution against" the President."  Paul Weiss Order

---

[19] Perry Stein & Michael Birnbaum, *Trump Expands Retribution Campaign Against Law Firms That Aided His Foes*, Wash. Post (Mar. 6, 2025), https://www.washingtonpost.com/national-security/2025/03/06/trump-perkins-coie-hillary-clinton-steele-dossier/.

[20] Executive Order, *Addressing Risks from Paul Weiss* (Mar. 14, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-paul-weiss/.

§ 1.  The Paul Weiss Order imposed similar punishments as the Perkins Order:  stripping all Paul Weiss employees of security clearances; requiring government contractors to disclose their attorney-client relationships with Paul Weiss; and restricting the ability of Paul Weiss personnel to enter federal buildings, engage with federal employees, and obtain federal employment.  The Paul Weiss Order stated that restricting access to federal buildings was necessary because the firm's "access would threaten the national security of or otherwise be inconsistent with the interests of the United States."  *Id.* § 5.

108.    The Paul Weiss Order also articulated a broader grievance with the legal profession, stating:

> Global law firms have for years played an outsized role in undermining the judicial process and in the destruction of bedrock American principles . . . .  [T]hey have sometimes done so on behalf of clients, pro bono, or ostensibly "for the public good"—potentially depriving those who cannot otherwise afford the benefit of top legal talent the access to justice deserved by all.  My Administration will no longer support taxpayer funds sponsoring such harm.

Paul Weiss Order § 1.

109.    On March 20, 2025, on Truth Social, the President announced that, as part of an "agreement" with Paul Weiss, he would withdraw the Paul Weiss Order.  The President stated that "Paul Weiss will dedicate the equivalent of $40 million in pro bono legal services over the course of President Trump's term to support the Administration's initiatives."[21]  He also stated that he was "agreeing to this action in light of a meeting with Paul, Weiss Chairman, Brad Karp, during which Mr. Karp acknowledged the wrongdoing of former Paul, Weiss partner, Mark Pomerantz."[22]  Mr. Karp, Paul Weiss's Chairman, stated:  "We are gratified that the President has agreed to

---

[21]  Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 20, 2025, 3:10 PM), https://truthsocial.com/@realDonaldTrump/posts/114197044617921519.
[22]  *Id.*

withdraw the Executive Order concerning Paul, Weiss. We look forward to an engaged and constructive relationship with the President and his Administration."[23]

110.    On March 21, 2025, the President formally rescinded the Paul Weiss Order by way of another Executive Order titled "Addressing Remedial Action by Paul Weiss."[24]  The stated basis for the revocation was Paul Weiss's "indicat[ion] that it will engage in a remarkable change of course."[25]

111.    On March 22, 2025, the President issued yet another directive aimed at law firms and lawyers he disfavors.  In a Presidential Memorandum entitled "Preventing Abuses of the Legal System and the Federal Court,"[26] issued with an accompanying "Fact Sheet,"[27] the President directed the Attorney General and Secretary of Homeland Security to, among other things, "review conduct by attorneys or their law firms in litigation against the Federal Government over the last 8 years," "prioritize enforcement of [agency] regulations governing attorney conduct and discipline," and "recommend to the President . . . additional steps . . . , including reassessment of security clearances held by the attorney, termination of any contract for which the relevant attorney or law firm has been hired to perform services, or any other appropriate actions."[28]

---

[23] *Id.*

[24] Executive Order: *Addressing Remedial Action by Paul Weiss* (Mar. 21, 2025), https://www. whitehouse.gov/presidential-actions/2025/03/addressing-remedial-action-by-paul-weiss/.

[25] *Id.*

[26] Presidential Memorandum: *Preventing Abuses of the Legal System and the Federal Court* (Mar. 22, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/preventing-abuses-of-the-legal-system-and-the-federal-court/.

[27] Fact Sheet: *President Donald J. Trump Prevents Abuses of the Legal System and the Federal Courts* (Mar. 21, 2025), https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-prevents-abuses-of-the-legal-system-and-the-federal-courts/.

[28] *Id.*

112.    As support for those requirements, the Fact Sheet identifies purported "unethical conduct" to "interfere with the 2016 presidential election" by attorney Marc Elias.[29]  The Fact Sheet also identifies purported "unscrupulous behavior by attorneys and law firms that undermine immigration enforcement," including actions purportedly taken "frequently" by "powerful Big Law pro bono practices" like "coach[ing] clients to conceal their past or lie about their circumstances when seeking asylum."[30]

113.    On March 25, 2025, the President issued another executive order targeting the law firm Jenner & Block LLP ("Jenner Order").[31]  That order continues the Administration's practice of targeting "so-called 'Big Law' firms," alleging that such firms "regularly conduct . . . harmful activity through their powerful pro bono practices, earmarking hundreds of millions of their clients' dollars for destructive causes, that often directly or indirectly harm their own clients." Jenner Order § 1.  The Jenner Order asserts that former Jenner partner Andrew Weissman supposedly "engag[ed] in partisan prosecution as part of Robert Mueller's entirely unjustified investigation" of the President, which the Order calls an "overt demand that the Federal Government pursue a political agenda against [the President]." *Id.*  The Jenner Order imposes the same punishments as the Perkins and Paul Weiss Orders:  stripping all Jenner employees of their security clearances, requiring government contractors to disclose their attorney-client relationships with Jenner, and restricting the ability of Jenner employees to enter federal buildings, engage with federal employees, and obtain federal employment.  *Id.* §§ 2-5.

---

[29]  *Id.*

[30]  *Id.*

[31]  Executive Order: *Addressing Risks from Jenner & Block* (Mar. 25, 2025), https://www. whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-jenner-block/.

114.    Two days after the Jenner Order, on March 27, 2025, the President issued his fifth Executive Order targeting a law firm—this time, Wilmer Cutler Pickering Hale and Dorr LLP (the "WilmerHale Order").  Described by President Trump as part of his campaign against "so-called 'Big Law' firms,"[32] the WilmerHale Order states that "yet another law firm . . . has abandoned the profession's highest ideals and abused its pro bono practice to engage in activities that undermine justice and the interests of the United States."  WilmerHale Order § 1.  The WilmerHale Order attacks WilmerHale for its pro bono representations, asserts that WilmerHale's employment practices are racially discriminatory, and focuses on WilmerHale's association with Former Special Counsel Mueller and two other attorneys who were part of the Mueller investigation.  *Id.* Like the orders that came before it, the WilmerHale Order directs agencies to take immediate action to suspend the security clearances of all WilmerHale employees, require government contractors to disclose their attorney-client relationships with WilmerHale, restrict WilmerHale employees from government buildings, and bar executive agencies from hiring WilmerHale employees.  *Id.* §§ 2-5.

115.    Like the Perkins, Paul Weiss, and Jenner Orders, the WilmerHale Order was issued with an accompanying "Fact Sheet."[33]  The "Fact Sheet" labels WilmerHale a "rogue law firm[]," summarizes the various retaliatory actions being taken against WilmerHale, and asserts that the Order will "ensure accountability for past misconduct" and help "to end the weaponization of the Federal government."[34]

---

[32]  Executive Order: *Addressing Risks from WilmerHale* (Mar. 27, 2025), https://www. whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-wilmerhale/.

[33]  *Fact Sheet: President Donald J. Trump Addresses Risks from WilmerHale* (Mar. 27, 2025), https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-addresses-risks-from-wilmerhale/.

[34]  *Id.*

116.    On March 28, 2025, the President announced another "agreement" similar to the one reached with Paul Weiss—this time with Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden").  That new "agreement" was reached without the President having to issue any executive order against the firm; the mere threat of such an order was enough.  In a post on Truth Social, the President announced that Skadden had agreed to "provide a total of at least $100 Million Dollars in pro bono Legal Services, during the Trump Administration and beyond, to causes that the President and Skadden both support."[35]  The President asserted that he would "never stop fighting to deliver on his promises of eradicating partisan Lawfare in America."[36]

117.    On March 28, 2025, Jenner & Block and WilmerHale separately sued to enjoin their respective executive orders.  *See Jenner & Block LLP v. Department of Justice*, No. 25-cv-916 (D.D.C. Mar. 28, 2025), ECF No. 1; *Wilmer Cutler Pickering Hale and Dorr LLP v. Executive Office of the President*, No. 25-cv-917 (D.D.C. Mar. 28, 2025), ECF No. 1.

118.    Later that day, two different courts in this District issued temporary restraining orders, one against the Jenner Order and another against the WilmerHale Order.  *See Jenner & Block LLP v. U.S. Dep't of Justice, et al.*, No. 1:25-cv-00916 (D.D.C. Mar. 28, 2025), ECF No. 9 (enjoining implementation or enforcement of Sections 3 and 5 of the Jenner Order); *Wilmer Cutler Pickering Hale and Dorr LLP v. Executive Office of the President, et al.*, No. 1:25-cv-00917 (D.D.C. Mar. 28, 2025), ECF No. 10 (enjoining implementation or enforcement of Sections 3 and 5 of the WilmerHale Order).

119.    On April 1, 2025, the President announced an "agreement" with Willkie Farr & Gallagher LLP that is substantially identical to the ones reached with Paul Weiss and Skadden

---

[35]    Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 28, 2025, 10:57 AM), https://truthsocial.com/@realDonaldTrump/posts/114241348699704594.
[36]    *Id.*

Arps. Like the Skadden Arps "agreement," this "agreement" was reached without the President having issued an executive order. Willkie promised "at least $100 Million Dollars in pro bono Legal Services, during the Trump Administration, and beyond, to causes that President Trump and Willkie both support."[37]

120.    On April 2, 2025, yet another law firm, Milbank LLP, preemptively reached an "agreement" with the President without having received an executive order targeting it. The Milbank "agreement," like the others, committed to provide $100 Million in pro bono services to causes favored by the President.[38]

121.    On April 4, 2025, Susman Godfrey joined over 500 other law firms as *amici curiae* in support of Perkins Coie (and in opposition to the U.S. Government) in the pending litigation over the constitutionality of the Perkins Order. *See Perkins Coie LLP*, No. 1:25-cv-00716 (D.D.C. Apr. 4, 2025), ECF No. 63. The *amicus* brief asks that the Perkins Order "be permanently enjoined as a violation of core First, Fifth, and Sixth Amendment guarantees, as well as bedrock separation-of-powers principles." *Id.*, ECF No. 63-1 at 1.

122.    On April 8, 2025, Susman Godfrey filed an *amicus* brief in support of Perkins Coie (and in opposition to the government) in the same litigation on behalf of a bipartisan group of former national security, foreign policy, intelligence, legal, and other public officials who have worked on security matters at the most senior levels of the government. *See Perkins Coie LLP*, No. 1:25-cv-00716 (D.D.C. Apr. 8, 2025), ECF No. 98. The *amici* represented by Susman Godfrey include former policymakers and lawyers from both major political parties whose governmental

---

[37] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 1, 2025, 1:47 PM), https://truthsocial.com/@realDonaldTrump/posts/114264667777137553.

[38] Matthew Goldstein, *Another Big Law Firm Reaches Agreement With Trump*, N.Y. Times (Apr. 2, 2025), https://www.nytimes.com/2025/04/02/business/trump-law-firms-milbank-deal.html.

service spans seven decades, including federal judges, senators, ambassadors, national security advisors, White House counsels and general counsels of federal agencies, and a secretary of defense. All *amici* "express[ed] their shared view that the president's unprecedented executive orders against Perkins Coie and other law firms were *ultra vires*, because they were based on no valid national security concern, issued without any colorable legal authority, and unconstitutionally interfere with the separation of powers." *Id.*, ECF No. 98-1 at 1. Susman Godfrey had asked the Department of Justice on April 5, 2025, whether it would object to *amici*'s request for leave to file an *amicus* brief. The Department of Justice confirmed it had no objection.

123.    On April 11, 2025, the President announced that he had reached deals with five more law firms. Those deals are similar to the ones that came before, except that several include not only promises of certain pro bono work but also promises of "other free Legal services." Four of those firms—Kirkland & Ellis LLP, Allen Overy Shearman Sterling US LLP, Simpson Thacher & Bartlett LLP, and Latham & Watkins LLP—jointly agreed to provide an "aggregate total of at least $500 Million Dollars in pro bono and other free Legal services . . . to causes that President Trump and the Law Firms both support and agree to work on."[39] The firms also affirmed that they would not "engage in illegal DEI discrimination and preferences."[40] In return, the President announced, the Equal Employment and Opportunity Commission had "withdrawn" letters seeking information about the firms' employment practices and would "not pursue any claims related to those issues."[41] The President also announced "commitments" made by a fifth firm, Cadwalader,

---

[39] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 11, 2025, 12:21 PM), https://truthsocial.com/@realDonaldTrump/posts/114320245355397433.

[40] *Id.*

[41] *Id.*

Wickersham & Taft LLP.[42]  Cadwalader agreed to provide "at least $100 Million Dollars in pro bono Legal Services . . . to causes that President Trump and Cadwalader both support."[43]

### III.    The President targets Susman Godfrey with the retaliatory Order and Fact Sheet.

124.    On April 9, 2025, the President issued the Order that is the focus of this Complaint, which names Susman Godfrey and Susman Godfrey alone as its target.

125.    Section 1 of the Order proclaims that "[l]awyers and law firms that engage in activities detrimental to critical American interests should not have access to our Nation's secrets, nor should their conduct be subsidized by Federal taxpayer funds or contracts."  Order § 1.  It asserts the purported necessity of "tak[ing] appropriate and necessary measures to guard against the actual, potential, or perceived conflicts of interest that arise when the Government funds, engages with, or otherwise devotes resources to law firms and their clients that engage in conduct undermining critical American interests and priorities."  *Id.*  And it asserts "that action is necessary to address the significant risks, egregious conduct, and conflicts of interest associated with Susman Godfrey LLP (Susman)."  *Id.*

126.    As supposed confirmation of such "risks," Section 1 accuses Susman Godfrey of "spearhead[ing] efforts to weaponize the American legal system and degrade the quality of American elections"; "fund[ing] groups that engage in dangerous efforts to undermine the effectiveness of the United States military through the injection of political and radical ideology"; "support[ing] efforts to discriminate on the basis of race"; and "engag[ing] in unlawful discrimination, including discrimination on the basis of race," by, "[f]or

---

[42] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 11, 2025, 12:19 PM), https://truthsocial.com/@realDonaldTrump/posts/114320237164839938.
[43] *Id.*

example, . . . administer[ing] a program where it offers financial awards and employment opportunities only to 'students of color.'" *Id.* § 1.

127.    Section 2 of the Order addresses security clearances.  In that section, the Order directs "[t]he Attorney General, the Director of National Intelligence, and all other relevant heads of executive departments and agencies (agencies)" to "immediately take steps consistent with applicable law to suspend any active security clearances held by individuals at Susman, pending a review of whether such clearances are consistent with the national interest." *Id.* § 2(a).  The Order also states that "[t]he Office of Management and Budget shall identify all Government goods, property, material, and services, including Sensitive Compartmented Information Facilities, provided for the benefit of Susman.  The heads of agencies providing such material or services shall, to the extent permitted by law, expeditiously cease such provision." *Id.* § 2(b).

128.    Section 3 addresses government contracting.  In that section, the Order states that "agencies shall, to the extent permissible by law, require Government contractors to disclose any business they do with Susman and whether that business is related to the subject of the Government contract" and "shall review all contracts with Susman or with entities that disclose doing business with Susman." *Id.* § 3(a)-(b).  The Order then directs agency heads "to terminate any contract" with Susman "to the maximum extent permitted by applicable law." *Id.* § 3(b)(i).  And the Order mandates that, "[w]ithin 30 days," agencies "shall submit to the Director of the Office of Management and Budget an assessment of contracts with Susman or with entities that do business with Susman effective as of the date of this order and any actions taken with respect to those contracts in accordance with this order." *Id.* § 3(b)(ii).

129.    Section 5 is directed at barring Susman Godfrey personnel from federal buildings, interactions with federal officials, and federal employment.  The Order states that "heads of

agencies shall, to the extent permitted by law, provide guidance limiting official access from Federal Government buildings to employees of Susman when such access would threaten the national security of or otherwise be inconsistent with the interests of the United States," *id.* § 5(a)— having already asserted in Section 1 that the Firm engages in "activities inconsistent with the interests of the United States," *id.* § 1.  The Order also provides that "heads of agencies shall provide guidance limiting Government employees acting in their official capacity from engaging with Susman employees to ensure consistency with the national security and other interests of the United States." *Id.* § 5(a).  And it directs that "[a]gency officials shall, to the extent permitted by law, refrain from hiring employees of Susman, absent a waiver from the head of the agency, made in consultation with the Director of the Office of Personnel Management, that such hire will not threaten the national security of the United States." *Id.* § 5(b).

130.    The Order does not cite any statute as providing authority for its directives, and the President has not, in the context of any other similar executive order issued against law firms, asserted that he acted under authority of any statute when doing so.

131.    The President also issued a "Fact Sheet" to accompany the Order.[44]  The Fact Sheet brands Susman Godfrey a "rogue law firm[]" and states that the President's action against Susman Godfrey demonstrates that the President is "delivering on his promise to end the weaponization of government and protect the nation from partisan and bad faith actors who exploit their influence" by "hold[ing] . . . law firms" like Susman Godfrey "accountable" and "ensur[ing] accountability for past misconduct."[45]  It also restates the Order's directives in definitive terms—for instance,

---

[44] *Fact Sheet: President Donald J. Trump Addresses Risks from Susman Godfrey* (Apr. 9, 2025), https://www.whitehouse.gov/fact-sheets/2025/04/fact-sheet-president-donald-j-trump-addresses-risks-from-susman-godfrey/ (attached as Exhibit B).
[45] *Id.*

stating that "the Federal Government will terminate contracts that involve Susman" to "ensure taxpayer dollars no longer go to contractors whose earnings subsidize activities not aligned with American interests."[46]

## IV.    The Order has harmed and will continue to irreparably harm Susman Godfrey and its clients.

132.    Susman Godfrey has suffered irreparable harm since the Order issued, and it will continue to suffer irreparable harm unless and until it obtains judicial relief.

133.    As explained further below, the Order violates the First and Fifth Amendments of the Constitution as well as separation-of-powers principles.  It is well established that a loss of constitutional freedoms even for a brief interval constitutes irreparable harm, particularly when it comes to First Amendment rights.

134.    The Order irreparably damages Susman Godfrey's reputation and its goodwill with clients.  The Firm has been accused by the Commander in Chief of, among other things, "fund[ing] groups that engage in dangerous efforts to undermine the effectiveness of the United States military" and  "weaponiz[ing] the American legal system and degrad[ing] the quality of American elections."  Order § 1.  Such unfounded accusations will immediately and irreparably impede the Firm's ability to attract and retain clients, including by impeding clients from asking the Firm to take on new matters for them.

135.    So long as the Order remains in force, the Firm faces a serious risk that clients will terminate or contemplate terminating their engagements with the Firm due to the Order, or that the Firm will be turned down—or never contacted at all—by potential clients.

---

[46] *Id.*

136.    The Order also causes severe economic harm to Susman Godfrey by immediately drawing into question the Firm's ability to perform the primary work that it is hired by clients to perform:  represent them in court.  Susman Godfrey is a trial-law firm.  Its attorneys are in federal courthouses on a regular, and sometimes daily, basis.  The day that the Order issued, numerous Susman Godfrey attorneys were in a hearing in a U.S. District Court in northern California.  But the Order purports to restrict Susman Godfrey employees' access to all "Federal Government buildings."  Order § 5.  Because those terms of the Order on their face would include federal courthouses, the Order immediately impairs Susman Godfrey's ability to do the work that it has been retained to do on behalf of its clients, which will irreparably injure Susman Godfrey's ability to attract and retain clients.

137.    For similar reasons, the Order immediately impairs Susman Godfrey's ability to undertake work that involves or necessitates engagement with the government on behalf of Susman Godfrey's clients.  The Order "limit[s] Government employees acting in their official capacity from engaging with Susman employees."  Order § 5.  Susman Godfrey routinely and regularly meets with federal employees with and on behalf of clients in civil fraud and *qui tam* cases, cases pending before the U.S. Patent and Trademark Office and the U.S. International Trade Commission, and cases undertaken in consultation with the Securities and Exchange Commission and Federal Trade Commission.  For example, in *qui tam* cases handled by the Firm in which the government has decided to intervene, the Firm's interactions with the government are frequent and involved, similar to a co-counsel relationship.  Firm lawyers often hold at least weekly phone calls with government attorneys in those cases; may be in contact with them daily during discovery, for purposes of motions practice, and during trial if the case does not settle; and hold in-person meetings with them.  But under the Order, agencies are directed to restrict Susman's access to

federal buildings, imperiling Susman's ability to attend scheduled meetings, if those meetings even remain on schedule. And the cessation of official government "engage[ment]" with Susman Godfrey, whether in an in-person meeting or otherwise, will immediately and irreparably impair Susman Godfrey's ability to represent its clients in those matters and will economically harm the firm. Even mere uncertainty about whether Susman Godfrey attorneys may or may not be allowed to access federal buildings and interact with federal personnel has wide-ranging negative impacts on the Firm's ability to practice law and on its business.

138.    The Order also imposes severe economic harm on Susman Godfrey by directly interfering with the attorney-client relationship between the Firm and its existing clients who have government contracts. The Order grievously impairs the Firm's relationship with those clients. The Order forces them to disclose their representation by Susman Godfrey to the government, whether or not the representation is public. That appears to include even instances where the client's engagement with Susman Godfrey is otherwise confidential and/or has no relationship with the government contract at issue. The Order also indicates to Susman Godfrey's existing clients that continued representation by Susman Godfrey will mean that those clients can no longer be party to any government contracts.

139.    All told, Susman Godfrey will suffer substantial and irreparable reputational and economic injuries from the Order, which threaten the Firm's business model. Any economic injury to Susman Godfrey is irreparable because sovereign immunity prevents Susman Godfrey from suing the government for monetary damages in the absence of an express waiver of this immunity by Congress.

140.    That the Order directs agencies to issue guidance or take other similar action does not make the harm it inflicts any less imminent. Only one day after President Trump signed the

Perkins Order, the Office of Management and Budget issued guidance implementing it.[47]   And less than two weeks after the Perkins Order issued, the Equal Employment Opportunity Commission began to implement the Perkins Order's directive to conduct investigations of various law firms.[48]   Indeed, as to the Order's government-contracts directives, the Order itself requires agencies to submit a report to the Director of the Office of Management and Budget regarding actions undertaken pursuant to the Order within 30 days of its issuance.  *See* Order § 3.

## CLAIMS FOR RELIEF

### COUNT I

**(Against All Defendants)**

***Violation of the First Amendment - Retaliation for Protected Expression***

141.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

142.    The First Amendment to the U.S. Constitution states:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.

143.    The Order violates the First Amendment prohibition on government retaliation for engaging in speech that the government disfavors.  "[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech."  *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018).  "[R]eprisal for protected speech offends the Constitution

---

[47] Russell T. Vought, *Implementation of the Executive Order on "Addressing Risks from Perkins Coie LLP,"* OMB (Mar. 7, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/03/M-25-17-OMB-Perkins-Coie-Draft-Memo-v4-Signed.pdf.

[48] Andrea R. Lucas, *Review of Perkins Coie LLP's Compliance with Title VII of the Civil Rights Act of 1964*, EEOC (Mar. 17, 2025), https://www.eeoc.gov/sites/default/files/2025-03/Law_Firm_Letters_-_03.17.2025.pdf.

because it threatens to inhibit exercise of the protected right." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (cleaned up). "[T]he law is settled" on this issue. *Gonzalez v. Trevino*, 602 U.S. 653, 662 (2024) (Alito, J., concurring) (quoting *Hartman*, 547 U.S. at 256).

144. On its face, the Order (along with its accompanying Fact Sheet) retaliates based on protected First Amendment speech. As discussed above, Susman Godfrey's work almost always involves written and oral advocacy on behalf of clients, including some of President Trump's political opponents, and that advocacy takes place in some matters that are adverse to President Trump's interests. The Firm's advocacy is core protected speech. *See Velazquez*, 531 U.S. at 542 ("advocacy by the attorney to the courts" is speech protected by the First Amendment); *McDonald v. Smith*, 472 U.S. 479, 484 (1985) ("filing a complaint in court is a form of petitioning activity" protected by the First Amendment).

145. President Trump issued the Order to retaliate against Susman Godfrey for that protected First Amendment activity. The Order says so directly, seeking to penalize Susman Godfrey for its purported "efforts to weaponize the American legal system and degrade the quality of American elections" and the President's belief that Susman Godfrey "funds groups that engage in dangerous efforts to undermine the effectiveness of the United States military through the injection of political and radical ideology." Order § 1.

146. The President's withdrawal of the Paul Weiss Order further confirms the retaliatory motive that is both express and implicit in the President's orders targeting law firms, including the Order in this case. The President removed the retaliatory sanctions against Paul Weiss only after the firm (1) "acknowledged the [purported] wrongdoing of its former partner Mark Pomerantz," who participated in a successful criminal prosecution of President Trump; (2) jettisoned certain "'diversity, equity, and inclusion' policies" that the President disfavors; and (3) committed to

taking on pro bono clients and causes that support the Administration's initiatives.  Rescission

Executive Order § 1; *see* Paul Weiss Agreement ¶¶ 2-5.  The rescission confirms that the Paul

Weiss Order was intended to punish Paul Weiss for previous exercises of First Amendment rights,

with a compelled apology (also violative of the First Amendment) as the only available route to

relief from that punishment.  The Order targeting Susman Godfrey has the same structure and

retaliatory purpose as the Paul Weiss Order.

147.    The Order also "constitutes a sufficiently adverse action" against Susman Godfrey

"to give rise to an actionable First Amendment claim." *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S.

468, 474 (2022).  The Order's dictates to federal agencies impede Susman Godfrey attorneys'

ability to practice law, disrupt the Firm's relationships with clients, and harm the Firm's business

prospects.  Restricting Susman Godfrey attorneys' access to federal buildings (such as federal

agency buildings and federal courthouses) and ability to engage with government officials

(including in *qui tam* and other matters involving communication, coordination, or partnership

with federal departments or agencies) profoundly undercuts those attorneys' ability to provide

effective advocacy. *See* Order § 5(a).

148.    Threatening targeted investigations by the Equal Employment Opportunity

Commission and Attorney General, with the prospect of potential prosecution, *id.* § 4 ("Nothing

in this order shall be construed to limit the action authorized by section 4 of Executive Order 14230

of March 6, 2025 (Addressing Risks from Perkins Coie LLP)."), damages Susman Godfrey's

reputation, with attendant harm to client relationships and Firm business prospects.

149.    Forcing Firm clients who contract with the government to disclose to the

government their representation by Susman Godfrey, and threatening to reassess and cancel those

clients' government contracts, even if unrelated to business with Susman Godfrey, Order § 3,

damages Susman Godfrey's relations with existing clients and its ability to attract future ones. These provisions are designed to leverage Susman Godfrey clients' existing government business to force them to stop doing business with the Firm. "[A] government entity's 'threat of invoking legal sanctions and other means of coercion' against a third party 'to achieve the suppression' of disfavored speech violates the First Amendment." *Vullo*, 602 U.S. at 180.

150.    Making Susman Godfrey employees presumptively ineligible for federal employment, Order § 5(b), also is a severe sanction for the Firm's protected First Amendment activity. That sanction is not limited to particular attorneys, but instead applies to all lawyers and other employees of the Firm.

151.    Each of those punishments is a materially adverse action that deters Susman Godfrey "from exercising [its] own right to speak." *Wilson*, 595 U.S. at 479.

152.    Defendants' First Amendment violations are severely affecting Susman Godfrey—including by causing immediate and ongoing irreparable harm—and will continue to do so absent relief from this Court.

## COUNT II

### (Against All Defendants)

### *Violation of the First Amendment – Viewpoint Discrimination*

153.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

154.    "At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Vullo*, 602 U.S. at 187. "The government" therefore "must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector of Univ. of Va.*, 515 U.S. 819, 829 (1995); *see Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 706 (2010) (Alito,

J., dissenting) (cleaned up) ("The proudest boast of our free speech jurisprudence is that we protect the freedom to express [even] the thought that we hate."). Viewpoint-based punishments are particularly pernicious in the context of legal advocacy because they "threaten[] severe impairment of the judicial function," which depends on an "informed, independent bar." *Velazquez*, 531 U.S. at 545-46.

155. The Order violates the First Amendment's prohibition on viewpoint discrimination. The Order attributes to Susman Godfrey certain viewpoints and then punishes the Firm and all its employees and clients because the President disagrees with those viewpoints. The Order openly targets "law firms and their clients" that allegedly "engage in conduct undermining critical American interests and priorities." Order § 1. It specifically targets Susman Godfrey's purported "efforts to weaponize the American legal system and degrade the quality of American elections" and its alleged "fund[ing]" of "groups that engage in dangerous efforts to undermine the effectiveness of the United States military through the injection of political and radical ideology." *Id.* And the Order attacks Susman Godfrey's purported "efforts to discriminate on the basis of race," as exemplified by Susman Godfrey's supposed "administ[ration of] a program where it offers financial awards and employment opportunities only to 'students of color.'" *Id.* The Firm, however, does not administer any program that violates any applicable law; Susman does not have any program that offers employment opportunities only to people of color. The Order on its face thus punishes the Firm for advancing arguments, or using "funding" to support "efforts," with which the President disagrees.

156. That viewpoint discrimination is particularly evident with respect to the Order's direction that Susman Godfrey be prioritized for investigation of advancement policies that the Perkins Order describes as widely shared among large law firms. *See* Order § 4; Perkins Order

§ 4. The only basis for prioritizing investigation of Susman Godfrey instead of other (or all) law firms with similar policies is the viewpoint that the Order attributes to Susman Godfrey.

157. The President's order rescinding the Paul Weiss Order after Paul Weiss agreed to criticize Mark Pomerantz, eliminate DEI policies, and undertake pro bono representations that support the Administration's initiatives underscores that the President is using the power of his office to suppress particular viewpoints expressed by law firms, in an effort to induce them to align with his own political views.

158. Because the Order constitutes viewpoint discrimination, strict scrutiny applies. *See Reed v. Town of Gilbert*, 576 U.S. 155, 168-71 (2015). The Order may be sustained "only if the government proves" that the Order is "narrowly tailored to serve compelling state interests." *Id.* at 163.

159. The Order does not come close to meeting that demanding test. There is no compelling interest in punishing lawyers for, or chilling them from, advocating for clients whose interests are adverse to the government. To the contrary, there is a compelling interest in *permitting* lawyers to challenge the government. *See Velazquez*, 531 U.S. at 545-48. Zealous representation of those disfavored by the government has long been part of our constitutional tradition and is recognized as essential to reining in abuses of government power. *See NAACP v. Button*, 371 U.S. 415, 440 (1963). Moreover, nothing in the Order articulates a compelling interest. The government has no compelling interest in broadly punishing law firms for alleged attorney misconduct. And the Order's bare invocation of "national security" does not suffice, as that reference is unexplained and is not supported by any particularized findings.

160. Even if there were a compelling interest at stake, the Order is not narrowly tailored to serve it. Rather, the Order is vastly overbroad. It punishes Susman Godfrey attorneys and staff

who have nothing to do with the allegedly improper conduct mentioned in the Order.  It imposes punishments on those personnel that are in no way targeted at addressing attorney misconduct. And even if the withdrawal of security clearances were relevant to the President's "national security" concerns, the Order's punishments go far beyond security clearances—even reaching the Firm's clients and their important government contracts.

161.    Defendants' First Amendment violations are causing and will continue to cause ongoing, irreparable harm to Susman Godfrey.

**COUNT III**

**(Against All Defendants)**

*Violation of the First Amendment – Right to Petition the Government*

162.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

163.    The Order violates the First Amendment right "to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Petition Clause of the First Amendment "protects the right of individuals to appeal to courts and other forums established by the government." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011).  "Petitions to the courts and similar bodies can . . . address matters of great public import" and "may facilitate the informed public participation that is a cornerstone of democratic society." *Id.* at 397.  "[T]he right to petition extends to all departments of the Government," including "administrative agencies" and "courts." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

164.    The Order's directive to federal agencies to prohibit their employees from engaging with Susman Godfrey restricts the Firm from petitioning the government on its or its clients' behalf.  The Order interferes with Susman Godfrey employees' ability to "engag[e]" with the very government lawyers and officials who could hear such a petition (*e.g.*, administrative law judges, enforcement attorneys, investigative attorneys, prosecutors, and the like).

105

165.    Excluding Susman Godfrey from federal government buildings likewise constitutes a severe restriction on the Firm's ability to petition the government, as it restricts the Firm and its employees from accessing buildings that house agency proceedings and even federal courthouses. If Susman Godfrey lawyers are refused entry into those buildings, they will not be able to attend key hearings or meetings and will not be able to represent their clients in federal trials.

166.    Susman Godfrey has standing to assert this First Amendment claim both on its own behalf and on behalf of its existing clients based on attorney-client relationships. *See Kowalski v. Tesmer*, 543 U.S. 125, 130-31 (2004).

167.    Defendants' First Amendment violations are causing and will continue to cause ongoing, irreparable harm to Susman Godfrey.

## COUNT IV

### (Against All Defendants)

### *Violation of the First Amendment – Free Association and Compelled Disclosure*

168.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

169.    The First Amendment protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000) (citation omitted). The government may not impose punishments based on protected association. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990).

170.    The Order violates the right to freedom of association under the First Amendment. The Order requires that any Firm clients who are government contractors "disclose any business they do with Susman." Order § 3. "[C]ompelled disclosure of affiliation" with a law firm targeted by the President may chill those clients' willingness to continue to retain the Firm, thus burdening

106

its freedom of association. *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (alterations omitted) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)).

171.    The Order also forces Susman Godfrey clients with government contracts to endure economic reprisal (or other forms of hostility) from the government based on the mere fact of having retained and associated with Susman Godfrey, which discourages them from continuing to do so.  Indeed, government-contractor clients of Susman Godfrey risk termination of their government contracts because of that association, regardless of whether Susman Godfrey is doing any work for those clients related to such contracts.  On any reasonable reading of the Order, any government-contractor client who has associated with Susman Godfrey can expect economic consequences and other repercussions as a result of their chosen counsel.

172.    Those features of the Order affect the Firm:  they mean that, even if Susman Godfrey wishes to keep associating with such clients, its ability to do so has been severely impaired.  In addition, Susman Godfrey has standing to assert interference with the First Amendment right to free association on behalf of its clients. *See Kowalski*, 543 U.S. at 130-31.

173.    "Regulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling state interest." *Clingman v. Beaver*, 544 U.S. 581, 586 (2005).  And compelled disclosures, in particular, must satisfy "exacting scrutiny," which requires the government to show that there is a "substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Ams. for Prosperity Found.*, 594 U.S. at 607 (citations omitted).  For the reasons explained above, the Order cannot meet those demanding standards.

174.    Defendants' First Amendment violations are causing and will continue to cause ongoing, irreparable harm to Susman Godfrey.

## COUNT V

### (Against All Defendants)

### *Violation of the First Amendment and Spending Power (U.S. Const. Art. I, § 8) – Unconstitutional Conditions on Government Contracts*

175.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

176.    When the government funds an activity pursuant to the legislative branch's spending power, *see* U.S. Const. art. I, § 8, the government cannot "leverage funding to regulate speech outside the contours of the federal program itself," *USAID*, 570 U.S. at 214-15.  The government also may not deny or terminate contracts on a basis that infringes the contractor's constitutional rights.  *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 674-75 (1996).

177.    Section 3 of the Order violates those rules.  It directs agencies to "require Government contractors to disclose any business they do with Susman Godfrey and whether that business is related to the subject of the Government contract," Order § 3(a), and to "terminate any contract" for which "Susman has been hired to perform any service," Order § 3(b)(i).  But Susman Godfrey's relationship with government contractors is wholly irrelevant to its clients' ability to effectively provide services under government contracts.  The Order, in fact, does not even limit itself to contracts on which Susman Godfrey provides legal services, but instead requires disclosure of Susman's attorney-client relationship in the case of all contractors.  *See* Order § 3(a).

178.    The attorney-client relationship between Susman Godfrey and its clients is not material to any clients' suitability as a federal contractor.  There is no statutory or constitutional authority for the President to require an existing federal contractor to disclose its retention of Susman Godfrey attorneys or to prohibit any person from engaging Susman Godfrey.

179.    The Order effectively seeks to create a new condition of government contracting—that contractors not work with Susman Godfrey.  That is an unconstitutional condition that burdens

the right to association, as explained above, interferes with the right to counsel, as explained below, and is wholly unrelated to the government's legitimate procurement purposes.

180.    Because of the "special" relationship between an attorney and his or her client, attorneys have third-party standing to contest government actions that impair their clients' "right to obtain legal representation" of their choice.  *DOL v. Triplett*, 494 U.S. 715, 720 (1990); *see Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989).  Susman Godfrey thus has standing to challenge the Order's unconstitutional interference with its clients' rights not to be subject to unconstitutional conditions on federal government contracts.

181.    Defendants' unconstitutional conditions on federal contracts are causing and will continue to cause Susman Godfrey and its clients ongoing, irreparable harm.

## COUNT VI

### (Against All Defendants)

### *Violation of the Fifth Amendment – Due Process Clause (Procedural Due Process)*

182.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

183.    The Order violates the Due Process Clause of the Fifth Amendment, which guarantees that "no person shall . . . be deprived of life, liberty, or property, without due process of law."  The Due Process Clause is violated when the plaintiff (1) faces a deprivation of a protected liberty or property interest, and (2) has not received the process that is due.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).  The safeguards of the Due Process Clause are "'implicated' whenever the government imposes 'civil penalties.'"  *Karem v. Trump*, 960 F.3d 656, 664 (D.C. Cir. 2020) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 n.22 (1996)).  And before a court may impose a "punishment for [a] sanctioned party's misbehavior," it must "provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof" and a jury trial.  *Id.* at 108.  The Order flouts those established constitutional

principles by imposing draconian punishments on Susman Godfrey's liberty and property interests without any process at all.

184.    The Order deprives Susman Godfrey of protected liberty and property interests in multiple ways:  it denies the Firm and its attorneys the right to follow their chosen profession; harms the Firm's reputation; abrogates the Firm's right to petition the government; and interferes with the Firm's protected contractual relationships with clients.

185.    In particular, the Order interferes with the right of Susman Godfrey and its attorneys to pursue their chosen profession by interfering with the ability to practice law, including representing clients in court and before federal agencies.  Susman Godfrey lawyers must be able to enter federal government buildings and engage with federal government employees to be able to represent those clients effectively.  And the Order also subjects Susman Godfrey's non-lawyer professional staff—including paralegals, office managers, legal assistants, information-technology specialists, recruiters, human resources staff, mailroom staff, and others—to the many reputational, practical, and economic consequences associated with restricting all Susman Godfrey personnel from government buildings and barring them from government employment.

186.    The Order also impairs Susman Godfrey's constitutionally protected property interests by seeking to impair and terminate private contractual relationships between Susman Godfrey and its clients, by prohibiting the Firm from participating in federal contracting, and by stigmatizing the Firm as a "rogue law firm[]" that, among other things, allegedly "funds groups that engage in dangerous efforts to undermine the effectiveness of the United States military." Order §§ 1, 3.

187.    Susman Godfrey did not receive any notice prior to being subjected to the Order. Susman Godfrey was not informed, prior to the issuance of the Order, of the conduct that would subject the Firm to punishment or the severity of the potential punishment.

188.    Susman Godfrey was not given any opportunity to challenge the purported factual findings or the sanctions in the Order prior to their announcement.  And after issuance of the Order, Susman Godfrey also has not been given an opportunity to challenge the Order.

189.    No compelling interest justifies that violation of Susman Godfrey's due process rights.  The Order was adopted for illegitimate and retaliatory reasons that could not justify the deprivation of any aspect of due process, let alone justify the deprivation of any due process.  The Order's cursory invocations of "national security" do not cure the due-process issue.  Moreover, any invocations of national security cannot ignore the weighty interests that militate against the Order's harsh punishments.

190.    Defendants' violations of due process are causing and will continue to cause ongoing, irreparable harm to Susman Godfrey.

## COUNT VII

### (Against All Defendants)

### *Violation of the Fifth Amendment – Due Process Clause (Void for Vagueness)*

191.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

192.    The Order separately violates the Due Process Clause because it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *United States v. Williams*, 553 U.S. 285, 304 (2008).

193.    The Order is unconstitutionally vague because it does not give Susman Godfrey fair notice of what is prohibited and how the Firm can avoid sanctions in the future.  The Order

instead appears deliberately crafted to deter protected speech and legal advocacy by forcing both Susman Godfrey and its clients "to 'steer far wider of the unlawful zone'" than they would "if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964).

194.    The Order makes clear what its penalties are, but does not specify in any way what triggered the punishment.  Without any specificity at all, the Order states that Susman Godfrey has, among other things, engaged in "egregious conduct, and conflicts of interest," "subsidiz[ing] . . . activities that are not aligned with American interests," "spearhead[ing] efforts to weaponize the American legal system and degrade the quality of American elections," and "fund[ing] groups that engage in dangerous efforts to undermine the effectiveness of the United States military through the injection of political and radical ideology." Order § 1.

195.    The Order's lack of standards invites discriminatory enforcement.  The Order "impermissibly delegates" to defendants, "for resolution on an ad hoc and subjective basis," basic policy matters such as when, and to what extent, Susman's employees may access federal buildings or engage with federal employees—"with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).  The Order also does not state with specificity what standard by which federal personnel are to limit Susman Godfrey's access to federal government buildings and federal employees, instead referring only vaguely to undefined "threat[s]" to "the national security of" or "the interests of the United States."  Order §§ 3, 5(a).  That leaves Susman Godfrey employees without any understanding or notice of what conduct would prevent (or allow) their access to federal government buildings or prohibit (or allow) their attorneys' "engag[ement]" with federal employees.

196.    That vagueness is especially impermissible because where, as here, "speech is involved," the vagueness test must be applied with special "rigor[]."  *FCC v. Fox Television Stations*, 567 U.S. 239, 253-54 (2012).

197.    Defendants' violations of due process are causing and will continue to cause ongoing, irreparable harm to Susman Godfrey.

## COUNT VIII

### (Against All Defendants)

### *Violation of the Fifth Amendment – Right to Counsel*

198.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

199.    The Order violates the Fifth Amendment right to counsel of Susman Godfrey's clients, which the Firm has standing to assert because those violations interfere with the Firm's practice.  The Fifth Amendment protects clients' due-process rights in establishing and maintaining attorney-client relationships, including the client's right to choose counsel, free from arbitrary or unjustified governmental interference.  *See Triplett*, 494 U.S. at 721.

200.    The Order's sanctions interfere with and chill that right.  Those sanctions deny Firm attorneys the ability to freely "engag[e] with" Government officials or "access[] . . . Federal Government buildings."  Order § 5(a).  As a result of the Order, the Firm's clients will have to go without their chosen counsel in upcoming meetings and hearings.

201.    The Order's stated reasons for that interference—to punish the Firm for its First Amendment activity—are not rationally related to any legitimate government interest.  The Order's restrictions therefore infringe the rights of the Firm's clients under the Fifth Amendment.

202.    Defendants' violations of the right to counsel are causing and will continue to cause ongoing, irreparable harm.

## COUNT IX

### (Against All Defendants)

### *Violation of the Fifth Amendment – Equal Protection*

203.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

204.    The Order violates the Equal Protection Clause as incorporated by the Fifth Amendment, which prohibits the federal government, its agencies, its officials, and its employees from denying persons the equal protection of the laws.  *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

205.    The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,'" regardless of whether that class actually has a single member or consists of a group of disfavored parties.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted).  Such a claim requires the plaintiff to allege that it "has [a] been intentionally treated differently from others similarly situated and [b] that there is no rational basis for the difference in treatment."  *Id*.  Further, when the differential treatment burdens a plaintiff's First Amendment activity, a standard "appreciably more stringent than 'minimum rationality'" governs.  *News Am. Publ'g, Inc. v. FCC*, 844 F.2d 800, 802 (D.C. Cir. 1988).

206.    To justify discriminatory conduct, the government must put forward a "plausible reason" for its differential treatment, *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993), which cannot be "so attenuated" from its conduct "as to render [it] arbitrary or irrational."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446 (1985) (citing, *e.g.*, *U.S. Dep't of Agriculture v. Moreno*, 413 U.S. 528, 535 (1973)).  "[A] bare desire to harm a politically unpopular group" is "not [a] legitimate state interest[]."  *City of Cleburne*, 473 U.S. at 447.

207.    The Order violates those equal-protection principles because its purpose is to discriminate against Susman Godfrey.  The targeted nature of the treatment inheres in the Order

itself, which singles out the Firm by name, airs the President's particular grievances with the Firm, and assigns specific sanctions to the Firm.  Countless other similarly situated law firms and lawyers have not been subjected to the same—or remotely similar—sanctions.  That different treatment alone demonstrates that the Order was motivated by a bare intent to punish Susman Godfrey.

208.    Although the Order's discriminatory intent is evident on its face, it is reinforced by public statements made by President Trump and his associates that reflect his animus toward Susman Godfrey and his desire to seek retribution against its lawyers for their constitutionally protected advocacy.  For instance, during the signing ceremony for the Order, President Trump stated, "We're just starting a process with this [firm], because there were some very bad things that happened with these law firms."  An aide added, "[t]his firm was very involved in the election misconduct."[49]

209.    It is immaterial that several other law firms have previously been subjected to analogous orders.  The fact remains that the number of similarly situated firms targeted by the President is dwarfed by the number who have been unaffected.

210.    No credible, rational justification exists for treating Susman Godfrey differently than similarly situated firms.  The Order's stated reasons are arbitrary, irrational, and do not even try to conceal the Executive's true motive: punishing Susman Godfrey for engaging in constitutionally protected speech, association, and legal advocacy that President Trump disfavors.

211.    Defendants' violations of equal protection are causing and will continue to cause ongoing, irreparable harm to Susman Godfrey.

---

[49] *President Trump discusses tariff reversal and signs Executive Order in the Oval Office – 4/9/25*, CNBC Television, at 12:15-12:36, https://www.youtube.com/watch?v=mYm7kmOC37s&t=735s.

## COUNT X

### (Against All Defendants)

### *Ultra Vires* Presidential Action – Separation of Powers

212.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

213.    The Order violates the Constitution's separation of powers, which prevents the "concentrat[ion] [of] the roles of prosecutor, judge, and jury in the hands of the Executive Branch." *SEC v. Jarkesy*, 603 U.S. 109, 140 (2024).  The separation of powers "protects the liberty of the individual from arbitrary power." *Bond v. United States*, 564 U.S. 211, 222 (2011).

214.    "The President's power, if any, to issue" an executive order "must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).  No act of Congress supports the Executive Order.  Congress has not authorized the President to make findings about law firm conduct, *see* Order § 1, or to impose punishments on law firms for the personnel they hire or the work they do.  There is no statutory authority for the contracting directives in Section 3 of the Order or for the significant restrictions imposed in Section 5 of the Order.  The President does not cite any statutory authority for the actions taken in the Executive Order.

215.    Section 3 of the Order also fails for an additional reason:  it violates the terms of the Federal Property and Administrative Services Act.  At a minimum, that law requires that a presidential contracting directive advance economy and efficiency in government contracting.  *See UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003).  Section 3 of the Order wholly lacks an economy-and-efficiency finding, and the Order is expressly not directed at that purpose—but is instead directed at stopping "taxpayer dollars" from "subsidizing" Susman Godfrey.  Order § 3.  An economy-and-efficiency finding would be impossible in any event.  The Order undermines efficiency by discouraging federal contractors from working with their law firm

of choice and by requiring agencies to terminate existing contractors, regardless of their effectiveness. Courts recently have taken a narrow view of the President's contracting authority which would clearly bar Section 3 of the Order as well. *See, e.g.*, *Nebraska v. Su*, 121 F.4th 1, 7 (9th Cir. 2024) (rejecting presidential directive to require contractors to have a $15 minimum wage); *Kentucky v. Biden*, 57 F.4th 545, 552 (6th Cir. 2023) (rejecting presidential directive to require contractors to have a COVID-19 vaccination requirement).

216.    The Constitution does not independently authorize the Order. Article II does not authorize the President to punish disfavored law firms. "[O]fficially prepared and proclaimed governmental blacklists possess almost every quality of bills of attainder, the use of which was from the beginning forbidden to both national and state governments." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 143-44 (1951) (Black, J., concurring). There is no history supporting a constitutional authority to issue the Order.

217.    Instead, the historical power to sanction attorneys for alleged professional misconduct rests with the Article III judiciary. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). The Order intrudes on that judicial role by imposing sanctions on Susman Godfrey based not on a judicial finding of professional wrongdoing, but rather on the President's own view of what is right and wrong. It further intrudes on Article III powers by undermining the independence of the bar. The Order targets Susman Godfrey for representing clients and pursuing cases that the President does not favor. But under the Constitution, the President may not prevent the Nation's courts from having independent and zealous attorneys appear before them. Such action improperly "truncate[s] presentation to the courts" and interferes with the advocacy "upon which courts must depend for the proper exercise of the judicial power." *Velazquez*, 531 U.S. at 545.

218.    Indeed, the Order punishes Susman Godfrey in the manner of an unconstitutional bill of attainder.  The Order invades judicial power by adjudicating facts to support a restriction of Plaintiff's private rights in a way the Constitution prohibits even the legislature from doing.  But under the Constitution, Presidents cannot seize judicial power unto themselves to "pronounce[] upon the guilt of [Plaintiff] . . . in accordance [solely] with [their] own notions."  *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 323 (1866).

219.    The Order is *ultra vires* because it violates the separation of powers by exercising judicial power and because no statute grants such authority.

220.    The *ultra vires* nature of the Order has already irreparably harmed and continues to irreparably harm Susman Godfrey.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court declare that the Order is unconstitutional and award any other relief the Court deems necessary and just, including as appropriate using its equitable powers to enter orders providing that:

A. Defendants are enjoined from implementing or giving effect to the Order in any way, including by relying on any of the statements in Section 1;

B. Defendants are directed to rescind any and all guidance or direction that has already issued that relates to implementing or enforcing the Order;

C. Defendants are directed to issue guidance to their officers, staff, employees, and contractors to disregard the Order and carry on with their ordinary course of business as if the Order had never issued;

D. Defendants U.S. Department of Justice; Pamela Bondi, in her official capacity as U.S. Attorney General; the Office of Management and Budget; and Russell Vought, in his official capacity as Director of the Office of Management and Budget, are directed to

immediately issue guidance to all other agencies subject to the Order to suspend and rescind any implementation or enforcement; and

E.  Defendants are directed to take, in good faith, any other steps that are necessary to prevent the implementation or enforcement of the Order.

May 9, 2025

Respectfully submitted,

*/s/ Donald B. Verrilli, Jr.*

Donald B. Verrilli, Jr. (D.C. Bar. No. 420434)
Elaine J. Goldenberg (D.C. Bar No. 478383)
Ginger D. Anders (D.C. Bar. No. 494471)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com

Brad D. Brian (*pro hac vice*)
Michael R. Doyen (*pro hac vice*)
Hailyn J. Chen (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
(213) 683-9100
Brad.Brian@mto.com
Michael.Doyen@mto.com
Hailyn.Chen@mto.com

*Attorneys for Susman Godfrey LLP*

(*Additional counsel listed on following page*)

119

Bethany W. Kristovich (*pro hac vice*)
Adam B. Weiss (*pro hac vice*)
Jennifer L. Bryant (*pro hac vice*)
Miranda E. Rehaut (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
(213) 683-9100
Bethany.Kristovich@mto.com
Adam.Weiss@mto.com
Jennifer.Bryant@mto.com
Miranda.Rehaut@mto.com

Rachel G. Miller-Ziegler (D.C. Bar No. 229956)
Jeremy S. Kreisberg (D.C. Bar No. 1048346)
Kyle A. Schneider (D.C. Bar No. 90024468)
Esthena L. Barlow (D.C. Bar No. 90000252)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
Rachel.Miller-Ziegler@mto.com
Jeremy.Kreisberg@mto.com
Kyle.Schneider@mto.com
Esthena.Barlow@mto.com

Juliana Yee (*pro hac vice*)
Shannon C. Galvin Aminirad (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
(415) 512-4000
Juliana.Yee@mto.com
Shannon.Aminirad@mto.com

*Attorneys for Susman Godfrey LLP*